1
2
3
4
5

**Gary W. Gorski CBN: 166526**
**Attorneys at Law**
3017 Douglas Blvd., Suite 150
Roseville, CA  95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com

6
7
8
9

**Daniel M. Karalash CBN: 176421**
**Attorney at Law**
*STRATEGIC LAW COMMAND*
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
Fax: (916) 520-3930

10
11
12

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20
21
22
23
24

ARNOLD ABRERA,

        plaintiff,

    v.

GAVIN NEWSOM, in his official capacity
as Governor of the State of California;
ROB BONTA, in his official capacity as
Attorney General of the State of California;
ANNE MARIE SCHUBERT, in her
official capacity as County of Sacramento
District Attorney; COUNTY OF
SACRAMENTO; BOBBY DAVIS, in his
official capacity as Chief of the Elk Grove
Police Department; JONATHAN P.
HOBBS, in his official capacity as the City
Attorney for the City of Elk Grove; CITY
OF ELK GROVE;

        defendants.

No.

**COMPLAINT FOR TEMPORARY
RESTRAINING ORDER, PRELIMINARY
INJUNCTION, DECLARATORY AND
INJUNCTIVE RELIEF, AND MONETARY
DAMAGES (42 U.S.C. § 1983)**

**DEMAND FOR JURY TRIAL**

25
26

## INTRODUCTION AND POLITICAL BACKGROUND REGARDING POLICY

27

1.  This case pertains to Plaintiff's four (4) firearms (two rifles, two pistols) being seized because

28

he dialed 911 on his wife's veiled threat to kill herself – in sum, he was denied his Second

1

1   Amendment rights all because he dialed 911. Several months later, he was charged with a

2   felony for possession of two so-called "assault weapons" which were legally purchased and

3   possessed by him and criminalized thereafter via *ex post facto* laws.

4

5   2.   The U.S. Supreme Court just stated in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843,

6        pages 89-90 (June 23, 2022) the following:

7

8             The constitutional right to bear arms in public for self-defense is not
              "a second-class right, subject to an entirely different body of rules
9             than the other Bill of Rights guarantees." *McDonald*, 561 U. S., at
              780, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (plurality opinion). We know
10            of no other constitutional right that an individual may exercise only
              after demonstrating to government officers some special need. That
11            is not how the First Amendment works when it comes to unpopular
              speech or the free exercise of religion. It is not how the Sixth
12            Amendment works when it comes to a defendant's right to confront
              the witnesses against him. And it is not how the Second Amendment
13            works when it comes to public carry for self-defense.

14   3.   The U.S. Supreme Court just stated in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843,

15        pages 89-90 (June 23, 2022) the following:

16

17            In *Heller* and *McDonald*, we held that the Second and Fourteenth
              Amendments protect an individual right to keep and bear arms for
18            self-defense. In doing so, we held unconstitutional two laws that
              prohibited the possession and use of handguns in the home. In the
19            years since, the Courts of Appeals have coalesced around a "two-
              step" framework for analyzing Second Amendment challenges that
20            combines history with means-end scrutiny.

21            Today, we decline to adopt that two-part approach. In keeping with
              *Heller*, we hold that when the Second Amendment's plain text covers
22            an individual's conduct, the Constitution presumptively protects that
              conduct. To justify its regulation, the government may not simply
23            posit that the regulation promotes an important interest. Rather, the
              government must demonstrate that the regulation is consistent with
24            this Nation's historical tradition of firearm regulation. Only if a
              firearm regulation is consistent with this Nation's historical tradition
25            may a court conclude that the individual's conduct falls outside the
              Second Amendment's "unqualified command." *Konigsberg v. State*
26            *Bar of Cal.*, 366 U. S. 36, 50, n. 10, 81 S. Ct. 997, 6 L. Ed. 2d 105
              (1961). [emphasis added]
27

28   4.   Defendants' promulgation of policies, rules, regulations and laws challenged in this action

have no national historical tradition.

5.  There is nothing new or unusually dangerous about semiautomatic, centerfire rifles and pistols with detachable magazines. Such arms have been in safe and effective use by civilians in this country—including in California—for over a century. As a general matter, they remain lawful in all states today.

6.  Text, history, and tradition has shown that the rifles and handguns used by the military have paralleled the civilian ownership, possession and use of such arms, for instance:

   A.  Springfield Model 1795, 1795 – 1865, used by both United States Army and Confederate States Army was the same rifle used by almost the entire population in the North and South.

   B.  Berdan Sharps Rifle, 1859 – 1864, used by the U. S. Army

   C.  M1 Garand, entered military service 1903 as the standard rifle of the United States military during the Second World War and the <u>first semi-automatic rifle</u> to be issued as a primary arm by a major armed force, officially replacing the bolt-action Springfield M1903 as the US Army's standard rifle in 1936. This rifle was immediately available for sale to the public since first introduced.

   D.  Springfield Armory M14, entered military service 1974 – and is still in use as a sniper rifle. A civilian version of the M14; identifying feature is that the rifle lacks a selector switch for automatic fire. Some rifles may have the bayonet lug removed and a muzzle brake in place of a flash hider. The M1As were available to the public for purchase after 1974 and sans selector switch, were virtually identical to the Army's M14 Rifles. After the first California Assault Weapon ban of 1989, Springfield Armory and Colt both saw the writing on the wall. Even though they could still sell renamed identical weapons to California, they started removing cosmetic features like bayonet lugs, being that anti gun

3

politicians criticized the lugs as well as the flash hiders. After Clinton's Federal Assault

Weapon ban of 1994, all production M1As were shipped with muzzle brakes instead of

flash hiders and no bayonet lugs. After the Federal Assault Weapon ban lapsed in 2004,

M1As were shipped with both muzzle brakes and the traditional flash hiders, but

Springfield stopped providing bayonet lugs, opting to save on weight. Any M14 style rifle

seen in a film with a shaved off bayonet lug cannot be a military gun. None of these

cosmetic bans related to the actual semi-automatic functioning and detachable magazine

features of the rifles.

E.   The M16 rifle series (1959 to present) is the United States military designation of rifle

variants of the ArmaLite AR-15 rifle adopted by the US military. The original prototype

AR-15 was developed by ArmaLite in 1956. The rifle would later be adopted by the

United States military under the name "Rifle, Caliber 5.56 mm, M16".

F.   The name "AR-15" today is used almost exclusively to refer to the semi-automatic

(commercially available) civilian version(s) of the M16 and M4 battlefield rifles. The AR-

15 is a traditional semi-automatic rifle owned by 10s of millions of Americans, and is the

single most popular rifle sold in the United States.

7.   The "…  government must affirmatively prove that its firearms regulation is part of the

historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.*

8.   California can show no such history.

9.   The Second Amendment does not just pertain to self-defense and hunting. The Honorable

Judge Kozinski succinctly explains the scope and purpose of the Second Amendment in

*Silveira v. Lockyer*, 328 F.3d 567, 568-69 (2003) (Kozinski, J., dissenting from the denial of

rehearing *en banc*):

The Second Amendment is a doomsday provision, one designed for

those exceptionally rare circumstances where all other rights have failed — where the government refuses to stand for reelection and silences those who protest; where courts have lost the courage to oppose, or can find no one to enforce their decrees. However improbable these contingencies may seem today, facing them unprepared is a mistake a free people get to make only once. [emphasis added]

10. "If *Heller* tells us anything, it is that firearms cannot be categorically prohibited just because they are dangerous." *Caetano v. Massachusetts*, 577 U.S. 411, 418 (2016) (Alito, J., and Thomas, J., concurring) *Heller* has been further clarified in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

11. The Second Amendment protects the possession and use of weapons that are "'in common use at the time.'" *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022), page 12 of slip opinion.

12. The Second Amendment further protects possession and use of weapons which are part of the ordinary military equipment or that the arms use could contribute to the common defense. *United States v. Miller*, 307 U.S. 174, 177. [1] See also *District of Columbia v. Heller*, 554 U.S. 570 (2008).

13. All semi-automatic handguns and rifles with detachable magazines are in common use in America.

14. The Ninth Circuit has repeatedly interpreted that the Second Amendment only applies to the possession of arms useful for military service, and because the Supreme Court has clarified that the Second Amendment is a right of the People to own arms useful for military service and self defense, the AR-15 and semi-automatic handguns banned by California are in fact

---

[1] In the absence of any evidence tending to show that possession or use of a "shotgun having a barrel of less than eighteen inches in length" at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense. *Aymette* v. *State*, 2 Humphreys (Tenn.) 154, 158.

protected arms under 9th Circuit precedent and *United States v. Miller*, 307 U. S. 174, 179

(1939).

15. Passing a law like Assault Weapons Control Act ("AWCA") is symbolic — purely symbolic.

16. Each defendant has made a political career out of nullifying the Second Amendment that they

    can exploit for political gain; each has used its legislative and executive powers in clear

    violation of the Second Amendment.

**PARTIES**

17. Plaintiff Arnold Abrera is a married 48 year old individual and naturalized citizen of the

    United States and resident of the State of California, residing in Elk Grove, California.

18. Plaintiff is a father of three children, ages 16, 17, and 18.

19. Plaintiff and his wife are natives of the Philippines and have resided in California for

    approximately 16 years, moving here from the Republic of the Philippines.

20. The Philippines was a Commonwealth of the United States, a country known for its cultural

    pride of gun ownership and gun rights. Since the Spanish American War and Philippine

    American War, the U.S. allowed gun ownership and gun rights among the Filipino populace,

    with some exceptions.

21. Gun control was a small issue in the Philippines until 1972, when strict gun control was

    enacted under the dictatorship of Ferdinand Marcos, per Proclamation No. 1081.

22. Though, despite the government claims that this was a temporary gun control law, citizens

    often fell victim to <u>door-to-door searches for firearms</u>. <u>Confiscated firearms were not</u>

    <u>returned</u>.

23. Plaintiff moved from an oppressive regime which outlawed guns, except for the privileged

    few.

24. As immigrants fleeing authoritarianism, they moved to the United States because of the

6

freedoms granted to its citizens, including the right to keep and bear arms in defense of themselves, community, and their country.

25. Just like the country they fled; California has an enforcement apparatus with the goal of disarming its residents as well as people passing through the state.

26. Plaintiff lawfully owned two semiautomatic, centerfire rifles with a non-fixed magazine and a pistol grip, flash suppressor, and adjustable stock, making it an "assault weapon" under the latest amendment to the AWCA (Assault Weapon Control Act).

27. He kept it in his home for self-defense and other lawful purposes, like training and recreation. As a result of the AWCA, Plaintiff has been arrested and charged with a felony. Because of this arrest, Plaintiff has extreme fear of attempting to purchase any firearms without a declaration from the Court.

28. Plaintiff has real, particularized fear of prosecution for violating the AWCA.

29. Plaintiff he wishes to assemble new replacement AR-15s into fully functioning semiautomatic, centerfire rifle with a detachable magazine that has a pistol grip, flash suppressor, and adjustable stock. As a result of the AWCA, he is prohibited from assembling his firearm frame into a semiautomatic, centerfire rifle that has a non-fixed magazine and a pistol grip, flash suppressor, or adjustable stock.

30. But for this restriction and fear of prosecution for violating the AWCA, Plaintiff would assemble his firearm frame into such a configuration, which rifle he would use for self-defense and for other lawful purposes.

31. Defendant Gavin Newsom is the Governor of California, former Lieutenant Governor of California, and former Mayor of San Francisco.

32. He is responsible for all Executive Orders that amend, change, alter, or create new statutory law or legislative policy.

7

33. He exercises legislative powers by unilaterally amending, altering, or changing existing statutory law or making new statutory law.

34. He has the authority to exercise "all police power vested in the state," allowing him to "promulgate, issue, and enforce such orders and regulations as he deems necessary" authorizes him to legislate by unilaterally amending existing statutory law. He is the official policy maker of the executive branch. He is named in his official capacity.

35. Defendant Rob Bonta is the Attorney General of the State of California, and elected official, and is hereby named in his official capacity.

36. He is the chief law enforcement officer of California. Defendant Bonta is charged by Article V, Section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. Defendant Bonta also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of their respective officers.

37. Article V, section 13 is fleshed out in several California statutes which grants full authority and power to the Attorney General with direct supervisory power over sheriffs and police chiefs, including policy making power regulating firearms, including the seizure of arms legally owned by the public.

38. Defendant Bonta is the State of California Attorney General, and as such is responsible for executing and administering the laws, customs, practices, and policies of the State of California, under whose direction all defendants complained of in this action have acted on behalf of.

39. Defendant Bonta's duties also include informing the public, local prosecutors, and law enforcement regarding the meaning of the United States Constitution as a limitation on the State relating arrest, confiscation, destruction and removal of firearms from its citizens which are in fact protected under the Second Amendment; he has deliberately ignored this mandate.

40. In addition, he is also responsible promulgating rules and policies for classification of firearms, especially those classified as "assault weapons", "unsafe handguns" and "handgun roster". He is sued in his official capacity.

41. Defendant City of Elk Grove ("the City") is a municipality chartered by the State of California. It has endorsed and followed Newsom and Bonta's gun confiscation and enforcement regime going after law abiding gun owners through both the civil and criminal process.

42. Defendant County of Sacramento is created under the Constitution and Laws of the State of California. It has endorsed and followed Newsom and Bonta's gun confiscation and enforcement regime going after law abiding gun owners through both the civil and criminal process.

43. Defendant Bobby Davis is the Chief of the Elk Grove Police Department.

44. He has endorsed and followed Newsom and Bonta's gun confiscation and enforcement regime going after law abiding gun owners through both the civil and criminal process.

45. Davis is a sworn peace officer acting under color of law in both his individual and official capacities. As such, he is responsible for formulating, executing, and administering with the City the laws, customs, practices, and policies at issue in this lawsuit. Through its Police Department, the City has enforced the challenged laws, customs and practices against Plaintiff. He is sued in his official capacity as a policymaker of the Elk Grove Police Department.

46. Defendant Jonathan P. Hobbs is the City Attorney, acting as the general legal counsel to the City of Elk Grove. He has endorsed and followed Newsom and Bonta's gun confiscation and enforcement regime going after law abiding gun owners through both the civil and criminal process.

47. The City Attorney is responsible for providing legal advice and representation to the City Council, City boards, committees, and commissions, City Manager, and City staff relating to matters concerning the City. He is sued in his official capacity as the City Attorney.

48. The City Attorney, and the City Attorney's Office, represent the City of Elk Grove, as a government entity, acting through the City's public officials and staff.

49. Defendants are a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

50. Municipal Defendants are created under the Constitution and Laws of the State of California.

51. Defendants are responsible for formulating, executing, and administering California's gun-control laws and policies at issue in this lawsuit, and they are in fact presently enforcing them.

52. Defendants enforce California gun-control laws against Plaintiff and other California citizens under color of state law within the meaning of 42 U.S.C. § 1983.

## **JURISDICTION AND VENUE**

53. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

54. The Court has pendant jurisdiction over Plaintiff's pendent claims arising under state law.

55. Plaintiff has complied with tort claim requirements.

56. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

57. Venue lies in this Court pursuant to 28 U.S.C. § 1391 as this is the judicial district where

defendants reside, and this is the judicial district where the cause of action arose.

## FACTS

58.  The Second Amendment to the United States Constitution provides: "A well regulated Militia

being necessary to the security of a free State, the right of the people to keep and bear Arms,

shall not be infringed."

59. The Second Amendment is incorporated as against the states through the Fourteenth

Amendment, such that Defendants cannot, under color of law, deprive Plaintiff of his right to

keep and bear arms.

60. The Fourth Amendment bars the government from unreasonable search and seizure of an

individual or their private property. The Fourth Amendment protects "[t]he right of the people

to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures."

61. The Fifth Amendment provides that the People have the right against self-incrimination or

have property taken away without just compensation.

62. The Fourteenth Amendment states: "All persons born or naturalized in the United States and

subject to the jurisdiction thereof, are citizens of the United States and of the State wherein

they reside. No State shall make or enforce any law which shall abridge the privileges or

immunities of citizens of the United States; nor shall any State deprive any person of life,

liberty, or property, without due process of law; nor deny to any person within its jurisdiction

the equal protection of the laws." [Emphasis added]

63. Article 1, Section 1, of the California Constitution confers a right of self-defense and defense

of property, by stating: "All people are by nature free and independent and have inalienable

rights. Among these are enjoying and **defending** life and liberty, acquiring, possessing, and

**protecting** property, and pursuing and obtaining **safety**, happiness, and privacy." [emphasis added]

64. Plaintiff, at 48 years of age, has never had any mental or criminal history.

65. Plaintiff is the typical law abiding citizen and a father of three.

66. Plaintiff and his wife legally obtained and possessed six firearms, along with ammunition and magazines, four of which were actually purchased and owned by Plaintiff.

67. The firearms are as follows: One (1) Glock, Inc., model 17, 9 cal., serial no. BBDW312; One (1) Sig Sauer model SP2022, .40 cal., serial no. 24B245366, erroneously listed as "Sauer, J.P., & Sons"; One (1) Sig Sauer model SP2022, 9 cal., serial no. 24B245997, erroneously listed as "Sauer, J.P., & Sons"; One (1) Sturm, Ruger & Co., model LC380CA, 380 cal., serial no. 32653888; One (1) Del-Ton Inc., model DTI 15, 556 cal., serial no. B6215; One (1) Roggio Arsenal, model RA l5, multiple caliber, serial no. RA09011623.

68. The Glock 17 (BBDW312), Sig Sauer model SP2022 (24B245997), Del-Ton DTI 15 (B6215) and Roggio Arsenal, model RA l5, (RA09011623) where legally purchased in California by Plaintiff.

69. The firearms were maintained in two locked safes, and one hidden next to Plaintiff's side of bed at time of sleep and/or occupation of the residence.

70. On or about December 27, 2020, Officer Coleman and other Elk Grove police officers went to Plaintiff's residence in Elk Grove, California in response to a 911 hang-up call from Plaintiff.

71. Upon arrival, Coleman entered the residence without a warrant on a health and safety check. Plaintiff, who said he was concerned about his wife, advised the officers that he accidently dialed 911. He stated that his wife was distraught over text messages on his phone and that she threatened to kill herself over a perceived affair.

