Gary W. Gorski CBN: 166526
Attorney at Law
*VETERANS LAW CENTER*
3017 Douglas Blvd., Suite 150
Roseville, CA  95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com
www.VeteransLawCenter.com

Daniel M. Karalash CBN: 176421
Attorney at Law
*STRATEGIC LAW COMMAND*
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
Fax: (916) 520-3930

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD ABRERA,<br><br>         plaintiff,<br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; ANNE MARIE SCHUBERT, in her official capacity as County of Sacramento District Attorney; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE;<br><br>         defendants. | No.  2:22-cv-1162 JAM DB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTIONAGAINST DEFENDANTS GAVIN NEWSOM, in his official capacity as Governor of the State of California, and ROB BONTA, in his official capacity as Attorney General of the State of California**<br><br>**Constitutionality of State Statute Challenge (RULE 132 (Fed. R. Civ. P. 5.1)**<br><br>**Date:** November 15, 2022<br>**Time:** 1:30 p.m.<br>**Hon. Judge:**  John A. Mendez<br>**Location:** Courtroom 6, 14th floor<br>501 I Street<br>Sacramento, CA<br>**Action Filed:** July 5, 2022 |

1

## I.   BACKGROUND AND INTRODUCTION

The Second Amendment guarantees "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II. *United States v. Miller*, 307 U. S. 174 (1939); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 411 (2016); and, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. \_\_\_\_ (2022).

Plaintiff Mr. Abrera, a 48-year-old, has never been arrested and charged with a crime in his entire life. Mr. Abrera was charged with the possession of two modern semi-automatic rifles (i.e., AR-15s). Modern rifles are legal to build, buy, and own under federal law and the laws of 45 states. Modern rifles are popular. He also had his semi-automatic handguns seized. (FAC ¶s 1, 2, 12-15, 56-77, 82-94.)[1]

Without any evidence of a physical altercation, injuries, or aggressive behavior on the part of Plaintiff or his wife, Plaintiff's wife was detained under 5150 because she stated she wanted to kill herself while in an emotional state regarding a marital issue. At the same time, the police seized two semi-automatic handguns owned by Plaintiff's wife. However, the seizure did not stop their; Plaintiff's firearms (two semi-automatic rifles and two semi-automatic pistols) were seized; even though he committed no crime, was not under the influence of alcohol or drugs, was docile and compliant, and made no threat to himself or others. Plaintiff remained at home, deprived of his firearms, while his wife was detained for observation over a three-day period. (FAC ¶s 1, 2, 12-15, 56-77, 82-94.)

Instead of returning Plaintiff's firearms since he was not a person detained or arrested under state law; Defendants instituted a criminal proceeding against Plaintiff for possession of so-called "assault weapons" which were legally purchased in California. (FAC ¶ 87-92.) In addition,

---

[1] The First Amended Complaint ("FAC") is attached to the Declaration of Gary W. Gorski as **Exhibit "1"**)

unbeknownst to Plaintiff, on January 25, 2021, a Petition for Judicial Determination Re: Return of Firearms Welfare & Institutions Code section 8102 was filed by defendant Jonathan P. Hobbs as the City of Elk Grove Attorney, captioned *City of Elk Grove vs. Euginie Abrera*, Sacramento Superior Court case number 34-2021-20000745, attached as **Exhibit "3"** to the First Amended Complaint. (FAC ¶ 83.) <u>Plaintiff was never named as a party</u> to the City's Cal. Welf. & Inst. Code § 8102 petition, though four of the firearms were purchased, owned and possessed by Plaintiff. (FAC ¶ 83, 105.)

Also, unbeknownst to Plaintiff, on March 18, 2021, a <u>Felony Complaint</u> was filed by defendant Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney, charging Plaintiff for possession of two rifles which did not have so-called "bullet-buttons" and because of cosmetic features completely unrelated to the actual functioning of the rifle. (FAC ¶ 87.)

On April 13, 2021, Plaintiff's attorney filed a motion to dismiss the Felony Complaint as legally baseless, and the Court granted Plaintiff's motion. (FAC ¶ 92-95.) The government refused to return all of Plaintiff's firearms, even after the court dismissed the case.

