**Gary W. Gorski, Esq. CBN: 166526**
*VETERANS LAW CENTER*
3017 Douglas Blvd., Suite 150
Roseville, CA  95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com

**Daniel M. Karalash, Esq. CBN: 176421**
*STRATEGIC LAW COMMAND*
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD ABRERA,<br><br>  plaintiff,<br><br>  v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; ANNE MARIE SCHUBERT, in her official capacity as County of Sacramento District Attorney; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE;<br><br>  defendants. | No.  2:22-cv-1162 JAM DB<br><br>**REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTIONAGAINST DEFENDANTS GAVIN NEWSOM, in his official capacity as Governor of the State of California, and ROB BONTA, in his official capacity as Attorney General of the State of California**<br><br>**Constitutionality of State Statute Challenge (RULE 132 (Fed. R. Civ. P. 5.1)**<br><br>**Date:** November 15, 2022<br>**Time:** 1:30 p.m.<br>**Hon. Judge:**  John A. Mendez<br>**Location:** Courtroom 6, 14th floor<br>501 I Street<br>Sacramento, CA<br>**Action Filed:** July 5, 2022 |

**REPLY - INTRODUCTION**

  Defendants do not oppose the requested declaratory and injunctive relief on the merits.

Instead, Defendants attempt to moot Plaintiff's claim and divest this court of jurisdiction by

1

manipulating the facts and ignoring the chilling effect the statute has on the attorney-client relationship, which creates an inherent conflict of interest in an attorney becomes a *de facto* party any Second Amendment case. (**Gorski Decl. Dkt. 19-2**, ¶s 18-20, 23, 27, 30, 33.)

As part of their opposition, Defendants cite a recent order (dkt # 23.) denying a motion for preliminary injunction in *Defense Distributed v. Bonta*, No. CV 22-6200-GW-AGRx (C.D. Cal. Oct. 24, 2022), relating in part to SB 1327. In that case, Defendant Bonta apparently made the same promise not to use SB 1327, and apparently the same is true in another case. (e.g., Order in *Renna v. Bonta* Case 20-cv-02190-DMS-DEB Document 60 (U.S. Dist. Ct., SD Cal. 09/30/22)).[1]

In *People v. Abrera*, Case Number 21FE004857, after a prior continuance so the defendant District Attorney could file an opposition, and after argument on the matter on October 31, 2022, the judge ordered the parties back in court on December 2, 2022, for further argument and/or a statement of decision for the return of two semi-automatic rifles. Defendants argue that AB 1327 does not apply to criminal proceedings. That is not what the statute says. (**Karalash Decl. ¶s 2-4.**) It specifically targets any request for equitable relief, which is the same relief being sought in *People v. Abrera,* which is an administrative action for the return of property; the criminal case being dismissed by the court. The statute cannot be any clearer:

> § 1021.11. (a) … <u>any person</u>, … <u>attorney</u>, or law firm, <u>who seeks declaratory</u> … <u>relief to prevent this state</u>, … <u>a governmental entity or public official in this state</u>, or a person … <u>from enforcing any statute</u>, … or any other type of law <u>that regulates or restricts firearms</u>, … is jointly and severally liable to pay the attorney's fees and costs …. [emphasis added.]

I. **THE GOVERNMENT'S SO-CALLED "PROMISE" DOES NOT NEGATE THE IRREPREABLE HARM AND RELIEF BEING SOUGHT.**

A "promise" from the government in an email that they won't seek attorney fees under Senate

---

[1] If defendants have no intent of obtaining attorney fees, then why was SB 1327 passed so quickly? Defendants are essentially arguing that they forced SB 1327 through the legislature with no intent of it being used – surely then, the real purpose of the law is to act as a deterrent if there is no intent to enforce it. That alone is ground for it to be enjoined.

