**Gary W. Gorski CBN: 166526**
**Attorney at Law**
*VETERANS LAW CENTER*
3017 Douglas Blvd., Suite 150
Roseville, CA  95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com
www.VeteransLawCenter.com

**Daniel M. Karalash CBN: 176421**
**Attorney at Law**
*STRATEGIC LAW COMMAND*
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
Fax: (916) 520-3930

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD ABRERA,<br><br>         plaintiff,<br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; ANNE MARIE SCHUBERT, in her official capacity as County of Sacramento District Attorney; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE;<br><br>         defendants. | No.  2:22-cv-1162 JAM DB<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS**<br><br>**Date:** January 9, 2024<br>**Time:** 1:30 p.m.<br>**Courtroom:** 6<br>**Judge:** The Honorable John A. Mendez<br>**Location:** Courtroom 27, 8th floor<br>501 I Street<br>Sacramento, CA<br>**Trial Date: None Set**<br>**Action Filed:** July 5, 2022 |

**I.     INTRODUCTION**

This case is a textbook example of how defendants ban and confiscate guns through a

1

complex network of laws and police enforcement actions which result in citizens being stripped of their Second Amendment rights.

## II.    FACTS

Mr. Abrera, a 48-year-old, has never been arrested or charged with a crime in his entire life. Because the Philippines had confiscated citizens guns and became a police state, he wanted to be a U.S. Citizen to exercise the natural freedoms he was born with ---one of which was to be able to own guns for self-defense and as a check against tyranny. He is married with three children and is a responsible firearms owner and law-abiding citizen – that is until the government became aware that he owned legally purchased firearms which had always been legal to purchase and own in the United States. Mr. Abrera was charged with the possession of two modern semi-automatic rifles (i.e., AR-15s). Modern rifles are legal to build, buy, and own under federal law and the laws of 45 states. Modern rifles are popular. He also had his semi-automatic handguns seized. RJN #s 1, 2, and 3. (RJN # 1, FAC ¶s 1, 2, 12-15, 56-77, 82-94.)

The arms seized from the family residence is as follows (RJN #s 2, and 3):

1. One (1) Glock, Inc., Model 17, 9mm Cal., Serial No. BBDW312 **[Semi-Automatic Handgun]**
2. One (1) Sig Sauer Model SP2022, .40 Cal., Serial No. 24B245366, Erroneously Listed As "Sauer, J.P., & Sons" **[Semi-Automatic Handgun]**
3. One (1) Sig Sauer Model SP2022, 9mm Cal., Serial No. 24B245997, Erroneously Listed As "Sauer, J.P., & Sons" **[Semi-Automatic Handgun]**
4. One (1) Sturm, Ruger & Co., Model LC380CA, .380 Cal., Serial No. 32653888 **[Semi-Automatic Handgun]**
5. One (1) Del-Ton Inc., Model DTI 15, 5.56 Cal., Serial No. B6215 **[Semi-Automatic Rifle AR-15]**;
6. One (1) Roggio Arsenal, Model RA L5, Multi-Caliber, Serial No. RA09011623 **[Semi-Automatic Rifle AR-15]**

In his 48 years of life, Plaintiff did everything right. He immigrated here legally. He had never been arrested or charged with a crime --- that is until law enforcement entered his house unannounced. This case starts on the evening of December 27, 2020, defendant Elk Grove police officers went to Plaintiff's residence in response to a 911 hang-up call from Plaintiff. Police

entered the residence without a warrant on a health and safety check. Plaintiff, who said he was concerned about his wife, advised the officers that he accidentally dialed 911.

Without any evidence of a physical altercation, injuries, or aggressive behavior on the part of Plaintiff or his wife, Plaintiff's wife was still detained under 5150 and released without any finding of her being a danger to herself or others. At the same time, the police seized two semi-automatic handguns owned by Plaintiff's wife. However, the seizure did not stop their; Plaintiff's firearms (two semi-automatic rifles and two semi-automatic pistols, both which come equipped with detachable large capacity magazines) even though he committed no crime, was not under the influence of alcohol or drugs, was docile and compliant, and made no threat to himself or others. Plaintiff remained at home, deprived of his firearms, while his wife was detained for observation over a three-day period. (FAC ¶s 1, 2, 12-15, 56-77, 82-94; RJN #s 2, and 3.)

