**Gary W. Gorski CBN: 166526**
**Attorney at Law**
*VETERANS LAW CENTER*
3017 Douglas Blvd., Suite 150
Roseville, CA  95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com
www.VeteransLawCenter.com

**Daniel M. Karalash CBN: 176421**
**Attorney at Law**
*STRATEGIC LAW COMMAND*
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
Fax: (916) 520-3930

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD ABRERA,<br><br>        Plaintiff,<br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; ANNE MARIE SCHUBERT, in her official capacity as County of Sacramento District Attorney; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE;<br><br>        Defendants. | No.  2:22-cv-1162-JAM-DB<br><br>**PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Date:** January 9, 2024<br>**Time:** 1:30 p.m.<br>**Courtroom:** 6<br>**Judge:** The Honorable John A. Mendez<br>**Location:** Courtroom 27, 8th floor<br>501 I Street<br>Sacramento, CA<br><br>**Complaint Filed:** 7/5/2022<br>**First Amended Complaint Filed:** 9/2/2022<br>**Trial Date:** None Set |

## I.    LEGAL AND FACTUAL BACKGROUND

Constitutional scholars have dubbed the Second Amendment "the Rodney Dangerfield of the Bill of Rights." As Judge Ho relates, it is spurned as peripheral, despite being just as fundamental as the First Amendment. It is

1

> snubbed as anachronistic, despite being just as enduring as the Fourth Amendment. It is scorned as fringe, despite being just as enumerated as the other Bill of Rights guarantees.
>
> The Second Amendment is neither second class, nor second rate, nor second tier. The "right of the people to keep and bear Arms" has no need of penumbras or emanations. It's right there, 27 words enshrined for 227 years.

*Mance v. Sessions*, 896 F.3d 390, 396 (5th Cir. 2018).

> If ever there was a case study illustrating Madison's concern about "evil lurking under plausible disguises, and growing up from small beginnings," it is our circuit's Second Amendment jurisprudence. In the thirteen years since the Supreme Court ruled in *Heller* that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," 554 U.S. at 592, our court has trimmed back that right at every opportunity—to the point that now, in the nine Western states covered by our court, the right to "keep and bear arms" means, at most, you might get to possess one janky handgun and 2.2 rounds of ammunition, and only in your home under lock and key. That's it.

*Duncan v. Bonta*, 19 F.4th 1087, 1172-73 (9th Cir. 2021) (BUMATAY, Circuit Judge, with whom IKUTA, and R. NELSON, Circuit Judges, join, dissenting).

Mr. Abrera, a 48-year-old, a law-abiding citizen and responsible firearm owner, faced charges for possessing legally purchased modern semi-automatic rifles and handguns. (FAC ¶ 87-92; RJN #s 1-6.) These firearms were seized during a police visit prompted by a 911 hang-up call. Despite no evidence of wrongdoing, Plaintiff's firearms were confiscated. (RJN # 1, 3; FAC ¶s 1, 2, 12-15, 56-77, 82-94.)

The protected "arms" legally purchased in California and seized from Plaintiff's home are as follows: One (1) Glock, Inc., Model 17, 9mm Cal., Serial No. BBDW312; One (1) Sig Sauer Model SP2022, .40 Cal., Serial No. 24B245366; One (1) Sig Sauer Model SP2022, 9mm Cal., Serial No. 24B245997; One (1) Sturm, Ruger & Co., Model LC380CA, .380 Cal., Serial No. 32653888; One (1) Del-Ton Inc., Model DTI 15, 5.56 Cal., Serial No. B6215; and, One (1) Roggio Arsenal, Model RA L5, Multi-Caliber, Serial No. RA09011623.

The government initiated criminal proceedings against Plaintiff for possession of alleged "assault weapons", functionally no different than the semi-automatic handguns seized.

