**Gary W. Gorski CBN: 166526**
**Attorney at Law**
*VETERANS LAW CENTER*
3017 Douglas Blvd., Suite 150
Roseville, CA 95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com
www.VeteransLawCenter.com

**Daniel M. Karalash CBN: 176421**
**Attorney at Law**
*STRATEGIC LAW COMMAND*
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
(916) 787-1234
Fax: (916) 520-3930

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ARNOLD ABRERA,

Plaintiff,

v.

GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; ANNE MARIE SCHUBERT, in her official capacity as County of Sacramento District Attorney; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE;

Defendants.

No. 2:22-cv-1162-JAM-DB

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' COUNTY OF SACRAMENTO AND ANNE MARIE SCHUBERT'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**Date:** January 9, 2024
**Time:** 1:30 p.m.
**Courtroom:** 6
**Judge:** The Honorable John A. Mendez
**Location:** Courtroom 27, 8th floor
501 I Street
Sacramento, CA

**Complaint Filed:** 7/5/2022
**First Amended Complaint Filed:** 9/2/2022
**Trial Date:** None Set

## I. INTRODUCTION

> Constitutional scholars have dubbed the Second Amendment "the Rodney Dangerfield of the Bill of Rights." As Judge Ho relates, it is spurned as peripheral, despite being just as fundamental as the First Amendment. It is snubbed as anachronistic, despite being just as enduring as the Fourth Amendment. It is scorned as fringe, despite being just as enumerated as the other Bill of Rights guarantees.
>
> The Second Amendment is neither second class, nor second rate, nor second tier. The "right of the people to keep and bear Arms" has no need of penumbras or emanations. It's right there, 27 words enshrined for 227 years.

*Mance v. Sessions*, 896 F.3d 390, 396 (5th Cir. 2018)

> If ever there was a case study illustrating Madison's concern about "evil lurking under plausible disguises, and growing up from small beginnings," it is our circuit's Second Amendment jurisprudence. In the thirteen years since the Supreme Court ruled in *Heller* that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," 554 U.S. at 592, our court has trimmed back that right at every opportunity—to the point that now, in the nine Western states covered by our court, the right to "keep and bear arms" means, at most, you might get to possess one janky handgun and 2.2 rounds of ammunition, and only in your home under lock and key. That's it.

*Duncan v. Bonta*, 19 F.4th 1087, 1172-73 (9th Cir. 2021) (BUMATAY, Circuit Judge, with whom IKUTA, and R. NELSON, Circuit Judges, join, dissenting).

Mr. Abrera, a 48-year-old, a law-abiding citizen and responsible firearm owner, faced charges for possessing legally purchased modern semi-automatic rifles and handguns. (FAC ¶ 87-92; RJN #s 1-6.) These firearms were seized during a police visit prompted by a 911 hang-up call. Despite no evidence of wrongdoing, Plaintiff's firearms were confiscated. (RJN # 1, 3; FAC ¶s 1, 2, 12-15, 56-77, 82-94.)

The protected "arms" legally purchased in California and seized from Plaintiff's home are as follows: One (1) Glock, Inc., Model 17, 9mm Cal., Serial No. BBDW312; One (1) Sig Sauer Model SP2022, .40 Cal., Serial No. 24B245366; One (1) Sig Sauer Model SP2022, 9mm Cal., Serial No. 24B245997; One (1) Sturm, Ruger & Co., Model LC380CA, .380 Cal., Serial No. 32653888; One (1) Del-Ton Inc., Model DTI 15, 5.56 Cal., Serial No. B6215; and, One (1) Roggio Arsenal, Model RA L5, Multi-Caliber, Serial No. RA09011623.

The government initiated criminal proceedings against Plaintiff for possession of alleged "assault weapons", functionally no different than the semi-automatic handguns seized. Additionally, a petition for the return of firearms was filed without naming Plaintiff as a party, and is not even found on the Court's electronic docketing system. (FAC ¶ 83; RJN # 3, 6.) A felony complaint was later filed by the District Attorney, charging Plaintiff for possession of rifles based on cosmetic features. The court dismissed the felony complaint as legally baseless. (RJN #s 1-6; FAC ¶s 1, 2, 12-15, 56-77, 82-94.) Plaintiff's § 1538.5 motion for return of arms was also denied. (FAC ¶ 97-98, 330-370 see also RJN #s 1, 2, 4 and 5.)

