**Gary W. Gorski CBN: 166526**
Attorney at Law
*VETERANS LAW CENTER*
3017 Douglas Blvd., Suite 150
Roseville, CA  95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com
www.VeteransLawCenter.com

**Daniel M. Karalash CBN: 176421**
Attorney at Law
*STRATEGIC LAW COMMAND*
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
Fax: (916) 520-3930

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD ABRERA,<br><br>　　　　　plaintiff,<br>　　v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; ANNE MARIE SCHUBERT, in her official capacity as County of Sacramento District Attorney; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE;<br><br>　　　　　defendants. | No.  2:22-cv-1162 JAM DB<br><br>**PLAINTIFF'S REPLY STATE DEFENDANTS' OPPOSITION TO MOTION FOR DECLARATORY RELIEF AND A PRELIMINARY AND PERMANENT INJUNCTION**<br><br>**Date:** January 9, 2024<br>**Time:** 1:30 p.m.<br>**Courtroom:** 6<br>**Judge:** The Honorable John A. Mendez<br>**Location:** Courtroom 27, 8th floor<br>501 I Street<br>Sacramento, CA<br>**Trial Date: None Set**<br>**Action Filed:** July 5, 2022 |

## **REPLY**

　　Almost one and one-half years after filing his lawsuit, Plaintiff Arnold Abrera is still grappling with the unjust retention of his firearms by the government. His relentless pursuit for

1

their return has been systematically obstructed by the deliberate legislative machinations of Defendants—Governor Gavin Newsom and Attorney General Rob Bonta, in their respective official capacities. Abrera's fight has been exacerbated by the onerous and now unconstitutional SB 1327, a law that brazenly favored those defending gun regulations by allowing them to extract attorney fees from challengers like Abrera. This law's subsequent invalidation by the Southern District Court starkly underscores the injustice and complexity of Abrera's ongoing battle to recover his unlawfully seized arms. See *Miller v. Bonta*, 643 F. Supp. 3d 1087 (S.D. Cal. 2022).

Defendants' feeble justification for retaining Mr. Abrera's two AR-15 rifles, a contention that may hold a sliver of validity exclusively within the jurisdiction of the City of Elk Grove, utterly disintegrates regarding the seizure and ongoing detention of his handguns. These handguns are unambiguously protected under the Second Amendment, a fact resoundingly affirmed by the *Bruen* decision. It is imperative to emphasize that the crux of this motion is the vindication and restoration of Mr. Abrera's Second Amendment and property rights, specifically through the <u>unimpeded return of his firearms</u>. This action is tantamount to the universally accepted protocol of returning personal effects, such as a wallet or pocket knife, to individuals upon their release from custody, or in instances where charges have been dismissed, such as in *Cupp v. Bonta*, 2:16-cv-00523-TLN-KJN (E.D. Cal. filed Mar. 11, 2016), cited by the State Defendants. (It is interesting to note that in the matter of Cupp, after the charge of carrying a concealed weapon (i.e., two knives) was dismissed; Cupp's two knives were handed to him by the bailiff in open court—no need for a background check and payment of a fee for the return of those two arms.)

The continued confiscation of two handguns, unequivocally registered to Mr. Abrera and untainted by any connection to criminal acts, violence, or suicide, is not merely groundless but an outright affront to the Second Amendment. This unwarranted seizure, completely devoid of any legal or rational justification, constitutes a blatant and severe infringement of Mr. Abrera's

constitutional rights. This Court must, therefore, acknowledge the profoundly erroneous nature of their ongoing retention and mandate their prompt restitution to Mr. Abrera, aligning its decision with the tenets of the Supreme Court's holdings in *United States v. Miller*, 307 U. S. 174 (1939); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 411 (2016); and, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. \_\_\_\_ (2022).

## **ARGUMENT**

The facts of this case stand unchallenged and irrefutable; the Defendants have made no effort to dispute them, nor have they provided any evidence justifying the continued non-return of Mr. Abrera's firearms. In fact, it appears they cannot furnish such justification. Instead, their strategy has been one of obfuscation and delay, relying on legal maneuvers rather than addressing the core issue at hand. This approach not only sidesteps the fundamental question of why Mr. Abrera's legally owned firearms remain in their possession but also flies in the face of due process and the holdings in *Miller, Heller, McDonald, Caetano* and *Bruen*. Their reliance on legal artifices, rather than confronting the undeniable facts, underscores the weakness of their position and the absence of any legitimate reason for withholding Mr. Abrera's property.

