**Gary W. Gorski CBN: 166526**
**Attorney at Law**
3017 Douglas Blvd., Suite 150
Roseville, CA  95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com

**Daniel M. Karalash CBN: 176421**
**Attorney at Law**
*STRATEGIC LAW COMMAND*
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
Fax: (916) 520-3930

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD ABRERA, <br><br> plaintiff, <br><br> v. <br><br> GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; former District Attorney ANNE MARIE SCHUBERT, in her official capacity; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE; <br><br> defendants. | No.  2:22-cv-1162-DAD-DB <br><br> **SECOND AMENDED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, DECLARATORY AND INJUNCTIVE RELIEF, AND MONETARY DAMAGES (42 U.S.C. § 1983)** <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.   The plaintiff The Plaintiff has filed this suit seeking damages, declaratory, and injunctive

relief against county and city entities for the return of six firearms seized from his home on

1

December 27, 2020. Despite a clean criminal record both before and after this incident, the Plaintiff was charged for possessing two semi-automatic rifles without a "bullet button"—a requirement not in place at the time of purchase. These charges were eventually dropped.

2. The lawsuit challenges the constitutionality of California's restrictions on AR15s and similar semi-automatic rifles, as well as handguns and magazines that can hold more than 10 rounds, all of which remain legal under federal law.

3. The term "assault weapon" is a politically concocted, pejorative term designed to place more and more constitutionally protected arms inside the Legislature's mercurial definitions of banned arms—and outside the reach of normal, law-abiding Americans. The very term, and the State's enforcement of it, violates the fundamental, individual Second Amendment right to keep and bear arms, and proves the disparate treatment of the Second Amendment as to all other constitutional rights.

## **PARTIES**

4. Arnold Abrera, a 48-year-old married, naturalized U.S. citizen residing in Elk Grove, California, is the plaintiff in this case.

5. Abrera is fully eligible to exercise his Second Amendment rights and is not barred by any state or federal law from owning, receiving, possessing, or purchasing firearms.

6. Plaintiff is the lawful owner of a semi-automatic, centerfire rifles that has one or more of the characteristics listed in Penal Code § 30515(a)(1), so-called "assault weapons" under California law because it did not come equipped at the time of purchase with a "fixed magazine."

7. Plaintiff wishes to exercise his rights guaranteed by the Second Amendment to keep and bear arms by using his "large-capacity" magazine(s) in and with his detachable magazine rifles and handguns, and would, but for the State's laws and fear of arrest, prosecution, and loss of

2

property and liberty under Defendants' policies, practices, and customs.

8. Plaintiff would also acquire a new semi-automatic, centerfire rifles from an FFL dealer that does not have a fixed magazine and has one or more of the features listed in Penal Code § 30515(a)(1), having an overall length of less than 30" but more than 26" with a 16" barrel, but for the State's laws, Defendants' FFL dealer enforcement practices, and fear of arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs. A rifle is subject to the National Firearms Act (NFA) only if the rifle has a barrel or barrels of less than 16 inches in length. A weapon made from a rifle is also a firearm subject to the NFA if the weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length. [26 U.S.C. §§ 5845(a)(3)-(4), (c)]

9. Were it not for the enforcement of bans on magazines, semi-automatic rifles, and handguns, plaintiff Abrera would purchase, for self-defense and other lawful purposes, AR-15 rifles (defined as semi-automatic rifles with features such as a pistol grip and detachable magazine) and handguns with standard capacity magazines, which are not approved under the handgun ban nor listed on the state's Handgun Roster, including handguns lacking a chamber load indicator and a magazine disconnect mechanism.

10. Absent the broad prohibition on guns ("Gun Ban" referring to semi-automatic rifles and pistols legal under federal law with detachable magazines holding over 10 rounds) and its active enforcement, Abrera would also manufacture for his personal use semi-automatic rifles with detachable magazines, which are constitutionally protected yet banned under California law.

11. Defendant Gavin Newsom is the Governor of California, former Lieutenant Governor of California, and former Mayor of San Francisco.

12. Defendant Robert Bonta is the Attorney General of the State of California, and elected

3

official, and is hereby named in his official capacity.

13. Defendant Robert Bonta is the Attorney General of the State of

14. California, and is sued herein in his official capacity. Under Article 5, § 13 of the California Constitution, Attorney General Bonta is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced." Defendant Bonta is the head of the California Department of Justice ("DOJ"). Defendant Bonta's DOJ and its Bureau of Firearms regulate and enforce state law related to the sales, transfer, possession, manufacture, and ownership of firearms. The Attorney General and DOJ are headquartered in Sacramento, California

15. Defendant Bonta also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of their respective officers.

16. Article V, section 13 is fleshed out in several California statutes which grants full authority and power to the Attorney General with direct supervisory power over district attorneys, sheriffs and police chiefs, including policy making power regulating firearms, including the seizure of arms legally owned by the public.

17. The District Attorney's exercising prosecutorial authority are exercising such authority on behalf of Defendant Bonta himself when acting in a prosecutorial capacity, but not administrative capacity.

18. Defendant Bonta's duties also include informing the public, local prosecutors, and law enforcement regarding the meaning of the United States Constitution as a limitation on the State relating arrest, confiscation, destruction and removal of firearms from its citizens which are in fact protected under the Second Amendment; he has deliberately ignored this mandate.

19. In addition, he is also responsible promulgating rules and policies for classification of firearms, especially those classified as "assault weapons", "unsafe handguns" and "handgun

4

roster".

20. Defendant City of Elk Grove ("the City") is a municipality chartered by the State of California. It has endorsed and followed Newsom and Bonta's gun confiscation and enforcement regime going after law abiding gun owners through both the civil and criminal process.

21. Defendant Bobby Davis is the Chief of the Elk Grove Police Department.

22. Defendant Jonathan P. Hobbs is the City Attorney, acting as the general legal counsel to the City of Elk Grove. He has endorsed and followed Newsom and Bonta's gun confiscation and enforcement regime going after law abiding gun owners through both the civil and criminal process.

23. Defendant Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney, has endorsed and followed Newsom and Bonta's gun confiscation and enforcement regime going after law abiding gun owners through both the civil and criminal process.

24. Defendant Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney, is responsible for policy relating to administrative functions and duties, including the return of firearms seized by law enforcement.

25. Defendant Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney, is a separate person from the County of Sacramento for purposes of all other ministerial and administrative duties, including the returning of property, including guns, once a person has been found to be factually or legally innocent, or the case dismissed by the court, or dismissed in the interest of justice.

26. Defendant County of Sacramento is created under the Constitution and Laws of the State of California. It has endorsed and followed Newsom and Bonta's gun confiscation and enforcement regime going after law abiding gun owners through both the civil and criminal

process.

27. Plaintiff's lawsuit seeks redress and the return of six firearms seized from his home on December 27, 2020. Despite the dismissal of charges related to possessing semi-automatic rifles without "bullet buttons," a requirement not in place at the time of purchase, the plaintiff challenges California's restrictive gun laws.

28. Governor Gavin Newsom, in his official capacity, issues executive orders that alter or create laws affecting gun ownership, using his executive authority to influence state policy on firearms, thus impacting the plaintiff's Second Amendment rights.

29. Attorney General Robert Bonta, named in his official role, is responsible for the statewide enforcement of gun laws. His office's policies and actions, particularly those related to the classification and regulation of firearms, are under scrutiny for allegedly infringing upon constitutional rights.

30. The City of Elk Grove and its officials, including Police Chief Bobby Davis and City Attorney Jonathan P. Hobbs, are liable for their roles in enforcing the state's gun confiscation regime. Their actions and policies, in alignment with state directives, have directly impacted the plaintiff, leading to the seizure of his firearms.

31. Sacramento County District Attorney Anne Marie Schubert, also sued in her official capacity, for her office's adherence to and enforcement of California's gun laws against the plaintiff that are clearly unconstitutional, contributing to the legal challenges he faces regarding his firearm ownership.

32. The County of Sacramento is liable for supporting and implementing policies that support the state's unconstitutional gun control policies and laws, which unjustly restrict lawful gun ownership and violate constitutional protections.

33. Each defendant contributed to a systemic enforcement strategy that violates Plaintiff's Second

Amendment rights.

34. Defendants are a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

35. These defendants, acting under the color of state law, are charged with formulating and enforcing gun control laws and policies that are currently being applied against Abrera and other citizens of California, in violation of 42 U.S.C. § 1983.

36. Defendants are responsible for formulating, executing, and administering California's gun-control laws and policies at issue in this lawsuit, and they are in fact presently enforcing them.

37. Defendants enforce California gun-control laws, rules and policies against Plaintiff and other California citizens under color of state law within the meaning of 42 U.S.C. § 1983.

