**Gary W. Gorski CBN: 166526**
**Attorney at Law**
*VETERANS LAW CENTER*
3017 Douglas Blvd., Suite 150
Roseville, CA  95661
Cell: (775) 720-1000
CivilRightsAttorney@BlackWolfLaw.com
www.VeteransLawCenter.com

**Daniel M. Karalash CBN: 176421**
**Attorney at Law**
(916) 787-1234

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD ABRERA,<br><br>　　　　　Plaintiff,<br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; ANNE MARIE SCHUBERT, in her official capacity as County of Sacramento District Attorney; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE;<br><br>　　　　　Defendants. | No.  2:22-cv-1162-DAD-DB<br><br>**PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**Date:** May 21, 2024<br>**Time:** 1:30 p.m.<br>**Courtroom:** 4<br>**Judge:** Honorable Dale A. Drozd<br>**Location:**<br>501 I Street<br>Sacramento, CA<br><br>**Complaint Filed:** 7/5/2022<br>**Trial Date:** None Set |

## I.    LEGAL AND FACTUAL BACKGROUND

This case starkly demonstrates a complex and overarching "tapestry" of California gun laws that effectively lead to total disarmament. (SAC ¶ 84, 85, 87-94, 104, 176-178) Despite the fact that individuals like Mr. Abrera might manage to repurchase arms after the government has seized and destroyed them, they are then confined to outdated gun models (SAC ¶ 167, 169) that

1

fail to meet self-defense needs of most individuals, restricted to firing "2.2 rounds" and expected to be content with a meager allowance of 10 rounds, as sarcastically noted in *Duncan v. Bonta*. "And be grateful for 10 rounds. *Duncan,* 19 F.4th at 1168 n.10, cert. granted, judgment vacated, 142 S. Ct. 2895, 213 L. Ed. 2d 1109 (2022), and vacated and remanded, 49 F.4th 1228 (9th Cir. 2022) (Bumatay, J., dissenting) ("California currently allows more than 2.2 rounds in a magazine, and does not prohibit carrying multiple magazines. But don't be fooled. Under the majority's Version 2.2 of the Second Amendment, there is no reason a state couldn't limit its citizens to carrying a (generous) 3 rounds total for self-defense.")." *Duncan v. Bonta*, No. 17-cv-1017-BEN (JLB), 2023 U.S. Dist. LEXIS 169577, at *5 n.24 (S.D. Cal. Sep. 22, 2023)

In this case, Mr. Abrera's house was unlawfully searched for firearms (SAC ¶ 83) as though he was a criminal (SAC ¶ 1 ["clean criminal record"], 60, 62), and subsequently, his firearms, encompassing both handguns and long-guns, were seized under the auspices of Cal. Welfare & Institutions Code §§ 5150, 8102, and Penal Code § 30800 when it was he who dialed 911. Further accelerating the situation to disarm Mr. Abrera, without including him as a party or even serving him, the City of Elk Grove's City Attorney initiated a petition to destroy guns registered in his name alone. (SAC ¶s 63) The narrative continues as the Elk Grove Police Department, based on the seizure from Mr. Abrera's house, leads to Sacramento County DA's criminal charges against Mr. Abrera, leveraging sections of California's Penal Code §§ 30515(a)(1)-(8), 30800, 30915, and 30945, which ultimately include sanctions leading to future destruction of those two rifles – unless enjoined. (SAC ¶ 62, 66-773)

Despite the judicial dismissal resulting in a favorable termination requirement of a Fourth Amendment claim *Thompson v. Clark*, 596 U.S. 36 (2022), which should legally facilitate the return of Mr. Abrera's firearms as, for example, per 18 U.S.C.S. §§ 924(d)(2)(A) and (B), the state court inexplicably refused, citing pervasive bans under California law. The denied P.C. §

1538.5 motion for the return of the two AR-15s epitomizes this infringement. (SAC ¶ 73)

Independent of any court decision, Mr. Abrera also faces the cumbersome process of filing an Application for Return of Firearms (Cal. Pen. Code §§ 33850, 33855, 33860, 33880) and bears the costs to retrieve wrongly seized property, underscoring the glaring gap between California's strict regulations and vital constitutional rights. (SAC ¶ 203-204) Moreover, the necessity to secure a judicial order for the recovery of firearms accentuates the existing challenges. (SAC ¶ 204-206)

These barriers unequivocally infringe upon Second Amendment rights and stem from California's overly strict and punitive legislative and municipal structure, as exemplified by the uncompromising Large-Capacity Magazine Ban (Cal. Pen. Code § 16740, 32310), alongside severe restrictions such as the Handgun Ban, Unsafe Handgun List, and mandatory Microstamping regulations (Cal. Pen. Code §§ 31900 et seq.), coupled with the oppressive Ammunition Restrictions (Cal. Pen. Code § 30312(a)-(b)).

