Gary W. Gorski CBN: 166526
Attorney at Law
*VETERANS LAW CENTER*
3017 Douglas Blvd., Suite 150
Roseville, CA  95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com
www.VeteransLawCenter.com

Daniel M. Karalash CBN: 176421
Attorney at Law
(916) 787-1234

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD ABRERA,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; ANNE MARIE SCHUBERT, in her official capacity as County of Sacramento District Attorney; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE;<br><br>　　　　　Defendants. | No. 2:22-cv-1162-JAM-DB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' COUNTY OF SACRAMENTO AND ANNE MARIE SCHUBERT'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**Date:** May 21, 2024<br>**Time:** 1:30 p.m.<br>**Courtroom:** 4<br>**Judge:** Honorable Dale A. Drozd<br>**Location:**<br>501 I Street<br>Sacramento, CA<br><br>**Complaint Filed:** 7/5/2022<br>**Trial Date:** None Set |

## INTRODUCTION AND RULE 8

　　This case starkly demonstrates a complex and overarching "tapestry" of California gun laws that Sacramento enforces through a multitude of policy decisions that effectively lead to gun confiscations and total disarmament. (SAC ¶s 24-27, 55-61, 77-82, 84, 85, 87-94, 104, 116, 121,

1

176-178, 205, 224, 225, 230-233)

In this case, Mr. Abrera's house was unlawfully searched for firearms (SAC ¶ 83) as though he was a criminal (SAC ¶ 1 ["clean criminal record"], 60, 62), and subsequently, his firearms, encompassing both handguns and long-guns, were seized under the auspices of Cal. Welfare & Institutions Code §§ 5150, 8102, and Penal Code § 30800 when it was he who dialed 911. Further accelerating the situation to disarm Mr. Abrera, without including him as a party or even serving him, the City of Elk Grove's City Attorney initiated a petition to destroy guns registered in his name alone. (SAC ¶s 63) The narrative continues as the Elk Grove Police Department, based on the seizure from Mr. Abrera's house, leads to Sacramento County DA's criminal charges against Mr. Abrera, leveraging sections of California's Penal Code §§ 30515(a)(1)-(8), 30800, 30915, and 30945, which ultimately include sanctions leading to future destruction of those two rifles – unless enjoined. (SAC ¶ 62, 66-773)

Despite the judicial dismissal resulting in a favorable termination requirement of a Fourth Amendment claim *Thompson v. Clark*, 596 U.S. 36 (2022), which should legally facilitate the return of Mr. Abrera's firearms as, for example, per 18 U.S.C.S. §§ 924(d)(2)(A) and (B), the state court inexplicably refused, citing pervasive bans under California law. The denied P.C. § 1538.5 motion for the return of the two AR-15s epitomizes this infringement. (SAC ¶ 73)

Independent of any court decision, Mr. Abrera also faces the cumbersome process of filing an Application for Return of Firearms (Cal. Pen. Code §§ 33850, 33855, 33860, 33880) and bears the costs to retrieve wrongly seized property, underscoring the glaring gap between California's strict regulations and vital constitutional rights. (SAC ¶ 203-204) Moreover, the necessity to secure a judicial order for the recovery of firearms accentuates the existing challenges. (SAC ¶ 204-206)

These barriers clearly violate Second Amendment rights and originate from the County's

excessive and unequal enforcement of state laws, demonstrated by the refusal to return Mr. Abrera's firearms, and DA's "two-tiered system for the return of property" and the application of the DA's "collateral consequences" policy. (SAC ¶ 215-217, 222-223, 232-236) This is notable given that the District Attorney, an elected official, should regard the return of firearms as a routine, ministerial task beyond the Attorney General's purview. Following the granting of Plaintiff's Motion to Dismiss due to the Assault Weapons Control Act infringing on Plaintiff's Second Amendment rights, Defendant Schubert's claim to absolute immunity is invalidated as the action of returning property upon case dismissal is ministerial, administrative, and civil nature, thus ending immunity protections. (SAC ¶s 17, 24-25, 116, 177, 242)

This situation is contrasted sharply by federal statutes, particularly under 18 U.S.C.S. § 924(d)(1), which mandates the swift return of seized or relinquished firearms and ammunition post-acquittal or dismissal of charges, a standard starkly unmet by the DA's practices. Every municipal defendants' policy challenged in this action has no equivalent in federal law, nor does it align with the historical context stretching from 1791, the ratification year of the Second Amendment, to around 1868, when the 14th Amendment was ratified – a period critical for interpreting the extension of the Bill of Rights to the states, including the Second Amendment. See *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

The SAC meets the heightened pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). It intricately outlines constitutional issues, involves numerous parties, and presents complex causes of actions, fulfilling the requirements of Federal Rule of Civil Procedure 8.

