**Gary W. Gorski CBN: 166526**
**Attorney at Law**
25025 Blue Ravine Road
#112-113
Folsom, CA 95630
Cell: (775) 720-1000
CivilRightsAttorney@BlackWolfLaw.com

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD ABRERA,<br><br>    plaintiff,<br><br>    v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; former District Attorney ANNE MARIE SCHUBERT, in her official capacity; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE;<br><br>    defendants. | No.  2:22-cv-1162-DAD-DB<br><br>**THIRD *AMENDED* COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, DECLARATORY AND INJUNCTIVE RELIEF, AND MONETARY DAMAGES (42 U.S.C. § 1983)**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.   Plaintiff has filed this suit seeking declaratory and injunctive relief against all named

defendants, including the return of six firearms, including two semi-automatic rifles (so-called

"assault weapon") legally purchased in California, and additionally damages against ANNE

MARIE SCHUBERT, in her official capacity; COUNTY OF SACRAMENTO; BOBBY

1

DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; and CITY OF ELK GROVE.

2. Six firearms were seized from Plaintiff's home on December 27, 2020. Despite a clean criminal record both before and after this incident, Plaintiff was charged for possessing two semi-automatic rifles with "bullet buttons", and no fixed magazine well, a requirement not in place at the time of purchase and which would require a gunsmith to modify.

3. The term "assault weapon" is a politically concocted, pejorative term designed to place more and more constitutionally protected arms inside the Legislature's mercurial definitions of banned arms—and outside the reach of normal, law-abiding Americans. The very term, and the Defendants' enforcement of it, violates the fundamental, individual Second Amendment right to keep and bear arms, and proves the disparate treatment of the Second Amendment as to all other constitutional rights.

## JURISDICTION AND VENUE

4. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims asserted herein under 28 U.S.C. § 1367 because such claims arise out of the same case or controversy as the federal claims.

2

6.  Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

7.  Venue lies in this Court pursuant to 28 U.S.C. § 1391 as this is the judicial district where defendants reside, and this is the judicial district where the cause of action arose.

## **PARTIES**

8.  Plaintiff Arnold Abrera is a 51-year-old married, naturalized United States citizen residing in Elk Grove, California. He is a law-abiding citizen with no criminal history.

9.  Plaintiff is fully eligible to exercise his rights under the Second Amendment and is not prohibited under any state or federal law from owning, receiving, possessing, or purchasing firearms.

10.  Defendant Gavin Newsom is the Governor of the State of California. He is the former Lieutenant Governor of California and former Mayor of San Francisco. He is sued in his official capacity.

11. Defendant Robert Bonta is the Attorney General of the State of California. He is an elected official and is sued herein in his official capacity.

12. As Attorney General, Defendant Bonta has a duty to inform the public, local prosecutors, and law enforcement regarding the limitations imposed by the United States Constitution— specifically the Second Amendment—on the State's authority to arrest individuals, confiscate, destroy, or remove firearms from law-abiding citizens. He has deliberately failed to fulfill this constitutional obligation.

13. Defendant Bonta is also responsible for promulgating rules, regulations, and policies regarding the classification of firearms, including those designated as "assault weapons" under California law.

14. Defendant CITY OF ELK GROVE ("the City") is a municipal corporation chartered by the

State of California. The City has endorsed and implemented Governor Newsom and Attorney General Bonta's firearm enforcement policies, targeting law-abiding gun owners through both civil and criminal proceedings.

15. Defendant BOBBY DAVIS is the Chief of Police for the Elk Grove Police Department and is responsible for the implementation and enforcement of firearm-related laws and policies within the City of Elk Grove.

16. Defendant JONATHAN P. HOBBS is the City Attorney for Elk Grove and serves as its chief legal counsel. He has endorsed and facilitated the City's adoption of Governor Newsom and Attorney General Bonta's gun confiscation and enforcement agenda against lawful gun owners, through both civil and criminal channels.

17. Defendant ANNE MARIE SCHUBERT, in her official capacity as the District Attorney of Sacramento County (now replaced by District Attorney THIEN HO), has also endorsed and adopted the gun enforcement regime targeting law-abiding citizens through both civil and criminal prosecution.

18. In her official capacity, Defendant Schubert is responsible for policies related to the administration of justice, including the procedures for the return of firearms lawfully seized by law enforcement.

19. Defendant Schubert, in her official capacity as District Attorney, acts independently of the County of Sacramento in all matters involving the ministerial and administrative return of seized property, including firearms, particularly when an individual is found factually or legally innocent, or when charges are dismissed by the court or in the interest of justice.

20. Defendant COUNTY OF SACRAMENTO is a political subdivision of the State of California. The County has endorsed and enforced the firearm policies advanced by Defendants Newsom and Bonta, including the confiscation and prosecution of law-abiding gun owners under civil

4

and criminal laws.

21. At all relevant times, Defendants GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; former District Attorney ANNE MARIE SCHUBERT, in her official capacity; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; and, CITY OF ELK GROVE were acting under color of state law and are considered "persons" within the meaning of 42 U.S.C. § 1983.

22. Defendants, acting under color of state law, bear direct responsibility for devising, executing, and enforcing gun control policies that have been imposed on the Plaintiff and similarly situated California citizens, in violation of rights secured by 42 U.S.C. § 1983.

23. Defendants persist in enforcing these same gun control laws and policies, and such ongoing actions continue to adversely affect the Plaintiff's current rights. Each Defendant has contributed to a system of enforcement that violates Plaintiff's Second Amendment rights.

24. As a result of their conduct undertaken under color of state law, Defendants have actively enforced and implemented unconstitutional gun control statutes, regulations, and policies against Plaintiff and similarly situated individuals, thereby violating rights guaranteed by the Second, Fourth, Fifth and Fourteenth Amendments. Moreover, there exists no historical analog supporting the laws, customs, or enforcement practices that led to the confiscation of Plaintiff's constitutionally protected firearms.

**FIRST CAUSE OF ACTION**
**FOURTH AMENDMENT – UNREASONABLE WARRANTLESS**
**SEIZURE OF FIREARMS**
(*Monell* - 42 U.S.C. § 1983 - Custom, Policy and Practice)
(Against defendants BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department, and CITY OF ELK GROVE)
Monetary Damages, Declaratory and Injunctive Relief

25. Plaintiff incorporates paragraphs 1 through 24 as if set forth fully herein.

26. Defendants CITY OF ELK GROVE and BOBBY DAVIS (in his official capacity as Chief of the Elk Grove Police Department), acted under color of state law at all relevant times.