72. There was no evidence of a physical altercation nor were there any injuries to any of the

12

occupants.

73. Plaintiff was not concerned about his own safety and confirmed that his wife did not have access to the firearms.

74.  Coleman saw that Plaintiff's wife was emotionally upset and had threatened suicide because she thought Plaintiff was cheating on her – not a highly unusual reaction by a spouse. Attached hereto as **Exhibit "1"**, and incorporated herein at length, is a true and correct copy of Elk Grove Police Department's Incident/Investigation Report dated December 27, 2020, **Notes/Narrative.**

75. Plaintiff's wife made no threats to any person other than herself, nor did she ever attempt suicide nor was there ever an opportunity.

76.  Officers easily determined that Plaintiff committed no crime and that he was NOT a danger to anyone; whereby Plaintiff was allowed to retire back to his home while his wife was placed in custody on a 72-hour 5150 hold. See **Exhibit "1"**.

77. Confiscation under section 8102 is only triggered "[w]henever a <u>person</u>, who has been <u>detained or apprehended for examination</u> of his or her mental condition … is found to own, have in his or her possession or under his or her control, any firearm whatsoever, or any other deadly weapon." (§ 8102, subd. (a).)

78. Plaintiff's wife did not have possession of his arms, nor did she have possession of her two handguns.

79. Had the firearms not been seized, Plaintiff would have simply placed them into a safe and had the combination changed.

80. This option was never presented or discussed; all firearms were summarily seized pursuant to policy, which was to remove firearms from law abiding citizens to get guns off the streets at any opportunity, even if unconstitutional.

13

81. Section 8102 requires a "law enforcement agency [to] make the firearms available for return unless it timely files a petition to determine whether returning them 'would be likely to result in endangering the person or others, and … send[s] a notice advising the person of his or her right to a hearing on this issue.' [Citations.] Section 8102 thus 'places the onus upon law enforcement to initiate the forfeiture proceeding.'" *City of San Diego v. Boggess,* 216 Cal.App.4th 1494, 1500 (2013).

82. Section 8102, subdivision (b)(1) states in relevant part: "Upon confiscation of any firearm or other deadly weapon from a person who has been detained or apprehended for examination of his or her mental condition, the peace officer or law enforcement agency shall issue a receipt describing the deadly weapon or any firearm and listing any serial number or other identification on the firearm and shall notify the person of the procedure for the return, sale, transfer, or destruction of any firearm or other deadly weapon which has been confiscated."

83. Section 8102, subdivision (c) states in relevant part:  "Upon the release of a person as described in subdivision (b), the confiscating law enforcement agency shall have 30 days to initiate a petition in the superior court for a hearing to determine whether the return of a firearm or other deadly weapon would be likely to result in endangering the person or others, and to send a notice advising the person of his or her right to a hearing on this issue." [emphasis added]

84. Possession of legal firearms in a home is generally lawful (see *District of Columbia v. Heller* (2008) 554 U.S. 570, 576-635), and their presence in Plaintiff's home while his wife was being held for observation, without more, does not constitute exigent circumstances.

85. The law is well settled that a warrant is required to search a home and seize items therein unless there is genuine exigency coupled with an inability to timely comply with the warrant requirement. *McDonald v. United States*, 335 U.S. 451, 454-56 (1948)

14

86. Searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specially established and well delineated exceptions. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (citations and internal quotation marks omitted).

87. There is no "firearm exception" to the Fourth Amendment. *Florida v. J.L.*, 529 U.S. 266, 272-73 (2000).

88. Plaintiff was not a person detained or arrested under state law, and therefore, his firearms could not be seized.

89. However, on December 27, 2020,  all of Plaintiff's firearms were seized though Plaintiff committed no crime was not detained nor arrested.

90. Plaintiff's wife did not have the ability to possess the arms at the time of detention under section 5150.

91. Defendants use "public safety" and "community caretaking" as a pretext for gun confiscation.

92. An arrest warrant was requested on or after January 29, 2021. Attached hereto as **Exhibit "2"**, and incorporated herein at length, is a true and correct copy of Elk Grove Police Department's Arrest Warrant Request Form dated January 29, 2021**.**

93. Unbeknownst to Plaintiff, on January 25, 2021, a Petition for Judicial Determination Re: Return of Firearms Welfare & Institutions Code section 8102 was filed by defendant Jonathan P. Hobbs as the City of Elk Grove Attorney, captioned *City of Elk Grove vs. Euginie Abrera*, Sacramento Superior Court case number 34-2021-20000745, attached hereto as **Exhibit "3"**.

94. Based upon information and belief, there was no summons issued and/or served nor was Plaintiff or his wife ever served with a summons and petition.

95. Per policy, Plaintiff was never named as party the City's Cal. Welf. & Inst. Code § 8102 petition, though four of the firearms were owned and possessed by him.

15

96. The time expired to initiate the petition, which was 30-days from December 27, 2020. See
Cal. Welf. & Inst. Code § 8102.

97. Unbeknownst to Plaintiff, on March 18, 2021, a Felony Complaint was filed by defendant
Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney,
charging Plaintiff for possession of two rifles which did not have so-called "bullet-buttons"
and because of cosmetic features completely unrelated to the actual functioning of the rifle.
Attached hereto as **Plaintiff's Exhibit "4"** is a true and correct copy of the Felony Complaint
filed by Anne Marie Schubert, in her official capacity as County of Sacramento District
Attorney, on March 18, 2021, captioned *People vs. Arnold Abrera*, Sacramento Superior
Court case number 21FE004857.

98. As one commentator describes it, "[m]ere possession of an object that is commonplace and
perfectly legal under federal law and in forty-four states will land you in prison, [will] result
in the loss of your rights including likely the right to vote, and probably [will] cause you
irreparable monetary and reputational damages, as well as your personal liberty. All of this
despite the absence of even a single victim." Mark W. Smith, *Assault Weapon Bans:
Unconstitutional Laws for Made-up Category of Firearms*, 43 Harvard J. Law & Public
Policy 357, 360 (2020).

99. Added to this list of consequences is the forfeiture of the firearm itself. *See* Cal. Pen. Code §
30800(d).

100.    The Second Amendment protects modern weapons. *Caetano v. Massachusetts*, 577 U.S.
411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055
(June 23, 2022).

101.    The firearms banned by California Penal Code § 30515 and deemed "assault weapons" are
modern weapons and have been legal to own by citizens since first invented in 1957, more

16

than 60 years ago, and are the typical type of arms protected by the Second Amendment.

102.   They are principally AR-15 type rifles, pistols, and shotguns.

103.   The first time Plaintiff even became aware that a felony complaint was filed for possession of two AR-15s (legally purchased) was when he was detained in August and September of 2021 by immigration while taking an international flight in San Francisco.

104.   He was provided with an arraignment date of March 9, 2022, by San Francisco Police Department.

105.   Plaintiff was now forced to defend a criminal action while a civil action was also pending, which would mean to defend the civil action, he would have to waive his right under the Fifth Amendment, to remain silent.

106.   Plaintiff had to hire an attorney to defend against the felony complaint – the stakes could not be any higher.

107.   On April 13, 2021, Plaintiff's attorney filed a motion to dismiss the Felony Complaint as legally baseless, and the Court granted Plaintiff's motion.  Attached hereto as **Plaintiff's Exhibit "5"** is a true and correct copy of the Court's Docket for the Felony Complaint filed by Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney, on March 18, 2021, captioned *People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857.

108.   The government refused to return all of Plaintiff's firearms, even after the court dismissed the case.

109.   Even though the threat (i.e., Plaintiff's wife) was removed from the home, Plaintiff's firearms were confiscated and removed from his safe and house without a warrant or any process.

110.   Plaintiff filed a motion to dismiss the criminal complaint asserting his Second

Amendment rights had been violated, and the felony complaint was dismissed on April 13, 2022, with the District Attorney stating that the firearms would not be returned. Unbeknownst to Plaintiff, a civil forfeiture action was commenced against his wife regarding Plaintiff's personal firearms; around the same time a felony complaint was filed, neither of which were served. See **Exhibits "2" through "4."**

111.   On December 27, 2020, when Plaintiff and his wife were already removed from their home and handcuffed, a search was conducted which was not incident to arrest, and that the areas of the home searched were not within any exception. The search without a warrant, which turned up the two AR-15s in the safe, was fruit of the poisonous tree.

112.   There was no probable cause to arrest Plaintiff for possession of two AR-15s because his actions were not serious enough to support a 5150 hold against Plaintiff.

113.   Under the plain language of Welf. & Inst. Code, § 8102, if someone were never detained or apprehended for examination of his or her mental condition, a law enforcement agency would have no power to bring a petition under § 8102, subd. (c), as that provision explicitly contemplates such petitions within 30 days of the release of such persons.

114.   Defendant City of Elk Grove and its city attorney and police department filed a petition against Plaintiff's wife under Welf. & Inst. Code, § 8102, for authorization to dispose of firearms that Plaintiff owned in a locked safe and were confiscated from Plaintiff after City police officer) detained Plaintiff's wife for psychiatric evaluation under a Welf. & Inst. Code, § 5150 involuntary hold.

115.   Since there was no 5150 hold on Plaintiff, Section 8102 was not triggered as related to Plaintiff's firearms.

116.   Plaintiff was never detained or arrested for examination pursuant to Cal. Welf. & Inst. Code § 5150.

117.    Plaintiff was arrested on a felony complaint relating to two of the "legal" firearms he

owned even though the Second Amendment squarely protected Plaintiff's right to keep and

bear arms "typically possessed by law-abiding citizens for lawful purposes." *District of

Columbia v. Heller*, 554 U.S. 570, 624-25 (2008); *Caetano v. Massachusetts*, 577 U.S. 411

(2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23,

2022).

118.    Defendants plainly infringed on that right by prosecuting Plaintiff for possessing two

commonly owned rifles that Defendants pejoratively label "assault weapons"—a non-

technical, political term of ever-changing definition and scope with no connection to the

public safety interests that the law purports to serve.[2]

119.    As the Supreme Court has noted, regulatory schemes can be put toward abusive ends, and

therefore are presumptively unconstitutional unless "… the government can affirmatively

prove that its firearms regulation is part of the historical tradition that delimits the outer

bounds of the right to keep and bear arms." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-

843, page 23.

120.    None of the laws challenged in this action are part of any "historical tradition" of a state

monopoly using its police powers to usurp the rights of its citizens and are *per se*

unconstitutional. See *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle &

Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

**UNCONSTITUTIONAL STATUTES AS-WRITTEN AND AS-APPLIED**

121.    Desiring to acquire, possess, use, and/or transfer constitutionally protected firearms for

---

[2] " 'Prior to 1989, the term "assault weapon" did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists to expand the category of "assault rifles" so as to allow an attack on as many additional firearms as possible on the basis of undefined "evil" appearance.' " *Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting) (quoting Bruce H. Kobayashi & Joseph E. Olson, *In Re 101 California Street: A Legal and Economic Analysis of Strict Liability for the Manufacture and Sale of "Assault Weapons"*, 8 Stan. L. & Pol'y Rev. 41, 43 (1997))

lawful purposes including self-defense, but justifiably fearing prosecution if he does, Plaintiff respectfully requests this Court: (1) declare that following California Penal Code sections infringe upon Plaintiff's constitutional rights; and (2) permanently enjoin Defendants from enforcing each of these sections to the extent they prevent law-abiding Californians, like Plaintiff, from acquiring, possessing, using or transferring constitutionally protected arms and the purchasing of parts and ammunition.

122.    **FIREARM SEIZURES:** Cal. Welf. & Inst. Code, §§ 5150 and 5151, permit a person to be taken into custody and detained for 72 hours when there is probable cause he or she is a danger to himself or others because of a mental disorder.

123.    Two firearm statutes come into play when a person is detained under Cal. Welf. & Inst. Code, § 5150, as a danger to himself or others. Cal. Welf. & Inst. Code, § 8103, will prohibit the person's possession of firearms for a five-year period. Welf. & Inst. Code, § 8102, authorizes confiscation of any weapons the person already possesses.

124.    Plaintiff not only challenges the facial validity of the above statutes, he also challenges the statutes as applied to him, and others similarly situated.

125.    The 5150 seizure statute is facially flawed because it does not mandate release of the weapon when a person is released from custody under section 5150.

126.    Section 8102 was applied to Plaintiff even though he was not detained under 5150.

127.    Section 8102 was applied to Plaintiff even after his wife was detained after the presumed danger had passed.

128.    The City Attorney initiated a civil proceeding under Cal. Welf. & Inst. Code § 8102, which reads in relevant part:

> § 8102. Confiscation of firearm in possession of mental patient;
> Procedure for return of firearm; Hearing; Destroying of firearm

20

(a) Whenever <u>a person</u>, who has been <u>detained or apprehended for examination</u> of his or her mental condition or who is a person described in Section 8100 or 8103, is found to own, have in his or her <u>possession</u> or under his or her <u>control</u>, any firearm whatsoever, or any other deadly weapon, the firearm or other deadly weapon <u>shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon</u>.

"Deadly weapon," as used in this section, has the meaning prescribed by Section 8100.

(b)

(1) Upon confiscation of any firearm or other deadly weapon from a <u>person who has been detained or apprehended for examination</u> of his or her mental condition, the peace officer or law enforcement agency shall issue a receipt describing the deadly weapon or any firearm and listing any serial number or other identification on the firearm and shall notify the person of the procedure for the return, sale, transfer, or destruction of any firearm or other deadly weapon which has been confiscated. A peace officer or law enforcement agency that provides the receipt and notification described in Section 33800 of the Penal Code satisfies the receipt and notice requirements.

(2) If the person is released, the professional person in charge of the facility, or his or her designee, shall notify the person of the procedure for the return of any firearm or other deadly weapon which may have been confiscated.

(3) Health facility personnel shall notify the confiscating law enforcement agency upon release of the detained person, and shall make a notation to the effect that the facility provided the required notice to the person regarding the procedure to obtain return of any confiscated firearm.

(4) For purposes of this subdivision, the <u>procedure for the return, sale, or transfer of confiscated firearms</u> includes the procedures described in this section and the procedures described in Chapter 2 (commencing with Section 33850) of Division 11 of Title 4 of Part 6 of the Penal Code.

(5) In lieu of destroying a firearm that has been confiscated pursuant to this section <u>that is a nuisance</u>, unclaimed, abandoned, or otherwise subject to destruction, a law enforcement agency may retain or transfer the firearm as provided in Section 34005 of the Penal Code.

(c) Upon the release of a person as described in subdivision (b), the confiscating law enforcement agency shall have 30 days to initiate a petition in the superior court for a hearing to determine whether the return of a firearm or other deadly weapon would be likely to result in endangering the person or others, and to send a notice advising the person of his or her right to a hearing on this issue. The law enforcement agency may make an ex parte application stating good cause for an order extending the time to file a petition. Including any extension of time granted in response to an ex parte request, a petition

shall be filed within 60 days of the release of the person from a health facility.

(d) If the law enforcement agency does not initiate proceedings within the 30-day period, or the period of time authorized by the court in an ex parte order issued pursuant to subdivision (c), it shall make the weapon available for return upon compliance with all applicable requirements, including the requirements specified in Chapter 2 (commencing with Section 33850) of Division 11 of Title 4 of Part 6 of the Penal Code.

(e) The law enforcement agency shall inform the person that he or she has 30 days to respond to the court clerk to confirm his or her desire for a hearing, and that the failure to respond will result in a default order forfeiting the confiscated firearm or weapon. For a confiscated firearm, the period of forfeiture is 180 days pursuant to Section 33875 of the Penal Code, unless the person contacts the law enforcement agency to facilitate the sale or transfer of the firearm to a licensed dealer pursuant to Section 33870 of the Penal Code. For the purpose of this subdivision, the person's last known address shall be the address provided to the law enforcement officer by the person at the time of the person's detention or apprehension.

(f) If the person responds and requests a hearing, the court clerk shall set a hearing, no later than 30 days from receipt of the request. The court clerk shall notify the person and the district attorney of the date, time, and place of the hearing.

(g) If the person does not respond within 30 days of the notice, the law enforcement agency may file a petition for order of default, allowing the law enforcement agency to destroy the firearm in 180 days from the date the court enters default unless the person contacts the law enforcement agency to facilitate the sale or transfer of the firearm to a licensed dealer pursuant to Section 33870 of the Penal Code.

(h) If, after a hearing, the court determines that the return of the firearm or other deadly weapon would likely endanger the person or others, the law enforcement agency may destroy the firearm within 180 days from the date that the court makes that determination, unless the person contacts the law enforcement agency to facilitate the sale or transfer of the firearm to a licensed dealer pursuant to Section 33870 of the Penal Code.

129.     The statute is unconstitutional as it does not require the court to measure the risk of danger as of the date Plaintiff's wife was released from the section 5150 detention, nor does the 8102 assess the impact on third-parties who were not subject to a 5150 hold.

130.     Section 8102 has no history or tradition for the suspension of Plaintiff's rights as applied

here in this case.

131.    No other constitutional right can be suspended or revoked based upon the conduct of another.

132.    The statute provides no mechanism for a judge to make an assessment on the impact the statute has on Plaintiff or others similarly situated who owned and possessed the firearms confiscated, and thus renders the statute unconstitutional as-written and as-applied to Plaintiff.

133.    Under section 8102, the third-party gun owner has no opportunity to present evidence of the gun owner's rights to the firearms confiscated as-written and as-applied.

134.    Section 8102 is overinclusive as-written and as-applied because its reach is not limited to weapons in the immediate physical proximity and control of the person detained but extends to those "owned" by a person other that the section 5150 detainee.

135.    The section 8102 fails to pass muster as-written and as-applied as the guns confiscated were in a locked safe, which the combination could easily be changed by Plaintiff to ensure his wife did not ever have access to the firearms.

136.    Section 8102 does not prohibit Plaintiff from acquiring new guns at-will, and therefore there is no logical reason why his guns were seized and subject to destruction. Therefore, the statute as-applied is focused on confiscation and not possession.