To the extent that the arms were destroyed, they cannot be replaced because they are all banned --- including the handguns since they can longer be sold in California because they are not on an approved roster. (FAC ¶ 97-98, 330-370.)

Plaintiff, who is eligible to exercise his Second Amendment rights and wishes to keep and bear constitutionally protected arms for lawful purposes, filed this action in good faith. But California Code of Civil Procedure § 1021.11, enacted in Section 2 of Senate Bill 1327, punishes litigants and their attorneys for daring to challenge the State's unconstitutional restrictions on this fundamental right, and imposes onerous fee liability on all plaintiffs and attorneys who seek declaratory or injunctive relief against any state or local California gun law and who, for

whatever reason, do not prevail on each claim they bring. (See **Gorski Declaration** in general) That is an unconstitutional attempt to deter and punish those bringing non-frivolous claims to enforce the Second Amendment and other constitutional or statutory limits against California's onerous gun restrictions. (See **Gorski Declaration** in general) Section 1021.11 indefensibly attacks people who own guns or wish to assert their Second Amendment rights. It tramples on the First and Fourteenth Amendments in its unprecedented effort to erase the Second from the Constitution.

## II.   FACTS

### A. SB 1327 is strictly punitive on its face to chill judicial review of unconstitutional firearms restrictions.

On July 22, 2022, California Governor Gavin Newsom signed SB 1327 into law. The bulk of SB 1327 is devoted to creating a private right of action to allow and incent private parties to enforce state laws restricting certain firearms. 2022 Cal. Stat. ch. 146, § 1 (adding Bus. & Prof. Code §§ 22949.60–.71). This case challenges SB 1327's radical effort to suppress pro-Second Amendment litigation by putting civil rights litigants *and their attorneys* on the hook for the government's attorney's fees if a case results in anything short of victory on each and every claim alleged in a complaint.

The bill provides, in relevant part: "Notwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party." 2022 Cal. Stat. ch. 146, § 2 (adding C.C.P. § 1021.11(a)).

Defendants passed such a law for an "improper purpose" --- a tit-for-tat dispute with the

State of Texas over abortion, even though abortion is legal in California, and at the expense of California residents. (FAC ¶s 193, 194, 198, 199-211, 412, 413, 470.) (See **Gorski Declaration** in general)

Unlike any other "fee shifting" statutes, however, SB 1327 says a "prevailing party" ***cannot be a plaintiff*** who challenges a state or local firearm regulation. § 1021.11(e). And it says a government defendant in a firearms case will be treated as a "prevailing party" if the court either "[d]ismisses *any* claim or cause of action" in the case, "regardless of the reason for the dismissal," or "[e]nters judgment in favor of the [government] party" "on *any* claim or cause of action." § 1021.11(b) (emphasis added). In simple terms, government defendants will be able to recover fees if a firearms plaintiff loses *on any claim for any reason* while the plaintiff can only avoid liability for fees if it prevails on *every claim* in the case.

SB 1327 further gives these "prevailing" government defendants three years to bring a fee recovery action in state court, § 1021.11(c), even though the vast majority of firearm-rights litigation is brought in federal court under 42 U.S.C. § 1983, and even though 42 U.S.C. § 1988(b) already provides that "prevailing part[ies]" in such actions may recover "a reasonable attorney's fee as part of [their] costs." Under Section 1988, "a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). By contrast, prevailing governmental defendants may only recover fees when "where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Id*. n.2 (citations omitted).

SB 1327 remarkably asserts that it applies regardless of what any federal court does in an underlying Section 1983 case, and regardless of whether "[t]he court in the underlying action held that any provision of this section is invalid, unconstitutional, or *preempted by federal law*, notwithstanding the doctrines of issue or claim preclusion." § 1021.11(d)(3) (emphasis added).

Injunctive relief is needed to ensure that Plaintiff (and his lawyers) can proceed with this action without facing the threat of liability for significant fees and costs if this litigation is unsuccessful in any, even minor, respect.