2

Bill (SB) No. 1327 is meaningless, given their intention to go on the "offensive" in Second Amendment litigation by ramming SB 1327 through the legislature with the specific intent to punish people like Plaintiff and his attorneys who dare to challenge a gun law. (**Gorski Decl.** ¶s 3-12, 16, 24-30; **Abrera Decl.** ¶s 3-12, 16, 24-30; **Karalash Decl.** ¶ 8-19.) Besides, no other government defendant in this case, or any other case, made the "promise" that they won't seek attorney fees under SB 1327.

      A. <u>Defendants attempt to manipulate Plaintiff's Article III standing with a so-called "promise" should not be countenanced by this Court, and since the issue is the constitutionality of a state statute, Attorney General Bonta and Governor Newsom are both necessary and proper parties because the other named county and municipal defendants, who have not committed to the "promise", lack authority to defend a state statute.</u>

Defendants' "promise" defense was taken from the playbook of the State <u>and</u> City of New York. The dissent by Justice Alito in *N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 140 S. Ct. 1525, 1527-28 (2020) turns out to be a prophecy of things to come regarding the new defense of "mootness" and lack of standing in Second Amendment cases:

> By incorrectly dismissing this case as moot, the Court permits our docket to be manipulated in a way that should not be countenanced. Twelve years ago in *District of Columbia* v. *Heller*, 554 U. S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), we held that the Second Amendment protects the right of ordinary Americans to keep and bear arms. Two years later, our decision in *McDonald* v. *Chicago*, 561 U. S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010), established that this right is fully applicable to the States. Since then, the lower courts have decided numerous cases involving Second Amendment challenges to a variety of federal, state, and local laws. Most have failed. We have been asked to review many of these decisions, but until this case, we denied all such requests.
>
> On January 22, 2019, we granted review to consider the constitutionality of a New York City ordinance that burdened the right recognized in *Heller*. Among other things, the ordinance prohibited law-abiding New Yorkers with a license to keep a handgun in the home (a "premises license") from taking that weapon to a firing range outside the City. Instead, premises licensees wishing to gain or maintain the ability to use their weapons safely were limited to the seven firing ranges in the City, all but one of which were largely restricted to members and their guests.

> In the District Court and the Court of Appeals, the City vigorously and successfully defended the constitutionality of its ordinance, and the law was upheld based on what we are told is the framework for reviewing Second Amendment claims that has been uniformly adopted by the Courts of Appeals. One might have thought that the City, having convinced the lower courts that its law was consistent with *Heller*, would have been willing to defend its victory in this Court. But once we granted certiorari, both the City and the State of New York sprang into action to prevent us from deciding this case. Although the City had previously insisted that its ordinance served important public safety purposes, our grant of review apparently led to an epiphany of sorts, and the City quickly changed its ordinance. And for good measure the State enacted a law making the old New York City ordinance illegal.
>
> Thereafter, the City and *amici* supporting its position strove to have this case thrown out without briefing or argument. The City moved for dismissal "as soon as is reasonably practicable" on the ground that it had "no legal reason to file a brief." Suggestion of Mootness 1. When we refused to jettison the case at that early stage, the City submitted a brief but "stress[ed] that [its] true position [was] that it ha[d] no view at all regarding the constitutional questions presented" and that it was "offer[ing] a defense of the . . . former rul[e] in the spirit of something a Court-appointed *amicus curiae* might do." Brief for Respondents 2.
>
> A prominent brief supporting the City went further. Five United States Senators, four of whom are members of the bar of this Court, filed a brief insisting that the case be dismissed. If the Court did not do so, they intimated, the public would realize that the Court is "motivated mainly by politics, rather than by adherence to the law," and the Court would face the possibility of legislative reprisal. Brief for Sen. Sheldon Whitehouse et al. as *Amici Curiae* 2-3, 18 (internal quotation marks omitted).
>
> Regrettably, the Court now dismisses the case as moot. …

Because of the New York's success in mooting *N.Y. State Rifle & Pistol Ass'n*, California is following suit. Instead of upholding their oath to protect the Constitution, Defendants are abusing their position of public trust for their own political machinations.