Plaintiff was not concerned about his own safety and confirmed that his wife did not have access to the firearms. (FAC ¶ 178.) December 27, 2020, was the last date Plaintiff saw his firearms.

Instead of returning Plaintiff's firearms since he was not a person detained or arrested under state law; Defendants instituted a criminal proceeding against Plaintiff for possession of so-called "assault weapons" which were legally purchased in California. (FAC ¶ 87-92.) In addition, unbeknownst to Plaintiff, on January 25, 2021, a Petition for Judicial Determination Re: Return of Firearms Welfare & Institutions Code section 8102 was filed by defendant Jonathan P. Hobbs as the City of Elk Grove Attorney, captioned *City of Elk Grove vs. Euginie Abrera*, Sacramento Superior Court case number 34-2021-20000745, attached as **Exhibit "3"** to the Complaint. (FAC ¶ 83; RJN # 3.) <u>Plaintiff was never named as a party</u> to the City's Cal. Welf. & Inst. Code § 8102 petition, though four of the firearms were purchased, owned and possessed by Plaintiff. (FAC ¶ 83, 105.)

Also unbeknownst to Plaintiff, on March 18, 2021, a Felony Complaint was filed by defendant Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney, charging Plaintiff for possession of two rifles which did not have so-called "bullet-buttons" and because of cosmetic features completely unrelated to the actual functioning of the rifle. Attached as **Plaintiff's Exhibit "4"** to the Complaint is the Felony Complaint filed by Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney, on March 18, 2021, captioned *People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857. (FAC ¶ 87; RJN # 2.)

On April 13, 2021, Plaintiff's attorney filed a motion to dismiss the Felony Complaint as legally baseless, and the Court granted Plaintiff's motion. Attached as Plaintiff's **Exhibit "5"** is the Court's Docket for the Felony Complaint filed by Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney, on March 18, 2021, *captioned People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857. (FAC ¶ 92-95.)

The government refused to return all of Plaintiff's firearms, even after the court dismissed the case. To the extent that the arms were destroyed, they cannot be replaced because they are all banned --- including the handguns since they can longer be sold in California because they are not on an approved roster. (FAC ¶ 97-98, 330-370.)

### III.     STANDING

"[A] plaintiff possesses Article III standing to bring a pre-enforcement challenge to a state statute which regulates the exercise of a federal constitutional right and threatens a criminal penalty." *Miller v. Becerra*, 488 F. Supp. 3d 949, 953 (S.D. Cal. 2020) (finding plaintiffs had standing to challenge state statutes regulating "assault weapons") (citing cases). Such challenges can proceed "when the plaintiff faces a realistic danger of sustaining a direct injury as a result of the law's operation or enforcement." *Id.* (citing *Skyline Wesleyan Church*, 968 F.3d 738, 747

(internal quotation marks omitted). Here, Plaintiff has in fact been injured by way of seizure of arms and arrest, and he is sustaining the injury because his arms cannot be replaced because of the network of bans in place. He has suffered, and continues to suffer, injury in fact; which is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

## IV.  LEGAL STANDARD

It is well-settled that the standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 & n.7 (9th Cir. 2001).

Movant seeking a temporary restraining order "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest" ("*Winter* Test"). *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing Winter, 555 U.S. at 20). A "serious question" is one which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

## V.  CONSTITUTIONAL CHALLENGE TO ACTS OF LEGISLATURE AND POLICY MAKING OFFICIALS

"A facial challenge is a claim that the legislature has violated the constitution, while an as applied challenge is a claim directed at the execution of the law as to plaintiff." *Young v. Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021) (en banc) *Overruled in part by Bruen* (citing Nicholas Quinn

Rosenkranz, *The Subjects of the Const.*, 62 STAN. L. REV. 1209, 1235-42 (2010)).

Plaintiff asserts both as-applied and facial challenges to the statutes and policies.