Additionally, Elk Grove filed a petition for arms destruction without naming Plaintiff as a party. This so-called petition is not even found on the Court's electronic docketing system. (FAC ¶ 83; RJN # 3, 6.) A felony complaint was later filed by the District Attorney, charging Plaintiff for possession of rifles based on cosmetic features. The court dismissed the felony complaint as legally baseless. (RJN #s 1-6; FAC ¶s 1, 2, 12-15, 56-77, 82-94.) Plaintiff's § 1538.5 motion for return of the two AR-15s was also denied. (FAC ¶ 97-98, 330-370 see also RJN #s 1, 2, 4 and 5.).

## LEGAL STANDARD

Motions to dismiss are "disfavored and rarely granted." *U.S. v. Hempfling*, 431 F.Supp.2d 1069, 1075 (E.D. Cal. 2006).

## OPPOSITION ARGUMENT

Plaintiff's FAC pertains to 1) the narrow issue regarding the return of his arms and damages against municipal defendants due to their policies allowing for their confiscation, and 2) the broader declaratory challenge as to the underlying laws which foment the unconstitutional policies, e.g. FAC ¶s 95, 171187-190, 213-219, **223-286**, 423-426.

Defendants have abrogated Plaintiff's Second and Fourteenth Amendment rights for no other reason than political gamesmanship. The tapestry of laws challenged herein resulted in the seizure of Plaintiff's arms, denying Plaintiff of his Second Amendment rights, and ignoring the Supreme Court's holdings in *United States v. Miller*, 307 U. S. 174 (1939); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 411 (2016); and, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111 (2022).

I.   **THE FIRST AMENDED COMPLAINT DOES NOT VIOLATE RULE 8**

The First Amended Complaint ("FAC") in this case complies with the pleading requirements of Rule 8. Notice sits at the heart of Rule 8 pleading requirements. Rule 8 does not

impose a limit on the length of a complaint, and verbosity, alone, is not a basis for dismissing a complaint. See *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). Where a lengthy complaint, even with superfluous matter, provides the defendant with notice of the plaintiff's claims, dismissal is inappropriate under Rule 8. *Stanard v. Nygren*, 658 F.3d 792, 797-98 (7th Cir. 2011). Simply put, "undue length alone ordinarily does not justify the dismissal of an otherwise valid complaint." *Id.* at 797.

While the complaint may be lengthy, this is understandable given the multiple defendants involved and a series of events alleged, along with both facial and as-applied constitutional challenges to the statutes and policies at issue. Here, the complaint contains specific allegations against the municipal defendants, as distinguished from other state defendants, providing sufficient notice of the claims asserted against them.

While the municipal defendants did not enact the challenged state laws, plaintiff's as-applied claims depend on the municipal defendants' role in enforcing those laws against plaintiff specifically. The facial challenge goes to the state and the as-applied is more applicable to the municipal defendants for the most part.

Many of the averments plead are unrelated to moving Defendants. See FAC ¶s 193-212 relating to defendants Newsom and Bonta compared to FAC ¶s 95, 171, 187-190, 213-219, 223-286, 423-426 specific to municipal Defendants. In addition, Plaintiff is also seeking a systemic or institutional injunction against the State, which goes well beyond the statutes.

Moreover, there is no guess as to what laws are being facially challenged; they are spelled out at FAC ¶s 121-170.

**II.     THERE ARE NO ACTIONS PENDING IN STATE COURT.**

This court undeniably maintains jurisdiction in this matter. Not only is the Defendants' argument without merit, but it also knowingly misguides the court. (See RJN No. 1-6)

4

A. ***Penn General* Doctrine Is Plainly Inapplicable.**

Despite the Plaintiff's submission of a motion for the return of property under California Penal Code section 1583.5 in *People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857 (FAC ¶ 94), the Defendants omit the fact that the request under § 1538.5 was "denied" (RJN # 5). Consequently, there is no *in rem* proceeding currently "pending." In the case of *City of Elk Grove vs. Euginie Abrera*, Sacramento Superior Court case number 34-2021-20000745 (FAC ¶s 83-86), the Plaintiff is not a named party, and a Court Docket search for the mentioned case reveals: "No Results Found" (RJN # 6). The Plaintiff possesses no further knowledge of this case and is not a party involved in the proceedings.