Defendants policies at issue generally are as follows (for specifics, see FAC ¶s 187-188, 409-411, 415-417, 423-427):

**Unequal Treatment under "Collateral Consequences" policy:** Equal Protection challenge against the Defendants' policy of "collateral consequences" in immigration cases. This policy grants illegal immigrants greater rights in California's penal system than citizens. The written and unwritten application of this policy, wherein cases involving illegal immigrants may be dismissed to prevent deportation, is in stark contrast to cases involving the Second Amendment and protected arms. Firearms cases cannot be dismissed, and guns are consistently destroyed, even if legally purchased in-state. The absence of any mention of "collateral consequences" policy in Defendants' motion is deliberate.

**Two-Tiered System for the Return of Property:** Defendants maintain a custom, policy, and practice of creating a two-tiered system for the return of seized property. Firearms face more stringent return processes compared to other types of property. This disparate treatment places an additional burden on individuals seeking the return of lawfully owned firearms, further infringing on their Second Amendment rights.

**Selective Prosecution and Seizure of Firearms:** Defendants engage in selective

prosecution of gun owners, specifically targeting individuals exercising their Second Amendment rights. This policy not only discriminates against those intending to exercise their right to keep and bear modern arms but also highlights a systemic bias against gun owners.

**Targeting and Destruction of Legally Owned Guns:** Defendants have a policy of "targeting" guns in the Sacramento region, even if legally owned, as compared to all other crimes. This policy involves using the criminal and civil courts to seize and destroy firearms, despite their legality under federal law. Defendants use a matrix of both civil and criminal statutes to seize and destroy arms. The policy is enforced against lawful gun owners as part of plea agreements or motions to dismiss with no historical pedigree.

**Peace Officers' Preferential Treatment:** Peace officers receive preferential treatment concerning gun violence restraining orders and other crimes that would have "collateral consequences" on their employment. This preferential treatment creates an additional layer of inequality, where individuals within law enforcement are treated differently in matters related to gun ownership, restraining orders and crimes compared to the general public.

**a. Rule 8**

Because of multiple defendants involving a chain of events and state court cases, the FAC is not unreasonably too long. Many of the averments plead are unrelated to moving Defendants. (e.g., abortion v. gun control; averments ¶s 193-212 relating to defendants Newsom and Bonta compared to ¶s 215-219 specific to moving Defendants) Plaintiff asserts both as-applied and facial challenges to the statutes and policies.

## II. LEGAL STANDARD

Motions to dismiss are "disfavored and rarely granted." *U.S. v. Hempfling*, 431 F.Supp.2d 1069, 1075 (E.D. Cal. 2006).

## V. OPPOSITION ARGUMENT

Plaintiff's FAC pertains to 1) the narrow issue regarding the return of his arms and damages under Defendants policy, and 2) the broader declaratory challenge as to the policies resulting is the deprivation of Second Amendment rights through network of enforcement actions. The action clearly lays out Defendants' policies at FAC ¶s 95, 171187-190, 213-219, **223-286**, 423-426).

Defendants have abrogated Plaintiff's Second and Fourteenth Amendment rights for no other reason than political gamesmanship and seized Plaintiff's arms in perpetuity, thus ignoring the Supreme Court's holdings in *United States v. Miller*, 307 U. S. 174 (1939); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 411 (2016); and, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ____, 142 S. Ct. 2111 (2022).

The AR-15, which has been described as America's "most popular semi-automatic rifle," is covered under the Amendment's text. *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1287, 399 U.S. App. D.C. 314 (D.C. Cir. 2011) (Kavanaugh, J., dissenting). In this regard, courts have repeatedly recognized that modern, semi-automatic rifles like the AR-15 are in common use by law-abiding citizens for self-defense.

### A. *Penn General* Doctrine Is Plainly Inapplicable.

This court undeniably maintains jurisdiction in this matter. Not only is the Defendants' argument without merit, but it also knowingly misguides the court.

Despite the Plaintiff's submission of a motion for the return of property under California Penal Code section 1583.5 in *People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857 (FAC ¶ 94), the Defendants omit the fact that the request under § 1538.5 was "denied" (RJN # 5). Consequently, there is no *in rem* proceeding currently "pending." In the case of *City of Elk Grove vs. Euginie Abrera*, Sacramento Superior Court case number 34-2021-

20000745 (FAC ¶s 83-86), the Plaintiff is not a named party, and a Court Docket search for the mentioned case reveals: "No Results Found" (RJN # 6). The Plaintiff possesses no further knowledge of this case and is not a party involved in the proceedings.