### I. ABRERA'S STANDING TO CHALLENGE THE LAWS.

Contrary to the State's assertion, Mr. Abrera has a direct and personal stake in the outcome of this case. The confiscation of his firearms, including AR-15 style rifles, magazines and accessories, under the statutes in question, constitutes a palpable infringement of his Second Amendment rights, thus establishing his standing to challenge these laws. His standing is bolstered by the clear and present danger these laws pose to his ability to exercise his constitutional rights.

The manner in which Mr. Abrera's Second Amendment rights were revoked represents a

clear and egregious violation of not just the spirit, but the explicit guarantees of due process. His rights were summarily stripped away without any semblance of the procedural safeguards that are the bedrock of American jurisprudence.

Absence of Due Process: In Mr. Abrera's case, there was a flagrant lack of due process. The confiscation of his firearms was executed without the requisite legal proceedings or opportunity for Mr. Abrera to contest the seizure. This action directly contravenes the Fifth and Fourteenth Amendments, which ensure that no individual shall be deprived of life, liberty, or property without due process of law.

Unilateral Revocation of Constitutional Rights: The manner in which Mr. Abrera's firearms were seized represents a unilateral revocation of his constitutionally guaranteed Second Amendment rights. This revocation was carried out without any judicial oversight or legal justification, embodying a stark disregard for the constitutional protections afforded to every American citizen.

Violation of Second Amendment Protections: The Second Amendment expressly protects the right of individuals to keep and bear arms. The unwarranted seizure of Mr. Abrera's firearms, without legal cause or process, is a direct violation of this fundamental right.

Need for Judicial Intervention: The arbitrary and unchallenged stripping of Mr. Abrera's rights without due process is a matter that demands immediate legal redress. The courts must act to restore Mr. Abrera's rights and ensure that such blatant disregard for constitutional protections does not go unaddressed.

### A. Plaintiff has standing to challenge the California Welfare and Institutions Code.

The Defendants' contention that Plaintiff Arnold Abrera lacks standing to challenge sections 5150, 5151, 8102, and 8103 of the California Welfare and Institutions Code is not only legally unsound but egregiously overlooks the severe misapplication of these statutes in Mr.

Abrera's case. The seizure of Mr. Abrera's firearms was executed under these very statutes, directly affecting him. The State's attempt to argue otherwise is not only disingenuous but also a clear evasion of the core issue: Mr. Abrera's firearms were seized without any legitimate basis under these statutes, given that he was not the individual detained for mental evaluation. In addition, not only did the government seize Mr. Abrera's arms, they also seized his magazines and optic/scope. There is no reason why an optic was seized since it is detachable.

Under the provisions of the Welfare & Institutions Code, § 8102, law enforcement is endowed with the substantial authority to initiate forfeiture proceedings when an individual detained for mental evaluation is found to own or possess firearms. In the case of Mr. Abrera, it is crucial to note that his wife, who was subject to the psychiatric hold, did not own the two AR-15 rifles and two of the four handguns that were seized from their home. Consequently, the seizure of Mr. Abrera's firearms was ostensibly enacted under the "possession" or "control" clauses of § 8102.

This interpretation of the statute leads to a startling and constitutionally dubious conclusion: Merely because firearms are stored in a locked safe, or are located within a residence shared by multiple individuals, it apparently suffices for law enforcement to seize these arms, effectively obliterating the Second Amendment rights of every resident in the household. Such a broad application of § 8102 is not only an overreach but also a direct infringement on the constitutional rights of law-abiding citizens like Mr. Abrera. It sets a dangerous precedent where the mere presence of a firearm in a shared residence, regardless of ownership and safeguards in place, can lead to its confiscation and the nullification of an individual's right to bear arms. This Court must recognize the severe implications of such an interpretation and its stark incompatibility with the constitutional protections guaranteed under the Second Amendment.

In Mr. Abrera's situation, a glaring misapplication of the statute is evident. Despite the

fact that he was not the individual subjected to a mental health evaluation, the broad sweep of the Welfare & Institutions Code, § 8102, was inappropriately used to justify the seizure of his firearms. The officers were fully cognizant that Mr. Abrera was the rightful owner of four of the firearms, and he also had a communal interest in the remaining two. Nevertheless, all six firearms were indiscriminately confiscated.