## **<u>JURISDICTION AND VENUE</u>**

38. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

39. This Court has supplemental jurisdiction over Plaintiff's state law claims asserted herein under 28 U.S.C. § 1367 because such claims arise out of the same case or controversy as the federal claims.

40. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

41. Venue lies in this Court pursuant to 28 U.S.C. § 1391 as this is the judicial district where

defendants reside, and this is the judicial district where the cause of action arose.

**FACTS**

42. The <u>Second Amendment</u> to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

43. The firearms at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. And they are, moreover, exactly what they would bring to service in e.g. militia duty, repelling violent mobs, etc., should such be necessary.

44. The magazines at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. And they are, moreover, exactly what they would bring to service in e.g. militia duty, repelling violent mobs, etc., should such be necessary. To be sure, they too are in common use in virtually every state of the Union.

45. The <u>Fourth Amendment</u> bars the government from unreasonable search and seizure of an individual or their private property. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

46. The <u>Fifth Amendment</u> provides that the People have the right against self-incrimination or have property taken away without just compensation.

47. The <u>Fourteenth Amendment</u> states: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life,

liberty, or property, without <u>due process</u> of law; nor deny to any person within its jurisdiction the <u>equal protection</u> of the laws." [Emphasis added]

48. Article 1, Section 1, of the <u>California Constitution</u> confers a right of self-defense and defense of property, by stating: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and **<u>defending</u>** life and liberty, acquiring, possessing, and **<u>protecting</u>** property, and pursuing and obtaining **<u>safety</u>**, happiness, and privacy." [emphasis added]

49. There is an actual and present controversy between the parties. Plaintiffs contend that the <u>Handgun Ban</u> (Cal. Penal Code §§ 31900, et seq. and 32000, et seq.), <u>Magazine Ban</u> (Cal. Pen. Code §§ 16740, 18010, 32310) and the <u>Semi-Automatic Rifle Ban</u> (Penal Code §§ 30515(a), 30515(b), 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005, as well as Title 11, California Code of Regulations §§ 5460 and 5471), and Defendants' policies, practices, and customs, infringe on Plaintiffs' Second Amendment rights by prohibiting Plaintiffs and other law-abiding individuals from, inter alia, keeping, bearing, buying, selling, transferring, possessing, transporting, or passing down to heirs so-called "assault weapons" under California law. Plaintiffs desire a judicial declaration that (Cal. Penal Code §§ 31900, et seq. and 32000, et seq.) Penal Code sections §§ 30515(a), 30515(b), 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005, as well as Title 11, California Code of Regulations §§ 5460 and 5471, and Defendants' policies, practices, and customs, violate Plaintiffs' constitutional rights.

50. But because of Defendants' enforcement of the laws, regulations, policies, practices, and customs underlying the State of California's ban on the purchase (Cal. Penal Code §§ 31900, et seq. and 32000, et seq.) of common and constitutionally protected handguns that the State deems presumptively "unsafe" and thus illegal for commercial sale under its "roster" of

9

"Handguns Certified for Sale" ("Handgun Roster"), Plaintiff, and all similarly situated California citizens, cannot purchase new constitutionally protected arms without suffering criminal liability (the "Handgun Ban"), in violation of the Second and Fourteenth Amendments to the United States Constitution.

51. Plaintiff is presently and continuously injured by Defendants' enforcement of the subject Penal Code sections and regulations, customs, policies and practices, and if not enjoined by this Court, Defendants will continue to enforce Penal Code sections

52. The term "assault weapon" is defined by Penal Codes § 30510 and § 30515, as specified in § 16200. Defendants enforce these definitions along with supplementary ones in Title 11, California Code of Regulations § 5471, which are applied to § 30515 via § 5460. Additionally, California Penal Code § 30600 establishes felony penalties for violations related to "assault weapons."

53. Defendants' policies, practices, customs, and enforcement of these laws individually and collectively prevent normal, non-prohibited adults from acquiring, possessing, transporting, and using the proscribed arms, and violate the Second Amendment to the United States Constitution.

54. The Second Amendment protects the very category of arms that Plaintiff herein seeks to acquire, possess, and use for lawful purposes, including but not limited to self-defense in the home.

55. On December 27, 2020, in Elk Grove, California, Plaintiff and his wife, both lawful owners of six firearms, became victims of an unjust seizure of their property and denial of their Second Amendment rights, orchestrated by Officer Coleman and accompanying officers from the Elk Grove Police Department per a policy which included the broadest interpretation of law.

56. The operation was instigated in response to a 911 hang-up call emanating from Plaintiff's

residence. Upon their unwarranted entry, without any evidence of a crime or immediate

danger, the officers encountered no physical altercation or injuries. It was swiftly ascertained

that the Plaintiff had not committed any crime and posed no threat to anyone, leading to his

wife's detainment on a 72-hour 5150 hold for making a non-serious threat of "suicide," which

Plaintiff recognized as a mere cry for attention rather than a genuine threat.

57. The firearms seized are as follows:

   a) One (1) Glock, Inc., Model 17, 9mm Cal., Serial No. BBDW312 **[Semi-Automatic Handgun]**

   b) One (1) Sig Sauer Model SP2022, .40 Cal., Serial No. 24B245366, Erroneously Listed As "Sauer, J.P., & Sons" **[Semi-Automatic Handgun]**

   c) One (1) Sig Sauer Model SP2022, 9mm Cal., Serial No. 24B245997, Erroneously Listed As "Sauer, J.P., & Sons" **[Semi-Automatic Handgun]**

   d) One (1) Sturm, Ruger & Co., Model LC380CA, .380 Cal., Serial No. 32653888 **[Semi-Automatic Handgun]**

   e) One (1) Del-Ton Inc., Model DTI 15, 5.56 Cal., Serial No. B6215 **[Semi-Automatic Rifle AR-15]**;

   f) One (1) Roggio Arsenal, Model RA L5, Multi-Caliber, Serial No. RA09011623 **[Semi-Automatic Rifle AR-15]**

58. The Glock 17 (BBDW312), Sig Sauer model SP2022 (24B245997), Del-Ton DTI 15 (B6215)

and Roggio Arsenal, model RA l5, (RA09011623) were legally purchased in California in or

around 2016 personally by Plaintiff.

59. The other two were purchased by Plaintiff's wife, but which Plaintiff typically controlled,

used, and had access to in defense of his home and family.

60. The seizure was unjustifiably predicated on Defendant Elk Grove's policy regarding the

erroneous application of Welfare & Institutions Code Section 8102.

61. The six firearms, four of which were purchased by the Plaintiff and two held as community

property with his wife, were meticulously stored in two locked safes, one of which was

strategically hidden next to Plaintiff's side of the bed for accessible home defense. Despite this responsible storage and lawful ownership, all firearms and related equipment were summarily seized under Section 8102—a measure supposedly triggered when an individual detained for mental condition examination possesses firearms. This action was taken despite the clear absence of any legal basis for the seizure, given that Plaintiff's wife, the person detained, did not have possession of the firearms at the time.

62. An arrest warrant for Plaintiff was requested on or after January 29, 2021. The basis for the arrest warrant was as follows: "The 2 semi-auto rifles on this case (PCN 252258, 252259) are unregistered bullet button rifles. Both are centerfire, semi-auto rifles, do not have fixed magazines (functioning bullet buttons will release magazines), have a pistol grip that protrudes conspicuously beneath the action, have telescopic stocks, and PCN 252259 also has a forward pistol grip."

63. Unbeknownst to Plaintiff, on January 25, 2021, a Petition for Judicial Determination Re: Return of Firearms Welfare & Institutions Code section 8102 was filed by defendant Jonathan P. Hobbs as the City of Elk Grove Attorney, captioned *City of Elk Grove vs. Euginie Abrera*, Sacramento Superior Court case number 34-2021-20000745.

64. Based upon information and belief, there was no summons issued and/or served nor was Plaintiff ever served with a summons and petition.

65. Plaintiff was never named as party the City's Cal. Welf. & Inst. Code § 8102 petition, though four of the firearms were owned and possessed by him.

66. Unbeknownst to Plaintiff, on March 18, 2021, a Felony Complaint was filed by defendant Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney, charging Plaintiff for possession of two rifles which did not have so-called "bullet-buttons" and because of cosmetic features completely unrelated to the actual functioning of the rifle,

captioned *People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857.

67. The first time Plaintiff even became aware that a felony complaint was filed for possession of two AR-15s (legally purchased) was when he was detained in August and September of 2021 by immigration while taking an international flight in San Francisco.