This situation is contrasted sharply by federal statutes, particularly under 18 U.S.C.S. § 924(d)(1), which mandates the swift return of seized or relinquished firearms and ammunition post-acquittal or dismissal of charges, a standard starkly unmet by California's practices.

Every gun regulation challenged in this action from California has no equivalent in federal law, nor does it align with the historical context stretching from 1791, the ratification year of the Second Amendment, to around 1868, when the 14th Amendment was ratified – a period critical for interpreting the extension of the Bill of Rights to the states, including the Second Amendment. See *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

## ARGUMENT IN OPPOSITION

### I.   THE FIRST AMENDED COMPLAINT DOES NOT VIOLATE RULE 8

Motions to dismiss are "disfavored and rarely granted." *U.S. v. Hempfling*, 431 F.Supp.2d

1069, 1075 (E.D. Cal. 2006). Plaintiff Arnold Abrera's allegations are neither prolix nor confusing; they are detailed and clear, directly responding to the <u>multifaceted legal issues</u> at hand. The SAC outlines not just a request concerning the return of arms but raises significant questions regarding the application and constitutionality of the <u>laws</u> and <u>policies</u> under which his property was seized, with a declaratory and injunctive relief being sought so that he, and others, may exercise his Second Amendment rights freely, without fear of prosecution. (SAC ¶s 55, 60, 80-96, 106, 114, 107 A.-G., 176, 214-225, 231, 232, 243-246, 258-260)

Rule 8 does not impose a limit on the length of a complaint, and verbosity, alone, is not a basis for dismissing a complaint. See *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). Where a lengthy complaint, even with superfluous matter, provides the defendant with notice of the plaintiff's claims, dismissal is inappropriate under Rule 8. *Stanard v. Nygren*, 658 F.3d 792, 797-98 (7th Cir. 2011). Simply put, "undue length alone ordinarily does not justify the dismissal of an otherwise valid complaint." *Id.* at 797.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) have elevated the pleading standards, necessitating plaintiff to present a scenario that goes beyond mere possibility to one of plausibility. The SAC does precisely this: the averments are rooted deeply in fundamental constitutional principles, involving <u>multiple parties</u> and <u>complex interrelated actions</u>. The depth and breadth of the factual and legal allegations within the SAC are paramount in navigating the convoluted legal and constitutional terrain Mr. Abrera faces, aligning with the legal exigencies dictated by the precedents of *Twombly* and *Iqbal*.

In this lawsuit, seven distinct defendants are identified, each accused of violating Mr. Abrera's Second Amendment rights through specific actions. For example, the City of Elk Grove and the County are sued for their refusal to return Mr. Abrera's handguns and AR-15 rifles, actions directly infringing upon his rights. Additionally, State laws further compound these

violations by preventing Mr. Abrera from replacing his wrongfully seized firearms.

The SAC lists sixteen specific causes of action: some address "as-written" challenges against State Defendants (First, Third, Fifth, Sixth, Eighth causes), while others focus on "as-applied" challenges relevant to Municipal Defendants (Second, Fourth, Eleventh, Twelfth, Fourteenth, Sixteenth causes). Hybrid claims seeking damages from Municipal Defendants and equitable relief from State Defendants are found in the Seventh, Ninth, Tenth, Fifteenth, and Sixteenth causes.

Notably, the Thirteenth cause of action seeks declaratory relief against an active statute, raising critical legal questions about the obligations of state court judges following federal injunctions, highlighting the need for judicial clarity regarding Mr. Abrera's ongoing constitutional violations.

The SAC effectively separates the roles of municipal and state defendants, clarifying their involvement in the alleged violations and ensuring compliance with Rule 8's requirements for clear notification of claims as mandated by *Twombly* and *Iqbal*. The complexity of the case justifies the detailed allegations, countering the defendants' portrayal of the SAC as vague or unspecific. Instead, the SAC meticulously articulates the legal infringements on Mr. Abrera's Second Amendment rights, demanding a thorough judicial examination and response.

**II.    THERE ARE NO ACTIONS PENDING IN STATE COURT.**

The cases of *People vs. Arnold Abrera*, (SAC ¶s 66-71, 73) and *City of Elk Grove vs. Euginie Abrera*, (SAC ¶s 63-65, 72-74) have no relationship with the relief sought in this matter.