## ARGUMENTS

**A. Jurisdiction Under *Penn General***

Plaintiff's motion for the return of property under California Penal Code section 1583.5 in

the case of *People vs. Arnold Abrera* (SAC ¶s 66-71, 73) was "denied". (SAC ¶ 73) Furthermore, there are no *in rem* proceedings actively "pending" as the matter of *City of Elk Grove vs. Euginie Abrera* is unrelated to Plaintiff as he is not a named party to that action, nor could he be since he was not the one subject to a 5150 hold. (SAC ¶s 56, 61, 63-65) The prior exclusive jurisdiction doctrine does not apply. Mr. Abrera's lawsuit centers on a constitutional question: the infringement of Second Amendment rights resulting from the seizure and retention of these firearms. Only the federal court is poised to address whether the state's actions, as applied to Mr. Abrera, infringe upon constitutional guarantees. See *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189 (1935).

### B. Rooker/Feldman Abstention

*Rooker/Feldman* abstention is inapplicable here as Mr. Abrera does not appeal a state court decision nor does he seek a federal review of a state judgment. His federal claims arise independently from the state's actions; thus, this doctrine does not bar federal jurisdiction.

### C. Collateral Estoppel/Issue Preclusion

Collateral estoppel does not apply as Mr. Abrera's federal constitutional claims have not been adjudicated by a state court, and the relief sought pursuant to Section 1983 is independent of a state proceeding. Each claim presents distinct issues that have not been litigated or resolved previously, thus warranting full federal consideration.

### D. Ripeness and Compliance with Penal Codes

The Plaintiff's claims are ripe for adjudication. Compliance with California Penal Code Sections 12021.3.1 and 33850 does not preclude the present legal challenges as those sections are directly challenged in this action. The infringement upon Mr. Abrera's Second Amendment rights remains a live controversy, ripe for judicial review, regardless of these statutory processes.

### E. Article III Standing and Second Amendment Challenges

The Plaintiff demonstrates specific and individualized harm, meeting the criteria for Article III standing. His complaint extends beyond particular firearms to address broad policies that infringe upon his Second Amendment rights. This encompasses the universally acknowledged and legally safeguarded right to possess firearms, justifying his broad legal challenges as valid and well-founded. The continued retention of his firearms by the defendants constitutes a clear, definitive injury that necessitates injunctive relief from this court.

### F. Claims Against the District Attorney

Plaintiff's claims against the District Attorney, in her official capacity, address systemic policies impacting prosecutorial discretion related to firearm offenses, distinguishing them from general state laws. The DA's policies, allowing *Monell*'s application, are spelled out clearly in the SAC at ¶s 17, 24-25, 84, 85, 87-94, 104, 116, 176-178, 214-224, 230-236, 242-246.

### G. Eleventh Amendment Immunity

Plaintiff's demands for damages from "state" officials might be limited by Eleventh Amendment immunity. Nonetheless, the lawsuit primarily seeks declaratory and injunctive relief, which effectively navigates around the restrictions of the Eleventh Amendment, particularly in cases of continuous infringement on federal rights. The central issue at hand is the District Attorney's failure to return Plaintiff's legally owned firearms, a matter that involves municipal defendants' clear authority to restore the seized weapons, especially since the laws underpinning the seizures have been invalidated in various district court decisions and are civil in nature, and thus allowing for the recovery of damages. (SAC ¶s 170 A.-G.) Considering a hypothetical scenario where California enacted a statute criminalizing assistance in abortion procedures, would the District Attorney prosecute a medical professional under such law? Or would they seek to annul the professional's medical license? If such actions seem implausible for rights deemed fundamental, the same principle should apply unequivocally to Second Amendment rights.

**H. Ex Parte Young and Declaratory Relief**

The *Ex Parte Young* doctrine allows federal courts to assume jurisdiction over local officials who breach federal statutes, validating the call for declaratory relief against the District Attorney. This lawsuit aims to secure the return of Mr. Abrera's firearms and safeguard against future breaches of constitutional rights, aligning precisely with the *Ex Parte Young*.