27. The Fourth Amendment to the U.S. Constitution protects individuals from unreasonable searches and seizures and requires that warrants be issued only upon probable cause. A seizure conducted without a warrant is presumed unreasonable.

28. On December 27, 2020, pursuant to the custom, policy and practice of Defendants CITY OF ELK GROVE and BOBBY DAVIS, officers from the Elk Grove Police Department, including Officer Coleman, conducted an entry into Plaintiff's residence in response to a disconnected 911 call.

29. At the time the officers entered Plaintiff's home, no crime had been committed in their presence, and during the entirety of their presence inside the residence, there was no evidence suggesting that any crime had occurred or was occurring.

30. Plaintiff's wife was subsequently placed on a 72-hour psychiatric hold pursuant to California Welfare and Institutions Code § 5150, based solely on a non-violent, non-criminal statement made during a domestic argument concerning cell phone text messages.

31. Plaintiff informed the officers that his wife was emotionally distraught, and that there was genuine threat, and at no time did anyone in the home pose a danger to themselves or others. This was conveyed to the officers by Plaintiff.

32. At the time of Plaintiff's wife's detention, Plaintiff legally owned the following firearms which were seized from two safes, and one near the bed hidden under linen:

   a) One (1) Glock, Inc., Model 17, 9mm Cal., Serial No. BBDW312 **[Semi-Automatic Handgun]**

   b) One (1) Sig Sauer Model SP2022, .40 Cal., Serial No. 24B245366, Erroneously Listed As "Sauer, J.P., & Sons" **[Semi-Automatic Handgun]**

6

    c) One (1) Sig Sauer Model SP2022, 9mm Cal., Serial No. 24B245997, Erroneously Listed As "Sauer, J.P., & Sons" **[Semi-Automatic Handgun]**

    d) One (1) Sturm, Ruger & Co., Model LC380CA, .380 Cal., Serial No. 32653888 **[Semi-Automatic Handgun]**

    e) One (1) Del-Ton Inc., Model DTI 15, 5.56 Cal., Serial No. B6215 **[Semi-Automatic Rifle AR-15]**;

    f) One (1) Roggio Arsenal, Model RA L5, Multi-Caliber, Serial No. RA09011623 **[Semi-Automatic Rifle AR-15]**

33. The Glock 17 (BBDW312), Sig Sauer model SP2022 (24B245997), Del-Ton DTI 15 (B6215) and Roggio Arsenal, model RA l5, (RA09011623) were legally purchased in California in personally by Plaintiff.

34. The other two were purchased by Plaintiff's wife, but which Plaintiff typically controlled, used, and had access to in defense of his home and family.

35. Plaintiff lawfully owned four of the six firearms seized by the Elk Grove Police Department. The remaining two, while purchased by his wife, were held as community property, securely stored in locked safes, and regularly used by Plaintiff in the lawful defense of his home and family.

36. Despite the lack of any criminal conduct or mental health detention of Plaintiff, all six firearms were seized from Plaintiff's private residence (including firearms located in two locked safes) without a warrant, court order, or legal justification. Officers cited California Welfare and Institutions Code § 8102, even though Plaintiff's wife, the person detained, did not possess or have access to the firearms at the time of the incident, nor could she have access since she was being detained for 72-hours, enough time to obtain a warrant to seize said arms.

37. The seizure of arms was taken in accordance with the defendants CITY OF ELK GROVE and

7

Chief BOBBY DAVIS's custom, policy, and practice of broadly and indiscriminately enforcing § 5150 seizure of firearms, without individualized assessment or evidence of an immediate danger to self or others.

38. No other weapons were seized, such as knives and vehicles.

39. Defendants maintain a broad policy that directs officers to seize firearms from private residences without first obtaining a warrant. This policy applies even in instances where the firearms belong to individuals who have not engaged in any criminal conduct and who are not implicated in any wrongdoing. The operational guidelines instruct officers that the mere proximity of a family member who has been detained under California Welfare and Institutions Code § 5150 is sufficient justification to confiscate all firearms on the premises.

40. Under this policy, officers are required to take possession of the firearms without waiting for judicial oversight or pursuing the standard warrant process, even when there is adequate time to secure a warrant before the release of the detained family member. This practice reflects an entrenched approach that prioritizes administrative expediency and regulatory enforcement over constitutional warrant requirements for the seizure of firearms.

41. The policy effectively creates a de facto system where the seizure of firearms is not based on individualized assessments of threat or criminal activity but rather on a blanket operational procedure applied to any residence affected by a 5150 detention. By mandating the retention of seized firearms without a warrant, the policy undermines the Fourth Amendment guarantee that protects individuals from unreasonable searches and seizures, as it denies citizens the opportunity to challenge the seizure in a judicial setting before the firearms are taken.

42. Defendants CITY OF ELK GROVE and BOBBY DAVIS *de facto* gun control policies, which include, but are not limited to:

43. Defendants have instituted and maintained a series of interrelated policies, customs, and

practices that violate Plaintiff's rights under the Fourth and Second Amendments, particularly in the context of firearm seizures conducted under color of state law and pursuant to Welfare and Institutions Code § 8102. These policies authorize warrantless seizures of lawfully owned firearms—even when there is no exigency and ample time exists to obtain judicial authorization—based solely on the classification of the item as a firearm. This blanket treatment of firearms as inherently dangerous contraband imposes a harsher standard than is applied to other forms of personal property, without any individualized assessment of threat or legal justification.

44. Moreover, Defendants routinely retain seized firearms without a warrant, court order, or due process, even when the owner has not committed a crime, is not subject to any disqualifying condition, and has made formal requests for return. This practice is particularly egregious in situations where firearms are seized not from the individual subject to detention or investigation, but from uninvolved third parties—such as family members—based solely on their proximity to someone detained under § 5150. Such guilt-by-association tactics result in broad and indiscriminate confiscations unsupported by individualized suspicion, evidentiary nexus, or judicial oversight.