137.    Section 8102 is unconstitutionally vague in that the standard allowing authorities to retain confiscated weapons is extremely subjective.

138.    Section 8103 requires the person detained and assessed under section 5150 be "admitted to a designated facility . . . because that person is a danger to himself, herself or others . . ." in order to support forfeiture of the confiscated firearms, but this section was applied to Plaintiff who was not detained and assessed under section 5150.

139.    This statute violates the Second Amendment as-written and as-applied.

140.    After a person's firearms are confiscated and destroyed, they cannot be replaced because another set of laws kicks in which prevents the repurchasing of the arms destroyed; Plaintiff challenges the net of interlocking statutes that fall under California's complex definitions of the ignominious "assault weapon", "unsafe handgun" and "safe-gun list".

141.    **SEMI-AUTOMATIC RIFLE BAN:** California continues to restrict semi-automatic rifles under Cal. Pen. Code §§ 30600(a), 30605(a), 30515(a), 30510(a), 3051 5(a)(1)(A-C), 3051 5(a)(1)(E-F), 30515(a)(3), 30520, 30600, 30605, 7 30925, 30945, and California Code of Regulations, title 11, section 5499, prohibiting "assault weapons" or, alternatively, to the extent they prohibit the acquisition, possession, or transfer of any semi-automatic, centerfire rifle with a detachable magazine having a "pistol grip," "flash suppressor," "thumbhole stock," or "telescoping" stock, or any semi-automatic, centerfire rifle that is over 26 inches in overall length.

142.    California Penal Code § 30600(a) states, "Any person who, within this state, manufactures or causes to be manufactured, distributes, transports, or imports into the state, **keeps for sale, or offers or exposes for sale**, or who gives or lends any assault weapon . . . is guilty of a felony, and upon conviction shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for four, six, or eight years."

143.    Likewise, California Penal Code § 30605(a) states, "Any person who, within this state, **possesses any assault weapon** . . . shall be punished by imprisonment in a county jail for a period not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170."

144.    Penal Code § 30800. Possession of assault weapon or .50 BMG rifle as nuisance

            (a)

            (1) Except as provided in Article 2 (commencing with Section

30600), <u>possession of any assault weapon</u> or of any .50 BMG rifle in violation of this chapter <u>is a public nuisance</u>, solely for purposes of this section and subdivision (c) of Section 18005.

(2) The Attorney General, <u>any district attorney</u>, or <u>any city attorney</u>, <u>may</u>, **in lieu of criminal prosecution**, bring a civil action or reach a civil compromise in any superior court to enjoin the manufacture of, importation of, keeping for sale of, offering or exposing for sale, giving, lending, or <u>possession of an assault weapon</u> or .50 BMG rifle that is a public nuisance.

(b)

(1) Upon motion of the Attorney General, district attorney, or city attorney, a superior court may impose a civil fine not to exceed five hundred dollars ($500) for the manufacture of, importation of, keeping for sale of, offering or exposing for sale, giving, or lending of an assault weapon or .50 BMG rifle that is a public nuisance pursuant to subdivision (a) and up to two hundred dollars ($200) for each additional assault weapon or .50 BMG that is a public nuisance pursuant to subdivision (a).

(2) Upon motion of the Attorney General, <u>district attorney</u>, or <u>city attorney</u>, a superior court <u>may impose a civil fine</u> not to exceed three hundred dollars ($300) for the <u>possession of an assault weapon</u> or .50 BMG rifle that is a public nuisance pursuant to subdivision (a) and up to one hundred dollars ($100) for each additional assault weapon or .50 BMG rifle possessed, that is a public nuisance pursuant to subdivision (a).

(c) Any assault weapon or .50 BMG rifle deemed a public nuisance under subdivision (a) <u>shall be destroyed</u> in a manner so that it may no longer be used, except upon a finding by a court, or a declaration from the Department of Justice, <u>district attorney</u>, or <u>city attorney</u> stating that the preservation of the assault weapon or .50 BMG rifle is <u>in the interest of justice</u>.

(d) <u>Upon conviction</u> of any misdemeanor or felony involving the <u>illegal possession</u> or use of an assault weapon, <u>the assault weapon shall be deemed a public nuisance</u> and disposed of pursuant to subdivision (c) of Section 18005.

145.    The statutes specifically criminalize possession of a class of semi-automatic firearms which impinge on a citizen's constitutional right to acquire these firearms for self-defense. *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

146.    The statutes are *de facto* confiscation statutes used to deprive all law-abiding citizens of

25

possession and ownership of protected arms. *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

147.    California Penal Code §18010 states that "The Attorney General, a district attorney, or a city attorney may bring an action to enjoin the manufacture of, importation of, keeping for sale of, offering or exposing for sale, giving, lending, or possession of, any item that constitutes a nuisance under any of the following provisions: *** (12) Section 24390, relating to a camouflaging firearm container. *** (19) Section 32390, relating to a large-capacity magazine. (d) (1) Commencing July 1, 2022, the Attorney General, a district attorney, or a city attorney may bring an action to enjoin the importation into the state or sale of **any firearm precursor part** … (2) Commencing July 1, 2022, firearm precursor parts … are a nuisance and are subject to confiscation and destruction pursuant to Section 18005."

148.    On June 30, 2022, Governor Gavin Newsom signed Assembly Bill (AB) 1621 (stats. 2022, ch. 76). Among other things, AB 1621 replaces the current Penal Code section 30400. The new Penal Code section 30400, subdivision (a) takes effect immediately and states: "it shall be unlawful for a person to purchase, sell, offer to sell, or transfer ownership of any firearm precursor part in this state that is not a federally regulated firearm precursor part." In other words, **no firearm precursor parts may be legally purchased**, sold, offered for sale, or transferred unless such firearm precursor parts meet the definition of a "federally regulated firearm precursor part." However, the federal rule defining a "federally regulated firearm precursor part" (Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives Final Rule 2021R-05F, Definition of "Frame or Receiver" and Identification of Firearms) does not take effect until August 24, 2022.

149.    If Plaintiff's AR-15s are not returned, then plaintiff intends to purchase firearm "precursor" parts to build new AR-15s, but cannot do so due to fear of prosecution.

150.   Plaintiff's two AR-15s hold 30 round magazines, and Plaintiff has a concrete plan to purchase or acquire magazines holding more than ten rounds and he refuses to put a bullet button on his two AR-15s which were seized, and he has no intent to register any firearm other than what is required under federal law or a state law which will not morph into confiscation.

151.   This statute violates the Second Amendment as-written and as-applied per *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

152.   This acquisition right is protected as an "ancillary right" necessary to the realization of the core right to possess a firearm for self-defense and for militia use. *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

153.   **"LARGE-CAPACITY MAGAZINE" BAN:** Cal. Pen. Code § 16740 provides that a "large-capacity magazine" means any ammunition feeding device with the capacity to accept more than 10 rounds.

154.   Cal. Pen. Code § 32310 states that any person in this state who possesses any large-capacity magazine, regardless of the date the magazine was acquired, is guilty of an infraction or is guilty of a misdemeanor. This law is also applied retroactively.

155.   Plaintiff's two AR-15s hold 30 round magazines, and Plaintiff has a concrete plan to purchase or acquire magazines holding more than ten rounds and he refuses to put a bullet button on his two AR-15s which were seized.

156.   This statute violates the Second Amendment as-written and as-applied. *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

27

157.   This acquisition right is protected as an "ancillary right" necessary to the realization of the core right to possess a firearm for self-defense and militia use. *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

158.   **HANDGUN BAN, UNSAFE HANDGUN LIST AND MICROSTAMPING:**

California's statutory and regulatory scheme pursuant to Cal. Pen. Code § 31910. Cal. Penal Code §§ 16380, 16900, 31900 et seq., 31910, 32000, 32015, 32030, and 11 Cal. Code Regs. § 4070(a) prohibits the sale of semi-automatic pistols unless they have certain features and are on a roster of approved handguns for sale. This enforcement scheme results in ban of semiautomatic handguns by attrition. Active and retiring peace officers, of course, are exempted from this ban.

159.   This acquisition right is protected as an "ancillary right" necessary to the realization of the core right to possess a firearm for self-defense and militia use. *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

160.   This statute violates the Second Amendment as-written and as-applied.

161.   **AMMUNITION BAN:** Cal. Penal Code § 30312(a)-(b), which regulates the purchase of all firearm ammunition. Ammunition sales, deliveries, or transfers in California must now be conducted by a state-licensed ammunition vendor in a face-to-face transaction. A California resident who seeks to buy firearm ammunition must first pay for and pass an electronic background check each time he or she wishes to make a purchase. And a resident may not purchase from vendors outside of California, whether in person or through an internet transaction, unless the ammunition is delivered directly to a California-licensed ammunition vendor, whereupon the resident must then pay for and pass the background check in a face-to-

face transaction. *Id.*; § 30314.

162.    Proof of citizenship is also required, though proof of citizenship is not required to vote, which itself constitutes a violation of the Equal Protection Clause.

163.    Penal Code Section § 30352(c) requires an ammunition vendor to require "bona fide evidence of identity" prior to delivering ammunition to a person authorized to purchase. Cal. Penal Code § 16300, in turn, defines "bona fide evidence of identity" as including a motor vehicle operator's license and a state identification card. Section 16300 does not distinguish between standard DLs and IDs and AB 60 DLs or IDs.

164.    As California has declared itself a "sanctuary" state, it is not immediately clear what state or local officials would or could do if they did discover an alien unlawfully present attempting to acquire ammunition.

165.    There is nowhere in California one may go to buy ammunition for defense of self, defense of family, defense of property, use in a militia, hunting, or recreational shooting, in clear violation of the Second Amendment.

166.    This acquisition right is protected as an "ancillary right" necessary to the realization of the core right to possess a firearm for self-defense and militia use. *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

167.    **APPLICATION FOR RETURN OF FIREARMS:** Cal. Penal Code §§  33850, 33855, 33860, 33880 provide that any person who claims title to any firearm, ammunition feeding device, or ammunition that is in the custody government shall pay a fee and associated costs for seizure, impoundment and storage, while also submitting an application for return of the arms, even if the government makes a mistake in seizing the arms or a person is found not guilty.

29

168.    Plaintiff refuses to pay any fee for the return of arms illegally seized nor will he waive his

right under the Fifth Amendment.

169.    The civil case to destroy Plaintiff's firearms is considered a "criminal case" for the

purposes of the Fifth Amendment. In *Boyd v. United States*, 116 U.S. 616 (1886), the U.S.

Supreme Court stated that "A proceeding to forfeit a person's goods for an offence against the

laws, though civil in form, and whether in rem or in persona, is a "criminal case" within the

meaning of that part of the Fifth Amendment which declares that no person "shall be

compelled, in any criminal case, to be a witness against himself."

170.    This statute violates the Second Amendment as-written and as-applied. *Caetano v.

Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843,

2022 U.S. LEXIS 3055 (June 23, 2022).

## **CUSTOM, POLICY AND/OR PRACTICE IN RELATION TO AS-APPLIED CHALLENGE**

171.    Beyond having a direct policy enforcing clearly unconstitutional laws subject to this

action, defendants have expanded their policies violating the Second Amendment.

172.    It is the United States Supreme Court's responsibility to say what the Constitution statute

means, and once the Court has spoken, it is the duty of other courts to respect that

understanding of the governing rule of law and interpretation. (e.g. *Nitro-Lift Technologies,

L.L.C. v. Howard*, 568 U. S. 17, 21 (2012) (per curiam)) And for good reason. As Justice

Story explained 200 years ago, if states were permitted to disregard the Supreme Court's

rulings on the Constitution, "the laws, the treaties, and the constitution of the United States

would be different in different states, and might, perhaps, never have precisely the same

construction, obligation, or efficacy, in any two states. The public mischiefs that would attend

such a state of things would be truly deplorable." *Martin v. Hunter's Lessee*, 14 U.S. 304, 1

Wheat. 304, 348, 4 L. Ed. 97 (1816).

173.   Newsom has complete disdain for the Second Amendment and his policy decisions reflect this disdain in that he has a single goal of abolishing the Second Amendment through threat and intimidation, and instilling fear into law abiding gun owners.

174.   Newsom's disdain towards gun ownership was on full display when he issued this tirade on December 11, 2021:

> "I am <u>outraged</u> by yesterday's U.S. Supreme Court decision allowing Texas' ban on most abortion services to remain in place, and largely endorsing Texas's scheme to insulate its law from the fundamental protections of Roe v. Wade. But if states can now shield their laws from review by the federal courts that <u>c</u>ompare **assault weapons** to <u>Swiss Army knives</u>, then California <u>will use that authority</u> to protect people's lives, where Texas used it to put women in harm's way.

> "I have directed my staff to work with the Legislature and the <u>Attorney General</u> on a bill that would <u>create a right of action</u> allowing private citizens to seek injunctive relief, and statutory damages of at least $10,000 per violation plus costs and attorney's fees, against anyone who manufactures, distributes, or sells an assault weapon or ghost gun kit or parts in the State of California. If the most efficient way to <u>keep these devastating weapons</u> off our streets is to add the threat of <u>private lawsuits</u>, we should just do that." [emphasis added]

175.   The Ninth Amendment states: "The enumeration in the Constitution, of certain <u>rights</u>, shall not be construed to deny or disparage others retained by <u>the people</u>." [emphasis added]

176.   Tenth Amendment states: "The <u>powers</u> not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the <u>states</u> respectively, or to the <u>people</u>.

177.   Newsom policies are intended to impede the rights of the people to keep and bear arms, as specifically guaranteed by the Second Amendment (an enumerated "right" of the People), by setting forth a policy which reads: the Second Amendment "begins around <u>well regulated **gun policy**</u> we've completely lost our senses and lost touch with that reality so we're here resolved focused energetically on moving well over a dozen bills forward getting them to my desk where I will enthusiastically be signing bills by the end of next month …" he then dismisses

gun violence being related to mental health and crime and states "what's unique in the United States is this savagery because of the availability ease and access of <u>weapons of war</u> …", thus not only is the policy to eliminate the guns from law abiding citizens through onerous regulation, but that his highest priority policies are focused on complete confiscating and banning arms that are the most useful for militia purposes.

178.     Newsom rewrites the Second Amendment to read: "<u>well regulated **gun policy**</u>", changing the text which actually reads as "well regulated militia", and militia being the People carrying arms that can be used for military service.

179.     Newsom's "<u>well regulated **gun policy**</u>" "… 'that only those arms in existence in the 18th century are protected by the Second Amendment' not merely wrong, but 'bordering on the frivolous.' 554 U.S., at 582, 128 S. Ct. 2783, 171 L. Ed. 2d 637. Instead, we held that '<u>the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.</u>" *Ibid.* (emphasis added). It is hard to imagine language speaking more directly to the point." The Second Amendment accordingly guarantees the right to carry weapons "typically possessed by law-abiding citizens for lawful purposes." *Caetano v. Massachusetts*, 577 U.S. 411 (2016).

180.     The arms banned in California and subject to this action "… are no more exempt from the Second Amendment's protections, simply because they were unknown to the First Congress, than electronic communications are exempt from the First Amendment, or electronic imaging devices are exempt from the Fourth Amendment." *Caetano v. Massachusetts*, 577 U.S. 411 (2016).

181.     "[T]he relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." The modern semi-automatic rifles and pistols with detachable magazines holding more than 10 rounds of ammunition subject to this

action are presumptively protected. *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

182.   "If *Heller* tells us anything, it is that firearms cannot be categorically prohibited just because they are dangerous." *Caetano v. Massachusetts*, 577 U.S. 411 (2016).

183.   "*Miller* and *Heller* recognized that militia members traditionally reported for duty carrying "the sorts of lawful weapons that they possessed at home," and that the Second Amendment therefore protects such weapons as a class, regardless of any particular weapon's suitability for military use." *Caetano v. Massachusetts*, 577 U.S. 411 (2016).

184.   The unsound reasoning of Defendants poses a grave threat to the fundamental right of self-defense and the acquisition right protected as an "ancillary right" necessary to the realization of the core right to possess a firearm for self-defense and militia use. *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

185.   Defendants are unwilling to protect its citizens, and Plaintiff is forced to protect himself and his family.[3]

186.   To make matters worse, Defendants chose to deploy its prosecutorial resources and police powers to prosecute Plaintiff of a criminal offense for merely possessing protected arms.

187.   Defendants' policy is that the fundamental right of self-defense does not apply to law abiding citizens, such as Plaintiff; the safety of all Americans is left to the mercy of state authorities who are more concerned about disarming the people than about keeping them safe.

188.   Like Newsom, Bonta has complete disdain for the Second Amendment and his policy decisions reflect this disdain in that he has a single goal of abolishing the Second Amendment

---

[3] Any fleeting emotional reaction Plaintiff's wife had when Plaintiff's firearms were seized is irrelevant to Plaintiff's fundamental right to keep his arms.

through threat and intimidation, and instilling fear into law abiding gun owners.

189.    Bonta states his policy: "The SCOTUS decision is a setback for safety.  I am grateful that we had a plan in place to protect our current and <u>future legislative gun control efforts</u>.  In the wake of the Texas tragedy and the continued threats of mass shootings, <u>it's a moral imperative that California leads on this issue</u>."

190.    Bonta has made a career of catering to those who believe that the Second Amendment should be abolished by proxy as it is well established that only approximately four states treat the Second Amendment as a second class right.

191.    No other types of property, speech, right to attorney, etc. have ever been singled out the way the Second Amendment has been by defendants.

192.    Like Newsome, Bonta attempts to litigate an expansion of abortion laws in other states, but fights to restrict an enumerated right to keep and bear arms based upon some personal opinions on an issue that is not in dispute in California.

193.    Bonta has made his policy crystal clear in ad blitzes on national television, such as the following during the month of May 2022:





194.    Defendant Anne Marie Schubert, County of Sacramento District Attorney is a career

prosecutor with 31 years of law enforcement experience. She is an elected official who always ran as a Republican and is the official policymaker enforcing unconstitutional gun laws and/or enforcing them in an unconstitutional manner. She is sued in her official capacity only.