Defendants have stated that they will proceed with asserting § 1021.11 unless Plaintiff drops the challenge to the law in this matter. Therefore, Plaintiff has standing to assert this action. (See **Gorski Declaration** in general)

### III.   LEGAL STANDARD

A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Under the Ninth Circuit's sliding-scale approach, a strong showing on one element will compensate for a weaker showing on another element and still support injunctive relief. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

### IV.   ARGUMENT

**A.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS § 1021.11 CLAIMS UNDER THE FIRST AMENDMENT AND SECOND AMENDMENT.**

   i.   C.C.P. § 1021.11's one-way fee-shifting regime violates Plaintiff's First Amendment rights to free speech, petitioning, and association.

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. 1. C.C.P. § 1021.11 violates Plaintiff's rights to petition, to speak, and to associate for those purposes.

California has intentionally ignored Supreme Court precedent on the subject whereby Virginia's passed a law to impede the NAACP's access to the courts. *NAACP v. Button*, 371 U.S.

6

415 (1963). The Supreme Court has also struck down a South Carolina attempt to punish the ACLU's counsel in *In re Primus*, 436 U.S. 412 (1978).

Compared to Virginia's and South Carolina's attempt at impeding civil rights litigation, Section 1021.11 is in a league all its own. There is no historical analog to what California is attempting to do pertaining to a specific provision of the Bill of Rights. Section 1021.11 creates an uneven playing field in the realm of Second Amendment litigation as it targets only plaintiffs challenging firearm regulations and emboldens politicians to pass unconstitutional laws since they will go unchallenged due to the punitive nature of Section 1021.11.

Moreover, Section 1021.11 civil actions will be backed by the unlimited resources of government to obtain civil judgments against its own citizens to punish them for challenging violations of the Second Amendment – this is a slippery slope which must be stopped for other parts of the Bill of Rights will soon be included.

    ii.    <u>C.C.P. § 1021.11 violates the right to petition for a redress of grievances against gun control laws.</u>

The First Amendment right to petition the government for redress of grievances includes the right of access to the courts. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) ("[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition") (internal quotation omitted); *California Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (same); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (same). Indeed, the Supreme Court has long held that public-interest litigation is a protected "form of political expression" that is essential to secure civil liberties, particularly for groups and rights that are politically unpopular: groups "unable to achieve their objectives through the ballot frequently turn to the courts . . . . [U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances." *Button*, 371 U.S. at 429–30.

First Amendment "freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." *Button*, 371 U.S. at 433. "[A] statute broadly curtailing group activity leading to litigation may easily become a weapon of oppression . . . . Its mere existence could well freeze out of existence" the targeted civil litigation. *Id.* at 435–36. Unlike the selective enforcement of general laws to suppress litigation by the NAACP, *id*. at 423–25, California makes no attempt to conceal its true purpose and targets firearms litigants on the face of C.C.P. § 1021.11.

Since *Button*, the Supreme Court has consistently enjoined state action that could chill petitioning activity. *See, e.g.*, *Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 7 (1964) (state cannot "handicap[]" "the right to petition the court" through indirect regulation that "infringe[s] in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest"); *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222–23 (1967) (state cannot "erode [the First Amendment's] guarantees by indirect restraints" on citizens' ability to assert their legal rights).

As the Court explained in *United Mine Workers*, "[t]he First Amendment would . . . be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such." 389 U.S. at 222. Indeed, "[d]eliberate retaliation by state actors against an individual's exercise of this right is actionable under [42 U.S.C.] section 1983." *Soranno's Gasco*, 874 F.2d at 1314.

The obvious and impermissible purpose of § 1021.11 is to give the State and political subdivisions a free hand to regulate firearms, even unconstitutionally, by suppressing litigation that challenges such regulations. In *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001), the

8

Supreme Court struck down a federal law that prohibited recipients of legal services funding from challenging the constitutionality of welfare laws. *Id.* at 547–49. The court found that "the restriction operates to insulate current welfare laws from constitutional scrutiny and certain other legal challenges, a condition implicating central First Amendment concerns." *Id.* at 547. It cautioned that "[w]e must be vigilant when Congress imposes rules and conditions which in effect insulate its own laws from legitimate judicial challenge." *Id.* at 548-49; *see also*, *In re Workers Comp. Refund*, 842 F. Supp. 1211, 1218–19 (D. Minn. 1994) (requiring challengers of statute to pay state's attorney fees "impermissibly burden[ed their] First Amendment right of access to the courts. . . . The legislature may not financially hobble an opponent to protect its enactment."), *aff'd* 46 F.3d 813, 822 (8th Cir. 1995).