Plaintiff Abrera is not just seeking to enjoin State Defendants from using the fee-shifting provision of SB 1327 against him in this case (contrary to Opposition p. 1, line 2), he is seeking to have the statute "declared" unconstitutional because its mere presence on the books is antithetical to the First Amendment due to its chilling effect on all potential plaintiff citizens vindicating their rights under the Second Amendment as well as their attorneys.

4

In the words of Justice Jackson:

> "The framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority be imposed generally. Conversely, nothing opens the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected." *Railway Express Agency, Inc. v. New York*, 336 U. S. 106, 112-113 (1949) (concurring opinion).

Under Article III of the Constitution, a suit seeking <u>declaratory relief</u> is justiciable in federal court when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). "The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979). In making this evaluation, courts examine the immediacy of the threat of harm to a plaintiff in light of the nature of the statute the plaintiff seeks to challenge. See, e.g., *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

> We begin our analysis of this issue by pointing out that the Supreme Court has often found a case or controversy between a plaintiff challenging the constitutionality of a statute and an enforcement official who has made no attempt to prosecute the plaintiff under the law at issue. In *Doe v. Bolton*, 410 U.S. 179, 35 L. Ed. 2d 201, 93 S. Ct. 739 (1973), the Court found a justiciable controversy between doctors subject to prosecution under criminal abortion statutes and the state attorney general, "despite the fact that the record does not disclose that any one of [the doctors] has been prosecuted, or threatened with prosecution." *Id.* at 188. Recently, in *Diamond v. Charles*, 476 U.S. 54, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1986), the Court stated that "the conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III." *Id.* 106 S. Ct. at 1704.
>
> The legal principle underlying these decisions is the familiar doctrine that

> "[a] suit against a state officer in his official capacity is, of course, a suit against the State." *Id.* at 1701 n.2. <u>Thus a controversy exists not because the state official is himself a source of injury, but because the official represents the state whose statute is being challenged as the source of injury.</u> *See Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099, 3105-06, 87 L. Ed. 2d 114 (1985). In sum, we conclude that a plaintiff challenging the constitutionality of a state statute has a sufficiently adverse legal interest to a state enforcement officer sued in his representative capacity to create a substantial controversy when, as here, the plaintiff shows an appreciable threat of injury flowing directly from the statute. [emphasis added]

*Wilson v. Stocker*, 819 F.2d 943, 946-47 (10th Cir. 1987)

The Attorney General tries to distance himself from the state law, but a dispute with state's passage of AB 1327 suffices to create a dispute with the state's enforcement officer sued in a representative capacity. A controversy exists not because the state official is himself a source of injury but because the official represents the state whose statute is being challenged as the source of injury." *Wilson v. Stocker*, 819 F.2d 943, 947 (10th Cir. 1987).

    B.  <u>Defendants' "Promise" fails to negate Plaintiff's injury-in-fact and liability exposure in this case.</u>

The gravamen of the Attorney General's argument in this case and in *Defense Distributed* is that unless Plaintiff can show that the Attorney General will enforce the statute <u>in this action</u>, there is no dispute with the Attorney General. The Attorney General has not, however, disclaimed any intention of exercising his enforcement authority in other cases --- only in this case. In short, Defendants are arguing to wait to see what happens in the future in another case as to State only.

It appears defendant Bonta is also adopting an old argument favored by the Attorney General of the Commonwealth of Virginia 1988 and 1991. In *American Booksellers Association v. Commonwealth*, 802 F.2d 691 (4th Cir. 1986), *questions certified*, 484 U.S. 383, 98 L. Ed. 2d 782, 108 S. Ct. 636, *vacated on other grounds*, 488 U.S. 905, 102 L. Ed. 2d 243, 109 S. Ct. 254 (1988), Virginia argued that booksellers could not challenge a new state antipornography law until someone broke it and was punished. The 4th Circuit brushed the argument aside in a footnote

(802 F.2d at 694 n.4):

> The facts of this case distinguish it from our recent decision in *Doe v. Duling*, 782 F.2d 1202 (1986), which challenged on privacy grounds a nineteenth century fornication statute which had not been enforced in private homes for years, if not decades. In the instant case, the amendment is newly enacted. It would be unreasonable to assume that the General Assembly adopted the 1985 amendment without intending that it be enforced.