## VI. BACKGROUND SUMMARY OF SECOND AMENDMENT JURISPRUDENCE

With a clear legal standard now in hand, Defendants can no longer raise the all-encompassing "public safety" defense to shield its laws and actions from constitutional scrutiny. And for good reason, under the guise of "public safety", California created a legal apparatus stripping its citizens of their Second Amendment rights.

> The Second Amendment "is the very product of an interest balancing by the people" and it "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Heller*, 554 U. S., at 635, 128 S. Ct. 2783, 171 L. Ed. 2d 637. It is this balance—struck by the traditions of the American people—that demands our <u>unqualified deference</u>. [emphasis added]

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2131 (2022).

Defendants have abrogated Plaintiff's Second and Fourteenth Amendment rights for no other reason than political gamesmanship. If not enjoined, Plaintiff is unable to exercise his Second Amendment right and Defendants will keep Plaintiff's seized arms in perpetuity, this ignoring the Supreme Court's holdings in *United States v. Miller*, 307 U. S. 174 (1939); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 411 (2016); and, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ____ (2022). Fortunately, the Supreme Court has said enough is enough in *Bruen*.

The Supreme Court in *Heller* ordered Courts not to utilize "interest-balancing" when reviewing the constitutionality of governmental action impacting the Second Amendment. That was explicit. The Ninth Circuit used that test anyway and found that every single gun law challenged did not violate the Second Amendment. Whenever a reviewing Court uses "interest-balancing" to test the constitutionality of a governmental action impacting the Second Amendment, the Ninth Circuit invariably finds an unconstitutional act not to violate the

Constitution. That is why the U.S. Supreme Court was very clear in *Bruen* that "interest-balancing" is never to be applied in evaluating Second Amendment case as relating to bearable arms.

> If ever there was a case study illustrating Madison's concern about "evil lurking under plausible disguises, and growing up from small beginnings," it is our circuit's Second Amendment jurisprudence. In the thirteen years since the Supreme Court ruled in *Heller* that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," 554 U.S. at 592, our court has trimmed back that right at every opportunity—to the point that now, in the nine Western states covered by our court, the right to "keep and bear arms" means, at most, you might get to possess one janky handgun and 2.2 rounds of ammunition, and only in your home under lock and key. That's it.

*Duncan v. Bonta*, 19 F.4th 1087, 1172-73 (9th Cir. 2021) (BUMATAY, Circuit Judge, with whom IKUTA, and R. NELSON, Circuit Judges, join, dissenting).

## V.   PLAINTIFFS WILL PREVAIL ON THE MERITS

### A.   The *Heller/Bruen* Framework for Second Amendment Analysis.

In *Heller,* the Supreme Court held (a) the Second Amendment protects an individual right to keep and bear arms that is not tied to militia member- ship; and (b) an absolute prohibition of a weapon in common use for lawful purposes is a per se violation of that right. 554 U.S. at 592, 628. In *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), the Court held that the right to keep and bear arms is among the fundamental rights necessary to our system of ordered liberty, and therefore the Second Amendment is applicable to the states through the Fourteenth Amendment. *Id.*, 561 U.S. at 778 (*reversing NRA v. Chicago*, 567 F.3d 856 (7th Cir. 2009) (Easterbrook, J.)).

In *Bruen*, the Court built on the foundation of *Heller's* text, history, and tradition analysis for Second Amendment challenges. The Court articulated the following general framework for resolving such challenges: "We reiterate that the standard for applying the Second Amendment is as follows: [1] When the Second Amendment's plain text covers an individual's conduct, the

Constitution presumptively protects that conduct. [2] The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*., 142 S. Ct. at 2129-30. These steps have come to be known as the "plain text" step and the "history and tradition" step.