B. ***Younger* Abstention Is Also Plainly Inapplicable**

*Younger* abstention is also plainly inapplicable. "In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction," and "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013).

The cases of *People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857 and *City of Elk Grove vs. Euginie Abrera*, Sacramento Superior Court case number 34-2021-20000745 have no relationship with the relief sought in this matter. (See RJN #s 1-6)

**III. SOVEREIGN IMMUNITY DOES NOT APPLY TO DEFENDANT NEWSOM.**

The Eleventh Amendment immunity does not apply because action seeks prospective injunctive relief to prevent ongoing or future violations of constitutional rights, and not seeking monetary damages against the state.

> We explained that because an unconstitutional legislative enactment is "void," a state official who enforces that law "comes into conflict with the superior authority of [the] Constitution," and therefore is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." 209 U.S., at 159-160, 28 S. Ct. 441, 52 L. Ed. 714.

> This doctrine has existed alongside our sovereign-immunity jurisprudence for more than a century, accepted as necessary to "permit the federal courts to vindicate federal rights." *Pennhurst*, 465 U.S., at 105, 104 S. Ct. 900, 79 L. Ed. 2d 67. It rests on the premise--less delicately called a "fiction," *id.*, at 114, n. 25, 104 S. Ct. 900, 79 L. Ed. 2d 67 --that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011).

Per the FAC:

> 194. Because of Newsom and Bonta's irresponsible behavior affecting millions of gun owners and citizens in California, Plaintiff is seeking declaratory and injunctive relief finding the offending statutes unconstitutional, but also seeking an injunction and other equitable relief limiting Bonta and Newsom's future conduct through court supervision.

The Plaintiff seeks to challenge and enjoin the enforcement of various California firearm laws that they argue violate the constitutional rights of citizens. These laws include:

**Firearm Seizures (Cal. Welf. & Inst. Code, §§ 5150 and 5151):** These statutes infringe upon the right to possess firearms for self-defense and that they authorize confiscation without due process.

**Semi-Automatic Rifle Ban (Cal. Pen. Code §§ 30510, 30515, 30600, 30605, 30925, 30945, California Code of Regulations, title 11, section 5499):** These laws unconstitutionally restrict access to commonly owned firearms, violating Second Amendment protections.

**Large-Capacity Magazine Ban (Cal. Pen. Code § 16740, 32310):** This law criminalizes possession of magazines that are commonly used for self-defense and applies retroactively.

**Handgun Ban, Unsafe Handgun List, and Microstamping (Cal. Pen. Code §§ 16380, 16900, 31900 et seq., 31910, 32000, 32015, 32030, 11 Cal. Code Regs. § 4070(a)):** These laws effectively prohibit the sale of many handguns, restricting citizens' ability to exercise their Second Amendment rights.

**Ammunition Ban (Cal. Pen. Code § 30312(a)-(b)):** This law imposes burdensome restrictions on the purchase of ammunition, limiting the ability to use firearms effectively for self-

defense.

**Application for Return of Firearms (Cal. Pen. Code §§ 33850, 33855, 33860, 33880):**
These provisions impose undue financial and procedural burdens on individuals attempting to reclaim seized firearms and restoring their Second Amendment rights, even though they are law abiding citizens who unlawfully had their arms seized by the government.

Defendant Newsom has made a career out of defying federal court injunctions and trashing the Second Amendment. (FAC ¶s 196-212.) Defendant Newsom defiantly ignores the Supreme Court in every single Second Amendment opinion which nullifies California. See *United States v. Miller*, 307 U. S. 174 (1939); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 411 (2016); and, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ____, 142 S. Ct. 2111 (2022).