**B. *Younger* Abstention Is Also Plainly Inapplicable**

*Younger* abstention is also plainly inapplicable. "In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction," and "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013).

The cases of *People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857 and *City of Elk Grove vs. Euginie Abrera*, Sacramento Superior Court case number 34-2021-20000745 have no relationship with the relief sought in this matter. (See RJN #s 1-6)

**C. The Plaintiff's compliance with state registration laws is irrelevant to his facial and As-Applied challenge under the Second Amendment**

The Plaintiff's compliance with state registration laws is utterly irrelevant to his facial and as-applied challenge under the Second Amendment to Defendants policies (FAC ¶s 95, 171187-190, 213-219, **223-286**, 423-426) and enforcement actions. The argument that the claims are not ripe because the Plaintiff has not alleged compliance with California Penal Code Sections 12021.3.1 and 33850, is irrelevant when the "arms" are protected by the Second Amendment. Registration as a condition for the lawful possession of firearms imposes a prior restraint on the exercise of Second Amendment rights and has no historical analog. Moreover, Defendants selective enforcement regardless of the "collateral consequences" have a "chilling effect" on individuals exercising their Second Amendment rights.

The Supreme Court in every single Second Amendment opinion points out the use of bearable arms for militia purposes. See *United States v. Miller*, 307 U. S. 174 (1939); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010);

*Caetano v. Massachusetts*, 577 U.S. 411 (2016); and, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ____, 142 S. Ct. 2111 (2022). See Plaintiff's standing argument below.

Defendants' policies lack historical precedent that would justify confiscating legally owned firearms from a residence without a warrant and withholding their return, especially when no crime has been committed. The failure to return his arms (two AR-15s) in this situation is also inconsistent with the original understanding of constitutional protections against unreasonable searches and seizures concerning arms seizure.

The crux of the legal challenge lies in the government's unprecedented ability to seize protected arms without an unimpeded mechanism for their swift return, and the policy for such. (FAC ¶s 95, 171187-190, 213-219, **223-286**, 423-426)

A notable aspect of the Plaintiff's claim which Defendants ignore that the government cannot seize all protected arms without cause, subsequently demanding a fee and compelled speech through form submissions for their return. First, Plaintiff legally purchased the two AR-15s in California. Second, California passed a law requiring registration and modification of the AR-15s after he had already purchased them and cleared the DROS check.

Furthermore, it is pertinent to underscore that even under federal law, specifically 18 U.S.C.S. § 924(d)(1), a clear provision exists mandating the expeditious return of seized or relinquished firearms and ammunition upon the acquittal of the owner or possessor or the dismissal of charges against them. Notably, this return is immediate, unless it would place the owner, possessor, or their delegate in violation of the law. This should have been Defendants policy.

In addition, federal law, as articulated in 18 U.S.C.S. § 924(d)(2)(A), establishes that in any action or proceeding for the return of firearms or ammunition seized under the pertinent provisions, the court is required to allow the prevailing party (other than the United States) a

reasonable attorney's fee, with the United States being liable for such fees. Moreover, under 18 U.S.C.S. § 924(d)(2)(B), in any other action or proceeding under the same provisions, if the court finds that the action was without foundation, or was initiated vexatiously, frivolously, or in bad faith, the prevailing party (other than the United States) is entitled to a reasonable attorney's fee, and the United States is liable for such fees.

This federal legal framework starkly contrasts with Defendants' approach, highlighting that, unlike the Defendants' practices, federal law not only mandates the swift return of seized arms but also subjects the government to potential liability for attorney fees and costs in case of non-compliance. This statutory distinction emphasizes the federal government's recognition of the importance of promptly returning lawfully owned firearms and the consequences for failing to adhere to this mandate.

### D. The Plaintiff undoubtedly has standing to assert his Second Amendment rights under Article III

The Plaintiff unequivocally has standing to assert Second Amendment rights under Article III, as established by *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). The Defendants' contrary claim contradicts all Article III standing precedents. Defendant posses the question at page 11, line 12: "Absent any right to these specific rifles, how can Plaintiff establish standing?" Answer: EASY! Under *Bruen* and *Heller*, the irreducible minimum of the Second Amendment is this: The government may not ban arms that millions of Americans possess for lawful purposes. That most basic of principles dooms Defendants enforcement policies and state laws.