This overreach of authority represents a disturbing misuse of § 8102. The statute, ostensibly designed to address situations where the individual detained for mental evaluation possesses or controls firearms, was inappropriately extended to Mr. Abrera, who was neither detained nor evaluated. The seizure of his firearms, under these circumstances, is not just an error in the application of the law but a blatant disregard for the principles of ownership and property rights, as well as a serious infringement on Mr. Abrera's Second Amendment rights.

The indiscriminate application of the law in this case sets a dangerous precedent, allowing for the potential violation of constitutional rights based on the mere presence of an individual in a shared living space, irrespective of ownership and control of firearms. It is imperative for the Court to recognize and rectify this overreach, ensuring that the law is applied justly and in accordance with constitutional safeguards.

<u>Overbreadth and Due Process Violation</u>: The statute's overbreadth is starkly apparent in Mr. Abrera's case. It permits the seizure of firearms not owned by the detained person, simply because they are in the same residence. This indiscriminate net violates the rights of other lawful occupants, like Mr. Abrera, who own and possess firearms for self-defense. Such an overbroad law is a clear infringement of due process and Second and Fourteenth Amendment rights.

The statute's excessive reach in Mr. Abrera's case is a blatant affront to due process and the right to keep and bear arms. It allowed for the arbitrary seizure of firearms from a law-abiding citizen, merely because of their presence in a residence without regard to ownership or control.

This kind of reckless and overreaching law is a direct attack on the Second and Fourteenth Amendment rights of Mr. Abrera.

<u>Misapplication of the Welfare and Institutions Code to Mr. Abrera:</u> The application of the Welfare and Institutions Code in Mr. Abrera's case extends beyond the mere text of the statutes. Although these laws primarily pertain to individuals with mental health concerns, their application in confiscating Mr. Abrera's firearms was done without a proper basis under the spirit and intent of these statutes.

Mr. Abrera's challenge is not just about the potential future application of these laws against him but about the improper application of these laws in his specific circumstance. The fact that his firearms were seized under the guise of these statutes, despite no findings of mental health concerns or dangerousness regarding him, represents an overreach and misapplication of the law, giving him standing to challenge their application.

<u>Illegal Seizure of Plaintiff's Firearms:</u> Mr. Abrera was neither detained nor arrested under state law regarding anything to do with his two handguns, making the seizure of his two handguns utterly unlawful and unconstitutional. The confiscation of Mr. Abrera's firearms, when he was neither detained nor arrested under state law, was not just unlawful but a brazen violation of his Second Amendment rights.

<u>Procedural Irregularities in Judicial Determination:</u> The filing of a Petition for Judicial Determination under section 8102 against Mr. Abrera's firearms without his involvement in the proceedings is an unforgivable procedural violation. This denial of due process stripped Mr. Abrera of his fundamental right to defend his property and stand against unjust government overreach.

In light of these facts, it is clear that the Defendants' argument against Mr. Abrera's standing is not only unfounded but also indicative of a disturbing pattern of constitutional

violations. The overbreadth of the Welfare and Institutions Code in this case has led to the unjust deprivation of Mr. Abrera's property and the violation of his fundamental rights.

<u>Direct Impact and Concrete Injury:</u> Factual Context: Mr. Abrera has directly suffered from the application of these statutes, as evidenced by the seizure of his firearms. This seizure occurred under the framework of these codes, impacting him directly and personally.

The direct impact of these statutes on Mr. Abrera's life and the violation of his constitutional rights establish a concrete injury, thus providing him with standing. The misapplication of these laws in a situation where they should not have been applicable directly affects his rights and interests, thus fulfilling the requirement for standing.

<u>Broader Implications of the Misapplication of Law:</u> The manner in which these statutes were applied to Mr. Abrera raises concerns about the potential for future misapplication or abuse. The confiscation of firearms without proper adherence to the legal standards set forth in these statutes sets a concerning precedent. The misuse of these statutes in Mr. Abrera's case provides a basis for challenging their application. It is crucial to ensure that such laws are not arbitrarily or incorrectly applied, leading to the infringement of constitutional rights.