68. He was provided with an arraignment date of March 9, 2022, by San Francisco Police Department.

69. Plaintiff was now forced to defend a criminal action while a civil action was also pending, which would mean to defend the civil action, he would have to waive his right under the Fifth Amendment, to remain silent.

70. Plaintiff had to hire an attorney to defend against the felony complaint, because if convicted, he would then be prohibited from exercising his Second Amendment rights; and also fears that this will continue in perpetuity each time he comes into contact with law enforcement or when he attempts to purchase a firearm.

71. On April 13, 2021, in *People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857, Plaintiff's attorney filed a motion to dismiss the Felony Complaint as legally baseless under the Second Amendment, and the Court granted Plaintiff's motion.

72. Unbeknownst to Plaintiff, a civil forfeiture action was commenced against his wife regarding Plaintiff's personal firearms; around the same time a felony complaint was filed, neither of which were served.

73. After the case was dismissed, the government refused to return all of Plaintiff's firearms, even after the court dismissed the case, and after Plaintiff filed a Cal. Pen. Code §1538.5 Motion for Return of Property, which was denied by the Court. Through counsel, Plaintiff attempted to recover his arms and was given disinformation, and advised they would not be returned without court order.

74. The procedure mandated by Section 8102 were never followed because of indifference, inaction and/or policy.

75. Defendants' policy is not to return guns confiscated in situations like Plaintiff's until there is a court order issued for the return of the guns.

76.  When they seized Plaintiff's property, Defendants set in motion a series of events that they knew or should have known would result in Plaintiff's inability to recover, or extreme difficulty in recovering, his property.

77. Defendants have a custom, policy, or practice or requiring lawful weapons owners to engage in formal litigation to recover their seized property.

78. Plaintiff has been unable to recover his weapons even though his weapons are not evidence and have not been used to commit a crime.

79. By seizing Plaintiff's property without notice, refusing to return it to him, and refusing to allow him a meaningful opportunity to be heard on the matter, Defendants have deprived Plaintiff of his property without due process of law.

80. By setting in motion a series of events that Defendants knew or should have known would result in inability or extreme difficulty in recovering Plaintiff's property, Defendants deprived Plaintiff of his property without due process of law.

81. By maintaining a custom, policy or practice of requiring lawful weapons owners, but not other property owners, to engage in formal litigation to recover their seized property, Defendants have denied Plaintiff the equal protection of the laws.

82. By refusing to return Plaintiff's weapons to him, Defendants have infringed on Plaintiff's right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution and incorporated to the States by the Fourteenth Amendment

83. The operation conducted without a warrant or evidence of a crime also violated the Fourth

14

Amendment protections against unreasonable searches and seizures. The firearms were taken under circumstances that lacked any immediate threat or legal grounds, illustrating a disregard for constitutional safeguards.

84. The procedural barriers and due process violations are used to create a system of gun control laws designed to punish and deter lawful gun owners from exercising their rights under the Second Amendment. The refusal to return the firearms, even after legal challenges and the dismissal of charges, contradicts Defendants policies regarding all other constitutional provisions.

85. California's stringent gun laws, as applied in this case, effectively undermine lawful gun ownership and conflict with constitutional rights. The plaintiff's legal challenges, including motions for the return of property and the dismissal of baseless charges, highlight the punitive nature of the state's gun laws. These laws not only deter lawful gun ownership but also impose unnecessary legal and bureaucratic hurdles on law-abiding citizens.

86. The plaintiff's pursuit of judicial oversight through injunctive relief aims to rectify the unconstitutional enforcement of gun regulations and recover his Second Amendment rights.

87. The legal jeopardy faced by the plaintiff exposes the conflict between state regulations and federally protected rights, calling for equitable relief as to future laws implementation to prevent further constitutional violations, similar to *Brown v. Board of Education* and the granting of a systemic injunction.

88. The amalgamation of these factors—unjustified legal prosecution based on arbitrary features, failure to adhere to statutory protocols for property return, and the overarching challenges in vindicating one's legal rights—collectively show a systemic system of enforcement necessitating judicial oversight.

89. The gun laws under scrutiny in this case, as applied and enforced against the Plaintiff, serve

as a mechanism to dissuade law-abiding citizens from exercising their Second Amendment rights, employing fear of prosecution and the looming threat of legal jeopardy as deterrents.

90. This chilling effect is achieved through the severe penalties associated with the possession of firearms that are legally obtained but deemed illegal under the complex and ever-changing landscape of California's gun regulations.

91. The opacity and convoluted nature of these laws create a nebulous environment of legal risk, wherein the mere act of understanding the specifics of what is regulated becomes an insurmountable challenge.

92. This "moving target" of legal compliance fosters an atmosphere of fear and uncertainty, compelling citizens to relinquish their constitutional rights to keep and bear arms rather than navigate the daunting and punitive maze of state firearm regulations.

93. In essence, the enforcement strategy not only undermines the foundational principles of the Second Amendment but also exploits the complexity and severity of gun laws to effectively disarm the populace through coercion and intimidation, rather than through direct legislative prohibition (e.g., use of a gun in a crime).

94. The burdensome regulatory scheme which prohibits Plaintiff from even attempting to purchase firearms which are legal under federal law.

95. The onerous, incremental actions of California's progressive tightening of gun laws has significantly restricted Second Amendment rights through measures including: A. The 1990s' Roberti-Roos Assault Weapons Control Act, initiating a ban on named semi-automatic rifles like the Colt AR-15. B. The introduction of a features-based definition of "assault weapons" in 2000 with Senate Bill 23, targeting attributes like "flash suppressor" and "pistol grip." C. A 2016 update that banned the sale of firearms with "bullet buttons" and certain features, requiring registration of such firearms obtained before 2017. D. Restrictions including a

16

handgun ban, large-capacity magazine ban, ammunition ban, and prohibitions on the online purchase of ammunition and gun parts. E. Classification under § 30515(a) that labels certain semi-automatic centerfire rifles as "assault weapons" based on specific features or magazine capacity. F. A state policy that discourages residents from owning semi-automatic guns, enforcing strict penalties on violators.

96. In furtherance of systemic discrimination towards the Second Amendment is demonstrated by the state's implementation of CCP § 1021.11, which explicitly penalizes legitimate efforts to vindicate rights under 42 U.S.C. sections 1983 and 1988 (this law has not been repealed).

97. There is absolutely no historical analog relating to the regulation of semi-automatic rifles which have been commonly owned with a detachable magazine holding more than 10 rounds so long as the rifle has a barrel of 6 inches in length or more, and an overall length 26 inches or more. 26 U.S.C. §§ 5845(a)(3)-(4), (c).

98. There is absolutely no historical analog relating to the regulation of semi-automatic handguns which have been commonly owned with a detachable magazine holding more than 10 rounds.

99. As plaintiff has suffered injury by being arrested and prosecuted, and Defendants willingness to prosecute him again, he has an actual fear that any firearm he buys will be seized, especially if prohibited to purchase.

100.    The statutes are *de facto* confiscation statutes used to deprive all law-abiding citizens of possession and ownership of protected arms.

101.    Each defendant enforced unconstitutional laws, and in fact, relied upon unconstitutional laws to implement ancillary laws, regulations, customs, policies and/or practices to interfere with enumerated constitutional rights as though the Constitution does not apply.

102.    The laws, policies and/or customs were the cause in fact of the deprivation of rights inflicted.

17

103.   All defendants were "final policymakers" and each having final authority to establish policy with respect to the confiscation and banning of firearms and magazines in common use.

104.   Not only is Plaintiff seeking damages for the loss of property and his rights; Plaintiff is also seeking to enjoin the State of California from enforcing the tapestry of firearm laws in general, and the specific code sections identified herein in particular, which interfere with the fundamental right to keep and bear arms as currently regulated under federal law and the Supreme Court's rulings.

105.   There is an actual and present controversy between the parties. Plaintiff contends that firearm regulatory scheme in California which applies to him, and others similarly situated, which also exceeds federal law, infringes on Plaintiff's right to keep and bear arms under the Second and Fourteenth Amendments to the United States Constitution, by seizing and destroying his firearms while also pursuing criminal allegations against him; and generally prohibiting commonly possessed semi-automatic rifles and handguns with detachable magazines and ammunition feeding devices that it deems "large-capacity magazines."

106.   Plaintiff is seeking the following equitable and declaratory relief:

a. To purchase and travel through California with off-roster handguns and rifles, which are legal under federal law.

b. To possess and purchase and travel through California with standard size handgun and rifle magazines which most exceed 10 rounds,

c. To travel interstate with magazines which contain more than 10 rounds of ammunition, and travel through California.