**A.    *Penn General* Doctrine Is Plainly Inapplicable.**

Despite the Plaintiff filing a motion for the return of property under California Penal Code section 1583.5 in the case of *People vs. Arnold Abrera* (SAC ¶s 66-71, 73), the Defendants neglect to mention that the request under § 1538.5 was "denied". (SAC ¶ 73) Furthermore, there

are no *in rem* proceedings actively "pending" as the matter of *City of Elk Grove vs. Euginie Abrera* is unrelated to Plaintiff as he is not a named party to that action, nor could he be since he was not the one subject to a 5150 hold. (SAC ¶s 56, 61, 63-65) The prior exclusive jurisdiction doctrine does not apply. Mr. Abrera's lawsuit centers on a constitutional question: the infringement of Second Amendment rights resulting from the seizure and retention of these firearms. Only the federal court is poised to address whether the state's actions, as applied to Mr. Abrera, infringe upon constitutional guarantees. See *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189 (1935).

### B. *Younger* Abstention Is Also Plainly Inapplicable

The absence of an ongoing state court action is significant, as the *Younger* considerations of equity, comity, and federalism "have little vitality" in the absence of a pending state prosecution. Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (circumstances in which abstention is proper are "carefully defined" and "remain the exception, not the rule"). *Younger* abstention is also plainly inapplicable. See *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013).

### C. Misapplication of the *Rooker-Feldman* Doctrine

Federal courts unequivocally have jurisdiction to hear cases involving alleged infringements of federal constitutional rights, irrespective of parallel state court proceedings. The *Rooker-Feldman* doctrine does not preclude this Court's jurisdiction as Mr. Abrera's independent constitutional claims arose before and extend beyond the state court's decision.

### III. SOVEREIGN IMMUNITY DOES NOT APPLY TO DEFENDANT NEWSOM.

Governor Newsom's legislative actions infringing on the Second Amendment necessitate

judicial correction. These actions echo historical defiance against established constitutional rights, similar to resistance encountered in the era following *Brown v. Board of Education*, 349 U.S. 294 (1955). The relief being sought is a systemic injunction, just as in *Brown*, aimed at preventing further erosion of fundamental liberties.

The recent laws signed by Governor Newsom, without historical precedent, challenge constitutional safeguards and constitutes cognizable relief under the court's equitable powers. As courts have historically wielded equitable powers to address breaches of constitutional norms, the SAC requests a systemic injunction against the governor's unconstitutional forays into gun regulation.

This measure is in line with the Supreme Court's directives, affirming the Second Amendment's protected status, as highlighted in *Bruen*. Defendant Newsom's invocation of sovereign immunity does not exempt him from a systemic injunction, similar to that in facing Mr. Abrera's lawsuit, especially considering the allegations that his executive orders, in coordination with actions by Bonta, contribute to the enactment of clearly unconstitutional gun laws. This concerted effort underlines a systemic issue rather than isolated incidents, making the Governor's involvement central to the legal challenge. This action directly confronts the impact of such executive actions on Second Amendment rights, thereby rendering Governor Newsom an appropriate defendant under the *Ex parte Young* exception, which allows for federal lawsuits against state officials enforcing unconstitutional laws and refusing to comply with the Supreme Court's mandates.

**IV.     PLAINTIFF'S EQUAL PROTECTION CLAIM IS WELL PLEAD AND VIABLE**

Abrera's Tenth Claim for Relief, outlined in SAC ¶s 213-228, asserts significant discrepancies in the treatment of different groups under California law, constituting a clear challenge under the Equal Protection Clause of the Fourteenth Amendment.

Abrera contrasts the leniency shown towards illegal immigrants under "collateral consequences" policies (SAC ¶¶ 215-217) with the stringent treatment of citizens, particularly gun owners, under the same legal system.

Furthermore, Abrera addresses the disparate treatment of Second Amendment rights versus reproductive rights, highlighting a bias in policy enforcement and legislative focus that undermines enumerated constitutional rights (SAC ¶¶ 218-221). While abortion rights are protected, the rights to keep and bear arms, even when legally obtained, are marginalized (SAC ¶ 221), creating an unjust two-tiered system, particularly in the context of property return post-legal proceedings. (SAC ¶¶ 222-223)

This comparison is not trivial but reflects a systemic issue within California's enforcement and legislative practices. Mr. Abrera's claim does not require a narrowly defined "control group" but draws upon the state's broader legal treatment across fundamentally different rights domains to showcase discriminatory practices. (SAC ¶ 224)

Thus, Mr. Abrera's comprehensive allegations, as outlined in SAC ¶s 213-228, construct a well-founded narrative supporting his Equal Protection claim. The evident disparity in treatment between firearm owners and other demographics demands presents a prima facie case under strict scrutiny. (SAC ¶ 214) To dismiss his claim due to the lack of a "similarly situated" comparison group misses the fundamental objective of the Equal Protection Clause: to halt inconsistent or prejudiced state actions, particularly concerning the Second Amendment. This stands in stark contrast to the treatment of other constitutional rights, highlighting a distinct bias from the Defendants, notably Newsom and Bonta, against Second Amendment protections.