The policies of municipal defendants that compromise Second Amendment freedoms necessitate legal intervention. These measures are reminiscent of the historical challenges to fundamental rights witnessed after *Brown v. Board of Education*, 349 U.S. 294 (1955). The sought-after remedy is a systemic injunction, akin to that in *Brown*, designed to halt the continued diminishment of essential freedoms.

By challenging these executive decisions impacting Second Amendment protections, this case appropriately targets municipal authorities under the *Ex Parte Young* exception. This permits federal legal actions against local officials implementing unconstitutional policies and disregarding directives from the Supreme Court.

**I. Mootness of Claims Against Code of Civil Procedure 1021.1**

The claims are not moot; section 1021.11 remains active law affecting Mr. Abrera, and others similarly situated.

> As a corollary, the Court has altered its traditional rules of standing to permit -- in the First Amendment area -- "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski* v. *Pfister*, 380 U.S., at 486. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

The existence of current litigation and its outcomes directly impact his legal standings and

rights, keeping the controversy live and justiciable. Plaintiff Arnold Abrera opposes the Defendants' motion to dismiss his claims under California Civil Code section 1021.11 as moot. Following *Chafin v. Chafin*, 568 U.S. 165, 172 (2013), a case remains live if any relief can benefit the prevailing party. Here, the injunctions in *Miller v. Bonta* and *South Bay Rod & Gun Club, Inc. v. Bonta* do not resolve Mr. Abrera's unique injuries under section 1021.11. Mr. Abrera is still entitled to declaratory and injunctive relief. Besides, Municipal Defendants have the power to enforce the civil statute, Cal. Civ. Code § 1021.11. California's courts have held that they are not bound by lower federal court interpretations of the United States Constitution, *People v. Bradley,* 1 Cal. 3d 80, 460 P.2d 129, 132, 81 Cal. Rptr. 457 (Cal. 1969) (en banc) ("we are not bound by the decisions of the lower federal courts even on federal questions"); *People v. Perez,* 279 Cal. Rptr. 915, 919 (Cal. Ct. App. 1991) (citing *Bradley* to reject federal appeals court decisions regarding the Sixth Amendment).

Though this circuit voiced "serious doubts" this argument in *Yniguez v. State of Arizona,* 939 F.2d 727, 736 (9th Cir. 1991), *aff'd in part, rev'd in part sub nom. Yniguez v. Arizonans for Official English,* 42 F.3d 1217 (9th Cir. 1995), *aff'd upon reh'g,* 69 F.3d 920 (9th Cir. 1995) (en banc), *cert. granted,* _ U.S. _, 116 S. Ct. 1316, 134 L. Ed. 2d 469 (1996), the law is not well settled and a declaration from this Court is relief that can be granted. The state law continues to exist until the legislature that enacted it repeals it. Because the law is still on the books in California, attorneys are forced to self-censor until repealed. That is why the injunction granted in *Miller v. Bonta* has no effect on the parties in this case in a <u>different district court</u>. As long as the law remains on the books, attorneys will definitely consider whether to accept a case with the law still capable of being enforced in a state court proceeding. See *Close v. Sotheby's, Inc.*, 909 F.3d 1204, 1209-10 (9th Cir. 2018) (alteration adopted); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015); *United States v. Swenson*, 971 F.3d 977, 989 (9th Cir. 2020).

Here, the law remains on the books, and the Municipal Defendants are free to use the law because the Attorney General only has supervisory power over District Attorneys in the criminal prosecution of cases, and not civil matters, and because of that, a conflict remains due to self-censorship and ethical guidelines for attorneys, and Mr. Abrera's fear of large attorney fee awards, chilling his First Amendment rights. (¶s 259, 261)

"Moreover, overlapping injunctions appear to be a common outcome of parallel litigation, rather than a reason for the Court to pass on exercising its duty to determine whether litigants are entitled to relief." *California v. HHS*, 390 F. Supp. 3d 1061, 1065-66 (N.D. Cal. 2019); see also *New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 677 (S.D.N.Y. 2019)4; *State v. Ross*, 358 F. Supp. 3d 965, 1050-51 (N.D. Cal. 2019); *Kravitz v. United States Dep't of Commerce*, 366 F. Supp. 3d 681, 755 (D. Md. 2019).