45. Defendants further exploit the statutory framework of § 8102 to justify systemic overreach. Rather than apply § 8102 narrowly and with due process protections, Defendants use it as a blanket authorization for sweeping firearm seizures, regardless of ownership or actual danger. They provide no procedural safeguards, fail to initiate prompt hearings, and do not verify whether the property belongs to the person subject to the psychiatric detention. This misuse of § 8102 renders the statute a tool for unconstitutional property deprivation rather than mental health intervention.

46. These unconstitutional practices are compounded by a complete lack of oversight, training,

and internal review. Defendants have failed to implement any policies to ensure that officers understand the constitutional limitations governing firearm seizures. There are no internal mechanisms to review the lawfulness of the seizure, to assess whether the owner is entitled to the return of property, or to guarantee timely compliance with statutory and constitutional protections. This deliberate indifference creates an environment where arbitrary and prolonged deprivations occur with impunity.

47. The failure to train officers on the lawful application of § 8102 and the constitutional protections afforded by the Second and Fourth Amendments is particularly damaging. Officers are not instructed on the scope of lawful possession, the limits of seizure authority, or the procedural obligations that follow a seizure. This widespread institutional ignorance fosters recurring violations, with citizens deprived of their lawfully owned firearms not because of criminal conduct, but because of systemic neglect and punitive administrative policy. These practices directly harmed Plaintiff and continue to pose a threat to similarly situated individuals, warranting judicial intervention and equitable relief.

48. The Fourth Amendment required the Defendants to return Plaintiff's firearms once its justification for seizing them expired, which was at the time Plaintiff's wife was placed in detention.

49. Plaintiff lawfully owned his firearms, and Defendants police had no reason to believe that Plaintiff would use them unlawfully.

50. Once the government's justification for seizing property wears off, the government must "cease the seizure or secure a new justification." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).

51. Defendants retained Plaintiff's lawfully owned firearms for years, without providing any meaningful opportunity to challenge the retention or secure return, in violation of the Fourth

Amendment.

52. As a direct and proximate result of these unconstitutional policies and practices, Plaintiff has suffered substantial injury, including the unlawful deprivation of his firearms, the loss of his right to keep and bear arms, the denial of due process and equal protection under the law, emotional distress, and the frustration of core constitutional guarantees.

53. As a direct and proximate result of the defendants' unconstitutional policies and practices, the Plaintiff has been damaged according to proof, including emotional distress and loss of constitutional rights. These harms include the wrongful deprivation of his firearms, the infringement of his right to keep and bear arms, and the violation of his procedural due process rights.

54. Plaintiff's lawfully owned firearms were seized without a warrant and have remained in CITY OF ELK GROVE's police department custody long after the original justification for the seizure expired. The justification for withholding the property ended once Plaintiff's wife was removed from the home. However, the police continued to retain the firearms for years without obtaining a warrant or providing the opportunity for their return. This extended, warrantless retention infringes upon Plaintiff's Fourth Amendment right to be secure against unreasonable seizures and his right to due process, thereby warranting injunctive and monetary relief

55. As a result of their conduct, which was undertaken under color of state law, Defendants have actively implemented California's unconstitutional gun control statutes, rules, and policies against the Plaintiff and others, thereby violating the constitutional protections afforded by the Second and Fourteenth Amendments.

56. There is no historical analog justifying such a seizure.

57. Plaintiff has suffered injury-in-fact.

58. Plaintiff is entitled to declaratory and equitable relief, and return of the six firearms seized, including prospective injunctive relief.

59. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff suffered the ongoing loss of use and possession of his firearms, the infringement of his right to be free from unreasonable seizures, emotional distress, and monetary damages.

60. Plaintiff seeks declaratory and injunctive relief, return of his lawfully owned property, compensatory damages, and attorneys' fees under 42 U.S.C. § 1988.

**SECOND CAUSE OF ACTION**
**FOURTH AMENDMENT – UNREASONABLE EXTENDED**
**RETENTION FIREARMS**
(*Monell* - 42 U.S.C. § 1983 - Custom, Policy and Practice)
(Against defendants BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as City Attorney for the City of Elk Grove; and CITY OF ELK GROVE)
Monetary Damages, Declaratory, and Injunctive Relief

61. Plaintiff incorporates paragraphs 1 through 60 as if set forth fully herein.

62. Fourth Amendment protection extends not only to the initial act of seizure, but also to the manner and duration of retention of property once seized. *United States v. Jacobsen*, 466 U.S. 109, 124 (1984); *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).)

63. On January 25, 2021, without Plaintiff's knowledge or legal notice, Defendant JONATHAN P. HOBBS, in his official capacity as City Attorney for the City of Elk Grove, filed a petition for judicial determination regarding the disposition of the firearms, captioned *City of Elk Grove v. Euginie Abrera*, Case No. 34-2021-20000745, in the Sacramento County Superior Court.

64. At the time this petition was filed, Defendants were aware that Plaintiff was the legal and exclusive owner of at least four of the firearms and held property rights to the remaining two; despite this, Plaintiff was neither named as a party in the petition nor served with legal notice.

65. Plaintiff was not afforded any opportunity to challenge the wrongful deprivation of his property (firearms), thereby violating his Fourth Amendment right to process and unreasonable retention of arms over the years.

66. Plaintiff formally requested the return of his firearms from Defendants BOBBY DAVIS, JONATHAN P. HOBBS, and the CITY OF ELK GROVE and its Police Department. His request was denied without hearing, without individualized determination, and without legal justification under federal or state law.

67. The seizure was not temporary or incidental, but indefinite and absolute in character. Plaintiff has been entirely deprived of the use, possession, and enjoyment of his firearms for years, despite never being convicted of any crime, nor subjected to any lawful adjudication of disqualification from firearm ownership.

68. The indefinite seizure and refusal to return Plaintiff's firearms has had a severe economic and practical impact, entirely depriving him of the use, possession, and defensive utility of his lawfully acquired property.

69. Plaintiff's firearms were purchased lawfully, maintained securely, and used solely for legal purposes, including home defense. At no time was Plaintiff provided an opportunity to challenge the deprivation in any judicial forum. Plaintiff had a reasonable and investment-backed expectation of continuing ownership and use of this personal property without arbitrary state interference.

70. Defendants did not initiate forfeiture proceedings, did not obtain a warrant, and have not offered compensation for the confiscated firearms.

71. The seizure and extended retention are not reasonably related to any valid public use or safety objective, especially where the justification for the seizure expired when Plaintiff's wife was removed from the home and posed no ongoing risk.