195.    As such, she is responsible for formulating, executing, and administering with the county the laws, customs, practices, and policies at issue in this lawsuit. Through prosecutorial powers, the government has enforced the challenged laws, customs, and practices against Plaintiff.

196.    She has endorsed and followed Newsom and Bonta's gun confiscation and enforcement regime going after law abiding gun owners through both the civil and criminal process, including changing her party affiliation from Republican to Independent to more align with Bonta and Newsom and various gun control groups who donated to her political career.

197.    Defendants' custom, policy, or practice to violate the Second Amendment rights of Plaintiff was and is the moving force behind the constitutional violations and that there was deliberate indifference towards Plaintiff's rights, as well as the People's.

198.    Defendants implemented a complex statutory and regulatory scheme to deprive citizens of their fundamental right to keep and bear arms under the guise of "community caretaking" when no other property is seized and destroyed in such a manner, including knives, gasoline, matches, cars, trucks, baseball bats, prescription medications, or any other dangerous implement.

199.    Defendants use the phrase "gun control" as code to ignore the protection afforded by the Second Amendment.

200.    Defendants have a policy to deceive the public by referring to Second Amendment rights as a "loophole", or that somehow the Second Amendment is related to "gun violence", "weapons of war", "assault weapons", and that somehow laws restricting the right to keep and

bear arms is related to "gun safety" or that – which is also used in conjunction with "microstamping" and "safe gun list".

201.   Defendants have a custom, policy, and practice to discourage the People from exercising their Second Amendment rights by implementing a system which chills the free exercise of Second Amendment rights by criminalizing past conduct (i.e., legally purchased guns) through a system of complex classifications guns.

202.   Defendants have a policy to remove guns legally purchased from the People by issuing felony arrest warrants and filing felony complaints with the exclusive purpose, not to do justice, but have the People's guns destroyed and chill their exercise of Second Amendment rights.

203.   Defendants policies regarding the design and features of protected arms actually increase the probability of malfunctions, decrease the accuracy of the arms, add complexity to mechanical functioning of the arms, add additional costs to manufacturing and therefore increase the price of the arms, and actually make the arms less safe to use (e.g. flash hider ban which results in the citizen being blinded by the first shot, so that the subsequent shots are taken with impaired vision; pistol grip ban increase likelihood of less control and accuracy, and thus increasing chance of missed shots; etc.)

204.   Defendants have a policy to chill the free exercise of Second Amendment rights by creating an ever changing classification and definition of prohibited arms and conduct that no reasonable person would understand with the exclusive purpose to frighten citizens with criminal prosecution of ever changing vague gun laws.

205.   Defendants have a policy to chill the free exercise of Second Amendment rights by confiscating guns legally purchased by instituting civil proceedings to destroy guns, knowing they would not be contested by a person who has also been threatened with criminal felony

prosecution.

206.   Defendants have a policy to issue felony arrest warrants and file felony complaints which resulted in Plaintiff's inability to recover, or extreme difficulty in recovering, his property, and protected arms.

207.   Defendants have a custom, policy, or practice or requiring lawful weapons owners to engage in formal litigation to recover their seized property and protected arms.

208.   Defendants have a custom, policy, and practice of instituting parallel proceedings relating to guns, whereas no other type of weapon treated the same way, such as knives, cars, trucks, bats, slungshots, etc.

209.   Defendants have a policy of confiscating and destroying firearms without removing and returning the optics and scopes even though optics and scopes are detachable and can be used on multiple guns, especially when the optics are more than the arm itself.

210.   Defendants have a policy involving deliberate and widespread seizure and destruction of firearms and ammunition so that there are less guns in law abiding citizens hands.

211.   Defendants have a policy to confiscate and destroy guns, regardless as to the reasons for confiscation, by permitting peremptory seizure of property by law enforcement, institution of criminal and civil actions, without a provision for administrative review.

212.   Defendants have a custom, policy, or practice to enforce changes to gun laws retroactively making conduct illegal that was legal when undertaken (i.e. California's sweeping Assault Weapon Control Act, Magazine Ban)

213.   Defendants have a custom, policy, or practice of seizing all the guns in a single household if one person in that house is arrested or detained on a 5150 hold without first obtaining a warrant.

214.   Defendants have a custom, policy, or practice of seizing all the guns of a married couple if

only one spouse is arrested or detained on a 5150 hold without first obtaining a warrant.

215.    Defendants have a custom, policy, or practice of destroying all seized guns under the auspices of community caretaking if only one of the several seized guns is a so-called "assault weapon."

216.    Defendants have a custom, policy, or practice to not return guns confiscated in situations like Plaintiff until there is a court order issued for the return of the guns.

217.    Defendants have a custom, policy, or practice or requiring lawful weapons owners to engage in formal litigation to recover their seized property.

218.    Defendants' unwritten policy of requiring persons whose guns they have seized to obtain an order in state court before they return them violates the Second Amendment as there is no other right which requires such.

219.    Defendants have a policy to always charge possession as a felony to chill the citizen's right to keep and bear arms.

220.    Defendants have a policy to obtain felony convictions to create a class of citizens who would be prevented from re-purchasing any firearm under federal law, even though the conviction is based upon the possession of a firearm which has been legal to purchase since it was invented in the 1950s.

221.    Defendants have a policy of confiscating so-called "assault weapons" for destruction, even though such arms are legal under federal law.

222.    Defendants have a policy of filing felony complaints against anyone who legally purchased a so-called "assault weapon", the purpose of which is to 1) provide a mechanism for destruction, and 2) to use the threat of a felony conviction as a fear tactic so that a citizen will not challenge the confiscation and destruction of any firearm.

223.    Defendants' policy is to use felony charges to force those charged to capitulate to the

destruction of their firearms, and after destroyed, cannot be repurchased because of the interplay of other statutes – thus resulting in a complete deprivation of a constitutional right.

224.     Defendants have a policy of filing felony complaints against anyone who legally purchased a so-called "assault weapon" to chill the free exercise of their Second Amendment rights.

225.     Defendants' policy is to always charge possession of AR15s as a felony to chill the exercise of Second Amendment rights, and to have the arms destroyed as a condition to any plea deal, even though a prosecutor may in lieu of criminal prosecution for mere possession of an assault weapon, institute a civil action for an injunction, fine, and destruction of the firearm as a nuisance. Cal. Pen. Code §30800.

226.     Defendants have a policy to seize firearms from individuals, even though they do not "own" the firearms seized, with the intent to deprive the true owner of possession for the purposes of removing all arms from the public domain.[4]

227.     Defendants have a policy to seize a person's firearms for "safekeeping" without a warrant if they believe that person may be threat to himself or others, even if that person has not been charged with or convicted of a crime, is not in community confinement as a condition of parole, is not mentally incompetent, a drug addict, or a habitual drunkard, or is not an unnaturalized foreign born citizen.

228.     Defendants have a policy, in the name of "gun-control", to disarm the People with a work-around tapestry of laws and policies nullifying the core holdings in *Heller, McDonald*, and *Caetano*, and now *N.Y. State Rifle & Pistol Ass'n v. Bruen,* No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

---

[4] 1.      The word: possess" does not mean "own." See *United States v. Seifuddin*, 820 F.2d 1074 (9th Cir. 1987)(ownership does not necessarily amount to possession); *United States v. Casterline*, 103 F.3d 76, 79 (9th Cir. 1996)

229.   Defendants have a policy to limit the amount of arms owned by seizing arms, as in this case, that were accumulated over time, and to get them back, Plaintiff is forced to pay more money for their return along with attorney fees and court filing fees (e.g. $435 filing fee).

230.   Defendants have a policy to institute felony charges as to anyone who legally purchased an assault weapon, though they have the statutory discretion not to prosecute and not to destroy the gun.

231.   Defendants have a policy to repeal the Second Amendment through state action which avoids a constitutional process that mandates that three-fourths of the States must approve of a repeal of the Second Amendment.

232.   When it comes to "community caretaking" gun confiscation, the only goal is to confiscate guns, and not to keep dangerous people from committing atrocities.

233.   California is not confiscating knives, prescription medicine, cars, or propane tanks from individuals who have their firearms seized under the guise of "community caretaking."

234.   California's gun-control policy has not only gutted the Second Amendment, but is now gutting the Fourth Amendment, Fifth Amendment, and Fourteenth Amendment – all in the name of "gun-control."

235.   Defendants' "community caretaking" law and aggressive enforcement policy exception to the Second, Fourth, Fifth and Fourteenth Amendment means the executive branch is making *ad hoc* decision to abrogate someone's constitutional rights, such as occurred in this case when all of Plaintiff's firearms were seized and destroyed all because his wife was placed on a 5150 hold.

236.   On the facts of this case, it means law enforcement officers, with no oversight from the legislature or judiciary, are empowered, on their own initiative, to deprive a law-abiding citizen of the means of exercising the Second Amendment in their home.

237.    The community caretaking exception is a trojan horse abrogation of the Fourth Amendment, designed to undermine the Second Amendment at the retail level of governance.

238.    It is a wholesale shift in constitutional power that sanctions a lone law enforcement officer deciding, on a case-by-case basis, whether a citizen exercising a fundamental right is consistent with public safety.

239.    Per policy and state law, Defendants ratified a warrantless seizure of firearms from a gun safe, where the supposed danger had passed (i.e. the wife was transported to a medical facility for 72-hour observation) and there was no urgency precluding officers from obtaining a warrant.

240.    The law was well settled at the time of seizure. The so-called "community caretaking" exception to the Fourth Amendment's warrant requirement was limited to vehicle searches and otherwise violated the Fourth Amendment when applied to a residential search absent an emergency.

241.    In the name of "gun-control", each Defendant worked in lockstep creating both a written and unwritten policy, custom and practice to deprive law abiding Americans of the arms they legally possess by way of the harmonious use of administrative and civil forfeiture laws and the criminal court system.

242.    At the same time, Defendants refuse to confiscate law enforcement officers' arms under same or similar circumstances, and have created exemptions and carve-outs for them.

243.    Defendants have a routine policy and custom to confiscate and destroy firearms which are legally owned through (1) an express  policy, regulation and law;  (2)  through  the  decisions of  a  persons  with  final  policymaking  authority; (3) through omissions that "manifest[s] deliberate  indifference  to  the  rights  of  citizens; and (4) through  a  practice  that  is  so "persistent  and  widespread"  as  to  constitute  a  "custom or usage with the force of law."

41

244.    Defendants have made their collective careers pushing for more government control over the people of the State of California, and depriving them of their fundamental constitutional rights, privileges, and immunities, especially those that the Framers of the Fourteenth Amendment sought to protect the most.

245.    When they seized Plaintiff's property, Defendants set in motion a series of events that they knew or should have known would result in Plaintiff's inability to recover, or extreme difficulty in recovering, his property.

246.    By seizing Plaintiff's property without notice, refusing to return it to him, and refusing to allow him a meaningful opportunity to be heard on the matter, Defendants have deprived Plaintiff of his property without due process of law.

247.    By setting in motion a series of events that Defendants knew or should have known would result in inability or extreme difficulty in recovering Plaintiff's property, Defendants deprived Plaintiff of his property without due process of law.

248.    By refusing to return Plaintiff's guns to him, and destroy them, Defendants have infringed on Plaintiff's right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution and incorporated to the States by the Fourteenth Amendment.

**DEFENDANT SCHUBERT'S POLICIES IN PARTICULAR**

249.    Defendant Schubert has a policy of "targeting" guns in the Sacramento region, even if legally owned – the policy being using the criminal courts to have arms seized and destroyed, even though she knows the guns are completely legal to own under federal law and that the statutes she moves under are unconstitutional *per se*.

250.    "Schubert said the DA's office works to be proactive on issues such as **gun control**." Schubert said, "gun crimes should be heavily prosecuted." [as compared to any other crime like child pornography, possession of concealed dirks or daggers, or knives.]

42

251.    "To me, the issue of **gun control** is a two-part factor," she said. "One is, 'What are we doing to prevent crime on the front end?' (The other is,) 'What are we doing (after) somebody does commit a crime, in terms of prosecution on the other end?'"

252.    Confiscating lawfully-owned guns is a policy of Defendant Schubert, as well as the destruction of such arms as the term of any plea agreement or motion to dismiss.

**DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF**

253.    Even though defendants know that the three-fourths of the States requirement was created to be quite onerous and to protect against majority rule, California's policy argument that the "majority of Californians support assault weapon bans" is *per se* unconstitutional because the Bill of Rights can only be changed through amendment and not through a work around tapestry of laws and policies.

254.    California's laws and regulations and defendants' policies and practices have a single goal, which is to repeal the Second Amendment without the approval of three-fourths of the States.

255.    Each law, regulation, custom, policy and/or practice identified in this action by each defendant was undertaken knowing that each law, regulation, custom, policy and/or practice was unconstitutional.

256.    Each defendant enforced unconstitutional laws, and in fact, relied upon unconstitutional laws to implement ancillary laws, regulations, customs, policies and/or practices to interfere with enumerated constitutional rights as though the Constitution does not apply.

257.    Defendants' policy and/or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity are responsible for the constitutional deprivations stated herein under § 1983.

43

258.    The Second Amendment violation is based upon the implementation and execution of a policy and custom which was and is officially adopted by defendants' law enforcement officers and attorneys.

259.    Plaintiff has been damaged economically, emotionally, and been deprived of his rights under color of law.

260.    The policy and customs were the cause in fact of the deprivation of rights inflicted.

261.    All defendants were "final policymakers" and each having final authority to establish policy with respect to the confiscation and banning of firearms and magazines in common use.

262.    Not only is Plaintiff seeking damages for the loss of property and his rights; Plaintiff is also seeking to enjoin the State of California from enforcing the tapestry of firearm laws in general, and the specific code sections identified herein in particular, which interfere with the fundamental right to keep and bear arms as currently regulated under federal law and the Supreme Court's rulings.

263.    There is an actual and present controversy between the parties. Plaintiff contends that firearm regulatory scheme in California which applies to him, and others similarly situated, which also exceeds federal law, infringes on Plaintiff's right to keep and bear arms under the Second and Fourteenth Amendments to the United States Constitution, by seizing and destroying his firearms while also pursuing criminal allegations against him; and generally prohibiting commonly possessed semi-automatic rifles and handguns with detachable magazines and ammunition feeding devices that it deems "large-capacity magazines."

264.    In addition, the safe-gun list ban and ammunition ban is also *per se* unconstitutional.

265.    Plaintiff also asserts that the semi-automatic gun ban, and "large-capacity magazine" ban violates the Takings Clause by requiring owners who lawfully purchased "large-capacity

magazines" and semi-automatic rifles with detachable magazines to surrender physical possession of their property to the government rather than keeping it in their possession, and as to rifles, modify the rifle from its factory condition with a so-called "bullet button."

266.    Plaintiff asserts that the bans violate the Due Process Clause by banning lawfully acquired magazines, guns, and ammunition based on particular features or functions (e.g. capacity to accept more than 10 rounds).

267.    Plaintiff is seeking the following equitable and declaratory relief:

a. To purchase and travel through California with off-roster handguns and rifles, which are legal under federal law.

b. To possess and purchase and travel through California with standard size handgun and rifle magazines which most exceed 10 rounds,

c. To travel interstate with magazines which contain more than 10 rounds of ammunition, and travel through California.

Plaintiff is presently and continuously injured by Defendants' and violation of Plaintiff's rights under the Second Amendment, the Takings Clause, and the Due Process Clause by precluding the acquisition, possession, and use of firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide.

268.    If not enjoined by this Court, Defendants will continue to enforce laws in derogation of Plaintiff's constitutional rights.

269.    Plaintiff has no plain, speedy, and adequate remedy at law.

270.    Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to California's ongoing enforcement of the laws.

271.    Accordingly, there exists no reason to deny Plaintiff possession of his lawfully obtained

weapons.

272.    Plaintiff is seeking to enjoin California from violating the Second Amendment in

perpetuity and ignoring Supreme Court precedents.

273.    Plaintiff is seeking both retroactive and prospective relief.

274.    Plaintiff is in the alternative, seeking equitable relief for California laws to be limited to

that which is already regulated under federal law.

275.    Because Plaintiff's arms were seized and destroyed, and now need replacement, Plaintiff

further seeks to enjoin Defendants from enforcing current firearm statutes which infringe

upon his ability to (a) purchase off-roster handguns, which are legal under federal law; (b)

possess and purchase standard size handgun and rifle magazines which most exceed 10

rounds. (c) travel interstate with magazines which contain more than 10 rounds of

ammunition. (d) purchase semi-automatic firearms with detachable magazines which are

permitted under federal law, along with all firearm accoutrements as permitted by federal law,

and (e) purchase ammunition and gun parts online.

276.    Defendants' actions are capable of repetition, yet evade review, because, on information

and belief, they have a practice of returning seized firearms when the owner files suit and

resists making plea deals.

### FIRST CLAIM FOR RELIEF
**UNCONSTITUTIONALITY (as-written and as-applied)**
**Violation of the Second Amendment Right to Keep and Bear Arms**
**[Right to Keep and Bear Arms]**

277.    Plaintiffs incorporate the above allegations as if set forth fully herein.

278.    The Second Amendment squarely protects Plaintiff's right to keep and bear arms

"typically possessed by law-abiding citizens for lawful purposes." *District of Columbia v.*

*Heller*, 554 U.S. 570, 624-25 (2008).

279.    California infringes that right by completely barring Plaintiffs from acquiring,

transferring, or possessing commonly owned rifles, and that it pejoratively labels "assault

weapons"—a non-technical, political term of ever-changing definition and scope with no

connection to the public safety interests that the law purports to serve.

280.    The laws, regulations, and policies subject to this action are specifically designed to

nullify the Second Amendment, and false claims of public safety is a pretext for further

handcuffing Second Amendment rights.

281.    The laws, regulations, and policies subject to this action have an incredibly chilling effect

on law-abiding gun owners.

282.    The laws, regulations, and policies subject to this action place an onerous and inescapable

burden on citizens.

283.    Defendants have chipped away at the Californians right to bear arms and their

Constitutional rights have become meaningless since defendants continue to obliterate them

by enacting incrementally more burdensome restrictions and continue to defy the holdings in

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) and *N.Y. State Rifle & Pistol Ass'n v. Bruen*,

No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

284.