As in *Velazquez*, so too here: § 1021.11 "is designed to insulate [California's] interpretation of the Constitution from judicial challenge," 531 U.S. at 548, and is "aimed at the suppression of ideas thought inimical to the Government's own interest," *id.* at 549. California has targeted "members of an unpopular minority" who seek to vindicate an "unpopular cause[ ]" by using fee-shifting as "a weapon of oppression" to "freeze out of existence" firearms-rights litigation. *Button*, 371 U.S. at 434–36. The state cannot "impose[ ] rules and conditions which in effect insulate its own laws from legitimate judicial challenge." *Velazquez*, 531 U.S. at 548.

  iii. <u>C.C.P. § 1021.11 discriminates based on viewpoint, in violation of the First Amendment.</u>

C.C.P. § 1021.11's fee-shifting regime imposes a one-sided burden on those who seek to vindicate their civil rights through firearms litigation. It is a modern-day anti-sedition law, punishing those who would dare challenge the government's views and actions regarding firearms. California targets no other sort of civil rights claim for such treatment. Laws that impose special burdens on disfavored speech and single out disfavored speakers are constitutionally suspect. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564–66 (2011). States are not permitted to

9

advance their policy goals "through the indirect means of restraining certain speech by certain speakers," *id.* at 577, and "may not burden the speech of others in order to tilt public debate in a preferred direction," *id.* at 578–79. Indeed, "the First Amendment is plainly offended" when the government "attempt[s] to give one side of a debatable public question an advantage in expressing its views to the people." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 785–86 (1978). Because the California legislature has "target[ed] . . . particular views taken by speakers on a subject" and based the fee provisions of § 1021.11 on the "motivating ideology . . . of the speaker," "the violation of the First Amendment is . . . blatant." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). "[A]ll citizens, regardless of the content of their ideas, have the right to petition their government." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 196 (2003). California has crossed the constitutional line by taking sides and suppressing firearms advocates' access to the courts. Unsurprisingly, California's outlandish fee-shifting statute is without direct precedent. Section 1021.11 falls outside any permissible historical limitation on the freedoms of speech, petitioning, and assembly. *Cf. United States v. Stevens*, 559 U.S. 460, 468–71 (2010) (placing the burden on the government to show that a type of speech belongs to one of the "historic and traditional categories" of constitutionally unprotected speech); *Bruen*, 142 S. Ct. at 2130 (arms restrictions allowed only if supported by "Nation's historical tradition of firearm regulation"). The lack of historical precedent alone should be sufficient to condemn § 1021.11 under the First Amendment.

Furthermore, Defendants cannot identify any interest the government could assert as compelling, or even permissible, in support of this statute. Defendants Newsom and Bonta have declared war on the Second Amendment just because they have a personal disdain for this nations long history of firearm ownership. The are playing politics with Plaintiff's fundamental

Simply put, this is simply mob rule on the part of the defendants to punish any attorney or

plaintiff who is involved in Second Amendment litigation; "a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973).

Moreover, unilateral fee-shifting statutes almost uniformly allow fee awards only in favor of plaintiffs to *encourage litigation* seeking to vindicate important rights. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418–19 (1978) ("when a . . . court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law," but "these policy considerations . . . are not present in the case of a prevailing defendant"); *see also Turner v. Ass'n of Am. Med. Colls.*, 193 Cal.App.4th 1047, 1060 (2011) (unilateral fee shifting provisions "reflect the legislature's intent to encourage injured parties to seek redress—and thus simultaneously enforce public policy—in situations where the otherwise would not find it economical to sue") (internal quotation marks omitted).

In sum, Plaintiff is highly likely to prevail on the merits because § 1021.11 blatantly violates the First Amendment.