The Supreme Court agreed (484 U.S. at 393):

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. <u>Further, the alleged danger of the statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution</u>.

The Supreme Court's comments in *American Booksellers* apply squarely to this suit. <u>We see no reason to assume that the Virginia legislature enacted this statute without intending it to be enforced</u>. …

*Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73, 76-77 (4th Cir. 1991)

The state has not suggested that the newly enacted law will not be enforced by county and municipal defendants in this case, and there is no reason to assume otherwise.

Moreover, assuming arguendo, without conceding the point that the State's (i.e. Newsom and Bonta) promise somehow eliminates the "risk of injury" as to the State, Plaintiff still has Article III standing to seek relief against the State because the <u>State is the proper party</u>, <u>and only party</u>, Plaintiff can seek relief against because the State passed the law and Defendants Newsom and Bonta are the <u>only</u> gatekeepers of the law --- and the only necessary and proper parties to defend the laws constitutionality. Because the law on its face has a chilling effect, regardless of any defendants' decision to exercise their right to seek fees under the law, Plaintiff is still injured because of the laws deterrent effect.

A declaration and injunction striking the law down as unconstitutional against State defendants will eliminate the risk of injury to Plaintiff when municipal defendants attempt to

7

exercise the power granted by AB 1327.

  C. <u>Defendants' citation to in *Defense Distributed v. Bonta*, No. CV 22-6200-GW-AGRx (C.D. Cal. Oct. 24, 2022) actually supports Plaintiff's position.</u>

 First, the state was the only party in *Defense Distributed*. Unlike this case, whereby county and municipal defendants are named as parties, and who can enforce SB 1327 against Plaintiff and his attorneys in this case and any other case.

 Second, when applying *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) in *Defense Distributed*, the court stated at pages 3-4:

> Defendants have made it clear that they have no intention of enforcing its provisions against DD – i.e., seeking attorneys' fees and costs pursuant to that authority – in connection with this litigation. Whatever that might or might not mean with regard to mootness and/or standing, that is not the issue here – for purposes of a preliminary injunction motion, it means that DD faces no likely irreparable harm/injury.

 The *Defense Distributed* ruling was limited to the fact that the state defendants were not seeking attorney fees "… in connection with this litigation." It did not address the chilling effect SB 1327 had on the First Amendment. Most importantly, other than State of California defendants, there were no other parties to that litigation.

 In addition, at footnote 11, page 8, the court in *Defense Distributed* had this to say:

> The Court would note that, but for Defendants' commitment not to pursue attorneys' fees or costs from DD or its attorneys pursuant to Section 2 of SB 1327 in connection with this action, <u>it would entertain reservations as to SB 1327's impact on DD's First Amendment rights</u>. [emphasis added]

 Therefore, the *Defense Distributed* court was not convinced of SB 1327's constitutionality under the First Amendment and its chilling effect.

  D. <u>Defendants' "Promise" ignores the chilling effect SB 1327 has on the First and Second Amendment and ignores the type of declaratory and injunctive relief being sought.</u>

 Unlike the plaintiffs in *Defense Distributed*, Plaintiff has made it perfectly clear that he is **not** only seeking to enjoin the state from using SB 1327 against him in this case, or any other case he may present, but he is also seeking a declaration from the Court finding that SB 1327 is

unconstitutional on its face because of its chilling effect from its mere presence of the books; combined with the fact that it was just rushed through the legislature and Defendants statements about going on the "offensive."