### B. *Bruen* Step 1: The Plain Text Covers Plaintiffs' Conduct

The "textual analysis focuse[s] on the normal and ordinary meaning of the Second Amendment's language." *Bruen*, 142 S. Ct. at 2127 (*citing Heller*, 554 U.S. at 576–577, 578) (internal quotation marks omitted). Plaintiff legally owned and possessed rifles, handguns and magazines for purposes of self-defense and for militia purposes. These arms were unlawfully seized from his residence. Thus, the first issue is whether the plain text of the Second Amendment covers this conduct. The plain text provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Heller*, the Court held that a handgun is an "arm" within the meaning of the Second Amendment. 554 U.S. at 581, 628–29. In reaching that conclusion, the Court noted that, as a general matter, the "18th-century meaning" of the term "arms" is "no different from the meaning today." *Id*. at 581. Then, as now, the term generally referred to "weapons of offence, or armour of defence." *Id*. The Court noted that "all firearms constitute 'arms'" within the then-understood meaning of that term. *Id*. And, just as the scope of protection afforded by other constitutional rights extends to modern variants, so too the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id*. at 582. Thus, the banned firearms are obviously "arms" covered by the plain text and therefore *prima facia* protected. (Whether they are actually protected is a matter resolved at the second step.) See *United States v. Miller*, 307 U. S. 174 (1939) (Only arms that can be used for military service are protected by the Second Amendment) and *Caetano v.*

8

*Massachusetts*, 577 U.S. 411 (2016) (All modern arms are protected by the Second Amendment)

Plaintiff had four handguns legally purchased in California by Plaintiff seized from the family residence without a warrant, including a Glock, Inc., Model 17, 9mm Cal., Serial No. BBDW312 [Semi-Automatic Handgun], a Sig Sauer Model SP2022, .40 Cal., Serial No. 24B245366, [Semi-Automatic Handgun], a Sig Sauer Model SP2022, 9mm Cal., Serial No. 24B245997, [Semi-Automatic Handgun], and a Sturm, Ruger & Co., Model LC380CA, .380 Cal., Serial No. 32653888 [Semi-Automatic Handgun]. He also had his two semi-automatic rifles seized, though legally purchased in California – a Del-Ton Inc., Model DTI 15, 5.56 Cal., Serial No. B6215 [Semi-Automatic Rifle AR-15] and a Roggio Arsenal, Model RA L5, Multi-Caliber, Serial No. RA09011623 [Semi-Automatic Rifle AR-15]. In addition, he had his magazines used for his arms to function seized.

Plaintiff lawfully purchased these constitutionally protected arms for purposes of self-defense, defense of his country through militia service and against tyranny. Defendants (and even a Sacramento County Superior Court Judge) refused to return these arms to Plaintiff after they have been seized and knowing that no crime has been committed.

In addition to the obvious case of firearms, the general definition of "arms" in the Second Amendment, "covers modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132. In summary, Plaintiff's conduct in seeking for the return of his arms and possession of the arms, including the two now banned "assault weapons" and magazines is covered by the plain text of the Second Amendment. Plaintiff's conduct is, therefore, presumptively protected by the Constitution.

**C.     *Bruen* Step 2: Arms in Common Use, the State Cannot Meet its Burden**

Bruen teaches that the most significant historical evidence comes from 1791, and secondarily 1868. For the Second Amendment (and other protections in the Bill of Rights),

9

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." The Second Amendment was adopted in 1791. "[W]e have generally assumed that the scope of the [Second Amendment] protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." Consequently, whatever evolving standards of gun regulation the Defendants think is good policy in the year 1800 to the present is not the test for constitutional scrutiny.

*Bruen* and *Heller* have already considered some of the historical firearm statutes. Consequently, we know that colonial laws restricting handguns that were dangerous and unusual in the 1690s do not justify modern laws restricting handguns. The Court explains that even if handguns were considered "dangerous and unusual" in the 1690s, it would not matter because handguns are common today. As *Bruen* puts it,

> Whatever the likelihood that handguns were considered "dangerous and unusual" during the colonial period, they are indisputably in "common use" for self-defense today. They are, in fact, "the quintessential self-defense weapon." Thus, even if these colonial laws prohibited the carrying of handguns because they were considered "dangerous and unusual weapons" in the 1690s, they provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today.

*Bruen*, 142 S. Ct. at 2143 (quoting *Heller*, 554 U.S. at 627, 629).

Building on *Bruen*'s mandate, the examination of historical firearm statutes in *Bruen* and *Heller* dismisses the relevance of colonial laws restricting handguns in the 1690s to contemporary gun regulations. The argument is twofold: firstly, that dangerous and unusual restrictions in the 1690s do not justify present-day limitations on handguns; and secondly, even if handguns were deemed dangerous and unusual in the 1690s, their common use for self-defense today renders those historical restrictions irrelevant.