Defendant Newsom's actions lack historical precedent that would justify confiscating legally owned firearms from a residences without a warrant and withholding their return, especially when no crime has been committed.

The Governor's actions in pushing and signing laws that blatantly violate the Second Amendment represent a brazen assault on a fundamental pillar of American liberty. The essence of the Second Amendment, safeguarding the right to bear arms, is being callously undermined. The Second Amendment stands as a bedrock principle, enshrined to protect the rights of citizens to keep and bear arms. Defendant Newsom using the playbook of states that refused to abide by *Brown v. Board of Education*.

> To effectuate this interest may call for elimination of a variety of obstacles in making the transition to school systems operated in accordance with the constitutional principles set forth in our May 17, 1954, decision. Courts of equity may properly take into account the public interest in the elimination of such obstacles in a <u>systematic</u> and effective manner. [emphasis added]

*Brown v. Bd. of Educ.*, 349 U.S. 294, 300, 75 S. Ct. 753, 756 (1955)

The governor's signing of new gun laws with no historical analog clearly violates the

Constitution and should be enjoined by this Court, which sits as a court of equity. As the Supreme Court held in *Brown v. Board of Education*, courts of equity have broad powers to remedy unconstitutional government actions. *Berry v. School Dist..* 349 U.S. 294, 300 (1955).

Desegregation orders, as established in *Diaz v. San Jose Unified Sch. Dist.*, 861 F.2d 591 (9th Cir. 1988), are unequivocally just and fair. However, the present scenario involves the governor's audacious attempt to enact unprecedented gun laws and employ baseless legal arguments to obstruct invalidated state laws already deemed unconstitutional. This Court possesses the unequivocal authority to issue an injunction, preventing the governor from engaging in actions that blatantly violate the Constitution. While the judiciary must exercise prudence in employing its equitable powers, it is imperative to act decisively when faced with governmental actions that encroach upon fundamental constitutional rights. Consequently, the governor must be enjoined from signing any proposed gun laws.

Similar to *Brown II*, which mandated the courts to rectify the injustice of segregation, the current circumstances compel the judiciary to fulfill its constitutional obligation to safeguard the Second Amendment. The Governor's actions, endorsing and enacting laws that infringe upon the Second Amendment, exemplify a blatant form of executive overreach. As the custodians of the Constitution, the courts must wield their authority with vigor and clarity, delivering a resounding message that any assaults on constitutional rights will not be tolerated.

The Supreme Court has made it perfectly clear in *Bruen* that the Second Amendment is on the same pedestal of deserving protection as the rights and remedies enumerated in *Brown v. Board of Education*. The State's conduct is no different than that of "[m]any Southern governmental and political leaders embrac[ing] a plan known as 'massive resistance', created by Senator Harry F. Byrd, in order to frustrate attempts to force them to de-segregate their school systems." Brown v. Board of Education - Wikipedia

### IV. PLAINTIFF'S EQUAL PROTECTION CLAIM IS WELL PLEAD AND VIABLE

The plaintiff has adequately plead violations of the Equal Protection Clause of the Fourteenth Amendment, averring that State Defendant's policies and practices surrounding gun laws create a disparate treatment between law enforcement officers and the general public. The plaintiff contends that this disparate treatment violates their constitutional right to equal protection under the law.

**Disparate Treatment in Collateral Consequences Policies** (FAC ¶s 409-411.):

Control Group: Illegal Immigrants facing deportation if convicted vs. Citizens facing loss of Second Amendment Rights.  Illegal immigrants are consistently granted greater rights under collateral consequences policies because it does not apply equally to Second Amendment Rights.

**Treatment of Gun Cases** (e.g., FAC ¶s 416-417): Cases involving non-violent firearm possession compared to other forms of possession cases (e.g., drug cases resulting in diversion). Cases involving firearms are treated more harshly, with less opportunity for dismissal and automatic destruction of legally purchased firearms, it proves a disparate impact on gun owners, violating their equal protection rights.