The Second Amendment secures "the right of the people to keep and bear Arms." U.S. Const. amend. II. And as the Supreme Court made clear last year, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2126 (2022). The first question this Court must ask in analyzing HB 5471 is thus whether the firearms and

magazines the statute bans fit within "the Second Amendment's definition of 'arms.'" *Id.* at 2132. After all, one can neither "keep" nor "bear" what one cannot acquire or possess in the first place. If the answer to that first question is yes (which it plainly is), the Court must then ask whether the firearms and magazines bans are "highly unusual in society at large" today. *Id.* at 2143 (quoting *Heller v. Dist. of Columbia*, 554 U.S. 570, 627 (2008)). If the answer to *that* question is no (which it plainly is), then the inquiry is over and the government action is invalid, because a state may not "prohibit[] … an entire class of 'arms' that is overwhelmingly chosen by American society for [a] lawful purpose." *Heller*, 554 U.S. at 628; *see also Bruen*, 142 S.Ct. at 2128, 2143 ("[T]he Second Amendment protects … weapons that are unquestionably in common use today.").

*Bruen* and *Heller* leave no doubt about the meaning of "Arms": "The 18th-century meaning is no different from the meaning today…. '[A]rms' [means] 'anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" *Heller*, 554 U.S. at 581. "[T]he Second Amendment's definition of 'arms'" thus presumptively covers all "modern instruments that facilitate armed self-defense." *Bruen*, 142 S.Ct. at 2132. Defendants nonetheless contend that the "specific rifles" are not "Arms" covered by the Second Amendment. The Supreme Court has *twice* "rejected" such an argument as "'bordering on the frivolous.'" *Caetano v. Massachusetts*, 577 U.S. 411, 414 (2016) (Alito, J., concurring) (quoting *Heller*, 554 U.S. at 582); *see id.* at 411-12 (per curiam). Whether something is an "Arm" is different from whether it is in common use today.

Under *Bruen*, whether something is an "Arm" and thus covered by the Amendment's "plain text" is the opening question. *See Bruen*, 142 S.Ct. at 2126, 2129-30, 2143. Whether that thing is "in common use today" (*i.e.*, is "typically possessed by law-abiding citizens for lawful purposes") is the second question under *Bruen*. *Id.* at 2143; *Heller*, 554 U.S. at 625. The two

questions are analytically distinct. The answer to the first question depends on whether the firearm or other implement is "a[] thing that a man wears for his defence, *or* takes into his hands, *or* useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 625 (emphases added). The answer to the second question, by contrast, depends on whether the American people have chosen to keep and bear the "Arm" in question for lawful purposes like self-defense and hunting, or instead if it is "highly unusual in society at large." *Bruen*, 142 S.Ct. at 2143 (quoting *Heller*, 554 U.S. at 627).

Defendants do not contest that the AR-15 is a "thing that a man wears for his defence, *or* takes into his hands, *or* useth in wrath to cast at or strike another," *Heller*, 554 U.S. at 625 (emphases added), or that they are "modern instruments that facilitate armed self-defense," *Bruen*, 142 S.Ct. at 2132. Nor could they. The firearms subject to this action fit within the Second Amendment's definition of "Arms."

Whether something was in common use in 1789 or 1865 makes exactly zero difference. According to the Supreme Court, that question matters not at all. "[T]he Second Amendment's … reference to 'arms' does not apply 'only [to] those arms in existence in the 18th century.'" *Bruen*, 142 S.Ct. at 2132 (final alteration in original; quoting *Heller*, 554 U.S. at 582). "Just as the First Amendment protects modern forms of communications, … and the Fourth Amendment applies to modern forms of search, … the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, *even those that were not in existence at the time of the founding*." *Heller*, 554 U.S. at 582 (emphasis added). Indeed, this principle was so well settled even before *Bruen* that, when a Massachusetts court held in 2015 that "stun guns are not protected because they 'were not in common use at the time of the Second Amendment's enactment,'" the Supreme Court *summarily reversed* that decision as contrary to *Heller*'s teaching "that the Second Amendment 'extends … to … arms … that were not in existence at the time of the founding."

*Caetano*, 577 U.S. at 411-12 (per curiam) (quoting *Heller*, 554 U.S. at 582). Since then, the principle has only become more well-settled: "[E]ven though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Bruen*, 142 S.Ct. at 2132.

As *Bruen* made clear, the Second Amendment covers all "modern instruments that *facilitate* armed self-defense," not just what is necessary for self-defense. 142 S.Ct. at 2132 (emphasis added). Nor could it be otherwise: The Second Amendment guarantees an individual right "to keep and bear arms," not a right to keep and bear only those arms that the government deems "necessary" for individuals.