In summary, the Defendants' claim that Mr. Abrera lacks standing to challenge the California Welfare and Institutions Code sections 5150, 5151, 8102, and 8103 is flawed. The direct and improper application of these statutes to Mr. Abrera's case, resulting in the seizure of his firearms without proper legal basis, gives him standing to challenge their application. This case presents an important opportunity for the Court to address and rectify the misapplication of these statutes and to uphold the constitutional rights of individuals like Mr. Abrera.

**B.     Plaintiff has standing to challenge the California Penal Code.**

In Mr. Abrera's case, the collective impact of California's myriad firearm laws and regulations has resulted in a grave infringement of his constitutional rights, clearly illustrating

how these statutes, when combined, can lead to an untenable situation for law-abiding citizens as follows:

<u>Fundamental Right Undermined:</u> The right to acquire, possess, and use common, modern rifles and handguns, which are legal and commonly used across the United States, has been unjustly curtailed in California. The laws Mr. Abrera challenges are designed explicitly to undermine the Second Amendment, falsely claiming public safety while systematically stripping away fundamental rights.

<u>Chilling Effect on Law-Abiding Gun Owners:</u> The chilling effect of these laws on individuals like Mr. Abrera is undeniable. Law-abiding gun owners face onerous and inescapable burdens, severely limiting their ability to exercise their constitutional rights without fear of legal repercussions.

<u>Continuous Curtailment:</u> The Defendants have progressively eroded Californians' right to bear arms, rendering these constitutional rights meaningless. The incremental imposition of increasingly burdensome restrictions defies seminal rulings like *Miller, Heller, McDonald, Caetano*, and *Bruen*, showcasing a blatant disregard for established legal precedents.

<u>Pattern of Evasion and Repetition, and Tactical Avoidance:</u> Defendants have exhibited a pattern of returning seized firearms only when legally challenged, employing legislative trickery to evade judicial scrutiny. This pattern not only evades review but is also capable of repetition, infringing upon the rights of others in similar situations.

<u>Concrete Plan Thwarted by Regulations:</u> Mr. Abrera's intention to purchase and possess various firearms and magazines, which are legal under federal law but banned in California, is thwarted by the state's laws. **His fear of prosecution for possessing such arms is not unfounded, given his past experiences and the state's aggressive enforcement of these laws.**

<u>Unjustified Confiscation:</u> The seizure of Mr. Abrera's six legally obtained firearms,

including handguns and AR-15 rifles, from locked safes in his home, is a stark example of overreach. These actions, coupled with the potential destruction of valuable firearms and accessories, exemplify the state's overbearing and unconstitutional approach.

<u>Denied Access to Modern Firearms:</u> Mr. Abrera's inability to purchase modern, safe firearms due to California's restrictive roster and the banning of various semi-automatic rifles and handguns with standard-sized magazines further exemplifies the state's unconstitutional infringement on his Second Amendment rights.

<u>Lack of Historical Precedent:</u> Each of the challenged statutes lack any historical analog and are inconsistent with the traditional understanding of the Second Amendment. They represent a *de facto* confiscation scheme that deprives law-abiding citizens of their right to possess and own protected arms.

In summary, the cumulative effect of California's firearm regulations on Mr. Abrera is a clear violation of his constitutional rights. The state's regulatory scheme, characterized by its piecemeal approach to eroding gun rights, has resulted in a situation where Mr. Abrera and similarly situated individuals are effectively barred from exercising their fundamental rights to keep and bear arms. This Court must recognize the severe constitutional violations at play and grant the necessary relief to protect Mr. Abrera's rights and prevent further encroachments.

## II.     VALIDITY OF ABRERA'S FACIAL CHALLENGE.

The State's dismissal of Mr. Abrera's facial challenge fails to recognize the broader implications of these laws on the Second Amendment rights of all Californians. As established in landmark cases like *Heller* and *McDonald*, and more recently in *Bruen*, the Second Amendment's protection extends to firearms in common use by law-abiding citizens, which includes the firearms Mr. Abrera seeks to protect and have returned to him. The State's laws, by criminalizing the possession of such common firearms, intrude upon rights historically and constitutionally

preserved.