107.   Plaintiff hereby incorporates the factual findings and holdings in the following cases whereby the challenged laws violated the Second Amendment:

A. *Duncan v. Becerra*, 265 F. Supp. 3d 1106 (S.D. Cal. 2017), and its progeny (HOLDINGS: Preliminary injunction against California Penal Code § 32310, as amended by Proposition 63, which criminalized the possession of firearm magazines capable of holding more than 10 rounds.)(Stayed on appeal), affirmed *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020) **INJUNCTIONS STAYED ON STATE' MOTION.**

B. *Duncan v. Bonta*, 83 F.4th 803 (9th Cir. 2023)(Dissents) (Legal tricker pointed out by Dissenting Judge Bumatay, joined by Judges Ikuta, R. Nelson and VanDyke, stated that California is not entitled to an emergency stay of the district court's injunction. Reviewing this country's historical tradition consistent with *Bruen* demonstrated that the Second Amendment does not countenance California's ban on large-capacity magazines. Possessing magazines holding more than ten rounds of ammunition by law-abiding citizens is protected conduct under the Second Amendment, and neither California's asserted irreparable injury nor the balance of interests favored a stay.) **INJUNCTION STAYED ON STATE' MOTION.**

C. *Miller v. Bonta*, 542 F. Supp. 3d 1009 (S.D. Cal. 2021), vacated, (9th Cir. Cal. Aug. 1, 2022). ( California statutes making it a crime to own the AR-15 rifle infringe the Second Amendment rights of California citizens because, inter alia, the Second Amendment extends at the very least to common modern arms useful for self-defense in the home and there was no reasonable fit between the ban and California policy; [2]-Because the AR-15 was a weapon of light warfare that is commonly owned, commonly trained, with common characteristics, and common interchangeable parts, it is protected for militia use by the Second Amendment; [3]-Thus, the court enjoined the enforcement Cal. Penal Code §§ 30800, 30915, 30925, 30945, 30950, 30515(a)(1) through (8), and the penalty provisions of Cal. Penal Code §§ 30600(a), 30605(a) and 30800, as applied to assault weapons defined in § 30515(a)(1) through (8).) **INJUNCTION STAYED ON STATE' MOTION.**

D. *Miller v. Bonta*, Miller v. Bonta, No. 19-cv-01537 BEN (JLB)(S.D. Cal. Oct. 19, 2023)(HOLDING: California's ban on assault weapons violates the Second Amendment right of citizens to keep and bear arms that are in common use for lawful purposes like self-defense. The Second Amendment protects weapons commonly owned by law-abiding citizens for lawful purposes, including modern semiautomatic rifles, shotguns, and pistols. The government failed to identify sufficient historical analogues to justify the assault weapons ban.") **INJUNCTION STAYED ON STATE' MOTION.**

E. *Renna v. Bonta*, No. 20-cv-2190-DMS-DEB (S.D. Cal. Apr. 3, 2023). (HOLDINGS: Because the State was unable to show California's Unsafe Handgun Act (UHA) (California Penal Code §§ 31910(b)(4)-(6))chamber load indicator, magazine disconnect mechanism, and microstamping requirements were consistent with the Nation's historical arms regulations, plaintiffs were entitled to a preliminary injunction against the State's enforcement of those three provisions, which operated to prohibit the commercial sale of those arms, as well as the three-for-one roster removal provision, which depended on the enforceability of those provisions.)

F. *Boland v. Bonta*, No. SACV 22-01421-CJC (ADSx) (C.D. Cal. Mar. 20, 2023)

(HOLDINGS: The California Unsafe Handgun Act's (California Penal Code §§ 31910(b)(4)-(6)) provisions requiring certain handguns to have a chamber load indicator, a magazine disconnect mechanism, and microstamping capability are unconstitutional. **INJUNCTION STAYED ON STATE' MOTION.**

G. *Miller v. Bonta*, 646 F. Supp. 3d 1218 (S.D. Cal. 2022)( HOLDINGS: Cal. Code Civ. Proc. § 1021.11, by making plaintiffs' attorneys liable for government fees and denying plaintiffs prevailing party status in firearm restriction challenges, infringes on First and Second Amendment rights, due process, and equal protection. It conflicts with federal law under the Supremacy Clause by obstructing fee-shifting in civil rights cases (42 U.S.C.S. § 1983 and § 1988). A permanent injunction is justified due to the irreplaceable harm from losing constitutional rights, the strong likelihood of success, the impossibility of monetary compensation from state officials, and the alignment of equity and public interest with the plaintiffs.)

108.   Even the Ninth Circuit's own judges recognize California's legal trickery by manipulating the court docket with *en banc* reviews, which is only countenanced by the Ninth Circuit. "I'm not a prophet, but since this panel just enforced the Second Amendment, and this is the Ninth Circuit, this ruling will almost certainly face an *en banc* challenge. This prediction follows from the fact that this is always what happens when a three-judge panel upholds the Second Amendment in this circuit. See, e.g., *Young v. Hawaii*, 896 F.3d 1044, 1048 (9th Cir. 2018), on reh'g en banc, 992 F.3d 765 (9th Cir. 2021) (en banc) (overturning the three-judge panel); *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1147 (9th Cir. 2014), on reh'g en banc, 824 F.3d 919 (9th Cir. 2016) (en banc) (same); *Duncan v. Becerra*, 970 F.3d 1133, 1138 (9th Cir. 2020), on reh'g en banc sub nom. *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) (en banc) (same). Our circuit has ruled on dozens of Second Amendment cases, and without fail has ultimately blessed every gun regulation challenged, so we shouldn't expect anything less here. See *Duncan*, 19 F.4th at 1165 (VanDyke, J., dissenting)." *McDougall v. Cnty. of Ventura*, 23 F.4th 1095, 1119 (9th Cir. 2022).

109.   Each of the above cases are incorporated herein as the same laws enjoined by other District Court judges are hereby incorporated into this case, and as such, also challenged in

the Eastern District. Defendants' policies systematically undermine Second Amendment

rights, exhibiting a clear disregard for them in comparison to their vigorous defense of rights

such as abortion, bail reform, and leniency towards property and immigration offenses.

110.    Without judicial intervention, Defendants will persist in implementing regulations that

diminish Plaintiffs' constitutional freedoms.

111.    Plaintiff lacks swift, straightforward, and effective legal recourse to address the ongoing

infringement of their constitutional rights.

112.    Monetary compensation cannot adequately remedy the harm Plaintiff suffers, as it cannot

restore their ability to partake in activities protected by the Constitution due to California's

relentless enforcement of restrictive laws.

113.    Defendants have systematically dodged judicial examination of their practices by

retracting actions under legal challenge, exploiting legislative tactics, securing injunction

stays on unconstitutional grounds, and intimidating legal opposition.

114.    Because Plaintiff's arms were seized and destroyed, and now need replacement, Plaintiff

further seeks to enjoin Defendants from enforcing current firearm statutes which infringe

upon his ability to (a) purchase off-roster handguns, which are legal under federal law, but

illegal to sell in California; (b) possess and purchase standard size handgun and rifle

magazines which exceed 10 rounds. (c) travel interstate with magazines which contain more

than 10 rounds of ammunition. (d) purchase semi-automatic firearms with detachable

magazines which are permitted under federal law, along with all firearm accoutrements as

permitted by federal law, and (e) purchase ammunition and gun parts online, without

additional taxes and fees as compared to other common household goods and clothing which

are not tax and do not require fees and background checks.

115.    Plaintiff Abrera's pursuit of the fundamental right to own and use firearms for lawful

purposes challenges California's stringent gun laws, which undermine Second Amendment

protections and defy Supreme Court rulings. These laws, including §§ 5150 and 8102, lead to

unjust confiscation and bans, impose undue burdens on gun owners, and are enforced through

tactics that evade accountability and delay justice, lacking historical precedent and due

process. Abrera's legal action seeks to rectify these constitutional infringements by requesting

declaratory and injunctive relief, as well as attorney fees under 42 U.S.C. § 1988, against

policies and statutes that unjustly restrict firearm ownership and usage.

116.    Defendants' actions are capable of repetition, yet evade review, because, on information

and belief, they have a practice of returning seized firearms when the owner files suit and

resists making plea deals, using delay tactics to increase the costs of litigation through

excessive requests for judicial review, or use legislative and administrative tricks to avoid

judicial review in an attempt to moot a case.

117.    Plaintiff seeks damages from City and County defendants and a comprehensive judicial

remedy against all defendants, including an injunction to prevent the unconstitutional seizure

and retention of legally owned firearms from non-threatening individuals without charges,

immediate return and compensation for damages to Plaintiff's weapons, and a declaration that

certain firearm regulations (including handgun, magazine, and semi-automatic rifle bans)

violate the Second Amendment. Plaintiff also requests the prohibition of enforcing current

firearm statutes limiting his rights to own, purchase, and use firearms and related items legal

under federal law, alongside equitable relief for record destruction, costs of suit, attorney fees,

and any additional relief deemed just by the Court.