### V. Plaintiff's C.C.P. § 1021.11 claims are not moot because Plaintiff is still entitled to declaratory and injunctive relief.

Plaintiff Arnold Abrera opposes the Defendants' motion to dismiss his claims under California Civil Code section 1021.11 as moot. Following *Chafin v. Chafin*, 568 U.S. 165, 172

(2013), a case remains live if any relief can benefit the prevailing party. Here, the injunctions in *Miller v. Bonta* and *South Bay Rod & Gun Club, Inc. v. Bonta* do not resolve Mr. Abrera's unique injuries under section 1021.11. Mr. Abrera is still entitled to declaratory and injunctive relief. Besides, Municipal Defendants have the power to enforce the civil statute, Cal. Civ. Code § 1021.11. California's courts have held that they are not bound by lower federal court interpretations of the United States Constitution, *People v. Bradley,* 1 Cal. 3d 80, 460 P.2d 129, 132, 81 Cal. Rptr. 457 (Cal. 1969) (en banc) ("we are not bound by the decisions of the lower federal courts even on federal questions"); *People v. Perez,* 279 Cal. Rptr. 915, 919 (Cal. Ct. App. 1991) (citing *Bradley* to reject federal appeals court decisions regarding the Sixth Amendment).

Though this circuit voiced "serious doubts" this argument in *Yniguez v. State of Arizona,* 939 F.2d 727, 736 (9th Cir. 1991), *aff'd in part, rev'd in part sub nom. Yniguez v. Arizonans for Official English,* 42 F.3d 1217 (9th Cir. 1995), *aff'd upon reh'g,* 69 F.3d 920 (9th Cir. 1995) (en banc), *cert. granted,* __ U.S. __, 116 S. Ct. 1316, 134 L. Ed. 2d 469 (1996), the law is not well settled and a declaration from this Court is relief that can be granted. The state law continues to exist until the legislature that enacted it repeals it. Because the law is still on the books in California, attorneys are forced to self-censor until repealed. That is why the injunction granted in *Miller v. Bonta* has no effect on the parties in this case in a <u>different district court</u>. As long as the law remains on the books, attorneys will definitely consider whether to accept a case with the law still capable of being enforced in a state court proceeding. See *Close v. Sotheby's, Inc.*, 909 F.3d 1204, 1209-10 (9th Cir. 2018) (alteration adopted); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015); *United States v. Swenson*, 971 F.3d 977, 989 (9th Cir. 2020).

Here, the law remains on the books, and the Municipal Defendants are free to use the law because the Attorney General only has supervisory power over District Attorneys in the criminal prosecution of cases, and not civil matters, and because of that, a conflict remains due to self-

censorship and ethical guidelines for attorneys, and Mr. Abrera's fear of large attorney fee awards, chilling his First Amendment rights. (¶s 259, 261)

"Moreover, overlapping injunctions appear to be a common outcome of parallel litigation, rather than a reason for the Court to pass on exercising its duty to determine whether litigants are entitled to relief." *California v. HHS*, 390 F. Supp. 3d 1061, 1065-66 (N.D. Cal. 2019); see also *New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 677 (S.D.N.Y. 2019)4; *State v. Ross*, 358 F. Supp. 3d 965, 1050-51 (N.D. Cal. 2019); *Kravitz v. United States Dep't of Commerce*, 366 F. Supp. 3d 681, 755 (D. Md. 2019).

Plaintiff commenced this action on July 5, 2022. On July 22, 2022. Plaintiff filed the FAC, which added two claims for equitable relief regarding § 1021.11. On September 26, 2022, a parallel action was filed in *Miller v. Bonta*. Plaintiff is entitled to the relief he requested at the time he filed the action before *Miller* was filed. It common for there to be conflicted rulings in district courts. After all, it just happened in *Rupp v. Bonta*, No. 8:17-cv-00746-JLS-JDE (C.D. Cal. Mar. 15, 2024) wherein the Central District Court ignored a statewide injunction issued by the Southern District, stating: "Finally, the Court acknowledges that the district court in *Miller v. Bonta*, 2023 U.S. Dist. LEXIS 188421, 2023 WL 6929336 (S.D. Cal. Oct. 19, 2023) reached a contrary conclusion on whether assault weapons as defined in the AWCA are dangerous, but the Court finds *Miller*'s analysis on that issue to be unpersuasive."

## **CONCLUSION**

The motion should be denied, and if granted, Plaintiff requests leave of court to file an amended and supplemental pleading.

DATED: March 25, 2024

Respectfully submitted,
LAW OFFICES OF GARY W. GORSKI
*/s/ Gary W. Gorski*
GARY W. GORSKI
Attorney for Plaintiff Arnold Abrera