Plaintiff commenced this action on July 5, 2022. On July 22, 2022. Plaintiff filed the FAC, which added two claims for equitable relief regarding § 1021.11. On September 26, 2022, a parallel action was filed in *Miller v. Bonta*. Plaintiff is entitled to the relief he requested at the time he filed the action before *Miller* was filed. It is common for there to be conflicted rulings in district courts. After all, it just happened in *Rupp v. Bonta*, No. 8:17-cv-00746-JLS-JDE (C.D. Cal. Mar. 15, 2024) wherein the Central District Court ignored a statewide injunction issued by the Southern District, stating: "Finally, the Court acknowledges that the district court in *Miller v. Bonta*, 2023 U.S. Dist. LEXIS 188421, 2023 WL 6929336 (S.D. Cal. Oct. 19, 2023) reached a contrary conclusion on whether assault weapons as defined in the AWCA are dangerous, but the Court finds *Miller*'s analysis on that issue to be unpersuasive."

**J. Validity of Fourth, Fifth, and Fourteenth Amendment Claims**

Mr. Abrera's claims under the Fourth, Fifth, and Fourteenth Amendments articulate clear constitutional grievances tied to the seizure and return of firearms, establishing valid claims

against the Defendants. These constitutional issues have not been adequately addressed in any lower court, warranting further judicial relief.

**K. State Law Claim for Inverse Condemnation**

The legal foundation for inverse condemnation extends beyond the conventional scenario of tangible damage to real estate, encompassing personal property losses attributable to governmental actions. Cal. Const., art. I, § 19. This is confirmed by in *Sutfin v. State of California*, 261 Cal.App.2d 50, 53 (1968), and further corroborated by *Eli v. State of California*, 46 Cal. App. 3d 233, 235 (1975), which collectively affirm that direct injuries stemming from municipal policies are recoverable under inverse condemnation.

The seizure of Mr. Abrera's firearms, under policies framed by "public safety," emanates directly from such governmental measures. While Defendants may argue these actions do not constitute a traditional public project, they represent regulatory measures under the guise of gun control, impacting private property rights significantly. (See SAC ¶s 24-27, 55-61, 77-82, 116, 121, 205, 224, 225, 230-233)

Defendants' assertion of collateral estoppel, predicated on the denial of a 1538.5 motion, fails to recognize that the procedural outcomes of criminal proceedings do not preclude the rights to civil remedies, particularly those pertaining to property rights under inverse condemnation. A 1538.5 motion, being distinct in purpose and scope, does not address the substantive civil rights and property concerns pivotal to inverse condemnation. This distinction underscores Mr. Abrera's substantial property interests, especially under the Second Amendment, diverging from matters typically adjudicated in a 1538.5 motion context.

Furthermore, Defendants' arguments inadequately encapsulate the extent of governmental involvement delineated under the inverse condemnation doctrine. The enforcement actions leading to the confiscation and retention of Mr. Abrera's firearms signify a substantial

governmental engagement, reflecting public policy measures on gun control. This is tantamount to substantial participation in a public project, satisfying the legal criteria established in *Yamagiwa v. City of Half Moon Bay*, 523 F. Supp. 2d 1036, 1088 (2007). These measures have directly impacted Mr. Abrera's property rights directly, fulfilling causality components.

**L. Standing for Injunctive Relief**

The Supreme Court has permitted those whom a law threatens with constitutional harm to bring pre-enforcement challenges to the law where the harm is less serious and the threat of enforcement less certain than the harm (and the threat) here. See *Virginia v. American Booksellers Assn., Inc.*, 484 U. S. 383, 392-393 (1988); *Babbitt v. Farm Workers*, 442 U. S. 289, 298 (1979); *Susan B. Anthony List v. Driehaus*, 573 U. S. 149, 164 (2014) That one should not have to risk prosecution to challenge a statute is especially true in First Amendment cases, "for free expression - of transcendent value to all society, and not merely to those exercising their rights - might be the loser." *Dombrowski v. Pfister,* 380 U.S. 479, 486, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965). See also *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

Mr. Abrera, facing ongoing violations of his Second Amendment rights, has standing to seek injunctive relief against detrimental municipal actions. The continuous deprivation of his rights and retention of his six firearms without legal justification constitute significant harm, justifying his claim.

## **CONCLUSION**

If any part of the motion is granted, Plaintiff requests leave of court to file an amended and supplemental pleading.

DATED: March 25, 2024

Respectfully submitted,
LAW OFFICES OF GARY W. GORSKI
*/s/ Gary W. Gorski*
GARY W. GORSKI
Attorney for Plaintiff Arnold Abrera