13

72. There is no historical analog justifying such an extended seizure.

73. Plaintiff has been damaged according to proof, including emotional distress and constitutional deprivation.

74. Plaintiff requests injunctive relief, including requiring return of the firearms, and attorneys' fees under 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**
**FIFTH AMENDMENT – UNCONSTITUTIONAL TAKING**
(*Monell* - 42 U.S.C. § 1983 - Custom, Policy and Practice)
(Against defendants BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE only)
Monetary Damages, Declaratory and Injunctive Relief

75. Plaintiff incorporates paragraphs 1 through 74 as if set forth fully herein.

76. Plaintiff was denied any opportunity to contest the deprivation of his property, violating his right to due process under the Fifth and Fourteenth Amendments.

77. Plaintiff subsequently requested return of his firearms from Defendants HOBBS, DAVIS, and the CITY OF ELK GROVE, but was denied without hearing, judicial determination, or legal justification.

78. The seizure was neither temporary nor incidental. It has resulted in Plaintiff being entirely deprived of the use, possession, and enjoyment of his lawfully acquired firearms for years, despite never being accused or convicted of any crime, and without any adjudication disqualifying him from firearm ownership.

79. The conduct of Defendants constitutes a *per se* physical taking under the Takings Clause of the Fifth Amendment, as the firearms were physically appropriated by the government without consent or compensation, and have been retained indefinitely.

80. Alternatively, the seizure and prolonged retention constitute a regulatory taking.

81. Defendants' actions: Imposed a severe economic and practical impact on Plaintiff; Interfered

with Plaintiff's reasonable, investment-backed expectations of continued ownership and use; and Reflected arbitrary and indefinite governmental action executed without a warrant, individualized suspicion, or procedural safeguards.

82. The firearms were lawfully acquired, securely stored, and used solely for legal purposes, including home defense. Plaintiff received no notice or opportunity to challenge the deprivation, nor have Defendants initiated any condemnation proceeding or offered compensation.

83. Defendants acted under an official policy, custom, and practice of seizing and indefinitely retaining firearms based solely on proximity to an individual detained under California Welfare and Institutions Code § 5150. This policy treats firearms as presumptively forfeitable, denying them the procedural protections afforded to other forms of personal property.

84. This entrenched policy: Requires court orders for firearm return, even absent wrongdoing; Fails to provide timely notice or hearing; Obstructs recovery efforts through disinformation and inaction; Reflects deliberate disregard for constitutional safeguards and Fifth Amendments just compensation.

85. There is no historical analog justifying such a taking.

86. Plaintiff has a cognizable property interest in his firearms, the seizure and retention of which was caused by Defendants without any due process. Defendants are propagating customs, policies, and practices that violate Plaintiff's right to due process under the Fifth and Fourteenth Amendment, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983.

87. As a direct and proximate result of these policies, Plaintiff has suffered significant harm, including the deprivation of property without due process, the loss of constitutionally protected arms, emotional distress, and denial of just compensation in violation of the Takings Clause.

88. Plaintiff seeks injunctive relief, return of his property, just compensation, and attorneys' fees under 42 U.S.C. § 1988.

**FOURTH CAUSE OF ACTION**
**SECOND AMENDMENT – VIOLATION OF RIGHT TO KEEP AND BEAR ARMS**
(*Monell* - 42 U.S.C. § 1983 - Custom, Policy and Practice – <u>As-Applied</u> -- Cal. Welf. & Inst. Code § 8102)
(Against defendants BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE only)
**Monetary Damages, Declaratory and Injunctive Relief**

89. Plaintiff incorporates paragraphs 1 through 88 as if set forth fully herein.

90. Defendants have established a longstanding policy, custom, and practice that systematically treats firearms differently from other property by denying firearm owners the full benefit of due process and Second Amendment protections, and there is no historical analog.

91. Under Defendants' policy framework: Firearms are seized without a warrant and once seized, the firearms are not returned absent a court order, regardless of the lawful ownership of the property or the absence of any criminal conduct by the owner.

92. Cal. Welf. & Inst. Code § 8102, as applied pursuant to longstanding custom, policy and practice, violated Plaintiff's Second Amendment rights.

93. The policy, custom, and practice circumvents established procedural safeguards; it prevents notice or a hearing and hinders the owner's ability to contest the seizure.

94. Efforts to recover the firearms are obstructed through the dissemination of conflicting instructions, disinformation, and a refusal to engage meaningfully with firearm owners.

95. This policy, custom, and practice imposes an extra burden on firearm owners by forcing them into adversarial, time-consuming litigation—a burden not imposed when recovering other types of property—resulting in an indefinite, arbitrary deprivation of their property rights and a systemic disregard for constitutional protections.

16

96. Collectively, these measures establish a *de facto* gun control policy that interferes with Plaintiff's Second Amendment rights, and undermines the Second Amendment by treating lawfully owned firearms as less protected than other forms of personal property.

97. Despite never being convicted of a crime or adjudicated as disqualified from firearm ownership, Plaintiff's firearms were seized and have been indefinitely withheld under a policy that effectively treats lawful ownership as presumptively unlawful.

98. Defendants maintain a *de facto* policy and practice that targets gun owners for uniquely burdensome treatment designed to suppress and deter the lawful exercise of Second Amendment rights.

99. Defendants have adopted and enforced a series of customs, policies, and practices that systematically violate the constitutional rights of firearm owners, particularly under the Second and Fourth Amendments, as well as principles of due process. Chief among these is the policy of refusing to return lawfully owned firearms unless the owner obtains a new court order—regardless of whether the original seizure was lawful, whether any crime was committed, or whether the owner has been cleared of any wrongdoing. This categorical refusal functions as an administrative forfeiture scheme without judicial oversight or individualized justification.

100. Closely related is the practice of retaining firearms indefinitely without initiating timely forfeiture proceedings or providing any notice or hearing to affected individuals. By failing to follow the procedures mandated under California Welfare and Institutions Code § 8102 and denying post-deprivation remedies, Defendants create an environment where owners are deprived of their property through inaction and evasion. This is further compounded by the City's deliberate failure to issue written policies or clear return procedures, which results in arbitrary enforcement and opaque standards that shift depending on the personnel involved.