285.    Further, California plainly infringes that right by completely barring Plaintiff from

acquiring, transferring, or possessing commonly owned handguns and that it pejoratively

labels "unsafe handguns"—a non-technical, political term of ever-changing definition and

scope with no connection to the public safety interests that the law purports to serve.

286.    This case is a classic example of the intended consequence of choreographed legal

juggernaut of statutes, ordinances, policies, and enforcement actions with a single underlying

policy – seizing and destroying guns from law abiding citizens and continuously impeding the

47

People's right to keep and bear arms.

287.    Plaintiff challenges the net of interlocking statutes which impose parallel criminal and civil actions against the liberties of Plaintiff and the People, such as the restrictions on firearms that fall under California's complex definition of the ignominious "assault weapon" [5], "unsafe handguns", "ammunition ban" and "large capacity magazines", as well as a *ex post facto* laws.

288.    In this case, mere possession of an object that is commonplace and perfectly legal under federal law and in forty-four states resulted in 1) a felony complaint, 2) an unserved civil complaint pertaining to Plaintiff's guns in an action he was not even a named party, 3) detainment at the airport on a watch list, 4) attorney fees defending the felony complaint, and 5) the destruction of all his guns, not just the two AR-15s.

289.    If the felony complaint had not been dismissed on a motion, and Plaintiff had been convicted, he would have lost his rights including the right to vote and own guns, and would have caused irreparable monetary and reputational damages, as well as Plaintiff's personal liberty. All of this despite the absence of even a single victim.

290.    On December 27, 2020, all of Plaintiff 's firearms were seized even though Plaintiff committed no crime.  Defendants use "public safety" and "community caretaking" as a pretext for gun confiscation. An unserved felony complaint was filed in March of 2021. An unserved civil action was initiated for destruction of all of Plaintiff's firearms, and he was not even named in that civil action.

291.    It is Defendants policy to not return guns confiscated unless there is a court order issued

---

[5] " 'Prior to 1989, the term "assault weapon" did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists to expand the category of "assault rifles" so as to allow an attack on as many additional firearms as possible on the basis of undefined "evil" appearance.' " *Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting) (quoting Bruce H. Kobayashi & Joseph E. Olson, *In Re 101 California Street: A Legal and Economic Analysis of Strict Liability for the Manufacture and Sale of "Assault Weapons"*, 8 Stan. L. & Pol'y Rev. 41, 43 (1997))

for the return of the guns; shifting the burden to the Plaintiff to prove his rights.

292.    When they seized Plaintiff's firearms, Defendants set in motion a series of events that they knew would result in Plaintiff's inability to recover, or extreme difficulty in recovering, his property.

293.    Those actions are as follows:

A.  In the 1990s, Roberti-Roos Assault Weapons Control Act ("AWCA")was passed, whereby California started the ban on semi-automatic rifles by name, going after the Colt AR-15.

B.  On January 1, 2000, Senate Bill 23 went into effect adding to AWCA the features-based definition of "assault weapons" (now codified at California Penal Code § 30515(a)), such as "flash suppressor", "pistol grip", "telescoping stock",

C.  Bullet button Firearms with a combination of bullet buttons and restricted features have been banned for sale in California since a 2016 legislation change. Before 2016, California law allowed manufacturers to sell firearms equipped with buttons that allowed the gun operator to use a tool (such as a bullet — hence the name bullet button) instead of their finger to release the magazine.

D.  In 2016, California enacted a law to provide a statutory definition for the term "detachable magazine" to clarify that firearms outfitted with bullet buttons are restricted. People who lawfully obtained these types of guns before Jan. 1 2017 could retain them as long as they registered them with the California Department of Justice in time. (Plaintiff's was charged with a felony for not have registered two firearms legally purchased before 2016)

E.  Magazine replacement via partial disassembly of the firearm

F.  Large-capacity magazine ban.

G.  Ammunition ban.

49

H. Online purchase of ammunition and gun parts.

I. Under § 30515(a), a rifle is labeled an "assault weapon" if it is one of three principal types. The first type is a semiautomatic centerfire rifle that does not have a fixed magazine but has one of the following prohibiting features: a pistol grip that protrudes conspicuously beneath the action of the rifle, a thumbhole stock, a folding or telescoping stock, a grenade or flare launcher, a flash suppressor, or a forward pistol grip. The second type is a semiautomatic centerfire rifle that has a fixed15Link to the text of the note magazine able to hold more than 10 rounds. The third type is a semiautomatic centerfire rifle that has an overall length of less than 30 inches. Cal. Penal Code § 30515(a)(1)-(3).

J. The State has a policy of residents not arming themselves with guns (especially semi-automatic guns), and for those who do, arresting residents, such as what happened to Plaintiff. California Penal Code § 30600 imposes a felony criminal penalty for anyone who manufactures, distributes, imports, keeps for sale, offers for sale, or lends an "assault weapon." The prescribed prison sentences for violations of these malum prohibitum crimes are four, six, or eight years. See California Penal Code § 30600(a).

294. Plaintiff is a law abiding citizen who had his firearms confiscated by law enforcement, even though they were legally owned at the time of confiscation. Now that they have been confiscated, they cannot be repurchased in the state because no one can legally sell them. In addition, he is prohibited by federal law to purchase a handgun out-of-state, any LCM which is purchased out of state, it is illegal to transport the LCM into the state.

295. Plaintiff has been unable to recover his weapons even though his weapons are not evidence and have not been used to commit a crime.

296. By maintaining a custom, policy or practice of requiring lawful weapons owners, but not other property owners, to engage in formal litigation to recover their seized property,

Defendants have denied Plaintiff the equal protection of the laws.

297.     By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies, and practices that violate the Second and Fourteenth Amendments to the United States Constitution, and thereby damaging Plaintiff in violation of 42 U.S.C. § 1983.

298.     Defendants' laws and policies are directed toward defacto gun bans and confiscation through legal trickery via the courts.

299.     The optics and scopes attached to rifles, which the government destroys, can sometimes be thousands of dollars more than the actual cost of the gun itself.

300.     Here, Plaintiff's optics were not removed and were part of the destruction order requested.

301.     Unique to the AR-15 is that the lower serialized receiver can easily be separated from the "upper receiver assembly". The upper receiver assembly is typically 80% of the cost of the arm. The lease intrusive way to seize Plaintiff's AR15 was to leave the upper receiver assembly with him since he could always sell that part under state and federal law.

302.     The Second Amendment is violated when gun owners are forced to subsidize the defendants gun control mantra without having affirmatively and freely given their consent for the subsidy.

Unsafe Handgun List and Microstamping Penal Code § 31910 and Large-Capacity Magazine (LCM) – Penal Code §  16740, §  32310

303.     California law presumes that all handguns are "unsafe" and therefore, generally barred from importation and sale, unless those handguns have been placed on the state's special roster of handguns "determined not to be unsafe." Cal. Penal Code § 31910.

304.     As applied, it results in work-around by the state to stop the sale of handguns available in the 49 other states.

305.   This is accomplished by placing so many hurdles and burdens on manufacturers of handguns, that the simply add ridiculous mechanisms to novel concepts to any newly manufactured firearm which even exempts the police from having to use such ridiculous handguns with increased complexity and increased failure rates, such as a magazine disconnect mechanism ("MDM") and chamber load indicator ("CLI") – both of which interfere with the functionality in critical moments. Both of these contradict common firearm safety rules: "Treat all guns as if they are loaded." In other words, consumers must learn to disregard CLIs and MDMs.

306.   As of May 17, 2013, all semiautomatic handguns not already rostered cannot be submitted for roster listing unless they employ so called "microstamping technology.

307.   As time marches on, handguns are forced off the roster as they are updated without CLIs, MDMs, and of course, the wholly fictional microstamping, without any new models taking their place. The effect is dramatic. The microstamping requirement, as written, and as applied, results in a disenfranchisement of "the People" to own and possess the best and safest possible arms available in 49 states.

308.   The federal government has never mandated these draconian requirements on any firearm – and for good reason – it makes firearms more dangerous and less reliable. Micro-stamping technology is not a safety device and has no rational relationship to the safety of the owner/buyer/consumer of semi-automatic pistols.

309.   Because California has banned some of the newest and safest handguns, all of which have manual thumb safeties, California has in essence forced most antiquated unsafe handguns onto the public.

310.   California amended Penal Code section 32310 to prohibit the mere possession of "large-capacity magazines." S. 1446, 2015-2016 Reg. Sess. (Cal. 2016). Then, on November 8,

2016, voters approved Prop. 63, which effectively did the same. See Cal. Penal Code § 32310. Under either version, anyone currently in possession of a now-banned magazine will be exposed to criminal penalties. *Id*.

311.    Penal Code Sections 16740 and 32310 are unconstitutional as-written as they offend the Second Amendment. This would also include any future iterations.

312.    California law presumes that all handguns are "unsafe" and therefore, generally barred from importation and sale, unless those handguns have been placed on the state's special roster of handguns "determined not to be unsafe." Cal. Penal Code § 31910.

313.    As applied, the law results in creating unprecedented hurdles in the manufacture and sale of handguns in the state.

314.    This is accomplished by placing so many hurdles and burdens on manufacturers of handguns, that the simply ad ridiculous mechanisms to novel concepts to any newly manufactured firearm which even exempts the police from having to use such ridiculous handguns with increased complexity and increased failure rates, such as a magazine disconnect mechanism ("MDM") and chamber load indicator ("CLI") – both of which interfere with the functionality in critical moments. Both of these contradict common firearm safety rules: "Treat all guns as if they are loaded." In other words, consumers must learn to disregard CLIs and MDMs.

315.    As of May 17, 2013, all semiautomatic handguns not already rostered cannot be submitted for roster listing unless they employ so called "microstamping technology.

316.    As time marches on, handguns are forced off the roster as they are updated without CLIs, MDMs, and of course, the wholly fictional microstamping, without any new models taking their place. The effect is dramatic. The microstamping requirement, as written, and as applied, results in a disenfranchisement of "the People" to own and possess the best and safest possible

1    arms available in 49 states.

2    317.    The federal government has never mandated these draconian requirements on any firearm

3            – and for good reason – it makes firearms more dangerous and less reliable. Micro-stamping

4            technology is not a safety device and has no rational relationship to the safety of the

5            owner/buyer/consumer of semi-automatic pistols.

6

7    318.    Because California has banned some of the newest and safest handguns, all of which have

8            manual thumb safeties, California has in essence forced most antiquated unsafe handguns

9            onto the public.

10   319.    In addition, if the magazines are now banned, and the handguns are not on the safe gun

11           list, then it is impossible to replace the confiscated arms legally.

12

13   320.    By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff

14           of his lawfully obtained weapons, Defendants are propagating customs, policies, and practices

15           that violate the Second and Fourteenth Amendments to the United States Constitution, and

16           thereby damaging Plaintiff in violation of 42 U.S.C. § 1983.

17   321.    Plaintiff has been damaged according to proof.

18   322.    Attorney fees and costs are recoverable pursuant to 42 U.S.C. § 1988.

19   323.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies,

20           and practices.

21

22                               **SECOND CLAIM FOR RELIEF**
                          **UNCONSTITUTIONALITY (as written and as-applied)**
23            **Violation of Plaintiff's Rights Under the Fourteenth Amendment**
                                      **[Due Process Clause]**
24
25   324.    Plaintiffs incorporate the above allegations as if set forth fully herein.

26   325.    The Fourth Amendment of the United States Constitution provides: "The right of the

27           people to be secure in their persons, houses, papers, and effects, against unreasonable searches

28

                                            54

and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

326.    The Due Process Clause of the Fourteenth Amendment provides that "No state shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

327.    "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); see also, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (collecting cases).

328.    The laws and actions by defendants in this case deprived plaintiff of liberty and property without furthering "any legitimate governmental objective" violated the Due Process Clause.

329.    Legislation that changes the law retroactively—making conduct that was legal when undertaken illegal—is especially likely to run afoul of the Due Process Clause.

330.    A law that deprives an owner of private property without a permissible justification violates the Due Process Clause regardless of whether it also violates the Takings Clause.

331.    By seizing Plaintiff's guns from his home without a warrant, Defendants violated the Fourth Amendment of the United States Constitution, and thereby damaging Plaintiff in violation of 42 U.S.C. § 1983.

332.    Plaintiff has been damaged according to proof.

333.    Attorney fees and costs are recoverable pursuant to 42 U.S.C. § 1988.

334.    Plaintiff is entitled to declaratory and equitable relief.

**THIRD CLAIM FOR RELIEF**
**UNCONSTITUTIONALITY (as written)**
**Violation of Plaintiff's Rights Under the Fifth Amendment**
**[Takings Clause]**

335.   Plaintiffs incorporate the above allegations as if set forth fully herein.

336.   The Takings Clause of the Fifth Amendment provides "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause applies against the states through the Fourteenth Amendment.

337.   The Takings Clause protects against two kinds of governmental takings: "a restriction on the use of property," which is known as a "regulatory taking," and a direct "physical appropriation" of "an interest in property." *Horne v. Dep't of Agric.,* 576 U.S. 351 (2015)

338.   "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002).

339.   That rule applies to takings of both real and personal property.

340.   A regulation that "goes too far"—for example, by depriving a property owner of economically beneficial use or otherwise "interfer[ing] with legitimate property interests"— also requires just compensation. *Lingle*, 544 U.S. at 537-39.

341.   Plaintiff has a cognizable property interest in his arms and detachable accoutrements, the seizure and retention of which was caused by Defendants without sufficient due process.

342.   Defendants are propagating customs, policies, and practices that violate Plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983.

343.   Plaintiff has been damaged according to proof.

344.   Attorney fees and costs are recoverable pursuant to 42 U.S.C. § 1988.

345.   Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

### **FOURTH CLAIM FOR RELIEF**

### UNCONSTITUTIONALITY (as-written and as-applied)
### Violation of Plaintiff's Rights to Equal Protection

346.    Plaintiffs incorporate the above allegations as if set forth fully herein.

347.    Moreover, Plaintiff asserts an Equal Protection challenge to a system of exemptions for the very persons charged with enforcing gun laws against Plaintiff, and the policy of "collateral consequences" being applied to immigration cases involving illegal aliens but not naturalized citizens and the poor as it pertains to the Second Amendment.

348.    Illegal Immigrants are granted greater rights under California's penal system than citizens by use of what is known as "collateral consequences" policies whereby the prosecutors mandated to dismiss cases if prosecution and/or conviction could lead to deportation.

349.    However, in any case involving a gun, the case cannot be dismissed, and if, in on a very rare occasion a case is dismissed, the guns are always destroyed even if legally purchased in state.

350.    Defendants and the State of California exempt law enforcement officers from the very same laws that the People are crucified under:

A.  They are exempted from the safe gun list

B.  They are exempted from interference with ammunition purchases

C.  They can buy off-roster handguns.

D.  They can buy banned semi-automatic rifles which Plaintiff cannot buy.

E.  They are exempted from background checks.

F.  They are treated differently as to AWCA registration requirements and public records request for the data.

351.    By maintaining a custom, policy, or practice of requiring lawful weapons owners, but not other property owners, to engage in formal litigation to recover their seized property,

Defendants have denied Plaintiff the equal protection of the laws.

352.    Newsome's policy choices are not neutral, and therefore trigger strict scrutiny under the Second Amendment and Equal Protection Clause, since he treats an enumerated right differently than abortion, even though abortion is not an enumerated right and abortion conflicts with the sanctity of life protected by California's Penal Code Section 187(a), which defines Murder as "… the unlawful killing of a human being, or a fetus, with malice aforethought." [emphasis added] Cal. Penal Code § 187.

353.    Newsom's policy is to attack the Second Amendment as means to influence his personal views on abortion, even though abortion is completely legal in California --- but his actions would lead any reasonable person to believe that he is using his office as a platform to facilitate his personal views on abortion at the national level.

354.    This is an as-written and as-applied challenge to the statutory scheme which invariably results in the revocation of Plaintiffs core fundamental right to keep and bear arms; and how the government confiscates the very arms protected without any recourse to acquiring those arms after confiscation and destruction because they are now banned and/or criminalized.

355.    At the same time, California law enforcement (and retirees) are granted the full panoply of Second Amendment rights (i.e. lifetime CCWs, the purchase and acquisition of handguns available in 48 other states and legal under federal law, and magazines holding more than 10 rounds of ammunition.)

356.    Because the Second Amendment is treated by a different standard than all other rights, people who desire to exercise their right to keep and bear modern arms in common use are discriminated against in violation of the Equal Protection clause.

357.    Defendants have a custom, policy and practice of creating a two-tiered system for the return of property that has been seized by law enforcement by making it more difficult for the

return of firearms as compared to all other property.

358.    Defendants have a custom, policy and practice of selectively prosecuting gun owners and seizing their guns solely because of them exercising their Second Amendment rights.

359.    By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies and practices that violate Plaintiff's rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983.

360.    Plaintiff has been damaged according to proof.

361.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1.      An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the practice of seizing and retaining lawfully obtained weapons of individuals without a warrant who are deemed to be of no threat to themselves or others, and who have not been charged with a crime;

2.      Declaratory relief that the practice of seizing and retaining lawfully obtained weapons of individuals who are deemed to be of no threat to themselves or others, and who have not been charged with a crime is unconstitutional either on its face and/or as applied to bar those individuals who are legally entitled to possess weapons;

3.      Declaratory relief that the practice of requiring weapons owners who are not charged with a crime to engage in formal litigation in order to recover their seized

property is unlawful and unconstitutional;

4.      Because Plaintiff's arms were seized and destroyed, and now need replacement, Plaintiff further seeks to enjoin Defendants from enforcing current firearm statutes which infringe upon his ability to (a) purchase off-roster handguns, which are legal under federal law; (b) possess and purchase standard size handgun and rifle magazines which most exceed 10 rounds. (c) travel interstate with magazines which contain more than 10 rounds of ammunition. (d) purchase semi-automatic firearms with detachable magazines which are permitted under federal law, along with all firearm accoutrements as permitted by federal law, and (e) purchase ammunition and gun parts online.