**B.    C.C.P. § 1021.11 VIOLATES THE EQUAL PROTECTION CLAUSE.**

In addition to the arguments above, § 1021.11 also violates the Equal Protection Clause. When a state statute burdens a <u>fundamental right</u>, that statute receives heightened scrutiny under the Fourteenth Amendment's Equal Protection Clause. *Romer v. Evans*, 517 U.S. 620, 631 (1996). Statutes that treat individuals differently based on their race, alienage, or national origin "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1986). Statutes infringing on fundamental rights are subject to the same searching review. *See, e.g.*, *Zablocki v. Redhail*, 434 U.S. 374 (1978) (right to marry); *Shapiro v. Thompson*, 394 U.S. 618 (1969) (right to interstate travel).

11

While such forms of discrimination prejudicing First and Second Amendment rights would be subject to, and plainly fail, "the most exacting scrutiny," *Clark v. Jeter*, 486 U.S. 456, 461 (1988), the classifications at issue here could not survive any level of scrutiny given their improper purpose to burden the exercise of such rights. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 922 (9th Cir. 2012)

To establish that Defendants were motivated by an "improper purpose", Newsom admits his improper purpose "on the basis of an impermissible ground such as race, religion or exercise of . . . constitutional rights." [emphasis added] *United States v. Kidder*, 869 F.2d 1328, 1336 (9th Cir. 1989) (quoting *United States v. Moody*, 778 F.2d 1380, 1386 (9th Cir.1985), *amended on other grounds*, 791 F.2d 707 (9th Cir. 1986)). The arguments above makes clear that Plaintiff is entitled to declaratory relief. The facts are not in dispute as the improper purpose has been so stated by Defendants. See *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 922 (9th Cir. 2012).

Defendants Newsom and Bonta have the shared vision to retaliate against the State of Texas over abortion laws, and that by punishing Plaintiff (and the People), they are exacting some type of revenge at the expense of the People of California.

### C.   C.C.P. § 1021.11 VIOLATES THE DUE PROCESS CLAUSE.

C.C.P. § 1021.11 also violates the Due Process Clause by penalizing attorneys arguing Second Amendment claims. As addressed previously, the fee-shifting provision imposes significant burdens on the attorney-client relationship that themselves violate the Due Process Clause. The Sixth Amendment right to counsel necessarily includes the right to a "conflict-free attorney." *Paradis v. Arave*, 130 F.3d 385, 391 (9th Cir. 1997). A conflicted attorney can, of course, "affect[] the attorney's performance." *Id.* In that context, "government interference with a defendant's relationship with his attorney may render counsel's assistance so ineffective as to violate his Sixth Amendment right to counsel and his Fifth Amendment right to due process of

law." *United States v. Irwin*, 612 F.2d 1182, 1185 (9th Cir. 1980). (See **Gorski Declaration** in general)

If this law is not enjoined, then starting January 1, 2023, all Second Amendment cases in California will be brought by plaintiffs whose attorneys have the appearance of a conflict because the attorneys themselves—and their firms— will be on the hook for any failed claims. Undoubtedly, "the procedural component of <u>the due process clause protects individuals' rights to fundamentally fair procedures</u> before they are deprived of their liberty rights." *Coleman v. McCormick*, 874 F.2d 1280, 1286 (9th Cir. 1989). And it is fundamentally *un*fair for California to place clients against their attorneys like it did with § 1021.11.

**D.  SECTION 1021.11 VIOLATES THE ARTICLE IV PRIVILEGES AND IMMUNITIES CLAUSE AND THE FOURTEENTH AMENDMENT'S PRIVILEGES AND IMMUNITIES CLAUSE.**

Article IV provides that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." While the Fourteenth Amendment provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

In *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002), the United States Supreme Court stated:

> Decisions of this Court have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, *Chambers* v. *Baltimore & Ohio R. Co.,* 207 U.S. 142, 148, 52 L. Ed. 143, 28 S. Ct. 34, 6 Ohio L. Rep. 498 (1907); *Blake* v. *McClung,* 172 U.S. 239, 249, 43 L. Ed. 432, 19 S. Ct. 165 (1898); *Slaughter-House Cases,* 83 U.S. 36, 16 Wall. 36, 79, 21 L. Ed. 394 (1873), the First Amendment Petition Clause, *Bill Johnson's Restaurants, Inc.* v. *NLRB,* 461 U.S. 731, 741, 76 L. Ed. 2d 277, 103 S. Ct. 2161 (1983); *California Motor Transport Co.* v. *Trucking Unlimited,* 404 U.S. 508, 513, 30 L. Ed. 2d 642, 92 S. Ct. 609 (1972), the Fifth Amendment Due Process Clause, *Murray* v. *Giarratano,* 492 U.S. 1, 11, 106 L. Ed. 2d 1, 109 S. Ct. 2765, n. 6 (1989) (plurality opinion); *Walters* v. *National Assn. of Radiation Survivors,* 473 U.S. 305, 335, 87 L. Ed. 2d 220, 105 S. Ct. 3180 (1985); and the Fourteenth Amendment Equal Protection, *Pennsylvania* v. *Finley,* 481 U.S. 551, 557, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), and

Due Process Clauses, *Wolff* v. *McDonnell,* 418 U.S. 539, 576, 41 L. Ed. 2d 935, 94 S. Ct. 2963, 71 Ohio Op. 2d 336 (1974); *Boddie* v. *Connecticut,* 401 U.S. 371, 380-381, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971).

For this additional reason, which subsumes all prior arguments, § 1021.11 is unconstitutional on its face.

### E. PLAINTIFF WILL SUFFER IMMEDIATE, IRREPARABLE HARM ABSENT AN INJUNCTION.

For purposes of preliminary relief, the "loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam); *see also* 11A Charles Alan Wright, et al., *Federal Practice & Procedure* § 2948.1 (3d ed. 2013) ("When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary."). (See **Gorski Declaration** in general)

As explained above, § 1021.11 violates numerous constitutional rights. If applied to Plaintiff, they would impose immediate and *per se* irreparable harm that cannot be remedied later by damages. The irreparable harm from the denial of any one of those rights satisfies the irreparable harm part from itself. "In addition, the burden and expense of litigating the issue . . . would unduly impinge on the exercise of the constitutional right[s]." *Bellotti*, 435 U.S. at 786 n.21. Furthermore, § 1021.11's chilling effect is evident in this very case. Absent a preliminary injunction, Plaintiff will face the untenable choice whether to pursue his constitutional claims or to dismiss for fear of crippling fee liability if doesn't run the table on all of his claims. Forgoing claims and litigation are irreparable injuries that cannot later be undone or solved by (likely unavailable) damages.

### F. THE REMAINING FACTORS SUPPORT AN INJUNCTION.

Both the balance of the equities and the public interest—which merge here, *Nken v. Holder*,

556 U.S. 418, 435 (2009)—strongly support relief. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Those factors tip overwhelmingly in Plaintiff's' favor because California has no legitimate interest in enforcing laws like § 1021.11.

In contrast, the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *accord Jones v. Bonta*, 34 F.4th at 731 ("We note for the district court's reconsideration that 'the government suffers no harm from an injunction that merely ends unconstitutional practices.'"). Accordingly, entering an injunction strikes the necessary balance by ensuring maintenance of the status quo.

### G. THIS COURT SHOULD ISSUE THE REQUESTED INJUNCTION WITHOUT SECURITY.

Although the Federal Rules generally require plaintiffs to give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," Fed. R. Civ. P. 65(c), there is no reason to do so here, as the requested injunction would not impose any costs or damages to the Defendants. In such circumstances, courts can "dispense with the filing of a bond." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

### V. CONCLUSION

C.C.P. § 1021.11 is unconstitutional and impose enormous and irreparable harms on the people of California. This Court should enter an injunction now to prevent those harms from going into effect.

DATED: October 6, 2022

Respectfully submitted,
LAW OFFICES OF GARY W. GORSKI
*/s/ Gary W. Gorski*
GARY W. GORSKI
Attorney for Plaintiff Arnold Abrera

15