In his Notice of Motion, Plaintiff makes this very clear:

- "Because SB 1327's fee-shifting penalty is unconstitutional, Plaintiffs seek declaratory and injunctive relief to invalidate Section 1021.11 and enjoin its application." (**Notice of Motion,** 3:24.)

- "Plaintiff seeks to declare C.C.P. § 1021.11 unconstitutional, and enjoin enforcement of such law as-applied, and further as-written." (**Notice of Motion**, 4:16.)

- "Plaintiff filed this civil rights action under 42 U.S.C. § 1983 for injunctive and declaratory relief." (**Notice of Motion**, 5:2.)

The Supreme Court has repeatedly found that declaratory judgments "closely resemble" injunctive relief, the quintessential equitable remedy. *CIGNA Corp. v. Amara*, 563 U.S. 421, 440 (2011); see *California v. Grace Brethren Church*, 457 U.S. 393, 408-09 (1982) (holding that the Tax Injunction Act "prohibits declaratory as well as injunctive relief" and noting that "there is little practical difference between injunctive and declaratory relief").

Therefore, not only will a declaration from this Court finding SB 1327 unconstitutional stop the chilling effect the statute has on Plaintiff and his attorneys in this case, it will also remove the chilling effect it has on Plaintiff, his attorneys, other potential plaintiffs, and other potential attorneys in both pending and future cases brought under the Second Amendment.

> While injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification, *see generally Zepeda,* 753 F.2d at 727-28 & n.1, "an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit - even if it is not a class action - *if such breadth is necessary to give prevailing parties the relief to which they are entitled*." *Bresgal v. Brock,* 843 F.2d 1163, 1170-71 (9th Cir. 1987) (emphasis in original). While there are only fourteen named plaintiffs in this case, spread among San Diego, Orange, Los Angeles, and Ventura counties, and an unknown number of members of Easyriders, an injunction against the CHP statewide is appropriate. Because the CHP policy regarding helmets is formulated on a statewide level, other law enforcement agencies follow the CHP's policy, and it is unlikely that law enforcement officials who were not restricted by an injunction governing their treatment of all motorcyclists would inquire before citation into whether a motorcyclist was among the named plaintiffs or a member of Easyriders, the plaintiffs would not receive the complete relief to which they are entitled without

9

statewide application of the injunction.

*Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996)

    E.  <u>If SB 1327 is not declared unconstitutional on its face, an act of Congress (i.e., 42 U.S.C. § 1988) will be voided, and therefore, the injury is immediate.</u>

It is well settled that Congress passed 42 U.S.C. § 1988 with the intent to incentivize private attorneys to represent citizens who do not have the means to present meritorious civil rights claims against state and municipal actors. It is also well settled law that 42 U.S.C. § 1988 is not a two-way attorney fee provision. When Congress enacted § 1988, it was not for the purpose of chilling a citizen's right to challenge the government's encroachment and infringement of citizens' civil liberties. The purpose was just the opposite. The purpose was to give civil rights attorneys an incentive to accept cases in which the actual damages may be minimal, but the underlying cause noble, in order to protect and maintain the integrity of the Bill of Rights and the United States Constitution. As such, the burden on prevailing defendants is high under § 1988. Under current law, in order for the government to recover attorney fees in a 42 U.S.C. § 1983 action, the government must prove that a plaintiff acted in either an unreasonable, frivolous, meritless, or vexatious manner. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

However, SB 1327 essentially nullifies 42 U.S.C. § 1988 when the action relates to the Second Amendment litigation only; the intent of which is clear.

Therefore, because SB 1327 abrogates a federal statutory right granted by Congress, the harm is immediate and irreparable on the face of the statute, regardless as to what the government promises not to do.

Plaintiff is entitled to the declaratory and injunctive relief sought because SB 1327 abrogates § 1988.