The Supreme Court's position, as articulated by *Bruen*, is that the characterization of handguns as "dangerous and unusual" in colonial times holds no sway in the present context

where handguns are considered common and quintessential for self-defense. Consequently, colonial laws restricting handguns provide no valid justification for contemporary laws restricting the public carry of weapons that are now indisputably in common use.

Quoting *Heller*, *Bruen* holds that semiautomatic pistols and rifles with detachable magazines are protected arms based on the grounds of common use for self-defense. This adds another layer to the argument, suggesting that these firearms, widely adopted for self-defense, fall within the protective ambit of the Second Amendment.

*Bruen*'s emphasis on historical evidence and its application to constitutional rights extends beyond the confines of the Second Amendment to scrutinize the legality of actions such as the warrantless search of houses, seizure of legally owned firearms, and the subsequent refusal to return them, even in the absence of criminal charges.

There exists no historical analogue that would legitimize the confiscation of legally owned firearms from a residence without a warrant, and subsequently withholding their return, especially when no criminal charges have been levied against the plaintiff. Seizure of arms in the present case lacks historical precedent and is, therefore, also incompatible with the original understanding of constitutional protections against unreasonable searches and seizures in relation to seizure of arms. Besides, the Battles of Lexington and Concord were some of the leading military engagements of the American Revolutionary War all because the British were about the seize the arms of the People.

> We reach the question, then: Does the preface fit with an operative clause that creates an individual right to keep and bear arms? It fits perfectly, once one knows the history that the founding generation knew and that we have described above. That history showed that <u>the way tyrants had eliminated a militia consisting of all the able-bodied men was not by banning the militia but simply by taking away the people's arms</u>, enabling a select militia or standing army to suppress political opponents. This is what had occurred in England that prompted codification of the right to have arms in the English Bill of Rights. [emphasis added]

*District of Columbia v. Heller*, 554 U.S. 570, 597-98 (2008).

The Supreme Court also stated that "the Second Amendment extends, <u>prima facie</u>, to <u>all instruments</u> that constitute bearable arms, <u>even those that were not in existence at the time of the founding</u>." *Heller* at 554 U. S., at 582. Since semi-automatic rifles and pistols with detachable magazines, including AR-15s, are "instruments that constitute bearable arms," California's monopoly on the bearable firearms ends; unless, of course, Defendants can produce an historical analog in this Nation's history showing that military semi-automatic rifles and handguns have been banned---which it can't.

### D. Because the arms seized were protected, the seizure was *per se* unlawful since Plaintiff committed no crime nor was he detained in such a manner which activated the confiscatory scheme employed.

Cal. Welf. & Inst. Code, §§ 5150 and 5151 is unconstitutional on its face, and as applied to Plaintiff. Two firearm statutes come into play when a person is detained under Cal. Welf. & Inst. Code, § 5150, as a danger to himself or others. Cal. Welf. & Inst. Code, § 8103, will prohibit the person's possession of firearms for a five-year period. Welf. & Inst. Code, § 8102, authorizes confiscation of any weapons the person already <u>possesses</u>.

Despite *Bruen*, Defendants maintain a a regulatory scheme for the confiscation of firearms even when no crime has been committed or when a person has been found to be factually innocent of a crime charged. Here, Plaintiff's arms are being withheld for no constitutionally valid reason.

In addition, to the extent that defendants will release the handguns after Plaintiff's firearms were illegally seized, Defendants filed a civil action to his firearms destroy and instituted a criminal action to possession of firearms in common use and protected under the Second Amendment. After that action was dismissed by the Court, Defendants have refused to return the seized firearms, and even if they were going to be returned, the law mandates that Plaintiff must

first complete the Law Enforcement Gun Release ("LEGR") application required under C.P.C. § 33850, and pay a fee for each arm seized. Defendants enforces C.P.C §§ "33850 (application for return of firearm), 33855 (authority of law enforcement to enforce), 33860, and 33880 (fee)" in violation of the Second Amendment.