**Law Enforcement Exemptions vs. General Public** (e.g., FAC ¶s 271, 332, 339, 345)**:**

Law enforcement officers are consistently exempted from various gun regulations, including off-roster handgun purchases, ammunition purchases and background checks, while the general public is not, it demonstrates unequal protection under the law.

**Return of Seized Property: Firearms vs. Other Property** (e.g., FAC ¶s 223-224, 378, 416)**:**

The LEGR process has no historical analog and there is no other requirement regarding release of non-firearm related property. There is a demonstrable two-tiered system favoring the return of other property over firearms which restores a Second Amendment right.

Moreover, a notable aspect of the Plaintiff's claim which Defendants ignore that the government cannot seize all protected arms without cause, subsequently demand a fee and compelled speech through form submissions for their return. Furthermore, it is pertinent to underscore that even under federal law, specifically 18 U.S.C.S. § 924(d)(1), a clear provision exists mandating the expeditious return of seized or relinquished firearms and ammunition upon the acquittal of the owner or <u>possessor</u> or the dismissal of charges against them. Notably, this return is immediate, unless it would place the owner, possessor, or their delegate in violation of the law. This should have been Defendants policy.

In addition, federal law, as articulated in 18 U.S.C.S. § 924(d)(2)(A), establishes that in any action or proceeding for the return of firearms or ammunition seized under the pertinent provisions, the court is required to allow the prevailing party (other than the United States) a reasonable attorney's fee, with the United States being liable for such fees. Moreover, under 18 U.S.C.S. § 924(d)(2)(B), in any other action or proceeding under the same provisions, if the court finds that the action was without foundation, or was initiated vexatiously, frivolously, or in bad faith, the prevailing party (other than the United States) is entitled to a reasonable attorney's fee, and the United States is liable for such fees.

This federal legal framework starkly contrasts with Defendants' approach, highlighting that, unlike the Defendants' practices, federal law not only mandates the swift return of seized arms but also subjects the government to potential liability for attorney fees and costs in case of non-compliance. This statutory distinction emphasizes the federal government's recognition of the importance of promptly returning lawfully owned firearms and the consequences for failing to adhere to this mandate.

**Differential Treatment of Second Amendment vs. Other Rights (i.e., abortion)** (e.g., FAC ¶s 412-415)**:** Governor Newsom is using the Second Amendment as a means to influence

personal views on abortion, even though abortion is legal in California.

Based on the presented facts, Defendant Newsom is implementing laws and regulations that create a two-tiered system, favoring law enforcement over citizens and treating the Second Amendment differently than other rights. This disparate treatment constitutes a violation of the plaintiff's rights to equal protection under the Fourteenth Amendment.

### V. Plaintiff's C.C.P. § 1021.11 claims are not moot because Plaintiff is still entitled to declaratory and injunctive relief.

"Fundamentally, a case becomes moot *only* when it is *impossible* for a court to grant any effectual relief *whatever* to the prevailing party. As long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotations and citations omitted; emphasis added).

"The difference between an abstract question and a 'case and controversy' is one of degree, of course, and is not discernible by any precise test." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979). "We review mootness, question of law, de novo." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002). "The burden of demonstrating mootness is a heavy one." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). We note that "completion of activity is not the hallmark of mootness. Rather, a case is moot only where no effective relief for the alleged violation can be given." [emphasis added] *Neighbors of Cuddy Mountain*, 303 F.3d at 1065. "'The central question . . . is constant -- whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.' Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 13A *Federal Practice & Procedure* § 3533 (2d ed. 1984). *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001)." *Ferreira v. United States*, 354 F. Supp. 2d 406, 410 (S.D.N.Y. 2005).