**E. Defendants cannot shield themselves under *Monell v. Department of Social Services*, 436 U.S. 658 (1978)– they made a Conscious Choice to enforce an unconstitutional law.**

Plaintiff is not suing the DA for malicious prosecution. Plaintiff is seeking <u>declaratory and injunctive relief</u> against the DA for <u>policies</u> affecting prosecution and plea bargains which are not necessarily the policy of the State. The DA's <u>policies</u> are not state action and damages are not sought to those policies. However, damages are sought for actions which occurred <u>after</u> the criminal prosecution ended. In cases where a Plaintiff alleges a constitutional violation due to a municipality enforcing an unconstitutional state statute, established legal precedent recognizes that accountability can be assigned to the state enacting the statute, the municipality enforcing it, and individual employees directly violating the Plaintiff's rights. However, it is crucial to note that damages are not available against the state under Section 1983, and individual employees can often claim qualified immunity due to unsettled law. Consequently, the Plaintiff is left to assert his damage claim solely against the Defendants in this case. Plaintiff is not seeking monetary damages on a prosecutor "initiating a prosecution and in presenting the State's case" which is absolutely immune from suit. See *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 47 L.

Ed. 2d 128 (1976).

Moreover, the case law, exemplified by *Owen v. City of Independence*, 445 U.S. 622, 650, 1980), firmly establishes that, unlike individual Defendants, a municipality cannot assert qualified immunity based on a good faith belief in the constitutionality of its actions or policies.

*Evers v. County of Custer*, 745 F.2d 1196, 1204 (9th Cir. 1984) stands as a pivotal case where a county argued it was not liable because it was following state law rather than implementing county policy. Applying the principles set forth in *Evers*, various district court decisions in the Ninth Circuit have consistently found that municipalities could be held liable for actions taken in accordance with state statutes (e.g., *Platt v. Moore*, 2018 U.S. Dist. LEXIS 43544, 2018 WL 2058136, at *16 (D. Ariz. Mar. 15, 2018); *Puente Arizona v. Arpaio*, 76 F. Supp. 3d 833, 867 (D. Ariz. 2015), rev'd in part, vacated in part on other grounds, 821 F.3d 1098 (9th Cir. 2016); *Galassini v. Town of Fountain Hills*, 2013 U.S. Dist. LEXIS 142122, 2013 WL 5445483, at *27 (D. Ariz. Sept. 30, 2013)).

Furthermore, in *Cooper v. Dillon* (403 F.3d 1208, 11th Cir. 2005), the Eleventh Circuit affirmed that a municipality could be held liable under Section 1983 if it adopted and enforced an unconstitutional state statute. This decision explicitly rejected the argument that a city could not be held liable merely for enforcing the statute.

In light of these legal precedents, the Plaintiff is justified in seeking damages from the Defendants in this case, particularly the municipality, as the municipality's actions, policies, and enforcement of state statutes are subject to legal scrutiny without the shield of qualified immunity.

### F. Plaintiff's tenth claim for damages is not barred by Eleventh Amendment Immunity

Against, the conscious choice to implement policies resulting in constitutional deprivation cannot be passed on as state action for Eleventh Amendment purposes. Damages are barred but

not Defendants policies, and where state action ended, i.e. after the matter was dismissed, the matter then became administrative for return of property which is not prosecutorial in nature.

**G. Declaratory relief against the District Attorney is not appropriate under the *Ex Parte Young* doctrine exception to Eleventh Amendment immunity**

Their Eleventh Amendment argument can only be described as deceptive. *Ex Parte Young* could not be more clear in allowing injunctive relief against state officials. The action clearly lays out her policies subject to declaratory and injunctive relief, and damages for failing to return the two rifles after the action was dismissed. (FAC ¶s 95, 171187-190, 213-219, **223-286**, 423-426)

**H. Plaintiff's Eleventh and Twelfth claims are not moot because Plaintiff is still entitled to declaratory and injunctive relief.**

Plaintiff's claims remain viable because this court can issue a distinct ruling regarding the party Defendants. The cited case, *Miller v. Bonta*, No. 22-cv-1446, 2022 WL 17811114 (S.D. Cal. Dec. 19, 2022), only involved state Defendants. The terms "parallel proceedings," "duplicative litigation," and "the exercise of concurrent jurisdiction" refer to simultaneous lawsuits with closely related issues and parties. Plaintiff found no identical case but notes that overlapping injunctions can result from parallel litigation.