Mr. Arnold Abrera's legal battle against the State of California's firearm regulations is not merely a contestation of specific statutes but a forceful challenge against a comprehensive, overreaching regulatory scheme that cumulatively infringes upon his fundamental Second Amendment rights. The harmonization of these statutes has led to the precise situation Mr. Abrera finds himself in—a scenario where his constitutional rights are being systematically eroded as follows:

<u>Unlawful Firearm Seizures:</u> The application of Cal. Welf. & Inst. Code, §§ 5150 and 5151, resulted in the unjust confiscation of Mr. Abrera's firearms, despite him not being the person detained. This overreach starkly highlights the infringement of his right to possess firearms, a right that is not only fundamental but deeply rooted in American constitutional history.

<u>Overly Restrictive Semi-Automatic Rifle Ban:</u> California's stringent laws under Cal. Pen. Code §§ 30510, 30515, and others, essentially criminalize common, modern rifles that are in widespread use nationwide. This broad prohibition directly confronts the precedent set in landmark cases like Heller and McDonald, which affirm the individual's right to possess commonly used firearms for lawful purposes.

<u>Large-Capacity Magazine Ban:</u> The imposition of Cal. Pen. Code § 16740, which bans magazines with a capacity of more than ten rounds, retroactively criminalizes the possession of standard equipment for many firearms. This not only impacts Mr. Abrera's ability to defend himself effectively but also represents an arbitrary restriction that lacks historical precedent in American law.

<u>Handgun Restrictions and Microstamping Requirements:</u> The stringent requirements under Cal. Pen. Code § 31910 and related regulations, effectively creating a roster of "approved"

handguns, result in a de facto ban on many modern handguns. This approach, which sidelines a wide array of reliable and commonly used handguns, is a clear affront to the Second Amendment.

Ammunition Purchase Limitations: The regulations under Cal. Penal Code § 30312, which govern the purchase of ammunition, impose unreasonable hurdles for law-abiding citizens like Mr. Abrera. These restrictions not only infringe upon his right to bear arms but also impede his ability to adequately defend himself.

Prohibitive Return Process for Firearms: The process outlined in Cal. Penal Code §§ 33850, 33855, 33860, 33880, requiring fees and extensive paperwork for the return of seized firearms, even in cases of erroneous seizure, places an excessive burden on firearm owners. This process is punitive and unjust, especially when the seizure was unfounded.

The State of California's response to critical judicial rulings in cases like *Miller v. Bonta*, *Duncan v. Bonta*, and *Boland v. Bonta* is nothing short of an audacious defiance of constitutional jurisprudence. This pattern of behavior is not merely a legal defense of existing statutes; it is a blatant, calculated affront to the judiciary and a clear attempt to circumvent and undermine the constitutional protections afforded by the Second Amendment. The State's persistent enforcement and expansion of restrictive firearms policies, in the face of injunctions issued by courts, is a brazen disregard for judicial authority. This defiant stance reveals a disturbing willingness to sidestep critical judicial findings and to persist in a path that is clearly at odds with constitutional mandates.

Frivolous Appeals and Delay Tactics: In pivotal cases, such as *Miller v. Bonta*, *Duncan v. Bonta*, and *Boland v. Bonta*, rather than addressing the substantive constitutional issues raised, the State has chosen to file appeals that are primarily aimed at delaying the legal process. This tactic not only prolongs the resolution of critical Second Amendment issues but also proves a lack of genuine engagement with the constitutional arguments presented by plaintiffs like Mr. Abrera.

<u>Systematic Erosion of Constitutional Rights</u>: California's strategy goes beyond legal maneuvering; it is a systematic assault on the Second Amendment rights of its citizens. By introducing and enacting new, even more restrictive gun laws in response to judicial challenges, the State demonstrates an alarming commitment to eroding fundamental rights, seemingly at any cost.