118.    Plaintiff seeks equitable relief in the form of destruction of records, a remedy approved in

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010)

(CDT), *overruled in part on other grounds as recognized by Demaree v. Pederson*, 887 F.3d

870, 876 (9th Cir. 2018) (*per curiam*).

**FIRST CLAIM FOR RELIEF**
**STATE BAN AND SEIZURES OF AR15s, AND SIMILAR SEMI-AUTOMATIC**
**RIFLES LEGAL UNDER FEDERAL LAW**
**(As-Written)**
**Violation of the <u>Second Amendment</u> Right to Keep and Bear Arms**
**(Defendants Newsom and Bonta only)**
**Declaratory and Injunctive Relief Only**

119.    Plaintiff incorporates the above allegations as if set forth fully herein.

120.    The Second Amendment protects possession and use of weapons which are part of the

ordinary military equipment or that the arms use could contribute to the common defense.

*United States v. Miller*, 307 U.S. 174, 177 [1]; see also *District of Columbia v. Heller*, 554 U.S.

570 (2008).

121.    California's Penal Code § 30515(a) categorizes certain semi-automatic rifles, pistols, and

shotguns as "assault weapons" based on specific features, such as pistol grips, telescoping

stocks, and magazine capacity. Possessing, transferring, or manufacturing these firearms is

criminalized under state law. The statutes §§ 30515(a)(1)-(8), 30800, 30915, and 30945, along

with penalties under §§ 30600, 30605, and 30800 for defined "assault weapons," violate

Second Amendment rights by restricting lawful firearms based on arbitrary criteria. This

framework is unconstitutional, obstructing the replacement of legally obtained firearms that

are seized and destroyed, and thereby infringing upon Plaintiff's Second Amendment

protections.

122.    Plaintiff requests a declaratory judgment affirming the right to own and bear arms as

protected under the Second Amendment, specifically those firearms that are legal under

---

[1] "In the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense. *Aymette* v. *State*, 2 Humphreys (Tenn.) 154, 158." *United States v. Miller*, 307 U.S. 174, 177.

federal law but banned by California. Additionally, the plaintiff seeks injunctive relief to prevent future enforcement of the statutes in question and attorney fees and equitable relief under 42 U.S.C. § 1983.

123.    Semi-automatic handguns and rifles with detachable magazines holding over 10 rounds, legal under federal law, are widely used for lawful purposes in the United States. However, California's Penal Codes §§ 30600(a), 30605(a), and others, alongside certain regulations, restrict these firearms by defining them as "assault weapons" based on specific features like pistol grips and flash suppressors. Violations can lead to felony charges, with penalties including imprisonment. This legal framework criminalizes the possession and transaction of widely used firearms, directly impacting the constitutional right to self-defense. Consequently, the plaintiff is deterred from purchasing new AR-15s, legal federally but prohibited in California, due to a legitimate fear of legal repercussions.

124.    Plaintiff has suffered injury-in-fact.

125.    The statutes, as-written, violates the Second Amendment.

126.    Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

127.    Plaintiff is entitled to declaratory and equitable relief, and return of the two AR-15s seized, including prospective injunctive relief.

**SECOND CLAIM FOR RELIEF**
**STATE BAN AND SEIZURES OF AR15s, AND SIMILAR SEMI-AUTOMATIC RIFLES LEGAL UNDER FEDERAL LAW**
**(As-Applied)**
**Violation of the Second Amendment Right to Keep and Bear Arms**
**(Declaratory And Injunctive Relief and Monetary Damages, Except to Defendants Newsom and Bonta Whereby Only Equitable Relief Is Sought)**

128.    Plaintiff incorporates the above allegations as if set forth fully herein.

129.     By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained AR-15s, Defendants are propagating customs, policies, and practices

that violate the Second and Fourteenth Amendments to the United States Constitution, and

thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to

permanent injunctive relief against such customs, policies, and practices.

130.    The statutes §§ 30515(a)(1)-(8), 30800, 30915, and 30945, along with penalties under §§

30600, 30605, and 30800 as-applied violate Plaintiff's Second Amendment rights.

131.    Plaintiff has suffered injury-in-fact.

132.    Plaintiff is entitled to declaratory and equitable relief, and return of the two AR-15s

seized, including prospective injunctive relief.

133.    Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM FOR RELIEF**
**STATE STATUTE PERTAINING TO FIREARM SEIZURES**
**(As-Written)**
**Violation of the Second Amendment Right to Keep and Bear Arms**
**(Cal. Welfare & Institutions Code §§ 5150, 8102, and Penal Code § 30800)**
**Declaratory and Injunctive Relief Only**
**(Defendants Newsom and Bonta only)**

134.    Plaintiff incorporates the above allegations as if set forth fully herein.

135.    Cal. Welfare & Institutions Code §§ 5150, 8102, and Penal Code § 30800 are

unconstitutional as-written and lack of procedural safeguards, thereby violating Plaintiff's

Second Amendment rights.

136.    By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff

of his lawfully obtained weapons, Defendants are propagating customs, policies, and practices

that violate the Second and Fourteenth Amendments to the United States Constitution.

Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and

practices.

137.    The confiscation of Mr. Abrera's firearms violates his rights under the Second and

Fourteenth Amendments, contravening Supreme Court decisions including *United States v.*

*Miller* (1939), *District of Columbia v. Heller* (2008), *McDonald v. City of Chicago* (2010),

*Caetano v. Massachusetts* (2016), and *N.Y. State Rifle & Pistol Ass'n v. Bruen* (2022).

138.   Plaintiff has suffered injury-in-fact.

139.   The statutes, as-written, violate the Second Amendment.

140.   Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

141.   Plaintiff is entitled to declaratory and equitable relief, and return of the six firearms

seized, including prospective injunctive relief.

**FOURTH CLAIM FOR RELIEF**
**STATE STATUTE PERTAINING TO FIREARM SEIZURES**
**(As-Applied)**
**Violation of the <u>Second Amendment</u> Right to Keep and Bear Arms**
**(Cal. Welfare & Institutions Code §§ 5150, 8102, and Penal Code § 30800)**
**(Declaratory and Injunctive Relief and Monetary Damages, Except to Defendants Newsom**
**and Bonta Whereby Only Equitable Relief Is Sought)**

142.   Plaintiff incorporates the above allegations as if set forth fully herein.

143.   The application of Cal. Welfare & Institutions Code §§ 5150, 8102, and Penal Code §

30800 to Plaintiff's situation was unconstitutional, extending beyond reasonable measures

intended for public safety, thereby violating Plaintiff's constitutional rights without due

process.

144.   The confiscation of Mr. Abrera's firearms violates his rights under the Second and

Fourteenth Amendments, contravening Supreme Court decisions including *United States v.*

*Miller* (1939), *District of Columbia v. Heller* (2008), *McDonald v. City of Chicago* (2010),

*Caetano v. Massachusetts* (2016), and *N.Y. State Rifle & Pistol Ass'n v. Bruen* (2022).

145.   By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff

of his lawfully obtained weapons, Defendants are propagating customs, policies, and practices

that violate the Second and Fourteenth Amendments to the United States Constitution.

146.   Plaintiff has suffered injury-in-fact.

147.    City and County Defendants have caused Plaintiff damages in an amount according to proof, including the loss of his liberty and fundamental right to keep and bear arms.

148.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices, and for the return of his arms.

149.    Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

**FIFTH CLAIM FOR RELIEF**
**STATE BAN ON MAGAZINES HOLDING**
**MORE THAN 10 ROUNDS OF AMMUNITION**
**(As-Written)**
**Violation of the <u>Second Amendment</u> Right to Keep and Bear Arms**
**(Defendants Newsom and Bonta only)**

150.    Plaintiff incorporates the above allegations as if set forth fully herein.

151.    Detachable magazines holding more than 10 rounds is an acquisition right which is protected as an "ancillary right" necessary to the realization of the core right to possess a firearm for self-defense and for militia use.

152.    Cal. Pen. Code § 16740 provides that a "large-capacity magazine" means any ammunition feeding device with the capacity to accept more than 10 rounds.

153.    Cal. Pen. Code § 32310 states that any person in this state who possesses any large-capacity magazine, regardless of the date the magazine was acquired, is guilty of an infraction or is guilty of a misdemeanor. This law is also applied retroactively.

154.    California Penal Code §18010 states that "The Attorney General, a district attorney, or a city attorney may bring an action to enjoin the manufacture of, importation of, keeping for sale of, offering or exposing for sale, giving, lending, or possession of, any item that constitutes a nuisance under any of the following provisions: *** (12) Section 24390, relating to a camouflaging firearm container. *** (19) Section 32390, **relating to a large-capacity magazine**. … are a nuisance and are subject to confiscation and destruction pursuant to

Section 18005."