101.    Defendants also obstruct firearm recovery by providing misleading information, refusing to engage with counsel, and conditioning the return of firearms on discretionary administrative determinations or invasive mental health evaluations not authorized by statute. Firearm owners are routinely forced into litigation simply to recover their lawfully owned property, while no such burdens are imposed on owners of other types of personal property.

102.    Additional practices include treating all seized firearms as presumptive contraband, regardless of context, and using § 5150 detentions to justify seizures from uninvolved third parties without any individualized assessment. These seizures are often carried out without warrants or court orders and are framed as "public safety" actions despite the absence of exigent circumstances. Once firearms are seized, Defendants delay their return for extended periods, sometimes indefinitely, and may impose excessive storage fees or require "voluntary" surrender under threat of future complications.

103.    Enforcement of these policies is discriminatory and punitive in nature, targeting lawful gun owners for conduct that was historically compliant or lawful at the time. Retroactive application of new definitions, such as those related to "assault weapons" or magazine capacity, are used to justify prosecution and forfeiture. Defendants also fail to distinguish between lawful ownership and unlawful possession during enforcement, resulting in the mass confiscation of third-party property without verification or process.

104.    These policies collectively function not as measures to protect public safety, but as mechanisms to suppress and chill the exercise of Second Amendment rights through intimidation, delay, excessive costs, and regulatory uncertainty. They impose burdens unique to firearm owners, while offering no meaningful process to contest or recover seized property, even after charges are dismissed or disqualifying conditions expire. Judicial intervention is necessary to put an end to these unconstitutional practices and to restore the procedural and

substantive rights guaranteed to law-abiding citizens.

105. This policy and practice do not serve any legitimate public safety interest as applied to Plaintiff. Instead, they function as a tool of regulatory suppression, designed to discourage law-abiding citizens from exercising their right to keep and bear arms through fear, intimidation, and procedural obstruction.

106. The result is a system where Second Amendment rights are nullified not through formal prohibition, but through law enforcement action and coercion and deliberate administrative delay in return of improperly seized arms. Plaintiff's continued deprivation of access to his firearms, without due process, legal justification, or meaningful opportunity for return, constitutes an ongoing violation of the Second Amendment.

107. As a direct and proximate result of Defendants' unconstitutional policies and actions, Plaintiff has suffered the loss of access to arms for self-defense, the denial of a fundamental constitutional liberty, emotional distress, and legal expenses. Plaintiff seeks declaratory and injunctive relief, return of his firearms, and attorneys' fees and costs under 42 U.S.C. § 1988.

108. This seizure of Plaintiff's firearm was not inadvertent but instead executed in accordance with the *de facto* gun confiscation policies,

109. As a direct and proximate result of these unconstitutional policies and practices, Plaintiff has suffered substantial injury, including the unlawful deprivation of his firearms, the loss of his right to keep and bear arms, the denial of due process and equal protection under the law, emotional distress, and the frustration of core constitutional guarantees.

110. The actions of Defendants Davis and Hobbs, exercised in their official capacities, were the primary driving force behind the deprivation of the Plaintiff's constitutional rights.

111. As a direct and proximate consequence of these unlawful practices, the Plaintiff was deprived of his Second Amendment right to keep and bear arms.

112.    The seizure and ongoing retention of the Plaintiff's lawfully owned firearms were carried out without any judicial oversight, without notice, and without an opportunity to be heard.

113.    As a result, the Plaintiff has suffered an injury-in-fact, including the loss of personal property, the deprivation of constitutionally protected rights, emotional distress, and the loss of his ability to effectively defend his home and family with firearms that have been wrongfully seized and withheld. Accordingly, the Plaintiff is entitled to compensatory damages pursuant to 42 U.S.C. § 1983.

114.    Declaratory and injunctive relief enjoining the continued enforcement of the unconstitutional policies and practices, and return of arms.

115.    Attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**FIFTH CAUSE OF ACTION**
**SECOND AMENDMENT – STATE BAN AND SEIZURES OF AR15s, AND SIMILAR SEMI-AUTOMATIC RIFLES LEGAL UNDER FEDERAL LAW**
**(As-Written)**
California's Penal Code §§ 30515, 30800, 30915, and 30945—along with related penalties under §§ 30600 and 30605
(Against GAVIN NEWSOM and ROB BONTA for Declaratory and Injunctive Relief;
Against ANNE MARIE SCHUBERT and COUNTY OF SACRAMENTO for Declaratory, Injunctive, and Monetary Relief)

116.    Plaintiff incorporates paragraphs 1-24, 32-35, and 63 as if set forth fully herein.

117.    Plaintiff lawfully owns two semiautomatic centerfire rifles with detachable magazine wells which were seized.

118.    The rifles are classified as "assault weapons" under California Penal Code § 30515(a)(1) solely because they lack a "fixed magazine" as now defined. At the time of purchase, the rifles were lawfully equipped with "bullet buttons," in full compliance with the law then in effect.

119.    Unbeknownst to Plaintiff, on <u>March 18, 2021</u>, a Felony Complaint was filed by defendant SCHUBERT, in her official capacity as County of Sacramento District Attorney, charging

20

Plaintiff for possession of two semi-automatic rifles captioned *People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857, charging Plaintiff as follows: "*On or about December 27, 2020, at and in the County of Sacramento, State of California, the defendant. ARNOLD ABRERA, did commit a felony, namely: a violation of Section 30605 (a) of the Penal Code of the State of California, in that said defendant did willfully and unlawfully possess an assault weapon as defined in Penal Code Sections 30510 and 30515, to wit, two semiautomatic assault rifles.*"

120.    At the time of filing the criminal complaint, the statute was unconstitutional as-written.

121.    These charges were based upon a change in the law that criminalized possession of Plaintiff's two rifles he legally purchased and were not illegal to own at the time of purchase, nor have they ever been banned under federal law.

122.    The first time Plaintiff even became aware that a felony complaint was filed for possession of two AR-15s (legally purchased) was when he was detained in August and September of 2021 by immigration while taking an international flight in San Francisco.

123.    The first time Plaintiff even became aware that a felony complaint was filed for possession of two AR-15s (legally purchased) was when he was detained in August and September of 2021 by immigration while taking an international flight in San Francisco.