5.      Damages for Plaintiff's loss of use of his weapons and the cost of repair and/or replacement for any damage done to Plaintiff's weapons while in Defendants' possession;

6.      Punitive damages in a sufficient amount to deter Defendants from further violating the rights of Plaintiff and other lawful weapon owners.

7.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

8.      Any other relief as the Court deems just and appropriate.

                                    Respectfully submitted,

Dated Tuesday, July 5, 2022. /s/ *Gary W. Gorski*
                                    Gary W. Gorski
                                    Attorney for Plaintiff

Exhibit "1"

## Incident/Investigation Report

**Agency:** EGPD          **Case Number:** 20-007851          **Report Date:**12/27/2020  09:17

## Notes/Narrative

SYNOPSIS:

EGPD Dispatch received a 911 hang-up from a residence. Officers responded to the residence and made contact with family members of V-1 who stated she was being stopped by her husband from grabbing a gun and attempting suicide. Officers were able to eventually safely detain V-1 who admitted to wanting to harm herself. V-1 was transported to a local hospital where she was placed on a 5150 W&I hold. Six firearms were seized and booked.

Firearm at scene: Yes
If yes, held for safekeeping (8102 WIC): Yes
If yes, authority for confiscation Consensual search
AFS search conducted on firearm: Yes
Registered owner info: Arnold Abrera and Euginie Abrera
Victim owner/possessor of firearm or other deadly weapon(s): Yes
Receipt left with victim: No (Records to send via certified mail- confirm mailing)
Does other party involved claim ownership of firearm/deadly weapon: Yes
If yes, who: Arnold and Euginie Abrera
Receipt left with owner, if other than victim: No (Records to send via certified mail- confirm mailing)

NARRATIVE:

On 12/27/2020 (Sunday), at approximately 0917 hours; I, Officer Coleman #238 (Unit C41) was in a full police uniform and assigned to patrol in the City of Elk Grove, County of Sacramento. My vehicle is equipped with an in-car camera (ICC) and body worn camera system, all are in full working condition (vehicle #398). I was driving a marked black and white patrol vehicle with mounted overhead lights and siren.

I was dispatched to 9921 Yellowfin Way after EGPD Dispatch received a 911 hang-up from the residence. Dispatch advised that on call back a male answered and stated it was an accident but could hear a female in the background crying.

Officer Parra (Unit C21) and I responded to the residence. I listened at the front door but could not hear any sounds coming from within. I knocked on the door several times with no answer. I rang the doorbell and heard sounds of someone talking inside.

A female juvenile answered the door. I asked if her parents were home and if anyone called 911. The juvenile advised me that her father had called 911 and he was upstairs trying to prevent their mother from getting a firearm. At this time, I requested more units respond to my location.

I immediately had all three juvenile children exit the front door. I had Officer Parra walk them to cover for their safety. They were able to provide us information that their father and mother were both upstairs and that there were several guns inside.

## Incident/Investigation Report

**Agency:** EGPD        **Case Number:** 20-007851        **Report Date:**12/27/2020  09:17

---

## Notes/Narrative

I gave no less then three loud verbal commands for all occupants to come out with there hands up. Finally, an Asian male adult, later identified as Arnold ABRERA (RP), came down the stairs. I advised him to show me his hands and to walk towards me which was just outside the front door. Officer Parra placed him in handcuffs and conducted a search for weapons with negative results.

He complied but initially was uncooperative in providing information. He said that the 911 call was an accident and he did not know why we were there. I advised him that his children told us what was going on and he began to provide information.

He briefly said that his wife was trying to retrieve a firearm from their safe that they both had access to, but he was preventing her.

More units began to arrive to assist with containment and potential search/detention of the female half. She was identified as Euginie ABRERA (V-1). Between the male and female half dispatch advised that they had four (4) handguns registered to them.

I began to call for the female to come downstairs with her hands up. For approximately 15 minutes I had no response. Finally, the female walked down the stairs with only a cell phone in her hands. I gave her commands to keep her hands up and walk back towards me once she got to the bottom of the stairs which she complied.

Sergeant Grant (Unit S11) was on scene at that time and assisted with detaining the female in handcuffs. I conducted a search of her person for weapons with negative findings. I placed her in the backseat of my patrol vehicle.

Sergeant Grant, Officer Parra, Officer Y. Parker (Unit C51) and Officer Hall Unit (Unit C52) conducted a protective sweep of the residence with negative findings.

While were doing this Officer Gomez (Unit C32) stood by with the three juveniles and Arnold ABRERA. He obtained a statement from him (Refer to Officer Gomez supplemental report for full details).

With the assistance of Officer Parra, we allowed Arnold ABRERA to come inside the residence and go upstairs so we could collect the firearms. Arnold ABRERA opened up both safes and I collected five firearms, three handguns and two AR type rifles. Again, Arnold ABRERA was no forthcoming with information because there was one outstanding handgun that was not in the safe.

Arnold ABRERA then told me after I asked him numerous times that he had a handgun underneath some clothes in a closet near his bed. In total I collected four handguns and two rifles. They are as followed;

(PCN # 252254) Black Glock 17 9mm Serial # BBDW312.

(PCN # 252255) Black SIG SAUER SP2022 40 S&W Serial # 24B245366.

(PCN # 252256) Black SIG SAUER SP2022 9MM  Serial # 24B245997

0000005

## Incident/Investigation Report

**Agency:** EGPD          **Case Number:** 20-007851          **Report Date:** 12/27/2020  09:17

---

## Notes/Narrative

(PCN # 252257) Black RUGER LC380CA 380 Auto Serial # 326-53888.

(PCN # 252258) Black DEL-TON DTI-15 5.56 MM Serial # B6215.

(PCN # 252259) Black ROGGIO ARSENAL RA-15 MULTI-CALIBER Serial # RA09011623.

I went to my patrol vehcile and obtained the following statement from Euginie ABRERA in summary;

***STATEMENT OF EUGINIE ABRERA TAKEN BY OFFICER COLEMAN***

My husband and I were arguing. I found out that he has been having an affair with another woman.

I was trying to read his text messages on his phone that were from this woman. He just kept denying it, but I know it happened. There is proof.

I tried to go into the safe and grab a gun. I did this because I wanted to kill myself. I did not want to hurt anyone else besides myself.

I have tried to kill myself one other time, maybe two years ago by taking pills.

I want to go and talk to someone. I am a Kaiser member. The only thing I have every been diagnosed with is anxiety disorder.

***END OF STATEMENT***

Based on the facts, statement of Arnold ABRERA and Euginie ABRERA she meet the criteria for W&I 5150. I advised Euginie that she was being detained and I transported her to the Elk Grove Police Department. I handed over all six firearms to Officer Meyerdick (Unit C22) who assisted in booking them for safekeeping.

I transported Euginie ABRERA to Kaiser South where she was admitted on a W&I 5150 hold.

EVIDENCE:

All firearms were booked in the EGPD temporary property room for safekeeping.

(PCN # 252254) Black Glock 17 9mm Serial # BBDW312.

(PCN # 252255) Black SIG SAUER SP2022 40 S&W Serial # 24B245366.

(PCN # 252256) Black SIG SAUER SP2022 9MM  Serial # 24B245997.

(PCN # 252257) Black RUGER LC380CA 380 Auto Serial # 326-53888.

## Incident/Investigation Report

**Agency:** EGPD          **Case Number:** 20-007851          **Report Date:**12/27/2020  09:17

## Notes/Narrative

(PCN # 252258) Black DEL-TON DTI-15 5.56 MM Serial # B6215.

(PCN # 252259) Black ROGGIO ARSENAL RA-15 MULTI-CALIBER Serial # RA09011623.

DISPOSTION:

W&I 5150 Hold.

END OF REPORT.

Exhibit "2"

# ARREST WARRANT REQUEST FORM

| Elk Grove Police Dept. | Detective J. Parker | P.C. 30605 | 20-007851 |
|---|---|---|---|
| AGENCY | AFFIANT | OFFENSE(S) | REPORT NUMBER |

**DATE OF OFFENSE:**   12/27/2020

**VICTIM(S) NAME:**

VICTIM #1:   State of California (City of Elk Grove)
VICTIM #2:
VICTIM #3:

**SUSPECT(S) INFORMATION:**

| SUSPECT #1: | Arnold Abrera | XREF: | 4605545 |
|---|---|---|---|
| SUSPECT #2: | | XREF: | |
| SUSPECT #3: | | XREF: | |
| SUSPECT #4: | | XREF: | |

**ARREST WARRANT STATEMENT OF PROBABLE CAUSE:**
(Explain what happened, establish the factual basis for each of the elements of each offense, including dates, times, identity of key witnesses. Also include any material that may tend to exonerate the suspect).

On 01/06/2021, I, Detective J. Parker #228 (IV34) was assigned to review a welfare check that occurred on 12/27/2020.  Additionally, I received an email from Kevin Corcoran, Property & Evidence Manager, advised two (2) firearms that were collected during this case were illegal.  The email I received from K. Corcoran was as followed:

"The 2 semi-auto rifles on this case (PCN 252258, 252259) are unregistered bullet button rifles. Both are centerfire, semi-auto rifles, do not have fixed magazines (functioning bullet buttons will release magazines), have a pistol grip that protrudes conspicuously beneath the action, have telescopic stocks, and PCN 252259 also has a forward pistol grip. Photos are attached to the incident report. As such they are illegal to possess.  See PC 30515 for reference."

END OF EMAIL

(See attached continuation pages)

**DETAILED SUSPECT DESCRIPTION:**
(An arrest warrant must contained a detailed and specific description for each subject to be arrested, including, DOB, OLN, SSN, full name and any alias, and physical descriptors including race/ethnicity, gender, height, weight, hair color, eye color, etc.)

DOB: 11/21/1973, OLN: D9612230, SSN: 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, NAME: Arnold Abrera, RACE: Unknown, GENDER: Male, HEIGHT: 5'8, WEIGHT, HAIR: Black, EYES: Brown

**DETAILED SUSPECT LOCATION:**
(Must provide a suspect's current and complete address. This address is necessary for the due diligence requirements to provide notice of the warrant in some cases and/or timely serve the warrant.  If the subject's address has been researched and is unknown, please state this).

9921 YELLOWFIN WAY, ELK GROVE, CA 95757

Submitted to DA 1/6/44

0000001

# ARREST WARRANT REQUEST FORM

| Elk Grove Police Dept. | Detective J. Parker | P.C. 30515 | 20-007851 |
|---|---|---|---|
| AGENCY | AFFIANT | OFFENSE(S) | REPORT NUMBER |

**ARREST WARRANT STATEMENT OF PROBABLE CAUSE (CONT):**
(Explain what happened, establish the factual basis for each of the elements of each offense, including dates, times, identity of key witnesses. Also include any material that may tend to exonerate the suspect).

I later reviewed the initial report, which revealed EGPD Dispatch received a 911 hang-up from a residence on 12/27/2020, at approximately 0900 hours. Officers responded to the residence and made contact with family members of Euginie ABRERA who stated she was being stopped by her husband ARNOLD Abrera from grabbing a gun and attempting suicide. Officers were able to eventually safely detain ABRERA who admitted to wanting to harm herself. ABRERA was transported to a local hospital where she was placed on a 5150 W&I hold. During the welfare check Officers on scene located a total of six firearms inside the house. They were as followed:

(PCN # 252254) Black Glock 17 9mm Serial # BBDW312.

(PCN # 252255) Black SIG SAUER SP2022 40 S&W Serial # 24B245366.

(PCN # 252256) Black SIG SAUER SP2022 9MM  Serial # 24B245997.

(PCN # 252257) Black RUGER LC380CA 380 Auto Serial # 326-53888.

(PCN # 252258) Black DEL-TON DTI-15 5.56 MM Serial # B6215.

(PCN # 252259) Black ROGGIO ARSENAL RA-15 MULTI-CALIBER Serial # RA09011623.

The firearms were collected by officers on scene of the welfare check and later booked at the Elk Grove Police Department for safekeeping.

On 01/29/2021, I contacted Detective M. Chilner and asked him to look at the firearms on this case to determine whether they were legal for ARNOLD to possess. Detective M. Chilner is a POST certified Firearms Instructor since 2010 and a POST certified Tactical Rifle Instructor since March, 2020, and a POST certified Armorer at the Elk Grove Police Department. Therefore, Detective M. Chilner has more knowledge and expertise about different firearms and the functionality of the them. On 02/02/2021, Detective M. Chilner advised he reviewed the firearms in question (PCN 252258, 252259) and determined the same outcome as Property and Evidence Manager Kevin Corcoran, which was (PCN # 252258) Black DEL-TON DTI-15 5.56 MM Serial # B6215 and (PCN # 252259) Black ROGGIO ARSENAL RA-15 MULTI-CALIBER Serial # RA09011623 were illegal for ARNOLD to posses under Penal Code 30515.

****STATEMENT MADE BY ARNOLD ABRERA TAKEN BY DETECTIVE J. PARKER****

I bought all of those guns between three and ten years ago. Most of them I have never even shot once. I bought some at River City Gun Exchange (2370 Fruitridge Rd, Sacramento, CA 95822) and the others at Wild Bill's Old West Trading (10490 E Stockton Blvd, Elk Grove, CA 95624). I know that some of them are illegal now, but I never take them out of the safe so I decided not to anything to them. I never committed a crime. I am scared. I hope I don't get arrested.

****END OF STATEMENT***

# ARREST WARRANT REQUEST FORM

| Elk Grove Police Dept. | Detective J. Parker | P.C. 30515 | 20-007851 |
|:---:|:---:|:---:|:---:|
| AGENCY | AFFIANT | OFFENSE(S) | REPORT NUMBER |

**ARREST WARRANT STATEMENT OF PROBABLE CAUSE (CONT):**
(Explain what happened, establish the factual basis for each of the elements of each offense, including dates, times, identity of key witnesses. Also include any material that may tend to exonerate the suspect).

Based on the facts stated above, I determined ARNOLD was violation of Penal Code 30515.

Based on the investigation and the totality of the circumstances, I request the Sacramento County District Attorney's Office review this case for criminal prosecution and issuance of an arrest warrant.

0000003

Exhibit "3"

File by Fax

1     JONATHAN P. HOBBS (SBN: 186045)
2     City Attorney
     *jhobbs@elkgrovecity.org*
3     SUZANNE E. KENNEDY (SBN: 251339)
     Assistant City Attorney
4     *skennedy@elkgrovecity.org*
     CITY OF ELK GROVE
5     City Attorney's Office
     8401 Laguna Palms Way
6     Elk Grove, California 95758
     Phone: (916) 683-7111
7     Fax: (916) 627-4100

8     Attorneys for Petitioner
     CITY OF ELK GROVE
9

10

               **FILED**
               Superior Court Of California,
               Sacramento
               01/25/2024
               mpipe
               By_____ , Deputy
               Case Number:
               **34-2021-20000745**

11           SUPERIOR COURT OF THE STATE OF CALIFORNIA

12               COUNTY OF SACRAMENTO

13

14    CITY OF ELK GROVE, a California      CASE NO.:
     municipal corporation,

15             Petitioner,        **PETITION FOR JUDICIAL**
                           **DETERMINATION RE: RETURN OF**
16           vs.                  **FIREARMS**
                           **Welfare & Institutions Code section 8102**
17

18    EUGINIE ABRERA, an individual, and    Dept.:   36
     DOES 1-20, inclusive,             Judge:   Honorable Stephen Acquisto
19
            Respondents.
20

21

22       1.      Petitioner CITY OF ELK GROVE (hereafter "Petitioner") brings this petition

23   pursuant to Welfare & Institutions Code section 8102, and respectfully requests that the Court

24   authorize Petitioner to destroy the firearms described herein in accordance with the law.

25       2.      Petitioner, a municipal corporation duly organized and existing under the laws of

26   the State of California, is the entity authorized by law to initiate these proceedings. At all times

27   herein mentioned, Petitioner operated by and through the Elk Grove Police Department.

28

- 1 -

1       3.     Petitioner is informed and believes that Respondent Euginie Abrera

2 ("Respondent") is the owner and/or person in possession of the firearms and/or other deadly

3 weapons that are subject to this Petition.

4       4.     The true names and capacities of Respondents DOES 1 through 20, inclusive, are

5 unknown to the City, who therefore names said individuals by such fictitious names. The City is

6 informed and believes and thereon alleges that each of the individuals designated herein as

7 "DOE" are in some manner the owner and/or person in possession of the firearms or other deadly

8 weapons described herein. The City will amend this Petition to allege the true names and

9 capacities of these fictitiously named individuals when they have been ascertained.

10       5.     The facts alleged herein, which give rise to the confiscation of the subject firearms,

11 occurred within the City of Elk Grove, County of Sacramento, State of California.

12       6.     On December 27, 2020, at approximately 9:17 a.m., the Elk Grove Police

13 Department ("EGPD") dispatched Officers to a residence in Elk Grove regarding a 911 hang up

14 call from the residence EGPD Dispatch called the number back and was advised by a male it was

15 an accident, however, a female could be heard in the background crying.

16       7.     EGPD Officers arrived at the residence and knocked on the front door several

17 times with no answer. Officer Coleman rang the doorbell and heard sounds of someone talking

18 inside. A female juvenile answered the door, and Officer Coleman asked if her parents were

19 home and if anyone called 911. The juvenile advised Officer Coleman her father called 911 and

20 was upstairs trying to prevent their mother from getting a firearm. At this time, Officer Coleman

21 requested more units to respond to the residence.

22       8.     There were three children inside the residence and Officer Coleman immediately

23 had them exit the front door and took them to safety. The juvenile children told Officers their

24 father and mother were both upstairs and there were several guns inside.

25       9.     Officer Coleman gave several verbal commands for all occupants to come out with

26 their hands up. Finally, a male, later identified as Respondent's husband, came down the stairs.