    F.  <u>The "promise" without acceptance is illusory and meaningless.</u>

Unlike *Defense Distributed*, the "promise" is not the relief being sought. Plaintiff's counsel

made it perfectly clear that the relief being sought was a stipulated judgment prohibiting enforcement of SB 1327 by "all individual and government defendants" in any action, past, present, or future. O'Brien Decl., ¶ 2, **Exhibit "1"**. Other than Defendants Bonta and Newsom, no other government defendant promised not to use the SB 1327 against Plaintiff and his attorneys. Therefore, for complete relief, Plaintiff needs a declaration from this Court that SB 1327 is unconstitutional on its face, and to enjoin the Defendants Bonta and Newsome from using SB 1327. This relief will obviously then benefit Plaintiff and the public by precluding all other governmental bodies (including defendants in this case) from seeking attorney fees in Second Amendment cases.

Defendants "promise" was illusory. Besides, it was not accepted. The promise is illusory because SB 1327 violates the First Amendment---and Defendants cannot promise a fundamental right. "An illusory promise is no promise at all and is not a sufficient consideration for a return promise." *Automatic Vending Co. v. Wisdom*, 182 Cal. App. 2d 354, 357 (1960).

A stipulation is agreement between counsel respecting business before court, and like any other agreement or contract, it is essential that parties or their counsel agree to its terms. *Palmer v. Long Beach,* 33 Cal. 2d 134(Cal. 1948); see also, Cal. Civ. Code § 1549.

Because there was no acceptance and no stipulation, and the promise was illusory, the governments "promise" is unenforceable by Plaintiff in this action or any other action; and it is not binding on any other party defendant in this case (i.e., Elk Grove and County of Sacramento).

In addition, there is a myriad of cases whereby the government promised not to do something and does it anyway. (e.g., "Although the prosecution initially honored its promise to dismiss the misdemeanor charge, it then breached the plea agreement by moving to amend the complaint to charge Cuero's prior assault conviction as a second strike." *Cuero v. Cate*, 827 F.3d 879, 887 (9th Cir. 2016).)

Again, the mere presence of the statute on the books causes irreparable harm as it chills First and Second Amendment rights, and thus, the "promise" is no relief at all because the law interferes with the attorney-client relationship by creating a natural conflict of interest and ineffective assistance of counsel. (**Gorski Decl.** ¶s 13, 16, **19-23**, **27**, 33, 39, 42; **Abrera Decl.** ¶s 21, 25, 35, 41; **Karalash Decl.** ¶ 7, 11, 15.)

## II. DEFENDANT FAILS TO APPLY THE *WINTER* FACTORS AS TO THE CHILLING EFFECT SB 1327 HAS ON PLAINTIFF'S FIRST AMENDMENT RIGHTS, THUS, DECLARATORY AND INJUNCTIVE RELIEF IS APPROPRIATE

Plaintiff's First Amendment argument warrants a deeper analysis than what Defendants propose in their opposition in citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) in a vacuum. In light of the Ninth Circuit's permissive case law regarding preliminary injunctive relief to protect First Amendment rights, it is appropriate to look at the chilling effect SB 1327 has not only on this litigation, but other cases Plaintiff may file as well as the public in general. See *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002), abrogated on other grounds by *Winter*, 555 U.S. 7; *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983))

> Both this court and the Supreme Court have repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); *see also Sammartano*, 303 F.3d at 973-74; *S.O.C., Inc.*, 152 F.3d at 1148; *Jacobsen v. U.S. Postal Service*, 812 F.2d 1151, 1154 (9th Cir. 1987). The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as "timing is of the essence in politics" and "[a] delay of even a day or two may be intolerable . . . ." *Long Beach Area Peace Network v. City of Long Beach*, 522 F.3d 1010, 1020 (9th Cir. 2008) (quoting *NAACP. v. City of Richmond*, 743 F.2d 1346, 1356 (9th Cir. 1984)). Klein has therefore demonstrated a likelihood of irreparable injury in the absence of an injunction.
>
> We have also consistently recognized the "significant public interest" in upholding free speech principles, *see Sammartano*, 303 F.3d at 974 (collecting cases), as the "ongoing enforcement of the potentially

> unconstitutional regulations . . . would infringe not only the free expression interests of [plaintiffs], but also the interests of other people" subjected to the same restrictions. *Id*.

*Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009).

Defendant Newsom made it perfectly clear that "[w]e are sick and tired of being on the defense in this movement. It's time to put **them** on the defense."[2] [emphasis added] FAC ¶ 470. Newsom has made it perfectly clear that he and Bonta are going on the offensive which can only be construed that Defendants will pursue all remedies under SB 1327.

On September 26, 2022, The Attorney General states in an email, **Defendants Exhibit "2"**, conditions enforcement of SB 1327 only if he withdraws his claims for relief, and this is only relating to the "present" lawsuit.

Plaintiff's will suffer irreparable injury if there is not a declaration from this court that AB 1327 is unconstitutional because Plaintiff's attorney, Dan Karalash, will be forced to withdrawal from representing Plaintiff in this case, the criminal case, and future cases pertaining to Second Amendment litigation. Likewise, Mr. Gorski's objectivity will be tainted since he will be exposed to the prospect of being liable for hundreds of thousands of dollars in attorney fees from state, county, and municipal defendants. SB 1327 has a coercive impact on Plaintiff's relationship with his attorneys, which causes an inherent conflict of interest which cannot be remedied without a finding that the AB 1327 is unconstitutional.  The mere potential of a monetary penalty has a chilling impact on Plaintiff's, and the publics ability to exercise their First Amendment rights. (**Gorski Decl.** ¶s 13, 16, **19-23**, **27**, 33, 39, 42; **Abrera Decl.** ¶s  21, 25, 35, 41; **Karalash Decl.** ¶ 7, 11, 15.) (professing the potential for bankruptcy and stating that the threat of such a attorney fee awards fine has intimidated Plaintiff and his attorneys to seriously consider whether they should pursue Second Amendment rights).) In the Ninth Circuit, "'a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit

---

[2] "Them" is obviously "people" asserting their Second Amendment rights.

the grant of relief by demonstrating the existence of a colorable First Amendment claim.'" *Sammartano*, 303 F.3d at 973 (quoting *Viacom Int'l, Inc. v. F.C.C.*, 828 F. Supp. 741 (N.D. Cal. 1993)).

It is well settled that "demonstrating the existence of a colorable First Amendment claim" is less exacting than the *Winter* and *Cottrell* standards, and that Plaintiff has easily demonstrated the existence of a colorable First Amendment claim, Plaintiff is likely to succeed on the merits, *see Sammartano*, 303 F.3d at 973; *see also Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989) ("[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury . . . ."); *see also Dex Media*, 790 F. Supp. 2d at 1280 (acknowledging that in the First Amendment context, the "determination of whether Plaintiffs have demonstrated a likelihood of irreparable harm . . . hinges in part on whether Plaintiffs have demonstrated a likelihood of success on the merits of their First Amendment claim"). Moreover, because the potential harm to Plaintiffs is not just pecuniary. SB 1327 will impact Plaintiff's decision-making process in determining whether his Second Amendment right is really worth protecting. In addition, SB 1327 has already affected his attorneys' judgment and counsel. (**Gorski Decl.** ¶s 13, 16, **19-23**, **27**, 33, 39, 42; **Abrera Decl.** ¶s 21, 25, 35, 41; **Karalash Decl.** ¶ 7, 11, 15.) Preliminary injunctive relief would have a discernable impact on Plaintiff's attorneys decision-making calculus, as well as his own decision-making calculus.

## CONCLUSION

AB 1327 (C.C.P. § 1021.11) is unconstitutional and imposes enormous and irreparable harms on the people of California, and Plaintiff in particular.

DATED: November 1, 2022

Respectfully submitted,
LAW OFFICES OF GARY W. GORSKI
*/s/ Gary W. Gorski*
GARY W. GORSKI
Attorney for Plaintiff Arnold Abrera

14