The LEGR regulation is not a condition on the commercial sale of firearms. LEGR imposes a burden on conduct that is protected by the Second Amendment, to wit: imposing a burden on a right that was taken away by the government with the seizure. Irreparable injury in the absence of such an injunction and interlocutory relief, takes place each day the property is not returned so that Plaintiff may fully exercise his Second Amendment rights. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

**RELIEF SOUGHT**

Plaintiff moves for equitable and declaratory relief and a preliminary and permanent injunction under rule 65 of the Federal Rules of Civil Procedure for the return of the following arms with magazines in the possession, custody and control of defendants as follows: One (1) Glock, Inc., Model 17, 9mm Cal., Serial No. BBDW312; One (1) Sig Sauer Model SP2022, .40 Cal., Serial No. 24B245366; One (1) Sig Sauer Model SP2022, 9mm Cal., Serial No. 24B245997; One (1) Sturm, Ruger & Co., Model LC380CA, .380 Cal., Serial No. 32653888; One (1) Del-Ton Inc., Model DTI 15, 5.56 Cal., Serial No. B6215; and, One (1) Roggio Arsenal, Model RA L5, Multi-Caliber, Serial No. RA09011623.

Specifically, Plaintiff is requesting the Court to order Defendants and their agents, servants, employees, and those working in active concert with them and each other, to 1)

immediately return all firearms seized, and 2) enjoin Defendants from enforcing or giving effect to the laws, regulations or policies which resulted in the seizure of Plaintiff's firearms and ancillary accessories by Defendants on or about December 27, 2020, at Plaintiff's residence in the Elk Grove, California, in clear violation of Plaintiff's Second and Fourteenth Amendment rights

Plaintiff further seeks to enjoin defendants from enforcing the following laws as they pertain to Plaintiff as-applied, and further as-written to acquire, possess, use, and/or transfer constitutionally protected firearms for lawful purposes including self-defense and militia use, permanently enjoining Defendants from enforcing each of the following sections to the extent they prevent law-abiding Californians, like Plaintiff, from owning, acquiring, possessing, using or transferring constitutionally protected arms and the purchasing of parts and ammunition as follows:

1.   FIREARM SEIZURES: Cal. Welf. & Inst. Code, §§ 5150, 5151, 8102, 8103.

2.   SEMI-AUTOMATIC RIFLE BAN: Cal. Pen. Code §§ 30510(a), 30515(a), 30515(a)(1)(A-C), 30515(a)(1 )(E-F), 30515(a)(3), 30520, 30600, 30600(a), 30605, 30605(a), 30925, 30945, and California Code of Regulations, title 11, section 5499; California Penal Code §§ 30515(a)(1) through (8) (defining an "assault weapon" by prohibited features), 30800 (deeming certain "assault weapons" a public nuisance), 30915 (regulating "assault weapons" obtained by bequest or inheritance), 30925 (restricting importation of "assault weapons" by new residents), 30945 (restricting use of registered "assault weapons"), and 30950 (prohibiting possession of "assault weapons" by minors). California Penal Code §§ 18005, 18010 destruction of arms and magazines.

3.   "LARGE-CAPACITY MAGAZINE" BAN: Cal. Pen. Code §§ 16740, 32310.

4.   HANDGUN BAN, UNSAFE HANDGUN LIST AND MICROSTAMPING: California's statutory and regulatory scheme pursuant to Cal. Pen. Code § 31910. Cal. Penal Code

§§ 16380, 16900, 31900 et seq., 31910, 32000, 32015, 32030, and 11 Cal. Code Regs. § 4070(a)

    5.    AMMUNITION BAN: Cal. Penal Code § 30312(a)-(b), § 30314.

    6.    APPLICATION FOR RETURN OF FIREARMS: Cal. Penal Code §§ 33850, 33855, 33860, 33880.

The burden is on Defendants proving the constitutionality of their actions through appropriate analogues, a burden they cannot meet.

DATED: December 5, 2023

Respectfully submitted,
LAW OFFICES OF GARY W. GORSKI
*/s/ Gary W. Gorski*
GARY W. GORSKI
Attorney for Plaintiff Arnold Abrera