If a live controversy ceases to exist—*i.e.*, if a case becomes moot—then we

11

> have no jurisdiction to proceed. But in order for this to happen, a case must really be dead, and as noted, that occurs only "'when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Ibid*. (quoting *Knox* v. *Service Employees*, 567 U. S. 298, 307, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012)). "'[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Chafin*, 568 U. S., at 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (quoting *Knox*, 567 U. S., at 307-308, 132 S. Ct. 2277, 183 L. Ed. 2d 281). Thus, to establish mootness, a "demanding standard" must be met. *Mission Product Holdings*, *Inc*. v. *Tempnology*, *LLC*, 587 U. S. ___, ___, 139 S. Ct. 1652, 203 L. Ed. 2d 876, 885 (2019).
>
> We have been particularly wary of attempts by parties to manufacture mootness in order to evade review. See *Knox*, 567 U. S., at 307, 132 S. Ct. 2277, 183 L. Ed. 2d 281; accord, *Northeastern Fla. Chapter*, *Associated Gen. Contractors of America* v. *Jacksonville*, 508 U. S. 656, 661, 113 S. Ct. 2297, 124 L. Ed. 2d 586 (1993). And it is black-letter law that we have a "virtually unflagging" obligation to exercise our jurisdiction. *Colorado River Water Conservation Dist*. v. *United States*, 424 U. S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).

*N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 140 S. Ct. 1525, 1533 (2020)

§ 1021.11 still on the books. Holding that a state law is preempted by federal law does not, however, render the entire state law nonexistent. The state law continues to exist until the legislature that enacted it repeals it. At the same time, any portion of the law that is preempted is unenforceable in court until Congress removes the preemptive federal law or the courts reverse course on the effect of the federal law. See Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 953 (2018) ("[S]tate statutes that contradict 'supreme' federal law continue to exist as 'laws,' even as they go unenforced, and they would become enforceable if federal law were amended or reinterpreted to remove the conflict."). Preemption is therefore claim-driven: when a party successfully invokes preemption as a defense to a state-law claim, the court will apply the federal law and the state law will be disregarded to the extent the laws conflict. *Close v. Sotheby's, Inc.*, 909 F.3d 1204, 1209-10 (9th Cir. 2018).

Municipal Defendants have the power to enforce the civil statute, Cal. Civ. Code § 1021.11, and that California's courts have held that they are not bound by lower federal court interpretations of the United States Constitution, *People v. Bradley,* 1 Cal. 3d 80, 460 P.2d 129,

12

132, 81 Cal. Rptr. 457 (Cal. 1969) (en banc) ("we are not bound by the decisions of the lower federal courts even on federal questions"); *People v. Perez,* 279 Cal. Rptr. 915, 919 (Cal. Ct. App. 1991) (citing *Bradley* to reject federal appeals court decisions regarding the Sixth Amendment).

Though this circuit voiced "serious doubts" about the argument that state courts may ignore the decisions of federal circuit courts on federal questions in *Yniguez v. State of Arizona,* 939 F.2d 727, 736 (9th Cir. 1991), *aff'd in part, rev'd in part sub nom. Yniguez v. Arizonans for Official English,* 42 F.3d 1217 (9th Cir. 1995), *aff'd upon reh'g,* 69 F.3d 920 (9th Cir. 1995) (en banc), *cert. granted,* __ U.S. __, 116 S. Ct. 1316, 134 L. Ed. 2d 469 (1996), the law is not well settled and a declaration from this Court is relief that can be granted.

An order by this court striking down the civil statute with a declaration would certainly help redress Plaintiff's injury. Of Plaintiff's potential legal adversaries, the Attorney General of California has far and away the greatest resources, both economic and political. However, with the fee-shifting provision still intact for use by private parties, Plaintiff is still suffering injury-in-fact. A finding that the statute is unconstitutional, it would be of immense benefit to Plaintiff in his particular case. *See Yniguez,* 939 F.2d at 737 ("While [an order striking down a statute] may have left [private parties'] right to sue intact, a right to bring a private enforcement action is not a complete substitute for executive enforcement and implementation. Hence, as a practical matter, the [order] substantially weakened [the statute] . . . ."). See also *Bland v. Fessler*, 88 F.3d 729, 736-38 (9th Cir. 1996).