There is no remedy at law due to state immunity, and a declaration of harm is crucial for future recourse. Notably, Newsome and Bonta are the sole common parties in both parallel proceedings, and concurrent jurisdiction doesn't imply conflicting jurisdiction. (FAC ¶ 38, ER-54, FAC ¶s 83, 87-90, 92-96.) Therefore, declaratory relief in this case can be used in this case, as well as any further municipal state court cases pertaining to the same municipal Defendants.

Plaintiff has researched this issue and can find no case on point. This is the closest Plaintiff could find on the subject:

> Moreover, overlapping injunctions appear to be a common outcome of parallel litigation, rather than a reason for the Court to pass on exercising its duty to determine whether litigants are entitled to relief.

> For example, in recent litigation challenging the Secretary of Commerce's decision to add a citizenship question to the census, three district courts issued parallel injunctions against the policy. *See New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 677 (S.D.N.Y. 2019)4; *State v. Ross*, 358 F. Supp. 3d 965, 1050-51 (N.D. Cal. 2019); *Kravitz v. United States Dep't of Commerce*, 366 F. Supp. 3d 681, 755 (D. Md. 2019). The Court concludes that the existence of another injunction—particularly one in a different circuit that could be overturned or limited at any time—does not negate Oregon's claimed irreparable harm.

*California v. HHS*, 390 F. Supp. 3d 1061, 1065-66 (N.D. Cal. 2019).

Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction…." *McClellan* v. *Carland, supra,* at 282. See *Donovan* v. *City of Dallas,* 377 U.S. 408 (1964). <u>As between federal district courts</u>, however, though <u>no precise rule</u> has evolved, the general principle is to avoid duplicative litigation. See *Kerotest Mfg. Co.* v. *C-O-Two Fire Equipment Co., supra; Steelman* v. *All Continent Corp.,* 301 U.S. 278 (1937); *Landis* v. *North American Co.,* 299 U.S. 248, 254 (1936).

The purpose of Declaratory Judgment Act (28 U.S.C.S § 2201) is to settle actual controversies before they ripen into violations of law or breach of duty. *United States v. Fisher-Otis Co*., 496 F.2d 1146, 1974 (10th Cir. 1974). Congress intended declaratory judgment procedure to act as alternative to injunctive relief and to be utilized to test constitutionality of state statutes. *Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir. 1974); *Steffel v. Thompson*, 415 U.S. 452 (1974).

### I. Plaintiff has standing to assert injunctive relief

The harm continues as Defendants are still depriving Plaintiff of his Second Amendment rights in perpetuity, and the polices subject to this action continue policies. (FAC ¶s 95, 171187-190, 213-219, **223-286**, 423-426)

## <u>CONCLUSION</u>

The Second Amendment deserves more respect than it receives. Despite being as

fundamental as the First Amendment, enduring as long as the Fourth Amendment, and enumerated like other Bill of Rights guarantees, it is treated as second-class. The Plaintiff's right to bear arms for personal self-defense is unjustly relegated to a "second-class right" by a complex web of laws, stripping citizens of their protected arms.

The AR-15, a symbol of legal firearm ownership, has been unfairly stigmatized. The AR-15, like handguns, is a quintessential self-defense weapon, demanding constitutional scrutiny aligned with its historical context.

Despite committing no crime, Plaintiff's legally purchased firearms, including semi-automatic rifles and handguns, were seized during a police visit, transforming his life into a legal quagmire. His firearms, critical for self-defense, were not returned, even after the court dismissed the case against him. Mr. Abrera's case underscores the profound constitutional infringement and irreparable harm inflicted by the challenged laws. The balance struck by the people in the Second Amendment demands our unqualified deference.

This case exposes a two-tiered system for the return of property, especially firearms, creating unnecessary hurdles for citizens exercising their Second Amendment rights. Defendant Schubert's policy of "targeting" guns, even when legally owned, raises serious claims.

This court must reaffirm the people's right to bear arms, safeguarding the core principles enshrined in the Constitution. Anything less perpetuates injustice and undermines the very foundation of our democracy. The motion should be denied without hesitation.

If any part of the motion is granted, Plaintiff requests leave of court to file an amended and supplemental pleading include the facts presented in the Request for Judicial Notice.

Respectfully submitted,
LAW OFFICES OF GARY W. GORSKI

DATED: December 12, 2023

*/s/ Gary W. Gorski*
GARY W. GORSKI
Attorney for Plaintiff Arnold Abrera