Concurrent with these legal battles, the State has aggressively pursued the enactment of additional gun control laws for 2024. This move proves an apparent disregard for the ongoing judicial processes and the potential constitutional implications of these laws. It's sole purpose is to further entrench restrictive policies, potentially undermining the impact of judicial rulings in Second Amendment cases. The recent spate of firearms-related legislation signed by Governor Newsom, including the imposition of excise taxes, microstamping requirements, and restrictions on body armor and private firearms sales, collectively constitutes a draconian and overreaching regulatory scheme that significantly infringes upon Mr. Abrera's fundamental Second Amendment rights. Each of these statutes, in isolation and more so in combination, systematically erodes the constitutional freedoms of law-abiding citizens like Mr. Abrera, for example: 1) Excise Tax on Firearms and Ammunition (AB 28) - The imposition of an 11% tax on firearms and ammunition purchases is a punitive measure that effectively penalizes individuals for exercising their Second Amendment rights. It is akin to imposing a tax on voting or free speech – a clear infringement on fundamental rights. 2) Microstamping Requirements (SB 452), a law already enjoined, but stayed.  This requirement serves as a *de facto* ban on new models of pistols. 3) Body Armor Possession Limits (AB 92). 4) Relinquishing Firearms Upon Conviction (AB 732). 5) Limits on 3D-printed and Milled Parts (AB 1089). Impinging on the rights of individuals to engage in lawful gunsmithing and customization. 6) Concealed Weapons Restrictions (SB 2), passed in defiance of *Bruen.* 7) Signage Requirements at Dealers (SB 417), adds to the regulatory

burden on firearms transactions, deterring lawful purchases. 8) Ghost Gun Arrests Reporting (AB 97), conflicts with federal law regarding self-manufacture. 9) Judges' Consideration in Gun Violence Restraining Orders (AB 301), arbitrary restrictions on lawful activities. 10) State Database of Prohibited Persons (AB 303), leading to overreach and due process violations. 11) Loan of Weapons to Officer Trainees (AB 355), creates a class of citizens with greater access to firearms. 12) Firearm Possession Prohibitions for Pretrial Diversion (AB 455). 13) Reporting Lost or Stolen Frames and Receivers (AB 725), adds another layer of regulatory burden on gun owners, increasing the risk of legal jeopardy for unintentional non-compliance. 14) Waiting Periods on Firearms Sales (AB 1406). 15) Private Party Firearms Sales (AB 1483).

Each and everyone of these laws were signed into law without any concern with the mandate set forth in *Bruen*, which is there has to be a historical analog or analysis.

In summary, this labyrinth of regulations, each chipping away at fundamental rights, cumulatively represents an egregious and systematic infringement on Mr. Abrera's Second Amendment rights. These laws go far beyond reasonable public safety measures, creating an environment where law-abiding citizens face constant legal peril and uncertainty in exercising their constitutional rights. This Court must recognize the cumulative impact of these laws as a gross overreach and a clear violation of Mr. Abrera's constitutional rights.

The collective impact of these statutes and regulations is a systematic dismantling of the Second Amendment rights of Californians. Mr. Abrera's case is a clear illustration of how these laws, when applied in concert, not only strip away the constitutional right to bear arms but also impose an oppressive and chilling effect on law-abiding gun owners.

### III.    PLAINTIFF INCORPORATES HIS OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS.

The State Defendants' positions concerning the *Winter* factors, the necessity for a Mandatory Injunction, and the relevance of Ninth Circuit review in related cases have been

thoroughly addressed in Mr. Abrera's earlier responses, including in the opposition to the State Defendants' motion to dismiss. These arguments are hereby incorporated by reference in full.

Mr. Abrera's likelihood of success on the merits is not only substantial but significantly reinforced by recent legal decisions challenging California's stringent firearm regulations. The State's persistent enactment of new gun laws for 2024, despite judicial rulings highlighting their unconstitutionality, exemplifies a troubling disregard for constitutional mandates and the rights of its citizens.

The rulings in these pivotal cases, aligned with the federal mandate under 18 U.S.C.S. § 924(d)(1)-(2) for the prompt return of firearms following the dismissal of charges, underscore the strength of Mr. Abrera's case. These developments, along with the State's defensive legislative tactics, strongly support the necessity for returning Mr. Abrera's arms and reinstating the status quo.

Contrary to the assertions of the State, Mr. Abrera has suffered irreparable harm. The deprivation of his constitutional right to bear arms, resulting from the confiscation of his firearms under overly broad statutes, constitutes an immediate and ongoing harm. This harm is not remediable by alternative measures or monetary compensation.

Furthermore, the onus is on the Defendants to justify the constitutionality of their actions, a challenge they have failed to meet here or in any other court. They must provide appropriate historical analogues to support their position, a requirement they have not fulfilled, further bolstering Mr. Abrera's case for the restoration of his constitutional rights.

DATED: December 26, 2023

Respectfully submitted,
LAW OFFICES OF GARY W. GORSKI
*/s/ Gary W. Gorski*
GARY W. GORSKI
Attorney for Plaintiff Arnold Abrera

15