155.    Plaintiff's two AR-15s hold 30 round magazines and his handguns hold magazines exceeding 10 rounds, and Plaintiff has a concrete plan to purchase or acquire magazines holding more than ten rounds and he refuses to put a bullet button on his two AR-15s which were seized.

156.    This statute violates the Second Amendment as-written.

157.    This acquisition right is protected as an "ancillary right" necessary to the realization of the core right to possess a firearm for self-defense and militia use.

158.    California can present no historical analog that "… affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

159.    Plaintiff has suffered injury-in-fact.

160.    The statutes, as-written, violates the Second Amendment.

161.    Plaintiff is entitled to declaratory and equitable relief, including prospective injunctive relief.

162.    Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

**SIXTH CLAIM FOR RELIEF**
**STATE BAN OF MODERN SEMI-AUTOMATIC**
**HANDGUNS, UNSAFE HANDGUN LIST, AND**
**MICROSTAMPING**
**(As-Written and As-Applied)**
**Violation of the <u>Second Amendment</u> Right to Keep and Bear Arms**
**(Defendants Newsom and Bonta only)**

163.    Plaintiff incorporates the above allegations as if set forth fully herein.

164.     California law deems all handguns "unsafe" unless approved and listed on a state roster, effectively barring most modern handguns sold in other states (Cal. Penal Code § 31910).

165.    This has led to prohibitive measures that discourage handgun manufacturers due to

requirements like magazine disconnect mechanisms and chamber load indicators, which compromise functionality.

166.    The mandate for "microstamping technology" on semiautomatic handguns since May 17, 2013, further limits available models, as no new handguns without this technology can be added to the roster, reducing the variety of legal firearms.

167.    Such restrictions, unique to California and not mandated federally, push older, less safe handguns onto consumers, contradicting the principle of access to the safest arms available elsewhere in the U.S.

168.    The regulatory scheme, including Cal. Penal Code §§ 16380, 16900, 31900 et seq., and specific regulations, effectively bans new semiautomatic pistols by attrition, exempting law enforcement and entertainment industry professionals while disadvantaging ordinary citizens.

169.    This framework infringes upon Second Amendment rights by preventing the acquisition and possession of constitutionally protected firearms, validated by the shrinking roster of approved handguns, which fails to reflect the variety and safety of firearms available nationally.

170.    California can present no historical analog that "… affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

171.    Plaintiff has suffered injury-in-fact.

172.    The statutes, as-written, violates the Second Amendment.

173.    Plaintiff is entitled to declaratory and equitable relief, including prospective injunctive relief.

174.    Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

**SEVENTH CLAIM FOR RELIEF**

29

**STATE PROSECUTORIAL ACTIONS
AND CIVIL ACTIONS
(As-Applied – Custom, Policy, and Practice)
Violation of the <u>Second Amendment</u> Right to Keep and Bear Arms
(Declaratory and Injunctive Relief and Monetary Damages, Except to
Defendants Newsom and Bonta Whereby Only Equitable Relief Is
Sought)**

175.   Plaintiff incorporates the above allegations as if set forth fully herein.

176.   Defendants target the lawful possession of firearms to undermine the fundamental right to keep and bear arms, adopting a policy of "gun control" aimed at restricting Second Amendment freedoms through a series of incremental measures without the need for a constitutional amendment.

177.   This approach reflects oppressive tactics observed in totalitarian regimes (e.g., China), systematically eroding gun rights through legislative, administrative, regulatory, prosecutorial, and civil actions collectively termed "Gun Control Actions." These actions, designed to disarm law-abiding citizens, have directly harmed the Plaintiff, leading to his arrest, the filing of charges, and the confiscation of his firearms under the guise of public safety.

178.   Defendants, leveraging their official capacities, engage in a calculated effort to diminish Second Amendment protections, evident in their prosecution of Plaintiff and Defendants Newsom and Bonta reactive policies to unrelated political events such as Texas's abortion legislation.

179.   This strategic misuse of power seeks to circumvent established Supreme Court rulings on gun rights, employing legal maneuvers and public statements to foster an environment of intimidation and fear among gun owners.

180.   The enactment of Senate Bill No. 1327, post-*Bruen*, exemplifies this approach, introducing punitive legal repercussions for those challenging California's restrictive gun

laws.

181.    By imposing severe constraints on legal opposition and advocating for an aggressive gun control agenda, Defendants not only defy constitutional mandates but also attempt to reshape the legal landscape to erode individual gun ownership rights systematically.

182.    The cumulative effect of Defendants' actions, as described, constitutes a broad and systematic effort to undermine the Second Amendment through legal and regulatory overreach, misinterpretation of constitutional rights, and deliberate attempts to evade judicial scrutiny.

183.    Plaintiff's experiences exemplify the tangible harms inflicted by such policies, underscoring the need for judicial intervention to restore and protect constitutionally guaranteed rights.

184.    Plaintiff is entitled to monetary damages against municipal defendants due to the harm suffered.

185.    Plaintiff has suffered injury-in-fact.

186.    City and County Defendants have caused Plaintiff damages in an amount according to proof, including the loss of his liberty and fundamental right to keep and bear arms.

187.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices, and for the return of his arms.

188.    Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

### EIGHTH CLAIM FOR RELIEF
**AMMUNITION BAN**
**(As-Written and As-Applied)**
**Violation of the Second Amendment Right to Keep and Bear Arms**
**(Defendants Newsom and Bonta only)**
**Declaratory and Injunctive Relief Only**

189.    Plaintiff incorporates the above allegations as if set forth fully herein.

190.    California's Cal. Penal Code § 30312(a)-(b) mandates that all ammunition purchases be conducted through state-licensed vendors in face-to-face transactions, imposing stringent regulations on ammunition sales, deliveries, or transfers within the state. Residents wishing to buy ammunition must undergo and pass an electronic background check for each purchase and are prohibited from buying ammunition from out-of-state vendors unless it is shipped directly to a licensed California vendor for collection following a face-to-face background check. This process, which also requires proof of citizenship—a requirement not imposed for voting—resulting in a violation of the Equal Protection Clause.

191.    Furthermore, ammunition vendors are required to verify a buyer's identity with "bona fide evidence," which includes state-issued IDs or driver's licenses, without distinguishing between standard and AB 60 documents.

192.    In addition, ammunition sales are subjected to additional fees and taxes not required of other personal property items (e.g., contraceptives, books, Bibles, kitchen knives, etc.)

193.     These restrictions effectively act as a *de facto* ban on firearms, contravening the Second Amendment's protections for the right to possess firearms for self-defense, militia participation, hunting, and recreational shooting.

194.    The right to acquire ammunition is deemed an ancillary right crucial to exercising the fundamental right to bear arms.

195.    California's ammunition regulation lacks a historical precedent, challenging its alignment with the traditional scope of the Second Amendment as defined by Supreme Court rulings in *Caetano v. Massachusetts* and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, underscoring the absence of historical justification for such stringent firearm regulations.

196.    Plaintiff has suffered injury-in-fact.

197.    The statutes, as-written, violates the Second Amendment.

198.    Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

199.    Plaintiff is entitled to declaratory and equitable relief pursuant to 42 U.S.C. § 1983,

including prospective injunctive relief.

### NINTH CLAIM FOR RELIEF
### APPLICATION FOR RETURN OF FIREARMS
### (As-Written and As-Applied)
### Violation of the Second Amendment Right to Keep and Bear Arms
### (Declaratory and Injunctive Relief and Monetary Damages, Except to Defendants Newsom and Bonta Whereby Only Equitable Relief Is Sought)

200.    Plaintiff incorporates the above allegations as if set forth fully herein.

201.    Plaintiff, having not committed any crime or posed a threat to himself or others, lawfully

owns firearms that are protected under the Second Amendment.

202.    Despite clear ownership of two handguns and two AR15s, and lacking any legal grounds

for retaining his firearms, Defendants refuse to release them.

203.    Defendants insist that even if a court orders their release, Plaintiff must still pay a fee and

apply for their return with additional red-tape, a requirement not imposed on other property

returns.

204.    California Penal Code §§ 33850, 33855, 33860, and 33880 stipulate that anyone claiming

ownership of seized firearms must pay fees covering seizure, storage, and impoundment, and

submit a formal application for their return, regardless of whether the seizure was erroneous

or the owner was acquitted.

205.    Each Defendant has the authority to release the arms to Plaintiff, but refuse to do so under

any circumstance.