124.    He was provided with an arraignment date of March 9, 2022, by San Francisco Police Department.

125.    Plaintiff has been deprived of his Second Amendment right to keep and bear arms, specifically the right to possess and use rifles with detachable magazines. California's statutes—and Defendants' enforcement policies, practices, and customs—have created a credible threat of arrest, prosecution, and loss of property, deterring Plaintiff from exercising these rights.

126.    But for these laws and the risk of enforcement, Plaintiff would acquire additional semiautomatic centerfire rifles from federally licensed dealers, including rifles with one or more features listed in Penal Code § 30515(a)(1), and with an overall length under 30 inches but compliant with the federal minimum of 26 inches and a 16-inch barrel. (See 26 U.S.C. §§ 5845(a)(3)-(4), (c)).

127.    Plaintiff would also lawfully acquire and possess AR-15-style rifles with detachable magazines and common features like pistol grips for self-defense and other lawful purposes, but is deterred solely by California's ban.

128.    In the absence of California's broad prohibition and enforcement against firearms legal under federal law—including semiautomatic rifles and pistols with detachable magazines exceeding 10 rounds—Plaintiff would lawfully possess and use such arms in furtherance of his constitutionally protected rights.

129.    Plaintiff challenges California's statutory framework that bans and criminalizes possession of certain semiautomatic rifles—legal under federal law—based solely on cosmetic or technical features. Penal Code §§ 30515, 30800, 30915, and 30945, together with penalties in §§ 30600 and 30605, impose felony or misdemeanor liability for the mere possession of common-use firearms. These statutes lack historical justification, are overbroad, and violate the Second and Fourteenth Amendments.

130.    Defendants NEWSOM and BONTA are sued in their official capacities for declaratory and injunctive relief. Defendants SCHUBERT and COUNTY OF SACRAMENTO are sued for both declaratory and injunctive relief and damages for past enforcement.

131.    The Second Amendment protects possession and use of weapons which are part of the ordinary military equipment or that the arms use could contribute to the common defense.

*United States v. Miller*, 307 U.S. 174, 177 [1]; see also *District of Columbia v. Heller*, 554 U.S. 570 (2008).

132.    Under California Penal Code § 30515(a), a rifle is labeled an "assault weapon" if it is one of three principal types.  The first type is a semiautomatic centerfire rifle that does not have a fixed magazine but has one of the following prohibiting features: a pistol grip that protrudes conspicuously beneath the action of the rifle, a thumbhole stock, a folding or telescoping stock, a grenade or flare launcher, a flash suppressor, or a forward pistol grip.  The second type is a semiautomatic centerfire rifle that has a fixed15 magazine able to hold more than 10 rounds.  The third type is a semiautomatic centerfire rifle that has an overall length of less than 30 inches.  Cal. Penal Code § 30515(a)(1)-(3).

133.    California Penal Code §§ 30515(a)(1) through (8) (defining an "assault weapon" by prohibited features), 30800 (deeming those "assault weapons" a public nuisance), 30915 (regulating those "assault weapons" obtained by bequest or inheritance), 30925 (restricting importation of those "assault weapons" by new residents), 30945 (restricting use of those registered "assault weapons"), and the penalty provisions §§ 30600, 30605 and 30800 as applied to "assault weapons" defined in Code §§ 30515(a)(1) through (8).

134.    One who merely possesses an "assault weapon" in California is guilty of a misdemeanor under California Penal Code § 30605(a) or a felony pursuant to California Penal Code § 1170(h)(1) ("a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years").  The criminal sanction for possession of any gun deemed an

---

[1] "In the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense. *Aymette* v. *State*, 2 Humphreys (Tenn.) 154, 158." *United States v. Miller*, 307 U.S. 174, 177.

"assault weapon" is a wobbler and can be sentenced as either a felony or a misdemeanor. A prosecutor may in lieu of criminal prosecution for mere possession of an assault weapon, institute a civil action for an injunction, fine, and destruction of the firearm as a nuisance. Cal. Pen. Code §30800.

135.    Defendants' conduct—undertaken under color of state law—has resulted in the active enforcement of California's unconstitutional gun control statutes, rules, and policies against Plaintiff and others, in violation of their constitutional rights, as protected by the Second Amendment.

136.    Plaintiff legally owned two AR-15-style rifles that became retroactively classified as "assault weapons" under state law. Plaintiff lawfully owned and possessed two AR-15 rifles that are legal under federal law but classified as so-called "assault weapons" under California Penal Code §§ 30515(a)(1) through (8) (defining an "assault weapon" by prohibited features), 30800 (deeming those "assault weapons" a public nuisance), 30945 (restricting use of those registered "assault weapons"), and the penalty provisions §§ 30600, 30605 and 30800 as applied to "assault weapons" defined in Code §§ 30515(a)(1) through (8). These statutes, and the associated criminal penalties under §§ 30600 and 30605, impose unconstitutional restrictions on commonly used firearms protected by the Second Amendment, as affirmed in *Heller*, *McDonald*, *Caetano*, and *Bruen*.

137.    Plaintiff was now forced to defend a criminal action while a civil action was also pending, which would mean to defend the civil action, he would have to waive his right under the Fifth Amendment, to remain silent.

138.    Plaintiff had to hire an attorney to defend against the felony complaint, because if convicted, he would then be prohibited from exercising his Second Amendment rights; and also fears that this will continue in perpetuity each time he comes into contact with law

enforcement or when he attempts to purchase a firearm.

139.    On <u>April 13, 2021</u>, in *People v. Arnold Abrera*, Sacramento Superior Court Case No. 21FE004857, Plaintiff's attorney filed a motion to dismiss the felony complaint as unconstitutional under the Second Amendment. The Court granted the motion and dismissed the charges.

140.    Despite the dismissal, the government refused to return Plaintiff's firearms. Plaintiff subsequently filed a motion for return of property under California Penal Code § 1538.5, which was also denied. Through counsel, Plaintiff sought recovery of his firearms but was met with conflicting information and told that the firearms would not be returned absent a court order.

141.    Plaintiff challenges the seizure, prosecution, and continued deprivation of his lawfully acquired semi-automatic rifles—AR-15-style firearms legal under federal law—under California Penal Code §§ Section 30605, 30510 and 30515, 30800, 30915, and 30945. These statutes, along with their penalty provisions, impose arbitrary and retroactive restrictions on common-use arms, in violation of the Second and Fourteenth Amendments. These laws are unconstitutional as written.