27 Officer Coleman ordered Respondent's husband to show his hands and to walk towards him.

28 Respondent's husband complied and was placed in handcuffs.

-2-

10. Officer Gomez arrived on scene and obtained a statement from Respondent's husband, summarized as follows:

  a. Respondent and I have quarrels because she wants to see my cell phone. I pressed SOS on accident when we were arguing over the phone.

  b. Respondent is in the master bedroom right now. I keep my guns in the master bedroom, and Respondent has access to the safe and guns.

  c. Respondent is very upset now and was trying to grab one of the firearm cases after we were arguing over my cell phone, so I locked the safe.

  d. Respondent wants to grab the guns to kill herself. I did not hear her say that, but that's what I think. I am not concerned she will harm me, but I am concerned she will harm herself.

11. Officer Coleman called for Respondent to come downstairs with her hands up. For approximately 15 minutes, there was no response. Finally, Respondent walked down the stairs with a cell phone in her hands. Officer Coleman gave Respondent commands to walk back towards him once she got to the bottom of the stairs and she complied. Respondent was placed in handcuffs and searched for weapons with negative results. Respondent was detained in the back of a patrol vehicle.

12. Officer Coleman obtained a statement from Respondent, summarized as follows:

  a. My husband and I were arguing. I found out he has been having an affair with another woman.

  b. I tried to go to the safe to grab a gun. I did this because I wanted to kill myself. I did not want to hurt anyone else besides myself.

  c. I have tried to kill myself one other time by taking pills, maybe two years ago.

13. The Officers conducted a protective sweep of the residence with negative results. The Officers allowed Respondent's husband to go inside the residence so they could collect the firearms. Respondent's husband opened up both safes and Officer Coleman collected five firearms, three handguns and two AR type rifles. Respondent's husband was not being

- 3 -

1  forthcoming with information because there was still one outstanding firearm that was not in the
2  safe. Respondent's husband told Officer Coleman he had a handgun underneath some clothes in
3  a closet near his bed.

4      14.    In total, Officer Coleman collected four handguns and two rifles.  Pursuant to
5  Welfare & Institutions Code section 8102, the following firearms were confiscated from the
6  residence:

7              1.  One (1) Glock, Inc., model 17, 9 cal., serial no. BBDW312;

8              2.  One (1) Sauer, J.P., & Sons, model SP2022; .40 cal., serial no. 24B245366;

9              3.  One (1) Sauer, J.P., & Sons, model SP2022, 9 cal., serial no. 24B245997;

10              4.  One (1) Sturm, Ruger & Co., model LC380CA, 380 cal., serial no. 32653888;

11              5.  One (1) Del-Ton Inc., model DTI 15, 556 cal., serial no. B6215;

12              6.  One (1) Roggio Arsenal, model RA 15, multiple caliber, serial no.
13                 RA09011623;

14              (collectively "Firearms").

15      15.    Petitioner has determined that the firearms listed above as number 5, described as
16  one (1) Del-Ton Inc., model DTI 15, 556 cal., serial no. B6215 and number 6, described as one
17  (1) Roggio Arsenal, model RA 15, multiple caliber, serial no. RA09011623, *are illegal,*
18  *unregistered assault rifles.* Therefore, Petitioner is prohibited from returning the illegal assault
19  rifles to Respondent even if the City's petition is denied.

20      16.    Officer Coleman completed a Firearms Property Receipt for the Firearms
21  ("Firearms Receipt").  The EGPD mailed a copy of the Firearms Receipt to Respondent at
22  Respondent's last known address, as listed on the police report related to this case, via certified
23  mail.  The Firearms Receipt describes the Firearms and lists the serial numbers and other
24  descriptive information. The Firearms Receipt indicates where the Firearms may be recovered,
25  the time limit for recovery, and the date after which the owner or possessor can recover the
26  Firearms. A true and correct copy of the Firearms Receipt for the Firearms, with confidential
27  information redacted, is attached hereto as Exhibit A.

28

-4-

1        17.    EGPD undertook a query of the Firearms in the Automated Firearms System

2    (AFS) of the California Law Enforcement Telecommunication System (CLETS) to determine if

3    there is a recorded history for the Firearms, including a "Dealer's Record of Sale" (DROS)

4    indicating the owner of record. The DROS results are as follows

| FIREARM DESCRIPTION | DROS RESULT |
|---|---|
| One (1) Glock, Inc., model 17, 9 cal., serial no. BBDW312; | DROS to Respondent's Husband |
| One (1) Sauer, J.P., & Sons, model SP2022; .40 cal., serial no. 24B245366; | DROS to Respondent |
| One (1) Sauer, J.P., & Sons, model SP2022, 9 cal., serial no. 24B245997; | DROS to Respondent's Husband |
| One (1) Sturm, Ruger & Co., model LC380CA, 380 cal., serial no. 32653888; | DROS to Respondent |
| One (1) Del-Ton Inc., model DTI 15, 556 cal., serial no. B6215; | No DROS |
| One (1) Roggio Arsenal, model RA 15, multiple caliber, serial no. RA09011623; | No DROS |

    True and correct copies of the AFS inquiries for the Firearms, with confidential information redacted, are attached hereto as Exhibit B.

    18.    Based on the facts, statement of Respondent's husband and Respondent, Respondent was detained pursuant a Welfare & Institutions Code section 5150 and transported to Kaiser Hospital for evaluation and treatment.

    19.    Welfare & Institutions Code section 8102 provides the legal basis for this petition and states, in relevant part:

> Whenever a person, who has been detained or apprehended for examination of his or her mental condition or who is a person described in Section 8100 or 8103, is found to own, have in his or her possession or under his or her control, any firearm whatsoever, or any other deadly weapon, the firearm or other deadly weapon shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon.

- 5 -

1
2
3

Upon the release of a person as described in subdivision (b), the confiscating law enforcement agency shall have 30 days to initiate a petition in the superior court for a hearing to determine whether the return of a firearm or other deadly weapon would be likely to result in endangering the person or others.

4

20.     The purpose of this Petition, and the intent of Welfare & Institutions Code section

5      8102, is to protect Respondent and others when Respondent's mental state is such that he is a

6      danger to himself or others.

7

21.     Based on the matters stated herein, the EGPD has reasonable cause to believe that

8      . the return of the Firearms would likely result in endangering Respondent and/or others.

9

22.     Petitioner will serve Respondent a copy of this Petition and a Notice of Filing of

10     , Petition notifying Respondent of his right to request a hearing on this matter.

11     WHEREFORE, Petitioner prays:

12     1.     That the Court make a determination that the return of the Firearms is likely to

13     result in harm to Respondent and/or others;

14     2.     That the Court issue an order granting the City of Elk Grove, by and through the

15     Elk Grove Police Department, authority to dispose of the Firearms in accordance with the law;

16     3.     For further and other relief as the Court deems just and proper.

17

Dated: January 22, 2021            CITY OF ELK GROVE

18

19     By:   _Suzanne Kennedy_

20           SUZANNE E. KENNEDY
             Assistant City Attorney for the City of Elk Grove

21
22
23
24
25
26
27
28

- 6 -

PETITION FOR JUDICIAL DETERMINATION RE: RETURN OF FIREARMS

# EXHIBIT A

# ELK GROVE POLICE DEPARTMENT
## PROPERTY RECEIPT/REPORT
# FIREARMS

**SEIZED BY SEARCH WARRANT NO.** _____

**REPORT NUMBER**

**ASSET FORFEITURE** ☐  **# OF SUSPECTS** ☐

**MARK ONE BOX ONLY** →

| EVIDENCE | FOR DESTRUCTION | SAFE KEEPING | FOUND |
|---|---|---|---|
| ☐ | ☐ | ☒ | ☐ |

**FILL IN ALL INFORMATION FOR SAFEKEEPING REPORTS**

| REPORTING DATE | DAY | TIME | CONNECTED REPORTS NUMBER AND TYPE | AUTHORITY AND SECTION |
|---|---|---|---|---|
| 12-27-20 | SUNDAY | 1100 HR | | WIC 9102 |

**V** | NAME LAST FIRST MIDDLE | ABRERA, EUGENIE / ARNOLD

| DOB | AGE | SEX F | RACE W |
|---|---|---|---|

**S** | NAME LAST FIRST MIDDLE |

| DOB | AGE | SEX | RACE | OTHER LTS |
|---|---|---|---|---|

---

**ITEM NO'S** | ***FIREARMS CAN NOT BE RELEASED IN THE FIELD PER PENAL CODE SECTION 33850** | **PROPERTY WAREHOUSE USE ONLY**

| | | | | |
|---|---|---|---|---|
| ☐ RIFLE<br>☐ SHOTGUN<br>☐ REVOLVER<br>☒ SEMI-AUTOMATIC<br>☐ LOADED<br>☒ UNLOADED<br>☐ OTHER | SERIAL # BSDW512 | NAME GLOCK | MODEL 17 | |
| | CALIBER 9MM | BARREL LENGTH | COLOR BLK | |
| | REMARKS (WHERE AND WHO FOUND, ETC.) | | | |
| ☐ RIFLE<br>☐ SHOTGUN<br>☐ REVOLVER<br>☒ SEMI-AUTOMATIC<br>☐ LOADED<br>☒ UNLOADED<br>☐ OTHER | SERIAL # 24B245866 | NAME SIG SAUER | MODEL SP2022 | |
| | CALIBER 40 S.W. | BARREL LENGTH | COLOR BLK | |
| | REMARKS (WHERE AND WHO FOUND, ETC.) | | | |
| ☐ RIFLE<br>☐ SHOTGUN<br>☐ REVOLVER<br>☐ SEMI-AUTOMATIC<br>☐ LOADED<br>☒ UNLOADED<br>☐ OTHER | SERIAL # 24B215957 | NAME SIG SAUER | MODEL SP2022 | |
| | CALIBER 9MM | BARREL LENGTH | COLOR BLK | |
| | REMARKS (WHERE AND WHO FOUND, ETC.) | | | |
| ☐ RIFLE<br>☐ SHOTGUN<br>☐ REVOLVER<br>☐ SEMI-AUTOMATIC<br>☐ LOADED<br>☒ UNLOADED<br>☐ OTHER | SERIAL # 326-53988 | NAME RUGER | MODEL LC380CA | |
| | CALIBER 380 AUTO | BARREL LENGTH | COLOR BLK | |
| | REMARKS (WHERE AND WHO FOUND, ETC.) | | | |

Firearms or other deadly weapons (as defined by PC 16520 and PC 16590) were confiscated on _____

☒ Pursuant to Mental Health Incident - Welfare and Institutions Code 8102 (SEE NOTICE OF RIGHTS ON REVERSE)
___ Pursuant to Domestic Violence Incident - Penal Code 18250 (SEE NOTICE OF RIGHTS ON REVERSE)
___ Pursuant to a Gun Violation Restraining Order - Penal Code 18100 (SEE NOTICE OF RIGHTS ON REVERSE)

---

I ACKNOWLEDGE RECEIPT OF A COPY OF THE NOTICE ON THE BACK OF THIS FORM. | I WAIVE ANY CLAIM TO THE FIREARMS LISTED ABOVE.

SIGNATURE OF PERSON NOTIFIED | SIGNATURE OF PERSON NOTIFIED

PRINT NAME / DOB | PRINT NAME / DOB

DATE | DATE

| NAME OF OFFICER TAKING PROPERTY (PRINT) Coleman | BADGE NO. | DIV. | NAME OF SUPERVISOR (PRINT) | PAGE | OF |
|---|---|---|---|---|---|

REV 2/20

**PROPERTY IS RELEASED BY APPOINTMENT ONLY**
**CALL THE PROPERTY/EVIDENCE TECHNICIAN AT 916-478-8180 FOR AN APPOINTMENT**

## RECEIPT AND NOTICE OF RIGHTS
## FOR CONFISCATED FIREARMS/OTHER DEADLY WEAPONS

### Mental Health Incidents - Notice of Rights Welfare & Institutions Code 8102, et seq.

Upon release of a person who has been detained or apprehended for examination of his or her mental condition, the law enforcement agency that has confiscated any firearm or other deadly weapon from that person shall have 30 days to initiate a petition in the superior court for a hearing to determine whether the return of a firearm or other deadly weapon would be likely to result in endangering the person or others, and to send a notice advising the person of his or her right to a hearing on this issue. The law enforcement agency may take an ex parte application stating good cause for an order extending the time to file a petition. Including any extension of time granted in response to an ex parte request, a petition shall be filed within 60 days of the release of the person from a health facility. A request for a hearing on the petition must be made to the court clerk within 30 days. Failure to respond will result in a default order forfeiting the confiscated firearm or weapon. The court clerk shall set a hearing, no later than 30 days from receipt of the request and notify the person and the district attorney of the date, time, and place of the hearing. If, after a hearing, the court determines that the return of the firearm or other deadly weapon would likely endanger the person or others, the law enforcement agency may destroy the firearm within 180 days from the date that the court makes that determination, unless the person contacts the law enforcement agency to facilitate the sale or transfer of the firearm to a licensed dealer pursuant to Section 33870 of the Penal Code.

If the law enforcement agency does not initiate proceedings, the weapon shall be available for return upon compliance with all applicable requirements, including the requirements specified in Chapter 2 (commencing with Section 33850) of Division 11 of Title 4 of Part 6 of the Penal Code.

### Domestic Violence Incidents - Notice of Rights Penal Code Section 18250

Unless the items confiscated from you are to be used as evidence in any criminal procedure, the firearms(s) shall be made available to you from the law enforcement agency five (5) business days after the seizure or as soon thereafter as possible. If, within this time, the law enforcement agency believes the return of these items will likely result in endangering the victim or person reporting the assault or threat, you will be advised, and within 60-90 days of the seizure a petition will be initiated in Superior Court to determine if these items should be returned

### Gun Violence Restraining Order - Notice of Rights

Any firearms and/or ammunition surrendered pursuant to a Gun Violence Retraining Order shall be subject to the provisions of Penal Code section 18100, et seq.

Subject to notice above, a person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned shall make application for a determination by the Department of Justice as to whether he or she is eligible to possess a firearm (PC 33850). Prior to the return of any firearm to its owner, the individual seeking the return of the firearm must submit a Law Enforcement Gun Release Application to the Department of Justice. The application is available at www.oag.ca.gov/firearms. It may take up to 30 days to process the application. If the firearm is evidence in a criminal case, the detective shall have final authorization of the disposition of the firearm. If firearms are not claimed within 180 days of notification that the firearm is available for return, the law enforcement agency may dispose of the firearm (PC 33875)

Subject to the provisions of this receipt, firearms may be recovered by contacting the Elk Grove Police Department at 8400 Laguna Palms Way, Elk Grove, CA 95758 - tel. (916) 478-8180.

# ELK GROVE POLICE DEPARTMENT
## PROPERTY RECEIPT/REPORT

# FIREARMS

| | REPORT NUMBER |
| --- | --- |
| | 2? - 0 0 7 ? S ? |

| | | | | | | EVIDENCE | FOR DESTRUCTION | SAFE KEEPING | FOUND |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| SEIZED BY SEARCH WARRANT NO. | | | | | | | | | |
| ASSET FORFEITURE ☐ | # OF SUSPECTS ☐ | | | MARK ONE BOX ONLY → | | ☐ | ☐ | ☒ | ☐ |

FILL IN ALL INFORMATION FOR SAFEKEEPING REPORTS

| REPORTING DATE | DAY | TIME | CONNECTED REPORT(S) NUMBER AND TYPE | AUTHORITY AND SECTION |
| --- | --- | --- | --- | --- |
| 27-20 | SUNDAY | 1706 HRS | | WI 3102 |

**V** NAME (LAST FIRST MIDDLE) ABRERA, EUGENE C ARNOLD

| DOB | AGE | SEX F | RACE U |
| --- | --- | --- | --- |

**S** NAME (LAST FIRST MIDDLE)

| DOB | AGE | SEX | RACE | OTHER I.D. |
| --- | --- | --- | --- | --- |

| ITEM NO'S | *FIREARMS CAN NOT BE RELEASED IN THE FIELD PER PENAL CODE SECTION 33850 | | | PROPERTY WAREHOUSE USE ONLY |
| --- | --- | --- | --- | --- |
| ☑ RIFLE<br>☐ SHOTGUN<br>☐ REVOLVER<br>☑ SEMI-AUTOMATIC<br>☐ LOADED<br>☑ UNLOADED<br>☐ OTHER | SERIAL # G-6215 | MAKE DR STONEY ARM | MODEL D'LUXE | |
| | CALIBER 5.56MM | BARREL LENGTH | COLOR BLK | |
| | REMARKS (WHERE AND WHO FOUND, ETC.) | | | |
| ☐ RIFLE<br>☐ SHOTGUN<br>☐ REVOLVER<br>☑ SEMI-AUTOMATIC<br>☐ LOADED<br>☑ UNLOADED<br>☐ OTHER | SERIAL # P307ab625 | MAKE POGGIO ARMUAL | MODEL AR-15 | |
| | CALIBER MULTI CALIBER | BARREL LENGTH | COLOR BLK | |
| | REMARKS (WHERE AND WHO FOUND, ETC.) | | | |
| ☐ RIFLE<br>☐ SHOTGUN<br>☐ REVOLVER<br>☐ SEMI-AUTOMATIC<br>☐ LOADED<br>☐ UNLOADED<br>☐ OTHER | SERIAL # | MAKE | MODEL | |
| | CALIBER | BARREL LENGTH | COLOR | |
| | REMARKS (WHERE AND WHO FOUND, ETC.) | | | |
| ☐ RIFLE<br>☐ SHOTGUN<br>☐ REVOLVER<br>☐ SEMI-AUTOMATIC<br>☐ LOADED<br>☐ UNLOADED<br>☐ OTHER | SERIAL # | MAKE | MODEL | |
| | CALIBER | BARREL LENGTH | COLOR | |
| | REMARKS (WHERE AND WHO FOUND, ETC.) | | | |

Firearms or other deadly weapons (as defined by PC 16520 and PC 16590) were confiscated on _____
X Pursuant to Mental Health Incident - Welfare and Institutions Code 8102 (SEE NOTICE OF RIGHTS ON REVERSE)
___ Pursuant to Domestic Violence Incident - Penal Code 18250 (SEE NOTICE OF RIGHTS ON REVERSE)
___ Pursuant to a Gun Violation Restraining Order - Penal Code 18100 (SEE NOTICE OF RIGHTS ON REVERSE)

| I ACKNOWLEDGE RECEIPT OF A COPY OF THE NOTICE ON THE BACK OF THIS FORM. | I WAIVE ANY CLAIM TO THE FIREARMS LISTED ABOVE. |
| --- | --- |
| SIGNATURE OF PERSON NOTIFIED | SIGNATURE OF PERSON NOTIFIED |
| PRINT NAME / DOB | PRINT NAME / DOB |
| DATE | DATE |

| NAME OF OFFICER TAKING PROPERTY (PRINT) Coleman | BADGE NO. | DIV. | NAME OF SUPERVISOR (PRINT) | PAGE OF |
| --- | --- | --- | --- | --- |

REV 2/20

**BLUE - PROPERTY WAREHOUSE       WHITE - RECORDS       GOLD - RECEIPT**

**PROPERTY IS RELEASED BY APPOINTMENT ONLY**
CALL THE PROPERTY/EVIDENCE TECHNICIAN AT 916-478-8180 FOR AN APPOINTMENT

## RECEIPT AND NOTICE OF RIGHTS
## FOR CONFISCATED FIREARMS/OTHER DEADLY WEAPONS

### Mental Health Incidents - Notice of Rights Welfare & Institutions Code 8102, et seq.

Upon release of a person who has been detained or apprehended for examination of his or her mental condition, the law enforcement agency that has confiscated any firearm or other deadly weapon from that person shall have 30 days to initiate a petition in the superior court for a hearing to determine whether the return of a firearm or other deadly weapon would be likely to result in endangering the person or others, and to send a notice advising the person of his or her right to a hearing on this issue. The law enforcement agency may take an ex parte application stating good cause for an order extending the time to file a petition. Including any extension of time granted in response to an ex parte request, a petition shall be filed within 60 days of the release of the person from a health facility. A request for a hearing on the petition must be made to the court clerk within 30 days. Failure to respond will result in a default order forfeiting the confiscated firearm or weapon. The court clerk shall set a hearing, no later than 30 days from receipt of the request and notify the person and the district attorney of the date, time, and place of the hearing. If, after a hearing, the court determines that the return of the firearm or other deadly weapon would likely endanger the person or others, the law enforcement agency may destroy the firearm within 180 days from the date that the court makes that determination, unless the person contacts the law enforcement agency to facilitate the sale or transfer of the firearm to a licensed dealer pursuant to Section 33870 of the Penal Code.