The United States Supreme Court does not "strike down" unconstitutional provisions of law; instead, such rulings merely render the provisions unenforceable in whole or in part. As the United States Fifth Circuit Court of Appeals has explained: "It is often said that courts 'strike down' laws when ruling them unconstitutional. That's not quite right. Courts hold laws unenforceable; they do not erase them. Many laws that are plainly unconstitutional remain on the

statute books. Jim Crow-era segregation laws are one example*." Pool v. City of Houston*, 978 F.3d 307, 309 (5th Cir. 2020) (emphasis added; citations omitted).

Because the law is still on the books in California, attorneys are forced to self-censor until repealed. That is why the injunction grated in *Miller v. Bonta* has no effect on the parties in this case. As long as the law remains on the books, attorneys will definitely consider whether to accept a case with the law still capable of being enforced in a state court proceeding.

Here, the law remains on the books, and the Municipal Defendants are free to use the law because the Attorney General only has supervisory power over District Attorneys in the criminal prosecution of cases, and not civil matters, and because of that, a conflict remains due to self-censorship and ethical guidelines for attorneys.

> Moreover, overlapping injunctions appear to be a common outcome of parallel litigation, rather than a reason for the Court to pass on exercising its duty to determine whether litigants are entitled to relief. For example, in recent litigation challenging the Secretary of Commerce's decision to add a citizenship question to the census, three district courts issued parallel injunctions against the policy. *See New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 677 (S.D.N.Y. 2019)4; *State v. Ross*, 358 F. Supp. 3d 965, 1050-51 (N.D. Cal. 2019); *Kravitz v. United States Dep't of Commerce*, 366 F. Supp. 3d 681, 755 (D. Md. 2019). The Court concludes that the existence of another injunction—particularly one in a different circuit that could be overturned or limited at any time—does not negate Oregon's claimed irreparable harm.

*California v. HHS*, 390 F. Supp. 3d 1061, 1065-66 (N.D. Cal. 2019).

Plaintiff commenced this action on July 5, 2022. On July 22, 2022, § 1021.11 was signed into law. On September 2, 2022, Plaintiff filed an First Amended Complaint and Supplemental Complaint, which added two claims for declaratory and equitable relief regarding the constitutionality of § 1021.11.

On September 26, 2022, a parallel action was filed by different plaintiffs, captioned: *Miller v. Bonta* (3:22-cv-01446) District Court, S.D. California.

On December 1, 2022, the District Court in the Southern District of California had an

opposite opinion that the *Miller* plaintiffs in that case had standing even though the Attorney General made the same offer of non-enforcement.

On December 9, 2022, the District Court in the Eastern District of California in this case denied Plaintiff's Motion for a Preliminary Injunction and Declaratory Relief on the basis of a lack of standing. In 1821 the Supreme Court stated

> [w]ith whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty. In doing this, on the present occasion, we find this tribunal invested with appellate jurisdiction in all cases arising under the constitution and laws of the United States.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821).

On December 19, 2022, the district court judge in *Miller v. Bonta* (3:22-cv-01446) enjoined the enforcement of § 1021.11.

Given defendants' penchant for ignoring court orders and making frivolous appeals, Plaintiff and his attorneys still have the matter decided in this case, and grant the declaratory relief sought to remove all doubt about the enforceability of the statute against Plaintiff in this proceeding and any other proceedings.

## **CONCLUSION**

The motion should be denied. If any part of the motion is granted, Plaintiff requests leave of court to file an amended and supplemental pleading include the facts presented in the Request for Judicial Notice.

DATED: December 12, 2023

Respectfully submitted,
LAW OFFICES OF GARY W. GORSKI
 */s/ Gary W. Gorski*
GARY W. GORSKI
Attorney for Plaintiff Arnold Abrera