206.    The Plaintiff rejects the notion of paying for the return of his unlawfully seized firearms

and refuses to compromise his Fifth Amendment rights. The legal battle to destroy the

Plaintiff's firearms is deemed a "criminal case" in terms of the Fifth Amendment implications.

This designation is supported by the Supreme Court in *Boyd v. United States*, which articulated that proceedings to forfeit a person's property for legal violations, despite being civil in form, are considered "criminal cases" for the purposes of the Fifth Amendment's safeguard against self-incrimination.

207.   California can present no historical analog that "… affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

208.   Plaintiff has suffered injury-in-fact.

209.   The statutes, as-written and as-applied, violates the Second Amendment.

210.   Plaintiff has been damaged when his arms were seized and continues to suffer damages each day his arms are not returned.

211.   Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

212.   Plaintiff is entitled to declaratory and equitable relief, and the return of his arms without fees or applications, including prospective injunctive relief.

**TENTH CLAIM FOR RELIEF**
**EQUAL PROTECTION CLAUSE (as-written and as-applied)**
**Violation of Plaintiff's Rights to Equal Protection**
**(Declaratory and Injunctive Relief and Monetary Damages, Except to Defendants Newsom and Bonta Whereby Only Equitable Relief Is Sought)**

213.   Plaintiff incorporates the above allegations as if set forth fully herein.

214.   Defendants' policy choices and laws are not neutral, and therefore trigger strict scrutiny under the Second Amendment and Equal Protection Clause

215.   **IMMIGRATION POLICY V. SECOND AMENDMENT:** Plaintiff asserts an Equal Protection challenge to the written and unwritten policy of "collateral consequences" being applied to immigration cases involving illegal aliens but not naturalized citizens and the poor as it pertains to the Second Amendment.

216.    Illegal Immigrants are granted greater rights under California's penal system than citizens by use of what is known as "collateral consequences" policies whereby the prosecutors are mandated to dismiss cases if prosecution and/or conviction could lead to deportation.

217.    However, in any case involving a gun or Second Amendment right, the case cannot be dismissed, and if, on a very rare occasion a case is dismissed, the guns are never even if legally purchased in state.

218.    **ABORTION V. SECOND AMENDMENT**: Defendants policy choices are not neutral, and therefore trigger strict scrutiny under the Second Amendment and Equal Protection Clause, since the treat an enumerated right differently than abortion, even though abortion is not an enumerated right and abortion conflicts with the sanctity of life protected by California's Penal Code Section 187(a), which defines Murder as "… the unlawful killing of a human being, or a fetus, with malice aforethought." [emphasis added] Cal. Penal Code § 187.

219.    Defendants policy is to attack the Second Amendment as means to influence their personal views on abortion, even though abortion is completely legal in California --- but their actions would lead any reasonable person to believe that they are using their office as a platform to facilitate their personal views on abortion at the national level.

220.    Defendant Schubert has never objected to Bonta's and Newsom's positions on abortion in relation to the Second Amendment, and through her office, she has adopted their policies.

221.    Because the Second Amendment is treated by a different standard than all other rights, people who intend to exercise their right to keep and bear modern arms in common use are discriminated against in violation of the Equal Protection clause.

222.    **TWO-TIERED SYSTEM FOR THE RETURN OF GUNS V. OTHER PROPERTY**: Defendants have a custom, policy and practice of creating a two-tiered system for the return of property that has been seized by law enforcement by making it more difficult for the return

35

of firearms as compared to all other property.

223.    In addition, if a peace officer is involved in a similar incident, the government

manipulates the criminal or civil case (e.g. restraining orders) so as a disability does not attach

to peace officers resulting in the loss of Second Amendment rights and firearm ownership or

possession.

224.    Defendants have a custom, policy and practice of selectively prosecuting gun owners and

seizing their guns solely because of them exercising their Second Amendment rights.

225.    By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff

of his lawfully obtained weapons, Defendants are propagating customs, policies and practices

that violate Plaintiff's rights to equal protection of the laws under the Fourteenth Amendment

to the United States Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983.

226.    Plaintiff has been damaged according to proof.

227.    Attorney fees and costs are recoverable pursuant to 42 U.S.C. § 1988.

228.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies,

and practices, and the return of his arms.

### ELEVENTH CLAIM FOR RELIEF
**Violation of Plaintiff's Rights to Equal Protection**
**Peace Officers Given Preferential Treatment**
**(Defendant Schubert Only)**
**Declaratory and Injunctive Relief Only**

229.    Plaintiff incorporates the above allegations as if set forth fully herein.

230.    Defendant Schubert is known for her aggressive stance on gun control in the Sacramento

area, advocating for the use of criminal courts to seize and destroy firearms, regardless of

their legality under federal law.

231.    She openly promoted a proactive approach to gun control, emphasizing the importance of

both preventing gun-related crimes before they occur and rigorously prosecuting offenders

36

after the fact, even those who committed no crime. Her policy includes confiscating legally-owned firearms and mandating their destruction in legal resolutions such as plea deals or case dismissals.

232.    However, Schubert does not employ the same zeal regarding peace officers entangle in the criminal justice system.

233.    Complaints have been made about disparate treatment in cases involving peace officers. A case in point involves Sacramento City Police Officer Justin Shepard, who, despite allegations of domestic violence and illegal possession of drugs, was initially spared prosecution by Schubert's office to preserve his career in law enforcement.

234.    This decision was made despite evidence found in Shepard's locker, including anabolic steroids and opioids without a prescription.

235.    It was not until DA Chesa Boudin of San Francisco pressed charges for a separate incident that Schubert's office reconsidered and filed charges related to the earlier incident in Sacramento. This reversal and the refusal of San Francisco's DA's office to transfer jurisdiction proves the inconsistent application of law enforcement policies regarding domestic violence and gun possession.

236.    By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies and practices that violate Plaintiff's rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

237.    Plaintiff has suffered injury-in-fact.

238.    Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1983.

239.    Plaintiff is entitled to declaratory and equitable relief, and attorney fees pursuant to 42 U.S.C. § 1983, including prospective injunctive relief, and the return of his arms.

240.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies,

and practices, and the return of his arms.

**TWELFTH CLAIM FOR RELIEF**
**CUSTOM, POLICY AND PRACTICE**
**Violation of Plaintiff's Right to Keep and Bear Arms**
**(Defendants Schubert and County of Sacramento)**
**Equitable and <u>Monetary</u> Relief**

241.    Plaintiff incorporates the above allegations as if set forth fully herein.

242.    After Plaintiff's Motion to Dismiss the Felony Complaint was granted because the AWCA

violated Plaintiff's rights under the Second Amendment, Defendant Schubert's absolute

immunity ceased because the return or property upon dismissal was ministerial,

administrative, and civil in nature.

243.    At that point, Defendant Schubert was no longer acting under the Attorney General;

instead, she then became a policy maker for Defendant County of Sacramento.

244.    Defendant District Attorney has a custom, policy and/or practice of not returning AR15s

the parties in violation of the Second Amendment; in addition to having the arms subject to

destruction pursuant to Cal. Pen. Code § 30800, which provides "… (<u>possession of any</u>

<u>assault weapon</u> … <u>is a public nuisance</u>, (c) Any assault weapon … deemed a public nuisance

… <u>shall be destroyed</u> in a manner so that it may no longer be used, except upon a finding by a

court, **or a declaration** from the Department of Justice, <u>district attorney</u>, or <u>city attorney</u>

stating that the preservation of the assault weapon or .50 BMG rifle is i<u>n **the interest of**

**justice**</u>." [emphasis added]

245.    Defendant District Attorney made a policy decision to declare protected arms a nuisance

and to have them destroyed and that "interest of justice" excludes the Second Amendment.

246.    Defendant Schubert's custom, policies, and practices relating to the refusal to return

Plaintiff's arms are the cause-in-fact of Plaintiff's monetary damages for deprivation of his

rights and guns.

247.    Plaintiff has suffered injury-in-fact.

248.    Plaintiff is entitled to declaratory and equitable relief, the return of his arms, and

prospective injunctive relief.

249.    Plaintiff has suffered actual damages, including the deprivation of his rights and protected

arms. Plaintiff has been damaged according to proof, and just compensation.

250.    Plaintiff seeks the return of his arms, and if destroyed, just compensation.

251.    Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

**THIRTEENTH CLAIM FOR RELIEF**
**SENATE BILL NO. 1327 (as-written)**
**Violation of Plaintiff's First Amendment Rights**
**(All Defendants)**
**Declaratory and Injunctive Relief**

252.    Plaintiff incorporates the above allegations as if set forth fully herein.

253.    Senate Bill No. 1327 introduced Section 1021.11 to the California Code of Civil

Procedure, effective January 1, 2023, which significantly restricts access to the courts,

challenging fundamental rights protected by the Constitution.