142.    After dismissal of the felony charges filed without proper notice or individualized justification, Plaintiff's firearms were not returned. His motion for return of property was denied, and subsequent attempts through counsel were met with disinformation and refusal, absent a new court order. Defendants' policies required firearm owners to initiate formal litigation to reclaim property—even in the absence of criminal conduct, evidentiary value, or any showing of danger.

143.    Plaintiff legally owned two AR-15-style rifles that became retroactively classified as "assault weapons" under the above statutes. The case was dismissed as unconstitutional under

the Second Amendment, but the firearms were never returned. Plaintiff's attempts to recover them through legal process were denied, despite the lack of any criminal conviction, evidentiary basis, or showing of danger.

144.    The challenged statutes define prohibited firearms that are in common use and have no historical analog and are *per se* unconstitutional.

145.    As a direct result of these laws, Plaintiff suffered arrest, prosecution, seizure of property, legal expenses, emotional distress, and the ongoing threat of disqualification from firearm ownership. The Defendants' refusal to return Plaintiff's property, despite court dismissal, exemplifies the systemic impact of these statutes as written.

146.    These statutes, as written, violate Plaintiff's right to keep and bear functional arms for lawful purposes, including self-defense and the defense of family and country, notwithstanding his lawful acquisition of AR-15 rifles protected under the Second Amendment.

147.    Defendants' enforcement of California's firearm laws—carried out under color of state law—has resulted in the continued deprivation of Plaintiff's fundamental constitutional rights. Judicial intervention is required to prevent ongoing harm and to ensure that the state's regulatory framework aligns with the protections guaranteed by the Second and Fourteenth Amendments. Plaintiff seeks a declaratory judgment that California Penal Code §§ 30515, 30800, 30915, 30945, 30600, and 30605 are unconstitutional as written, as they violate the rights protected by the Second and Fourteenth Amendments.

148.    Plaintiff further requests a permanent injunction prohibiting enforcement of these statutes against law-abiding individuals in possession of firearms that are lawful under federal law.

149.    Plaintiff seeks the return of all firearms seized in connection with the enforcement of the challenged statutes.

150.    Plaintiff also seeks the destruction of all records created or maintained by the government in connection with the seizure and prosecution, including any databases or investigative files referencing the confiscated firearms.

151.    Plaintiff requests compensatory damages against the COUNTY OF SACRAMENTO and former District Attorney ANNE MARIE SCHUBERT for the constitutional violations resulting from their enforcement of the challenged laws and policies.

152.    Finally, Plaintiff seeks attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### SIXTH CAUSE OF ACTION
### SECOND AMENDMENT – STATE BAN AND SEIZURES OF AR15s, AND SIMILAR SEMI-AUTOMATIC RIFLES LEGAL UNDER FEDERAL LAW
(*Monell* - 42 U.S.C. § 1983 - Custom, Policy and Practice – <u>As-Applied</u> -- Cal. Penal Code §§ 30515, 30800, 30915, and 30945—along with related penalties under §§ 30600 and 30605)
(Against GAVIN NEWSOM and ROB BONTA for Declaratory and Injunctive Relief; Against ANNE MARIE SCHUBERT and COUNTY OF SACRAMENTO for Declaratory, Injunctive, and Monetary Relief)

153.    Plaintiff incorporates paragraphs 1-24, 32-35, 63, and 116-152 as if set forth fully herein.

154.    Plaintiff brings this as-applied constitutional challenge to California Penal Code §§ 30515, 30800, 30915, 30945, 30600, and 30605. These statutes were used to prosecute and permanently deprive Plaintiff of two AR-15-style rifles, lawfully acquired and legal under federal law. As enforced against Plaintiff, the statutes violate the Second and Fourteenth Amendments.

155.    Defendants have created and implemented a regulatory scheme that treats lawful firearm ownership as presumptively criminal. The enforcement of these statutes—based on cosmetic features such as pistol grips and detachable magazines—retroactively criminalizes firearms in common use for lawful purposes. This framework lacks any historical analog and functions to chill and punish the exercise of core Second Amendment rights.

156.    Plaintiff lawfully owned two AR-15 rifles, which were retroactively reclassified as illegal

"assault weapons" by the State of California. Despite the absence of any criminal conduct, Plaintiff was charged with felony possession under these laws. The case was later dismissed on constitutional grounds, but his firearms were never returned. Instead, Plaintiff encountered systemic obstruction through disinformation, procedural delay, and refusal to comply with court-ordered dismissal.

157.    These injuries are not isolated. Rather, they reflect a broader pattern of enforcement designed to deter firearm ownership through vague statutory definitions, shifting compliance standards, and burdensome litigation requirements. Plaintiff's efforts to recover his firearms were met with a categorical refusal and the invocation of Cal. Penal Code § 30800, under which the District Attorney declared the rifles to be a public nuisance subject to destruction. This policy excluded Second Amendment considerations from any "interest of justice" determination, treating constitutionally protected arms as contraband without due process or individualized assessment.

158.    Following the dismissal of the felony charges, the District Attorney ceased acting under the authority of the Attorney General and instead functioned as a final policymaker for the County of Sacramento. The refusal to return Plaintiff's firearms, and the policy decision to destroy them, were not prosecutorial acts, but rather administrative and civil in nature—falling outside the scope of absolute immunity.

159.    As a result, Plaintiff suffered arrest, prosecution, legal expenses, the loss of lawfully owned firearms, and ongoing fear of future disqualification from firearm ownership. These harms are directly attributable to the County's unconstitutional enforcement practices and the District Attorney's policy decisions.

160.    Plaintiff therefore seeks a declaratory judgment that California Penal Code §§ 30515, 30800, 30915, 30945, 30600, and 30605 are unconstitutional as applied to him, as their

28

enforcement resulted in the unlawful seizure and deprivation of firearms that are otherwise lawful under federal law.

161.    Plaintiff also seeks a permanent injunction prohibiting the continued enforcement of these statutes against him and similarly situated law-abiding individuals who lawfully possess such firearms.

162.    Plaintiff further requests the return of his seized firearms. In the event they have been destroyed, he seeks just compensation for their loss.

163.    Additionally, Plaintiff seeks the destruction of all records and government documentation related to the seizure, prosecution, or classification of his firearms, including any databases or investigative files.