If the law enforcement agency does not initiate proceedings, the weapon shall be available for return upon compliance with all applicable requirements, including the requirements specified in Chapter 2 (commencing with Section 33850) of Division 11 of Title 4 of Part 6 of the Penal Code.

### Domestic Violence Incidents - Notice of Rights Penal Code Section 18250

Unless the items confiscated from you are to be used as evidence in any criminal procedure, the firearms(s) shall be made available to you from the law enforcement agency five (5) business days after the seizure or as soon thereafter as possible. If, within this time, the law enforcement agency believes the return of these items will likely result in endangering the victim or person reporting the assault or threat, you will be advised, and within 60-90 days of the seizure a petition will be initiated in Superior Court to determine if these items should be returned

### Gun Violence Restraining Order - Notice of Rights

Any firearms and/or ammunition surrendered pursuant to a Gun Violence Retraining Order shall be subject to the provisions of Penal Code section 18100, et seq.

Subject to notice above, a person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned shall make application for a determination by the Department of Justice as to whether he or she is eligible to possess a firearm (PC 33850). Prior to the return of any firearm to its owner, the individual seeking the return of the firearm must submit a Law Enforcement Gun Release Application to the Department of Justice. The application is available at www.oag.ca.gov/firearms. It may take up to 30 days to process the application. If the firearm is evidence in a criminal case, the detective shall have final authorization of the disposition of the firearm. If firearms are not claimed within 180 days of notification that the firearm is available for return, the law enforcement agency may dispose of the firearm (PC 33875)

Subject to the provisions of this receipt, firearms may be recovered by contacting the Elk Grove Police Department at 8400 Laguna Palms Way, Elk Grove, CA 95758 - tel: (916) 478-8180.

# EXHIBIT B

4DPNHN57IOZ.IG

CA0340H00 RE: SER/BBDW312
RESPONSE TO QGB INQUIRY

DATA IN AFS.

* SAFEKEEPING
SER/BBDW312 MAK/GLC GLOCK,INC CAL/9
TYP/PI PISTOL SEMI-AUTOMATIC MOD/17
DOT/20201227 BBL/4 1-2
ORI/CA0340H00 - ELK GROVE PD OCA/20007851
NOA/N
MIS/BLACK FINISH, PLASTIC GRIP,MADE IN AUSTRIA
FCN/O532036304830

* DROS - DEALER SALE
SER/BBDW312 MAK/GLC GLOCK,INC CAL/9
TYP/PI PISTOL SEMI-AUTOMATIC MOD/17
DOT/20160315 BBL/4-49 UOM/IN COL/BLACK MAT/STEEL, POLYMER

*** PURCHASER INFORMATION ***
NAM/ABRERA,ARNOLD JUATON DOB/█████████ OLN/█████████
ADR/9921 YELLOWFIN WAY
CTY/ELK GROVE ST/CA ZIP/95757 CCC/3400
*** DEALER INFORMATION ***
DLR/RIVER CITY GUN EXCHANGE, INC DID/20279
DDD/2370 FRUITRIDGE RD
DCY/SACRAMENTO DST/CA DZC/95822 DCC/3400 DTN/916-428-0377
ORI/CA0340400 - SACRAMENTO PD OCA/TA270537
FCN/4301608502336


CHECKING NCIC
END AFS RESPONSE.


4DPNHN57IOZ.IJ
CA0340H00
NO RECORD SER/BBDW312

4DPNHN57IQZ.IG

CA0340H00 RE: SER/24B245366
RESPONSE TO QGB INQUIRY

DATA IN AFS:

* SAFEKEEPING
SER/24B245366 MAK/SSS SAUER, J. P., & SONS CAL/40
TYP/PI PISTOL SEMI-AUTOMATIC MOD/SP2022
DOT/20201227 BBL/4
ORI/CA0340H00 - ELK GROVE PD OCA/20007851
NOA/N
MIS/BLACK FINISH, PLASTIC GRIP
FCN/O532036304831

* DROS - DEALER SALE
SER/24B245366 MAK/SSS SAUER, J. P., & SONS CAL/40
TYP/PI PISTOL SEMI-AUTOMATIC MOD/SP2022 BLUED
DOT/20160107 BBL/3-8 UOM/IN COL/BLACK MAT/STNLS, POLYMER
*** PURCHASER INFORMATION ***
NAM/ABRERA, EUGINIE GRACE LIANG DOB/████████ OLN/████████
ADR/9921 YELLOWFIN WAY
CTY/ELK GROVE ST/CA ZIP/95757 CCC/3400
*** DEALER INFORMATION ***
DLR/RIVER CITY GUN EXCHANGE, INC DID/20279
DDD/2370 FRUITRIDGE RD
DCY/SACRAMENTO DST/CA DZC/95822 DCC/3400 DTN/916-428-0377
ORI/CA0340400 - SACRAMENTO PD OCA/T9867423
FCN/4301602100820

CHECKING NCIC
END AFS RESPONSE.

```
   4DPNHN57J1Z.IG

   CA0340H00 RE: SER/24B245997
   RESPONSE TO QGB INQUIRY

   DATA IN AFS.

   * SAFEKEEPING
   SER/24B245997 MAK/SSS SAUER, J. P., & SONS CAL/9
   TYP/PI PISTOL SEMI-AUTOMATIC MOD/SP2022
   DOT/20201227 BBL/3 3-4
   ORI/CA0340H00 - ELK GROVE PD OCA/20007851
   NOA/N
   MIS/BLACK FINISH, PLASTIC GRIP
   FCN/O532036304832

   * DROS - DEALER SALE
   SER/24B245997 MAK/SSS SAUER, J. P., & SONS CAL/9
   TYP/PI PISTOL SEMI-AUTOMATIC MOD/SP2022 BLUED
   DOT/20160106 BBL/3-8 UOM/IN COL/BLACK MAT/STNLS, POLYMER
   *** PURCHASER INFORMATION ***
   NAM/ABRERA, ARNOLD JUATON DOB/        OLN/
   ADR/9921 YELLOWFIN WAY
   CTY/ELK GROVE ST/CA ZIP/95757 CCC/3400
   *** DEALER INFORMATION ***
   DLR/RIVER CITY GUN EXCHANGE, INC DID/20279
   DDD/2370 FRUITRIDGE RD
   DCY/SACRAMENTO DST/CA DZC/95822 DCC/3400 DTN/916-428-0377
   ORI/CA0340400 - SACRAMENTO PD OCA/T9865560
   FCN/4301602100840


   CHECKING NCIC
   END AFS RESPONSE.
```

4DPNHN57J8Z.IG

CA0340H00 RE: SER/32653888
RESPONSE TO QGB INQUIRY

DATA IN AFS.

* SAFEKEEPING
SER/32653888 MAK/SR STURM, RUGER & CO CAL/380
TYP/PI PISTOL SEMI-AUTOMATIC MOD/LC380CA
DOT/20201227 BBL/3
ORI/CA0340H00 - ELK GROVE PD OCA/20007851
NOA/N
MIS/BLACK FINISH, PLASTIC GRIP
FCN/0532036304834

* DROS - DEALER SALE
SER/32653888 MAK/SR STURM, RUGER & CO CAL/380
TYP/PI PISTOL SEMI-AUTOMATIC MOD/LC380CA BLK 03253
DOT/20160318 BBL/3-12 UOM/IN COL/BLACK MAT/ALLOY; PLYMR
*** PURCHASER INFORMATION ***
NAM/ABRERA,EUGINIE LIANG DOB/█████████ OLN/█████████
ADR/9921 YELLOWFIN WAY
CTY/ELK GROVE ST/CA ZIP/95757 CCC/3400
*** DEALER INFORMATION ***
DLR/MTG FIREARMS INC DID/22031
DDD/9174 FRANKLIN BLVD STE B
DCY/ELK GROVE DST/CA DZC/95758 DCC/3400 DTN/916-525-5229
ORI/CA0340000 - SACRAMENTO CO SHERIFF'S OFFICE OCA/TA279099

FCN/4261608802142


CHECKING NCIC
END AFS RESPONSE.

4DPNHN57J8Z.IJ
CA0340H00
NO RECORD SER/32653888

4DPNHN57JKZ.IG

CA0340H00 RE: SER/B6215
RESPONSE TO QGB INQUIRY

DATA IN AFS.

* SAFEKEEPING
SER/B6215 MAK/DLN DEL-TON INC CAL/556
TYP/RI RIFLE SEMI-AUTOMATIC MOD/DTI 15
DOT/20201227 BBL/17
ORI/CA0340H00 - ELK GROVE PD OCA/20007851
NOA/N
MIS/BREAK TOP RIFLE, BLACK FINISH, PLASTIC PISTOL GRIP, SYNTHETIC

TELESCOPIC STOCK, FUNCTIONING BULLET BUTTON
FCN/0532036304884

* DESTROYED
SER/B6215 MAK/SSS SAUER, J. P., & SONS CAL/300
TYP/RB RIFLE BOLT ACTION MOD/200
DOT/20000518
ORI/CA0150200 - BAKERSFIELD PD OCA/9545171
NOA/N
MIS/CALIBUR 3006
FCN/2110013900456

CHECKING NCIC
END AFS RESPONSE.

4DPNHN57JKZ.IJ
CA0340H00
NO RECORD SER/B6215

4DPNHN57JSZ.IG

CA0340H00 RE: SER/RA09011623
RESPONSE TO QGB INQUIRY

DATA IN AFS.

* SAFEKEEPING - *MULTIPLE CALIBER GUN
SER/RA09011623 MAK/RGO ROGGIO ARSENAL CAL/8888
TYP/RI RIFLE SEMI-AUTOMATIC MOD/RA 15
DOT/20201227 BBL/17
ORI/CA0340H00 - ELK GROVE PD OCA/20007851
NOA/N
MIS/BREAK TOP RIFLE, BLACK FINISH, PLASTIC PISTOL GRIP, SYNTHETIC

TELESCOPIC STOCK, FUNCTIONING BULLET BUTTON, FORWARD PISTOL GRIP
FCN/0532036304931

CHECKING NCIC
END AFS RESPONSE.

4DPNHN57JSZ.IJ
CA0340H00
NO RECORD SER/RA09011623

Exhibit "4"

ANNE MARIE SCHUBERT
DISTRICT ATTORNEY

EGP-20-7851

901 G STREET
SACRAMENTO, CA 95814
(916) 874-6218

TEAM:   (SCR)

XRef: 4605545

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SACRAMENTO

THE PEOPLE OF THE STATE OF CALIFORNIA,                    FELONY COMPLAINT

vs.

ARNOLD ABRERA,

                                             Defendant.

The People of the State of California upon oath of the undersigned, upon information and belief complain against the defendant above named for the crime(s) as follows:

## COUNT ONE

On or about December 27, 2020, at and in the County of Sacramento, State of California, the defendant, ARNOLD ABRERA, did commit a felony, namely: a violation of Section 30605(a) of the Penal Code of the State of California, in that said defendant did willfully and unlawfully possess an assault weapon as defined in Penal Code Sections 30510 and 30515, to wit, two semi-automatic assault rifles.

That attached hereto and by this reference incorporated herein is a declaration setting forth facts in support of probable cause for the issuance of a warrant of arrest herein.

SA03404223

1

1118093

I declare upon information and belief and under penalty of perjury that the foregoing is true and correct.

Executed at Sacramento County, California, the 8th day of March, 2021.

_Donna K Gissing_

DONNA GISSING

SACRAMENTO COUNTY DISTRICT ATTORNEY

(916) 874-6218

Telephone Number

AZ

2

1118093

### HOLDING ORDER

_____ It appearing to me that the offense(s) in the within complaint has/have been committed, and that there is sufficient cause to believe that the defendant, ARNOLD ABRERA, is guilty thereof,

_____ The defendant, ARNOLD ABRERA, having waived preliminary hearing to the offense(s) set forth in this complaint,

Exceptions/Additions/Conditions: _____

_____

_____

I order that the defendant be held to answer to same.  In my capacity as Judge of the Superior Court, I deem the within complaint to be an Information and order it filed in the Superior Court.

Date: _____  Dept: _____   _____

Judge of the Superior Court Sitting as Magistrate

3

1118093

## DECLARATION IN SUPPORT OF ARREST WARRANT
### (Made under 2015.5 CCP)

The undersigned hereby declares:

That your declarant is currently employed as a Deputy District Attorney for the County of Sacramento, State of California.

That pursuant to said employment, your declarant has been assigned to investigate allegations that the defendant, ARNOLD ABRERA, did commit the crime(s) as set forth in the attached complaint.

That pursuant to said assignment, your declarant has contacted person(s) having knowledge of said offense(s) and who has/have prepared written reports and/or statements, and/or has received and read written reports and/or statements prepared by others known by your declarant to be law enforcement officers, all of which reports and/or statements are included in a report consisting of 8 page(s), which is attached hereto as Exhibit I and incorporated by references as though fully set forth.

That each of these documents is presently an official record of a law enforcement agency.

WHEREFORE, your declarant prays that a warrant issue for the arrest of the hereinabove-named defendant and that said defendant be dealt with according to law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 8th day of March, 2021, Sacramento, California.


_Donna K Gissing_

_____

DONNA GISSING
Declarant
901 G Street,
Sacramento, California 95814
Sacramento County District Attorney

4

1118093

Exhibit "5"

## Case Information

### ◼ Case Information

**Defendant Name**
ARNOLD ABRERA

**Case Number**
21FE004857

**Filing Date**
03/18/2021

**Charge Document**
Complaint

**Case Status**
Disposed

**Court ID**
34100

### ◼ Aliases

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| ARNOLD | | ABRERA | |
| ARNOLD | JUATON | ABRERA | |

### ◼ Future Hearings

| Date | Time | Dept. | Reason | Outcome |
|---|---|---|---|---|
| No future hearings found. | | | | |

### ◼ Hearing History

**For information on how to request copies of a criminal file, choose one of the following links:**
- For the Public and Non-Government Entities (https://www.saccourt.ca.gov/criminal/records.aspx)
- For the Government Agencies ONLY (https://www.saccourt.ca.gov/criminal/govt-agency-copy-requests.aspx)

**To request a court reporter transcript, you may click on the 'Request' button under 'Request Transcript'.**

**\*\* NOTE:** There is a cost associated with **court reporter transcripts**. When you request a court reporter transcript, you will be contacted by the court reporter regarding the cost and method of payment accepted.

| Date | Time | Dept. | Reason | Outcome | **Request Transcript |
|---|---|---|---|---|---|
| 04/13/2022 | 8:30 AM | 63 | MOTION FOR DISMISSAL | MOTION GRANTED | Request (/PublicCaseAccess/Criminal/RequestCourtReporterTranscript?dept=63&eventDate=04%2F13%2F2022&eventTime=8%: |
| 04/13/2022 | 8:30 AM | 63 | MOTION-OTHER | MOTION GRANTED | Request (/PublicCaseAccess/Criminal/RequestCourtReporterTranscript?dept=63&eventDate=04%2F13%2F2022&eventTime=8%: |
| 04/13/2022 | 8:30 AM | 63 | SETTLEMENT CONFERENCE | DISMISSED | Request (/PublicCaseAccess/Criminal/RequestCourtReporterTranscript?dept=63&eventDate=04%2F13%2F2022&eventTime=8%: |
| 03/09/2022 | 3:00 PM | 62 | ARRAIGNMENT | ARRAIGNED | Request (/PublicCaseAccess/Criminal/RequestCourtReporterTranscript?dept=62&eventDate=03%2F09%2F2022&eventTime=3%: |
| 03/09/2022 | 3:00 PM | 62 | COUNSEL INFORMATION | RETAINED COUNSEL | Request (/PublicCaseAccess/Criminal/RequestCourtReporterTranscript?dept=62&eventDate=03%2F09%2F2022&eventTime=3%: |