254.    This legislation interferes with the right of access to courts, a cornerstone of the First

Amendment's protection of petitioning the government for redress of grievances.

255.    By implementing burdensome requirements and punitive measures against attorneys and

plaintiffs challenging firearm regulations, the law aims to deter legal challenges against

California's gun control policies, infringing not only on Second Amendment rights but also

on the First Amendment's safeguard of court access.

256.    Defendants Newsom and Bonta's support for this law underscores a willingness to

compromise fundamental constitutional protections to advance gun control objectives,

threatening the plaintiff and legal representatives with financial ruin and creating conflicts of

39

interest that could impair the right to effective counsel.

257.   This law will impact Plaintiff's attorneys decision making process creating a natural conflict of interest since Plaintiff's counsel will now have to consider their personal exposure and pecuniary interest, and will *per se* create an ineffective assistance of counsel.

258.   This law was intentionally passed to further propagate the Gun Control policy of defendants through Gun Control Actions.

259.   The law is designed to deter, chill and terrify Plaintiff and his attorneys from proceeding with this action, and future actions in state courts.

260.   As Newsom puts it: "We are sick and tired of being on the defense in this movement. It's time to put them on the defense," said Gov. Newsom at a conference at the signing of this bill. https://www.kcra.com/article/california-gun-control-law-mimics- texas-abortion-measure/40689671

261.   Plaintiff and Plaintiff's lawyers faces a genuine and serious risk that Defendants here will aggressively pursue judgments against Plaintiff and Plaintiff's lawyers. Such risk alone imposes a present injury and chill on Plaintiff's litigation choices in this case, both now and as the January 1, 2023, effective date approaches, and potentially chills and burdens their ability to obtain the advice and assistance of legal counsel.

262.   There is no other speedy or adequate remedy before the effective date of the law.

263.   To any extent Defendants seek to apply SB 1327 retroactively, that would burden other aspects of due process as well.

264.   Plaintiff has suffered injury-in-fact.

265.   The statute, as-written, violates the First Amendment.

266.   Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

267.   Plaintiff is entitled to declaratory and equitable relief, and attorney fees pursuant to 42

U.S.C. § 1983, including prospective injunctive relief.

**FOURTEENTH CLAIM FOR RELIEF**
**STATE LAW CAUSE OF ACTION**
**INVERSE CONDEMNATION**
**Cal Const, Art. I § 19**
**(All Defendants except Newsom and Bonta)**
**Both Equitable and <u>Monetary</u> Relief**

268.   Plaintiff incorporates the above allegations as if set forth fully herein.

269.   A party has a right either to enjoin the taking or damaging of his property or to sue for damage, and his failure to avail himself of one has no effect upon his pursuit of the other. *Rockridge Place Co. v. Oakland* (Cal. App. Apr. 27, 1923), 61 Cal. App. 791, 216 P. 64.; Cal Const, Art. I § 19.

270.   Plaintiff filed timely tort claims with Defendants, and this action is timely filed.

271.   The above-described seizure and/or damage and/or deprivation and/or destruction to plaintiff's property was proximately and substantially caused by defendant's actions.

272.   Plaintiff's guns and accessories have not been returned, and therefore Plaintiff is entitled to just compensation.

273.   As a result of the above-described damage to plaintiff's property, plaintiff has been damaged in the amount according to proof.

274.   Plaintiff has received no compensation for the damage or seizure to his property.

275.   Plaintiff hereby demands return of his property.

276.   Plaintiff has incurred and will incur attorney's and expert witness fees because of this proceeding, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of Code of Civil Procedure Section 1036.

**FIFTEENTH CLAIM FOR RELIEF**
**FIREARM SEIZURES AND ARREST – CUSTOM, POLICY AND PRACTICE**
**Violation of the <u>Fourth and Fourteenth Amendment</u>**
**(Cal. Welfare & Institutions Code §§ 5150, 8102, and Penal Code § 30800)**

**(Declaratory and Injunctive Relief and Monetary Damages, Except to Defendants Newsom and Bonta Whereby Only Equitable Relief Is Sought)**

277.    Plaintiff incorporates the above allegations as if set forth fully herein.

278.    Defendants are propagating customs, policies, and practices that violate Plaintiff's rights under the Fourth and Fourteenth Amendment, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983.

279.    By arresting Plaintiff and seizing Plaintiff's guns from his home without a warrant, Defendants violated the Fourth Amendment of the United States Constitution.

280.    Plaintiff has suffered injury-in-fact.

281.    City and County Defendants have caused Plaintiff damages in an amount according to proof, including the loss of his liberty and fundamental right to keep and bear arms.

282.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices, and for the return of his arms.

283.    Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

**SIXTEENTH CLAIM FOR RELIEF**
**FIREARM SEIZURES**
**Violation of the <u>Fifth and Fourteenth Amendment</u>**
**(Cal. Welfare & Institutions Code §§ 5150, 8102, and Penal Code § 30800)**
**(Declaratory and Injunctive Relief and Monetary Damages, Except to Defendants Newsom and Bonta Whereby Only Equitable Relief Is Sought)**

284.    Plaintiff incorporates the above allegations as if set forth fully herein.

285.    Plaintiff has a cognizable property interest in his weapons, the seizure and retention of which was caused by Defendants without sufficient due process. Defendants are propagating customs, policies, and practices that violate Plaintiff's right to due process under the Fifth and Fourteenth Amendment, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983.

286.    Plaintiff has suffered injury-in-fact.

287.    City and County Defendants have caused Plaintiff damages in an amount according to

proof, including the loss of his liberty and fundamental right to keep and bear arms.

288.   Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices, and for the return of his arms.

289.   Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. § 1988.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

A.   Plaintiff seeks monetary damages against City and County defendants only.

B.   An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the practice of seizing and retaining lawfully obtained weapons of individuals without a warrant who are deemed to be of no threat to themselves or others, and who have not been charged with a crime or convicted of a crime;

C.   Declaratory relief that the practice of seizing and retaining lawfully obtained weapons of individuals who are deemed to be of no threat to themselves or others, and who have not been charged with a crime is unconstitutional either on its face and/or as applied to withhold those individuals arms who are legally entitled to possess such arms;

D.   Declaratory relief that the practice of requiring weapons owners who are not charged with a crime, and had the criminal charges dismissed, to engage in formal litigation in order to recover their seized property is unlawful and unconstitutional;

E.   The immediate return of Plaintiff's weapons to him;

F.   The cost of repair and/or replacement for any damage done to Plaintiff's weapons while in Defendants' possession;

43

G. For declaratory relief adjudging that the <u>Handgun Ban</u> (Cal. Penal Code §§ 31900, et seq. and 32000, et seq.), <u>Magazine Ban</u> (Cal. Pen. Code §§ 16740, 18010, 32310) and the <u>Semi-Automatic Rifle Ban</u> (Penal Code §§ 30515(a), 30515(b), 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005, as well as Title 11, California Code of Regulations §§ 5460 and 5471) are unconstitutional on their face and as applied, and in violation of the Second Amendment, to the extent that the State's laws and regulations operate to prohibit or prevent Plaintiff and similarly situated persons from exercising their rights, including acquiring, keeping, bearing, transporting, transferring, and using "assault weapons", off roster handguns, and large capacity magazines for lawful purposes;

H. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the practice of seizing and retaining lawfully obtained weapons of individuals without a warrant who are deemed to be of no threat to themselves or others, and who have not been charged with a crime.

I. Plaintiff further seeks to enjoin Defendants from enforcing current firearm statutes enumerated herein which infringe upon his ability to (a) purchase off-roster handguns, which are legal under federal law; (b) possess and purchase standard size handgun and rifle magazines which exceed 10 rounds. (c) purchase handguns and rifles which include magazines holding more than 10 rounds. (d) purchase semi-automatic firearms with detachable magazines which are permitted under federal law, along with all firearm accoutrements as permitted by federal law, and (e) purchase ammunition and gun parts online which is legal under federal law.

J. For declaratory relief supporting an injunction, and an order temporarily and permanently

enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, who receive actual notice of the injunction, from enforcement or application of the subject Penal Code sections.

K.  Plaintiff seeks equitable relief in the form of destruction of records of arrest, a remedy approved in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010) (CDT), *overruled in part on other grounds as recognized by Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam).

L.  Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988.

M.  Plaintiff reserves the right to add and/or modify requests for declaratory and injunctive relief.

N.  Any other relief as the Court deems just and appropriate.

Respectfully submitted,

Dated Tuesday, February 13, 2024.  */s/ Gary W. Gorski*
Gary W. Gorski
Attorney for Plaintiff