164.    Plaintiff seeks compensatory damages against Defendants COUNTY OF SACRAMENTO and ANNE MARIE SCHUBERT, in her official capacity, for the constitutional injuries caused by their enforcement practices and policies.

165.    Finally, Plaintiff seeks an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**SEVENTH CAUSE OF ACTION**
**INVERSE CONDEMNATION**
**Cal Const, Art. I § 19**
(Against defendants former District Attorney ANNE MARIE SCHUBERT, in her official capacity; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE)
**Both Equitable and <u>Monetary</u> Relief**

166.    Plaintiff incorporates paragraphs 1-24, 32-35, 63, 66, 117, 139-140, 142, and 143.

167.    Plaintiff lawfully possessed six firearms that were seized by Elk Grove Police from two secured safes and from under bedding near the bed. These included: (1) a Glock, Inc., Model 17, 9mm (Serial No. BBDW312); (2) a Sig Sauer SP2022, .40 caliber (Serial No. 24B245366), erroneously listed as "Sauer, J.P., & Sons"; (3) a Sig Sauer SP2022, 9mm

(Serial No. 24B245997), also misidentified as "Sauer, J.P., & Sons"; (4) a Sturm, Ruger & Co. LC380CA, .380 caliber (Serial No. 32653888); (5) a Del-Ton Inc., Model DTI 15, 5.56 caliber AR-15 (Serial No. B6215); and (6) a Roggio Arsenal, Model RA L5, multi-caliber AR-15 (Serial No. RA09011623). Plaintiff lawfully purchased the Glock, one of the Sig Sauer handguns (24B245997), the AR-15 Del-Ton rifle, and the AR-15 Roggio Arsenal rifle in California. The remaining two firearms were legally purchased by Plaintiff's wife, but were stored securely by Plaintiff and which Plaintiff had community property interest in.

168.   A party has a right either to enjoin the taking or damaging of his property or to sue for damage, and his failure to avail himself of one has no effect upon his pursuit of the other. *Rockridge Place Co. v. Oakland* (Cal. App. Apr. 27, 1923), 61 Cal. App. 791, 216 P. 64.; Cal Const, Art. I § 19.

169.   Plaintiff filed timely tort claims with Defendants, and this action is timely filed.

170.   The above-described seizure and/or damage and/or deprivation and/or destruction to plaintiff's property was proximately and substantially caused by defendant's actions.

171.   Plaintiff's guns and accessories have not been returned, and therefore Plaintiff is entitled to just compensation.

172.   As a result of the above-described damage to plaintiff's property, plaintiff has been damaged in the amount according to proof.

173.   Plaintiff has received no compensation for the damage or seizure to his property.

174.   Plaintiff hereby demands return of his property.

175.   Plaintiff has incurred and will incur attorney's and expert witness fees because of this proceeding, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of Code of Civil Procedure Section 1036.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ARNOLD ABRERA respectfully prays for judgment against the

Defendants as follows:

A. **Monetary Damages**: Against Defendants ANNE MARIE SCHUBERT (in her official

   capacity), COUNTY OF SACRAMENTO, BOBBY DAVIS (in his official capacity as

   Chief of the Elk Grove Police Department), JONATHAN P. HOBBS (in his official

   capacity as City Attorney for the City of Elk Grove), and CITY OF ELK GROVE, for all

   compensatory damages suffered, including but not limited to, property loss, emotional

   distress, constitutional injuries, and loss of Second Amendment rights.

B. **Declaratory Relief**: That the following California Penal Code sections are

   unconstitutional on their face and/or as applied to Plaintiff:

   a. §§ 30515(a)(1) through (8), 30800, 30915, 30925, 30945, 30950, 30600, 30605 —

      as enforced by Defendants NEWSOM, BONTA, SCHUBERT, and COUNTY OF

      SACRAMENTO;

   b. § 8102 — as enforced by Defendants CITY OF ELK GROVE, DAVIS, and

      HOBBS.

   c. Prohibition on Defendants enforcing any law that interferes with access to firearms

      that are legal under federal law.

C. **Permanent Injunction**: Enjoining Defendants NEWSOM, BONTA, SCHUBERT,

   COUNTY OF SACRAMENTO, CITY OF ELK GROVE, DAVIS, and HOBBS from

   enforcing:

   a. Any provisions of Penal Code §§ 30515(a)(1) through (8), 30800, 30915, 30925,

      30945, 30950, 30600, 30605, and related regulations as they pertain to AR-15-

      style rifles lawfully owned under federal law;

b.  Any provisions of Welfare & Institutions Code § 8102 and any local enforcement policies that authorize warrantless seizures and indefinite retention of firearms from persons not subject to § 5150 detention;

c.  Any policy or practice requiring firearm owners to initiate litigation or obtain a court order to reclaim lawfully owned firearms when no charges have been filed or where charges have been dismissed.

D.  **Equitable Relief**:

a.  Immediate return of all Plaintiff's seized firearms or, if destroyed, just compensation pursuant to 42 U.S.C. § 1983 and Cal. Const. Art. I § 19;

b.  Destruction of all records, databases, and investigative files created or maintained in connection with the seizure and prosecution of Plaintiff's firearms, consistent with *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010).

E.  **Further Declaratory Relief**:

a.  Declaring unconstitutional the administrative requirement that firearm owners submit to fees or other extrajudicial conditions not authorized by statute as a prerequisite to firearm return;

b.  Declaring unlawful the disparate treatment of firearm owners compared to owners of other personal property with respect to post-seizure recovery processes.

F.  **Prospective Relief**: Enjoining all Defendants from further application of the challenged laws and policies in the absence of individualized judicial findings of dangerousness or disqualification.

G. **Attorneys' Fees and Costs**: Awarding Plaintiff reasonable attorneys' fees and litigation costs under 42 U.S.C. § 1988, Cal. Civ. Proc. Code § 1036, and any other applicable provision of law.

H. **Other Relief**: Granting such other and further relief as the Court deems just and proper under the circumstances.

I. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988.

J. Plaintiff reserves the right to add and/or modify requests for declaratory and injunctive relief.

K. Any other relief as the Court deems just and appropriate.

Respectfully submitted,

Dated Wednesday, April 16, 2025.        /s/ *Gary W. Gorski*
                                        Gary W. Gorski
                                        Attorney for Plaintiff

33