1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ARNOLD ABRERA,                    No.  2:22-cv-01162-DAD-SCR

12              Plaintiff,              ORDER GRANTING THE MOTION TO
                                        DISMISS FILED BY DEFENDANTS
13        v.                            COUNTY OF SACRAMENTO AND
                                        SCHUBERT, GRANTING THE MOTION TO
14    GAVIN NEWSOM, et al.,             DISMISS FILED BY DEFENDANTS ROB
                                        BONTA AND GAVIN NEWSOM, AND
15              Defendants.             GRANTING IN PART THE MOTION TO
                                        DISMISS FILED BY DEFENDANTS CITY
16                                      OF ELK GROVE, BOBBY DAVIS, AND
                                        JONATHAN P. HOBBS
17
                                        (Doc. Nos. 93, 94)
18

19        This matter is before the court on the motion to dismiss plaintiff's third amended

20    complaint ("TAC") filed on behalf of defendants County of Sacramento and Anne Marie

21    Schubert ("the Sacramento defendants"), which was subsequently joined IN by defendants City of

22    Elk Grove, Bobby Davis, and Jonathan P. Hobbs ("the Elk Grove defendants"), and the motion to

23    dismiss plaintiff's TAC filed on behalf of defendants Rob Bonta and Gavin Newsom ("the State

24    defendants").  (Doc. Nos. 93, 94, 102.)  On May 21, 2025, the pending motions were taken under

25    submission on the papers pursuant to Local Rule 230(g).  (Doc. No. 103.)  For the reasons

26    explained below, the court will grant the Sacramento defendants' AND State defendants' motions

27    to dismiss, while granting the Elk Grove defendants' motion to dismiss in part.

28    /////

                                        1

1

**BACKGROUND**

2          On July 5, 2022, plaintiff Arnold Abrera filed this civil action against defendants Gavin

3    Newsom, Rob Bonta, Anne Marie Schuber, County of Sacramento, Bobby Davis, Jonathan P.

4    Hobbs, and City of Elk Grove.  (Doc. No. 1.)  On August 23, 2022, the parties filed a stipulation

5    to provide plaintiff with leave to file a first amended complaint, which the court subsequently

6    granted.  (Doc. Nos. 14, 15.)  On September 2, 2022, plaintiff filed his first amended complaint.

7    (Doc. No. 16.)  On October 16, 2023, the Sacramento defendants filed a motion to dismiss the

8    first amended complaint, which was joined in by the Elk Grove defendants on November 14,

9    2023.  (Doc. Nos. 51, 53.)  On November 14, 2023, the State defendants filed a motion to dismiss

10   the first amended complaint.  (Doc. No. 54.)  On January 25, 2024, the previously-assigned

11   district judge granted those motions to dismiss and also granted plaintiff further leave to amend.

12   (Doc. No. 74.)  On February 13, 2024, plaintiff filed his second amended complaint.  (Doc. No.

13   77.)  On March 11, 2024, the Sacramento defendants filed a motion to dismiss the second

14   amended complaint which was joined by the Elk Grove defendants, and the State defendants

15   separately filed a motion to dismiss the second amended complaint.  (Doc. Nos. 81, 82, 83.)  On

16   March 26, 2025, the undersigned granted those motions to dismiss on the grounds that plaintiff's

17   second amended complaint did not comply with Federal Rule of Civil Procedure 8, while again

18   granting plaintiff further leave to amend.  (Doc. No. 91.)  On April 16, 2025, plaintiff filed the

19   operative third amended complaint ("TAC").  (Doc. No. 92.)  In his TAC, plaintiff alleges as

20   follows.

21          On December 27, 2020, plaintiff owned, was in possession of, or controlled six firearms,

22   four of which were purchased by him and two of which were purchased by his wife.  (Doc. No.

23   92 at ¶¶ 32–34.)  That night, Elk Grove Police Department officers entered plaintiff's residence in

24   response to a 911 call.  (*Id.* at ¶ 28.)  The officers placed plaintiff's wife on a 72-hour psychiatric

25   hold pursuant to California Welfare and Institutions Code § 5150.  (*Id.* at ¶ 30.)  Plaintiff's six

26   firearms were in the residence that night, stored either in locked safes or "near the bed hidden

27   under linen."  (*Id.* at ¶¶ 32, 35.)  Pursuant to California Welfare and Institutions Code § 8102, the

28   officers seized those firearms without a warrant because plaintiff's wife had been detained

1  pursuant to § 5150.  (*Id.* at ¶ 36.)  The Elk Grove defendants "maintain a broad policy that directs

2  officers to seize firearms from private residences without first obtaining a warrant."  (*Id.* at ¶ 39.)

3  On January 25, 2021, the Elk Grove defendants filed a petition in the Sacramento County

4  Superior Court—*City of Elk Grove v. Euginie Abrera*, Case No. 34-2021-20000745, seeking to

5  have the six firearms forfeited.[1]  (*Id.* at ¶ 63.)  Plaintiff was not provided with notice regarding

6  this petition.  (*Id.*)

7          On March 18, 2021, then Sacramento County District Attorney defendant Schubert, filed a

8  felony complaint against plaintiff charging him with violating California Penal Code §§ 30510

9  and 30515 by possessing two semiautomatic assault rifles.  (*Id.* at ¶ 119.)  That felony complaint

10  was subsequently dismissed.  (*Id.* at ¶ 139.)

11          Based on these allegations, plaintiff brings the following seven claims:  (1) a 42 U.S.C. §

12  1983 *Monell*[2] claim for unreasonable warrantless seizure of firearms based on an unconstitutional

13  custom, practice, or policy against the Elk Grove defendants; (2) a 42 U.S.C. § 1983 claim for

14  unreasonable extended retention of firearms based on an unconstitutional custom, practice, or

15  policy against the Elk Grove defendants; (3) an illegal taking without just compensation in

16  violation of the takings clause in the Fifth Amendment against the Elk Grove defendants; (4) a 42

17  U.S.C. § 1983 *Monell* claim for violation of the Second Amendment based on an unconstitutional

18  custom, practice, or policy against the Elk Grove defendants; (5) an as-written constitutional

19  challenge to California Penal Code §§ 30515, 30600, 30605, 30800, 30915, and 30945 as

20  violating the Second Amendment against the State defendants and the Sacramento defendants; (6)

21

22  [1]  Plaintiff unclearly alleges that "[d]efendants did not initiate forfeiture proceedings" as to the
firearms at issue in this case.  (Doc. No. 92 at ¶ 70.)  California Welfare and Institutions Code §

23  8102(c) authorizes "the confiscating law enforcement agency . . . to initiate a petition in the
superior court for a hearing to determine whether the return of a firearm or other deadly weapon

24  would be likely to result in endangering the person or others" and § 8102(h) authorizes
destruction of those firearms should the court make a finding of that likelihood.  Cal. Welf. &

25  Inst. Code § 8102.  In light of plaintiff's prior allegation that defendants did file a petition
regarding the disposition of the firearms in question, the court construes this allegation as

26  asserting that the forfeiture or destruction proceedings were in some way improper.  (Doc. No. 92

27  at ¶ 63.)

28  [2]  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

a 42 U.S.C. § 1983 *Monell* claim for violation of the Second Amendment based on the state ban and seizures of assault rifles pursuant to the above California Penal Code sections against the State defendants and the Sacramento defendants; and (7) inverse condemnation in violation of California Constitution, Article I § 19 against the Sacramento defendants and the Elk Grove defendants.  (*Id.* at ¶¶ 25–175.)  In connection with these claims, plaintiff requests the issuance of a permanent injunction preventing the defendants from enforcing California Penal Code §§ 30515, 30600, 30605, 30800, 30915, 30925, 30945, and 30950 or California Welfare & Institutions Code § 8102.  (*Id.* at 31–32.)  Additionally, plaintiff requests "equitable relief" in the form of the immediate return of his seized firearms.  (*Id.* at 32.)  Plaintiff also requests monetary damages in connection to his *Monell* claims brought against the Sacramento defendants and the Elk Grove defendants.  (*Id.* at 31.)

On April 29, 2025, the Sacramento defendants filed their motion to dismiss the TAC. (Doc. No. 93.)  On April 30, 2025, the Elk Grove defendants joined the Sacramento defendants' motion and the State defendants filed a separate motion to dismiss.  (Doc. Nos. 94, 95.)  On May 10, 2025, plaintiff filed his oppositions to those motions and the Elk Grove defendants' joinder. (Doc. Nos. 96, 97, 98.)  On May 20, 2025, the Sacramento defendants filed their reply and the Elk Grove defendants filed a joinder in that reply.  (Doc. Nos. 101, 102.)  On May 27, 2025, the State defendants filed their reply.  (Doc. No. 104.)  On May 21, 2025, the court took this motion under submission pursuant to Local Rule 230(g).  (Doc. No. 103.)

## LEGAL STANDARD

### A.    Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions."  *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021).  Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  Subject matter jurisdiction is required; it cannot be forfeited or waived.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at

4

1  1156.  Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the
2  court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

3          Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may
4  "challenge a federal court's jurisdiction over the subject matter of the complaint."  *Nat'l Photo*
5  *Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24,
6  2014).  "A motion to dismiss on *Younger* abstention grounds is also properly brought under Rule
7  12(b)(1)."  *Applied Underwriters, Inc. v. Lara*, 530 F. Supp. 914, 923 (E.D. Cal. 2021) (citing
8  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998) and *Washington v. L.A.*
9  *County. Sheriff's Dep't*, 833 F.3d 1048, 1058 (9th Cir. 2016)).

10  **B.      Standing**

11          "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the
12  challenger asserts that the allegations contained in a complaint are insufficient on their face to
13  invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)
14  (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  A party making a facial attack does
15  not submit supporting evidence with the motion because jurisdiction is challenged based solely on
16  the pleadings.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva*
17  *Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do
18  not consider evidence outside the pleadings when deciding a facial attack.") (citation omitted).
19  Important for purposes of resolving the pending motion, it has been recognized that "[t]he district
20  court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  [a]ccepting the
21  plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the
22  court determines whether the allegations are sufficient as a legal matter to invoke the court's
23  jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  However, in doing so the
24  court need not assume the truth of legal conclusions cast in the form of factual allegations.
25  *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

26          "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by
27  themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at
28  1039.  In ruling on a party's factual attack, district courts "may review evidence beyond the

1  complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

2  The movant may "rely on affidavits or any other evidence properly before the court," and the

3  party opposing the motion must then "present affidavits or any other evidence necessary to satisfy

4  its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v.*

5  *City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elec.*

6  *Corp.,* 594 F.2d 730, 733 (9th Cir. 1979)).

7       Here, in moving to dismiss the Sacramento defendants contend that the allegations of

8  plaintiff's TAC are insufficient for purposes of Article III standing with respect to the request for

9  injunctive relief.  (Doc. No. 93-1 at 14–16.)  The pending motion therefore poses a facial attack

10  under Rule 12(b)(1).

11  **C.     Younger Abstention**

12       "*Younger* abstention is a jurisprudential doctrine rooted in overlapping principles of

13  equity, comity, and federalism." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quoting

14  *San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087,

15  1091 (9th Cir. 2008)).  In *Younger*, the Supreme Court held that "absent extraordinary

16  circumstances, a federal court may not interfere with a pending state criminal prosecution."

17  *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011) (citing

18  *Younger v. Harris*, 401 U.S. 37, 54 (1971)).  The Supreme Court has since extended *Younger*

19  abstention to additional categories of civil proceedings identified in its decision in *New Orleans*

20  *Pub. Serv., Inc. v. Council of New Orleans* ("*NOPSI*"), 491 U.S. 350, 367–68 (1989).  These

21  additional categories have been recognized as including "'state civil proceedings that are akin to

22  criminal prosecutions, and . . . state civil proceedings that implicate a State's interest in enforcing

23  the orders and judgments of its courts.'"  *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th

24  Cir. 2019) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th

25  Cir. 2014)); *see also Potrero Hills Landfill, Inc.*, 657 F.3d at 882 ("[T]he Supreme Court has

26  extended *Younger* abstention to the civil context on numerous occasions.").  These three

27  categories of cases to which *Younger* abstention has been extended are known as the *NOPSI*

28  categories.  *Herrera*, 918 F.3d at 1044.

1    "To warrant *Younger* abstention, a state civil action must fall into one of the *NOPSI*

2    categories, and must also satisfy a three-part inquiry:  the state proceeding must be (1) 'ongoing,'

3    (2) 'implicate important state interests,' and (3) provide 'an adequate opportunity . . . to raise

4    constitutional challenges.'"  *Id.* (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar

5    Ass'n*, 457 U.S. 423, 432 (1982)).  In addition, the Ninth Circuit has "articulated an implied

6    fourth requirement that (4) the federal court action would 'enjoin the proceeding, or have the

7    practical effect of doing so.'"  *Potrero Hills Landfill, Inc.*, 657 F.3d at 882 (quoting

8    *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148–49 (9th Cir. 2007)).  "For *Younger* to

9    apply, all four requirements must be 'strictly satisfied.'"  *Barra v. City of Kerman*, No. 1:08-cv-

10   01909-OWW-GSA, 2009 WL 1706451, at *5 (E.D. Cal. June 9, 2009) (citing

11   *AmerisourceBergen Corp.*, 495 F.3d at 1149).

**D.    Rule 12(b)(6)**

13        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

14   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

15   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

16   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

17   F.2d 696, 699 (9th Cir. 1988).  A plaintiff is required to allege "enough facts to state a claim to

18   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

19   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

20   the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

21   Iqbal*, 556 U.S. 662, 678 (2009).

22        In determining whether a complaint states a claim on which relief may be granted, the

23   court accepts as true the allegations in the complaint and construes the allegations in the light

24   most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

25   the court need not assume the truth of legal conclusions cast in the form of factual allegations.

26   *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

27   require detailed factual allegations, "it demands more than an unadorned, the-defendant-

28   unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

1   mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

2   *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements

3   of a cause of action, supported by mere conclusory statements, do not suffice."). It is

4   inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

5   defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

6   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

7          In ruling on a motion to dismiss brought under Rule 12(b)(6), the court is permitted to

8   consider material that is properly submitted as part of the complaint, documents that are not

9   physically attached to the complaint if their authenticity is not contested and the plaintiffs'

10  complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*,

11  250 F.3d 668, 688–89 (9th Cir. 2001).

12                              **DISCUSSION**

13  **A.      Sacramento Defendants' Motion to Dismiss**

14          1.      <u>Second Amendment Challenge to Seizure of Assault Rifles (Claims 5 and 6)</u>

15          The Sacramento defendants move to dismiss plaintiff's fifth and sixth causes of action on

16  the following bases: (1) plaintiff has failed to establish standing to seek his requested injunctive

17  relief; (2) plaintiff has failed to show his request for the return of his firearms is ripe; (3)

18  defendant Schubert is only sued in her official capacity and monetary relief is accordingly barred

19  by the Eleventh Amendment; (4) declaratory relief against defendant Schubert is not available;

20  and (5) plaintiff fails to allege a policy, custom, or practice sufficient to state a cognizable claim

21  for relief against defendant County of Sacramento pursuant to *Monell*. (Doc. No. 93-1 at 10–17.)

22  The court will address these arguments as to each defendant.

23                      a.      *Injunctive Relief*

24          Defendants argue that plaintiff has failed to allege Article III standing to pursue injunctive

25  relief because he has not alleged facts showing a real and immediate threat of future injury with

26  respect to future prosecution. (Doc. No. 93-1 at 14–16.) Defendants argue further that plaintiff's

27  /////

28  /////

1   request for return of his firearms is not ripe.[3]  (*Id.* at 21–22.)  Plaintiff counters that he has alleged

2   standing to pursue injunctive relief in the form of return of his confiscated firearms because those

3   firearms remain confiscated.  (Doc. No. 97 at 10.)  Plaintiff also contends he has alleged a

4   potential future injury in the "renewed threat of prosecution for reclaiming his property."  (*Id.*)

5          "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

6   threshold requirement imposed by Article III of the Constitution by alleging an actual case or

7   controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also In re E. Coast

8   Foods, Inc.,* 66 F.4th 1214, 1218 (9th Cir. 2023) (Because "standing is an 'essential and

9   unchanging' requirement . . . a party must establish an Article III case or controversy before we

10  exert subject matter jurisdiction.") (citations omitted); *City of Oakland v. Lynch*, 798 F.3d 1159,

11  1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III standing is not a 'case or

12  controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the

13  suit.") (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)).

14         "[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is

15  sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or

16  hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is

17  'likely' to be 'redressed by a favorable decision.'"  *Bates v. United Parcel Serv., Inc.*, 511 F.3d

18  974, 985 (9th Cir. 2007) (*en banc*) (citing *Lujan*, 504 U.S. at 560–61).  "Standing must be shown

19  with respect to each form of relief sought, whether it be injunctive relief, damages or civil

20  penalties."  *Id.*  "[T]o establish standing to pursue injunctive relief . . . [plaintiff] must

21  demonstrate a real and immediate threat of repeated injury in the future."  *Chapman v. Pier 1

22  Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation omitted).

23  /////

24

---

25  [3]  Defendants also argue in their pending motion that *Rooker-Feldman* abstention applies to this
    action, but withdrew this argument in their reply based on plaintiff's representation that he is not

26  challenging the state court judgment denying his motion for return of property.  (Doc. No. 101 at
    6); *see also Rodriguez v. City of San Jose*, 930 F.3d 1123, 1130 n.5 (9th Cir. 2019) (holding that

27  the *Rooker-Feldman* doctrine did not bar claims seeking return of firearms because the plaintiff
    was not seeking relief from the state court judgment authorizing the city to retain her guns but

28  rather the defendant city's exercise of discretion to retain those firearms).

9

Plaintiff appears to request first an injunction against certain California criminal statutes which prohibit possession of assault rifles. (Doc. No. 92 at ¶ 148.) Plaintiff argues that his prior criminal prosecution "places him under renewed threat of prosecution for reclaiming his property." (Doc. No. 97 at 10.) To satisfy the injury-in-fact requirement on a theory of future prosecution, plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder[.]" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). A federal court may "enjoin future unconstitutional state criminal prosecutions pursuant to § 1983 if prosecution has been threatened but there is no state criminal prosecution pending." *Sommer v. United States*, 713 F. Supp. 2d 1191, 1202 (S.D. Cal. 2010) (citing *Wooley v. Maynard*, 430 U.S. 705 (1977)). However, here, plaintiff concedes that his motion for return of property before the state court was denied and does not otherwise allege that he plans to acquire firearms that are prohibited by California's Assault Weapons Control Act ("AWCA"). (Doc. No. 92 at ¶ 142.) Accordingly, plaintiff has not alleged any facts showing that there is a real and immediate threat of his repeated criminal prosecution. *Haynie v. Harris*, No. 10-cv-01255-SI, 2014 WL 899189, at *5 (N.D. Cal. Mar. 4, 2014) (holding that the plaintiffs had not demonstrated an imminent threat of irreparable harm where they no longer possessed the firearms prohibited by the AWCA and did not allege any plans to acquire such firearms);[4] *see also Sommer*, 713 F. Supp. 2d at 1202 (finding that the plaintiff had failed to allege a sufficient threat of prosecution where the plaintiff failed to allege that the defendants threatened to re-prosecute her or any facts that suggested imminent prosecution); *Vanness v. Aguilar*, 699 F. Supp. 3d 1076, 1083 (D. Nev. 2023) (finding that the plaintiffs lacked standing due to their failure to allege with concrete detail

---

[4] Even were plaintiff able to allege facts demonstrating that he intended to acquire proscribed firearms because he requests return of those firearms in this action, injunctive relief prohibiting his future prosecution would not be available because that matter is not ripe for adjudication. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Any such claim by plaintiff here would rely first upon this court granting him the return of his firearms and accordingly would not be ripe. *Haynie*, 2014 WL 899189, at *8 ("Because Haynie's fear of future arrests depends upon the contingency of his reacquiring a new firearm that might in turn be subject to AWCA enforcement, his claims are not ripe for relief.").

1    how they planned to violate a criminal statute prior to enforcement).  Accordingly, plaintiff has

2    not alleged facts sufficient to demonstrate his standing to seek injunctive relief against future

3    prosecution.  The court will therefore grant defendant's motion to dismiss plaintiff's request for

4    such relief.

5         In their reply, defendants clarify that, to the extent that plaintiff's request for the return of

6    his firearms would constitute injunctive relief, their standing arguments do not challenge that

7    request.  (Doc. No. 101 at 4.)   Defendants instead argue that the matter of return of plaintiff's

8    firearms is not ripe for review at this time.  (Doc. No. 93-1 at 21–22.)  "There are two ripeness

9    considerations:  constitutional and prudential.  Constitutional ripeness overlaps with the injury-in-

10   fact element of Article III standing, and therefore the inquiry is largely the same:  whether the

11   issues presented are definite and concrete, not hypothetical or abstract."  *Stavrianoudakis v. U.S.*

12   *Fish & Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024) (internal quotation marks omitted).

13   Based on defendants' clarification that they do not challenge plaintiff's standing to seek the return

14   of his firearms, below the court analyzes only whether plaintiff's claim should be adjudicated

15   under the doctrine of prudential ripeness.

16       "The question of prudential ripeness 'is best seen in a twofold aspect, requiring us to

17   evaluate both the fitness of the issues for judicial decision and the hardship to the parties of

18   withholding court consideration.'"  *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112,

19   1124 (9th Cir. 2009) (quoting *Abbot Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on*

20   *other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).  "A claim is fit for decision if the

21   issues raised are primarily legal, do not require further factual development, and the challenged

22   action is final."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (internal

23   quotation marks omitted).

24       Here, defendants argue that the court should not exercise jurisdiction over plaintiff's claim

25   because he has not alleged that he applied to the California Department of Justice pursuant to

26   California Penal Code § 33850 for a determination of whether the release of his firearms is

27   appropriate.  (Doc. No. 93-1 at 22.)  Plaintiff argues that the Sacramento County District Attorney

28   "continues to retain the property without judicial process or lawful justification[]" and that "the

1    DA's policy makes such relief unavailable[.]"  (Doc. No. 97 at 14.)  But plaintiff makes no

2    allegation that he has filed any "application for a determination by the Department of Justice as to

3    whether the applicant is eligible to possess a firearm" as provided by California Penal Code §

4    33850 for firearms "in the custody or control of a . . . law enforcement agency[.]"  Accordingly,

5    "Plaintiff has not attempted to comply with California Penal Code §§ 33850–33895, [and

6    therefore] his argument on constitutionality is not yet ripe; that is, because the statute has not been

7    applied to him, there is no prohibition or other obstacle preventing Plaintiff from obtaining his

8    firearms but himself."  *Brandstetter v. City of Riverside*, No. 5:20-cv-01866-FLA-SHK, 2023 WL

9    5493817, at *5 (C.D. Cal. Aug. 21, 2023); *see also Brandstetter v. City of Riverside*, No. 23-

10   55739, 2025 WL 66045, at *2 (9th Cir. Jan. 10, 2025) (finding that the plaintiff had not shown

11   that the city's retention of firearms was a seizure because "the City does not need to hand over the

12   firearms, no questions asked, when someone claiming to be [the plaintiff] shows up and asks for

13   them.").[5]  The court therefore concludes that plaintiff's request for the return of his firearms is not

14   yet ripe for review.  Accordingly, the court will grant defendants' motion to dismiss plaintiff's

15   request for injunctive relief in this regard.[6]

16                      **b.**    *Monetary Damages as to Defendant Schubert*

17          Defendant Schubert argues that plaintiff's claim for monetary damages is barred by the

18   Eleventh Amendment.  (Doc. No. 93-1 at 11–12.)  Plaintiff argues that this claim relates to the

19   post-litigation retention of his firearms by defendant Schubert.  (Doc. No. 97 at 6.)  He contends

20   that the act of retention is an act of exercising administrative discretion and accordingly defendant

21   Schubert was acting not as a state officer but as a county officer not protected by the Eleventh

22

23   [5]  Citation to unpublished Ninth Circuit opinions throughout this opinion is appropriate pursuant
     to Ninth Circuit Rule 36-3(b).

24

25   [6]  Because the court declines to exercise jurisdiction on prudential ripeness grounds, the court
     need not address whether it must also find a lack of jurisdiction under the rule identified by the

26   Supreme Court in *Penn General Casualty Co. v. Pennsylvania* regarding *in rem* jurisdiction.  294
     U.S. 189 (1935); *see also Jayaton-Kerry v. Cooper*, No. 2:23-cv-02298-TLN-AC, 2024 WL

27   216265, at *9 n.7 (E.D. Cal. Jan. 19, 2024) ("*Penn General* has no application where, as here, an
     action is brought *in personam* to determine the rights of persons to property without invoking the

28   court's jurisdiction over the property itself.").

1  Amendment.  (*Id.*)  "The Eleventh Amendment bars actions against state officials acting in their

2  official capacities because these actions are treated as suits against the state itself."  *Rosas v. City*

3  *of Santa Rosa*, No. 21-cv-06179-JST, 2022 WL 2158968 (N.D. Cal. June 15, 2022) (dismissing

4  claim against prosecutors in their official capacity); *see also Rote v. N.J. Judiciary*, No. 3:24-cv-

5  01711-SB, 2025 WL 2308608, at *11 (D. Or. June 17, 2025) (finding that prosecutors act as arms

6  of the state protected by the Eleventh Amendment where they engage in classic law enforcement

7  and investigative functions), *report and recommendation adopted*, 2025 WL 2306989 (D. Or.

8  Aug. 8, 2025).  To the extent that plaintiff's claim against defendant Schubert is based on her

9  work as District Attorney during the criminal prosecution of plaintiff, it is clearly barred by the

10  Eleventh Amendment.  The court need not resolve whether retention of plaintiff's firearms was an

11  administrative function that rendered defendant Schubert a county officer, as "[a] suit against a

12  governmental officer in [her] official capacity is equivalent to a suit against the government entity

13  itself."  *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  Because plaintiff also

14  brings his fifth and sixth causes of action against the relevant county, the court will analyze

15  defendant Schubert's liability as to those claims together with the claims brought by plaintiff

16  against defendant County of Sacramento.  *Corrigan v. Mason County*, No. 3:25-cv-05611-DGE,

17  2025 WL 2443279, at *3 (W.D. Wash. Aug. 25, 2025) ("Any official capacity claims should be

18  analyzed together with claims against the entity.") (internal quotation marks omitted).

19      Accordingly, the court will grant the Sacramento defendants' motion to dismiss plaintiff's

20  claim for monetary damages brought against defendant Schubert to the extent that plaintiff alleges

21  defendant Schubert was acting in her official capacity as a state actor.

22          c.      *County of Sacramento*

23      Defendant County of Sacramento argues that plaintiff has failed to allege that it had a

24  policy that deprived plaintiff of his Second Amendment rights.  (Doc. No. 93-1 at 16–17.)

25  Specifically, defendant contends that plaintiff's allegations appear directed at specific California

26  statutes and not at any particular policy of the County of Sacramento.  (*Id.*)  In opposition,

27  plaintiff argues he has alleged that the county has a policy of "retaining and/or destroying

28  Plaintiff's rifles post-dismissal solely based on their classification[.]"  (Doc. No. 97 at 10.)

1    It is well-established that "a municipality cannot be held liable *solely* because it employs a

2    tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat*

3    *superior* theory." *Monell*, 436 U.S. at 691; *see also Bd. of County Comm'rs v. Brown*, 520 U.S.

4    397, 403 (1997) ("We also recognized that a municipality may not be held liable under § 1983

5    solely because it employs a tortfeasor."). "There are four criteria:  '(1) [plaintiff] had a

6    constitutional right of which [he was] deprived; (2) the municipality had a policy; (3) the policy

7    amounts to deliberate indifference to [his] constitutional right; and (4) the policy is the moving

8    force behind the constitutional violation.'"  *Scanlon v. County of Los Angeles*, 92 F.4th 781, 811

9    (9th Cir. 2024) (cleaned up) (quoting *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir.

10   2021)).

11   "In general, 'a single instance of unlawful conduct is insufficient to state a claim for

12   municipal liability under section 1983.'"  *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 935

13   (S.D. Cal. 2022) (quoting *Benavidez v. County of San Diego*, 993 F.3d 1134, 1154 (9th Cir.

14   2021)).  "Single acts may trigger municipal liability where 'fault and causation' were clearly

15   traceable to a municipality's legislative body or some other authorized decisionmaker[.]"

16   *Benavidez*, 993 F.3d at 1154 (quoting *Brown*, 520 U.S. at 406).  However, where a plaintiff

17   asserts the existence of a custom, it is insufficient to only allege a single isolated incident of

18   unconstitutional conduct.  *Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir.

19   2021) ("Plaintiffs' allegations amount to no more than an isolated or sporadic incident that cannot

20   form the basis of *Monell* liability for an improper custom.") (internal quotation marks and

21   brackets omitted).  "In other words, Plaintiff cannot prove the existence of a municipal policy or

22   custom based solely on the occurrence of a single incident of unconstitutional action by a non-

23   policymaking employee."  *Segura*, 647 F. Supp. 3d at 936 (internal quotation marks omitted)

24   (quoting *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989)).

25   Here, plaintiff alleges in conclusory and vague fashion in his TAC that the refusal to

26   return his firearms "reflect[s] a broader pattern of enforcement designed to deter firearm

27   ownership through vague statutory definitions, shifting compliance standards, and burdensome

28   litigation requirements."  (Doc. No. 92 at ¶ 157.)  But, as noted above, a single instance of alleged

14

misconduct and vague, conclusory allegations regarding the existence of a custom or policy are plainly insufficient to support a *Monell* claim.  *Piombino v. City of Fresno*, No. 1:24-cv-00298-KES-SAB, 2024 WL 4931462, at *6 (E.D. Cal. Dec. 2, 2024) (finding that a single instance of alleged misconduct cannot establish a "pervasive custom or practice of constitutional violations sufficient to support a *Monell* claim"); *Segura*, 647 F. Supp. 3d at 936 ("Absent the allegations of her own isolated experience, Plaintiff alleges—at most—that the County 'appears' to have an unconstitutional custom or practice. . . . This is just a bare legal conclusion, however, and is insufficient to establish a plausible claim for *Monell* liability based on an unofficial custom or practice.").  Moreover, plaintiff's allegations in this regard bear only on a failure to return his firearms, but, as described above, plaintiff has not alleged his compliance with the procedures set out in California Penal Code § 33850 to obtain return of his firearms.  The court finds the reasoning in *Bjorklund v. County of Santa Barbara* instructive in this regard:

> Defendants argue Plaintiff fails to state a *Monell* claim for violation of the Second Amendment based on the seizure and refusal to return Plaintiff's firearms unconditionally because "California law mandates that a person claiming title to any firearm in the custody of a law enforcement agency, and who wishes to have the firearm returned, satisfy certain requirements," and that "[p]ursuant to California Penal Code § 33850, in order for [Plaintiff] to have his firearms returned to him, he was required to apply for a determination by the Department of Justice as to whether he was eligible to possess a firearm."  Defendants argue Plaintiff fails to state a Second Amendment claim based on officers' compliance with California law because "SBSO is not permitted to return a firearm to any individual unless that individual presents a notification from the California Department of Justice that the person is eligible to possess a firearm" pursuant to Cal. Penal Code § 33855, and "under California law, SBSO could not return any firearm to Bjorklund *unconditionally*."  Plaintiff argued at the hearing he is asserting an as-applied constitutional challenge to California Penal Code §§ 33850(a) and 33865 for his Second Amendment claim.  However, the TAC does not assert a constitutional challenge to [those sections].  Therefore, the TAC fails to state a claim for violation of the Second Amendment.

No. 23-cv-02140-CBM-RAO, 2024 WL 3468327, at *5 (C.D. Cal. June 3, 2024) (internal citations omitted).  Similarly here, plaintiff does not bring any constitutional challenge to § 33850 and cannot state a cognizable *Monell* claim against the defendant County on the basis that it complied with that law.  Accordingly, and because their liability is evaluated together for the

1    reasons explained above, the court will grant defendants' motion to dismiss plaintiff's fifth and

2    sixth causes of action for *Monell* liability brought against both defendants Schubert and County of

3    Sacramento.

4         2.    Inverse Condemnation (Claim 7)

5         Defendants next argue that plaintiff has failed to state a claim for inverse condemnation

6    because he has not alleged that the purported unlawful seizure of his firearms was for a public

7    use.  (Doc. No. 93-1 at 18.)  Plaintiff argues that he can state a claim pursuant to the takings

8    clause where the firearms in question were confiscated for use in a criminal prosecution, that

9    prosecution has ended, but the firearms have not been returned.  (Doc. No. 97 at 11.)

10        Inverse condemnation claims are based on the just compensation clause in the California

11   state constitution and may be pursued when the public entity "improperly has taken private

12   property for public use without following the requisite procedures[.]"  *Customer Co. v. City of*

13   *Sacramento*, 10 Cal. 4th 368, 376–77 (1995).  Federal courts and California state courts have

14   found that this clause is interpreted "congruently" with the federal takings clause.  *Surfrider*

15   *Found. v. Martins Beach 1, LLC*, 14 Cal. App. 5th 238, 259 (2017) (quoting *Cal. Bldg. Ind. Ass'n*

16   *v. City of San Jose*, 61 Cal. 4th 435, 456 n.10 (2015)); *see also Martin v. City of Los Angeles*, No.

17   20-cv-11828-TJH-PVC, 2023 WL 1785776, at *10 (C.D. Cal. Jan. 5, 2023) (concluding that

18   claims for both inverse condemnation and pursuant to the takings clause require that the plaintiff

19   allege seizure of property for public use without just compensation); *Sullivan Equity Partners,*

20   *LLC v. City of Los Angeles*, No. 2:16-cv-07148-CAS-AGR, 2023 WL 6130615, at *16 (C.D. Cal.

21   Sept. 15, 2023) (finding that the proposed amendment to reallege an inverse condemnation claim

22   would be futile where the plaintiff could not allege a claim for violation of the takings clause).

23        As has been recognized, "[t]here is persuasive out-of-circuit authority indicating that

24   seizure of property in the criminal context can lead to 'takings liability for the period after seized

25   property is no longer needed for criminal proceedings.'"  *Jones v. City of Vallejo*, No. 2:22-cv-

26   01574-WBS-JDP, 2024 WL 2153646, at *3 (E.D. Cal. May 14, 2024) (quoting *Jenkins v. United*

27   *States*, 71 F.4th 1367, 1373 (Fed. Cir. 2023)).  However, plaintiff has not alleged in his TAC that

28   his firearms were seized pursuant to a criminal investigation:  Rather, plaintiff has alleged that his

1    firearms were seized pursuant to California Welfare and Institutions Code § 8102 when his wife

2    was detained regarding her mental health.  (Doc. No. 92 at ¶¶ 36–37.)  Indeed, plaintiff has

3    alleged that the disposition of those seized firearms will be adjudicated in a forfeiture proceeding.

4    (*Id.* at ¶ 63.)

5         The Supreme Court has found that properly conducted forfeiture proceedings do not give

6    rise to claims under the takings clause because "[t]he government may not be required to

7    compensate an owner for property which it has already lawfully acquired under the exercise of

8    governmental authority other than the power of eminent domain."  *Bennis v. Michigan*, 516 U.S.

9    442, 452 (1996).  Moreover, the takings clause only provides compensation "in the event of [an]

10    otherwise proper interference amounting to a taking."  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S.

11    528, 537 (2005).  Applying these precedents, one district court found that the impoundment of a

12    plaintiff's vehicle could not give rise to a claim under the takings clause on either the theory that

13    the taking was unlawful or that it was lawful but not compensated, explaining:

14         In the present case, if Plaintiffs can prove their Fourth Amendment
         claim, then Defendants' interference with their property rights—the
15         impoundment of their trucks—was unlawful.  But that does not mean
         that the taking was "for public use."  The takings clause only
16         "requires compensation in the event of otherwise proper interference
         amounting to a taking."  The "public use" requirement "goes to the
17         legitimacy of the government's taking to begin with; if a taking is not
         for public use, the government has no right to complete the act of
18         eminent domain."  The unlawful seizure of property does not
         constitute a "public use."
19
         If, on the other hand, Plaintiffs ultimately fail to prove their Fourth
20         Amendment claim, their takings clause claim would also fail because
         Defendants lawfully acquired their trucks "under the exercise of
21         governmental authority other than the power of eminent domain."

22    *Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 912 (N.D. Cal. 2013) (internal

23    citations omitted).  Other district courts have similarly found that plaintiffs could not state

24    cognizable claims pursuant to the takings clause based on law enforcement's destruction or sale

25    of their property.  *See, e.g., Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1106 (E.D. Cal.

26    2012) (dismissing the plaintiff's takings clause claim for the destruction of his property by police

27    officers); *see also Talib v. Nicholas*, No. 14-cv-05871-JAK-DFM, 2015 WL 9598821, at *12

28    (C.D. Cal. Dec. 4, 2015) (recommending dismissal of a takings clause claim for purportedly

1    illegal sale of impounded vehicle), *report and recommendation adopted*, 2016 WL 50048 (C.D.

2    Cal. Jan. 4, 2016); *cf. Brewster v. City of Los Angeles*, 672 F. Supp. 3d 872, 974–75 (C.D. Cal.

3    2023) (finding the warrantless impounding of the plaintiffs' vehicles could give rise to a takings

4    clause claim where forfeiture proceedings were never initiated).  Here, plaintiff's claim would

5    require either contending that the purportedly pending forfeiture proceedings are deficient, in

6    which case the taking was invalid and not for public use, or that those proceedings are proper, in

7    which case the taking of his firearms was done under a power separate from eminent domain.

8         Adopting the reasoning of the other district courts addressing such claims as discussed

9    above, the court concludes that plaintiff has not stated a cognizable claim for relief pursuant to the

10   takings clause.  Accordingly, because inverse condemnation is interpreted congruently to the

11   takings clause, the court also concludes that plaintiff has not stated a cognizable claim for relief

12   on the basis of inverse condemnation.  The court will therefore grant defendants' motion to

13   dismiss plaintiff's seventh cause of action.

14   **B.    Elk Grove Defendants' Motion to Dismiss**

15        The Elk Grove defendants filed a "Notice of Joinder and Joinder" in the Sacramento

16   defendants' motion to dismiss.  (Doc. No. 95.)  Nevertheless, a review of that motion makes clear

17   that the Elk Grove defendants advance additional arguments beyond those contained in the

18   Sacramento defendants' motion to dismiss.  (*See, e.g. id.* at 4) (arguing that plaintiff's third cause

19   of action for a takings clause violation must be dismissed).  Accordingly, the court construes the

20   Elk Grove defendants' joinder as a separate motion to dismiss.  *See United States v. Fox*, No. 21-

21   cv-08785-MWF-JC, 2022 WL 22930524, at *1 (C.D. Cal. Dec. 6, 2022) (construing a notice of

22   joinder as a separate motion to dismiss where it advanced additional arguments); *but see*

23   *Contreras v. JPMorgan Chase*, No. 14-cv-01145-JGB, 2014 WL 5786244, at *1 n.1 (C.D. Cal.

24   Nov. 6, 2014) (declining to consider additional arguments advanced in a joinder to a motion as

25   improperly raised).

26        First, the Elk Grove defendants join in the Sacramento defendants' arguments regarding

27   the court lacking jurisdiction to grant plaintiff's request for injunctive relief.  (Doc. No. 95 at 3–

28   4.)  For the same reasons the court has concluded that it lacks subject matter jurisdiction to

1 provide injunctive relief to plaintiff with respect to the Sacramento defendants, the court also

2 concludes that it lacks such jurisdiction with respect to the Elk Grove defendants.

3      Nevertheless, the court observes that the Elk Grove defendants appear to have

4 misinterpreted the Sacramento defendants' arguments as contending that the court completely

5 lacks jurisdiction over this action. For example, the Elk Grove defendants appear to claim that

6 the *Rooker-Feldman* doctrine bars the court from exercising jurisdiction in this action entirely,

7 whereas the Sacramento defendants only argued that the doctrine may bar the court's exercising

8 of jurisdiction over plaintiff's claim relating to the return of the firearms at issue. (*Compare* Doc.

9 No. 93-1 at 20–21 *with* Doc. No. 95 at 3.) Moreover, the Elk Grove defendants have purported to

10 join the Sacramento defendants' reply with respect to this argument and state in that joinder that

11 "[t]he [c]ourt should abstain from these proceedings," despite the Sacramento defendants

12 withdrawing this argument in their reply. (Doc. Nos. 101 at 6; 102 at 3.) To the extent that the

13 Elk Grove defendants argue that the court completely lacks jurisdiction, they have failed to

14 provide any argument or legal authority in support of this assertion. Accordingly, the court

15 rejects those unsupported arguments. *See Murchison v. City of Newport Beach*, No. 8:25-cv-

16 00155-FWS-DFM, 2025 WL 1723167, at *9 (C.D. Cal. May 28, 2025) (declining to address the

17 defendant's conclusory arguments in the motion to dismiss context) (collecting cases).

18      Next, the Elk Grove defendants join the Sacramento defendants' arguments regarding

19 plaintiff's purported failure to allege facts supporting an inverse condemnation claim. (Doc. No.

20 95 at 4.) In doing so, the Elk Grove defendants move to dismiss plaintiff's third claim for

21 violation of the takings clause and seventh claim for inverse condemnation. (*Id.*) For the same

22 reasons the court has concluded above that plaintiff has failed to state a cognizable claim for

23 relief on the basis of inverse condemnation with respect to the Sacramento defendants, the court

24 finds that plaintiff has failed to state such a claim or a claim for violation of the takings clause

25 with respect to the Elk Grove defendants.

26      Defendants argue that plaintiff's first, second, third, and fourth causes of action against

27 the defendant City of Elk Grove must be dismissed because the actions complained of are the

28 defendant City's enforcement of state law. (Doc. No. 95 at 3–4.) The Ninth Circuit has

previously rejected an argument that a county "should be immune because it was merely acting

according to state law" because that argument only demonstrated officials' "good faith in

applying the statute." *Evers v. Custer County*, 745 F.2d 1196, 1203–04 (9th Cir. 1984) (citing

*Owen v. City of Independence*, 445 U.S. 622, 652 (1980) ("The knowledge that a municipality

will be liable for all of its injurious conduct, whether committed in good faith or not, should

create an incentive for officials who may harbor doubts about the lawfulness of their intended

actions to err on the side of protecting citizens' constitutional rights.")).  The Ninth Circuit has

subsequently characterized the decision in *Evers* as finding that *Monell* liability attaches where

the state law authorizing the municipality's actions is discretionary in nature.  *Sandoval v. County*

*of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018).

Here, plaintiffs' allegations regarding his *Monell* claims brought against the Elk Grove

defendants center upon the warrantless seizure of his firearms pursuant to California Welfare and

Institutions Code § 8102.  (Doc. No. 92 at ¶¶ 35–37.)  That statute provides, in relevant part, as

follows:

> Whenever a person, who has been detained or apprehended for
> examination of his or her mental condition or who is a person
> described in [§§] 8100 or 8103, is found to own, have in his or her
> possession or under his or her control, any firearm whatsoever, or
> any other deadly weapon, the firearm or other deadly weapon shall
> be confiscated by any law enforcement agency or peace officer, who
> shall retain custody of the firearm or other deadly weapon.

Cal. Welf. & Inst. Code § 8102(a).  On December 27, 2020, the Elk Grove defendants entered

plaintiff's residence in response to an emergency call and placed plaintiff's wife on a 72-hour

psychiatric hold pursuant to California Welfare and Institutions Code § 5150.  (Doc. No. 92 at ¶¶

28–30.)  A person detained pursuant to § 5150 is forbidden to possess a firearm under California

Welfare and Institutions Code § 8100(a).  Plaintiff argues that defendants "maintain a broad

policy that directs officers to seize firearms from private residences [pursuant to § 8102(a)]

without first obtaining a warrant."  (Doc. No. 92 at ¶ 39.)

The Elk Grove defendants appear to contend that, in enforcing § 8102(a), they were not

exercising a level of discretion that would be necessary to give rise to *Monell* liability and instead

were acting simply as an arm of the state.  However, the California Supreme Court has noted that

20

1    officers can seek a search warrant for the seizure of firearms pursuant to both California Welfare

2    and Institutions Code § 8102 and California Penal Code § 1524.  *People v. Ovieda*, 7 Cal. 5th

3    1034, 1049 (2019).  Another California district court has found that a municipality's directive to

4    its officers to impound vehicles pursuant to a statutory provision creating a mandatory 30-day

5    hold period as opposed to an equally applicable section that did not have such a hold period could

6    give rise to *Monell* liability.  *Brewster v. City of Los Angeles*, No. 14-cv-02257-JGB-SP, 2019

7    WL 7707886, at *7–8 (C.D. Cal. July 29, 2019) ("Even if municipalities may not be held liable

8    for enforcing mandatory state laws that allow no meaningful discretion at the local level, as other

9    circuits have held, the City is subject to liability because it exercised its discretion by directing

10   officers to use [California Vehicle Code] § 14602.6(a)(1) in circumstances where [California

11   Vehicle Code] § 22651(p) was equally applicable.").  The undersigned finds this reasoning  to be

12   instructive.  Accordingly, the court concludes that the Elk Grove defendants' purported policy of

13   directing warrantless seizures by officers rather than the seeking of a warrant pursuant to

14   California Penal Code § 1524(a)(10) is similarly an exercise of some degree of discretion.

15   Because the court finds that this policy implementing § 8102 is a result of an exercise of some

16   discretion, the court need not decide whether *Monell* liability is available "when a local

17   government implements a mandatory state law that leaves no room for discretion[.]"[7]  *Brewster*,

18   2019 WL 7707886, at *6–8 (collecting out-of-circuit cases regarding *Monell* liability in the

19   context of the enforcement of mandatory state laws).

20   /////

---

[7]  The court also need not address whether § 8102 requires confiscation of firearms or merely authorizes that action.  Nonetheless, it does appear that both the Ninth Circuit and California state courts generally have found that § 8102 creates a mandatory duty to confiscate firearms.  *See Rodriguez*, 930 F.3d at 1128 ("[§] 8102 requires law enforcement officers to confiscate any firearm or other deadly weapon that is owned, possessed, or otherwise controlled by an individual who has been detained under California Welfare and Institutions Code § 5150."); *see also City of San Diego v. Kevin B.*, 118 Cal. App. 4th 933, 941 (2004) ("When, under [§] 5150, a person has been detained, [§] 8102, subdivision (a), *requires* that law enforcement officers confiscate any firearms or weapons in that person's possession.") (emphasis added); *Oakland Police Officers' Assn. v. City of Oakland*, 63 Cal. App. 5th 503, 509 (2021) (observing that § 8102 permits officers to seek a search warrant to confiscate firearms); *but see People v. Keil*, 161 Cal. App. 4th 34, 38 (2008) ("If the person detained pursuant to [§] 5150 controls or possesses firearms, the firearms *may* be confiscated by a law enforcement agency.") (emphasis added).

Because plaintiff's first, second, third, and fourth causes of action rely on his allegation that the Elk Grove defendants have a custom of declining to seek search warrants to seize firearms pursuant to § 8102, the court rejects defendants' argument that they were acting only as an arm of the state. The court does not at this time address whether plaintiff's allegations otherwise state a cognizable *Monell* claim because the Elk Grove defendants have failed to advance any other argument in moving to dismiss this claim. *See Avalanche Funding, LLC v. Five Dot Cattle Co.*, No. 2:16-cv-02555-TLN-KJN, 2017 WL 6040293, at *3 (E.D. Cal. Dec. 6, 2017) ("In the context of a motion to dismiss, the burden is on the defendant to prove that the plaintiff failed to state a claim. In the instant case, the . . . Defendants do not explain how Plaintiff fails to plead the necessary elements for each cause of action or point out the deficiencies in Plaintiff's claims. Accordingly, the . . . Defendants have not presented enough facts and analysis to meet their burden."); *see also Anderson v. County of Fresno*, No. 1:21-cv-01134-ADA-SAB, 2023 WL 2761168 (E.D. Cal. Apr. 3, 2023) (collecting cases addressing the defendants' burden on a motion to dismiss), *report and recommendation adopted*, 2023 WL 4637099 (E.D. Cal. July 20, 2023).

## C.    State Defendants' Motion to Dismiss

The State defendants move to dismiss plaintiff's fifth and sixth causes of action on the following grounds: (1) that plaintiff's claims are barred by *Younger* abstention or the *Rooker-Feldman* doctrine; (2) plaintiff's claims against defendant Newsom are barred by sovereign immunity; (3) plaintiff's TAC does not comply with Rule 8; and (4) plaintiff fails to state a claim for violation of the Second Amendment because the statutes which plaintiff seeks to challenge restrict possession of assault weapons, which is permissible under the Second Amendment. (Doc. No. 94-1 at 10–24.) The court will address the State defendants' first argument below and, because it concludes that *Younger* abstention applies, need not and will not address their remaining arguments in support of dismissal.

### 1.    *Younger* Abstention

Defendant argues that *Younger* abstention applies in light of plaintiff's allegations that defendant Hobbs initiated a forfeiture proceeding regarding plaintiff's firearms with his wife

named as the primary party.  (Doc. Nos. 92 at ¶¶ 63, 64; 94-1 at 17–18.)  Plaintiff alleges that he

was "neither named as a party in the petition nor served with legal notice" but nevertheless

maintains that he has property rights as to each of the firearms named in that petition.  (Doc. No.

92 at ¶ 64.)  Plaintiff argues in his opposition that *Younger* cannot apply because he was not

named as a party in that forfeiture proceeding.  (Doc. No. 96 at 5.)

　　　　As noted above, "[a] federal court may abstain under *Younger* in three categories of cases:

(1) parallel, pending state criminal proceedings, (2) state civil proceedings that are akin to

criminal prosecutions, and (3) state civil proceedings that implicate a State's interest in enforcing

the orders and judgments of its courts. . . . [T]hese three categories are known as the *NOPSI*

categories."  *Herrera*, 918 F.3d at 1043–44 (internal quotation marks omitted) (quoting

*ReadyLink Healthcare, Inc.*, 754 F.3d at 759).  An "*in rem* forfeiture proceeding" is a state civil

proceeding as to which *Younger* abstention can apply.  *Big Sky Sci. LLC v. Bennetts*, 776 F.

App'x 541, 541–42 (9th Cir. 2019).  Civil forfeiture actions also implicate important state

interests.  *Ivy v. Fresno Police Dep't*, No. 1:23-cv-01072-ADA-SAB, 2023 WL 7130659, at *5

(E.D. Cal. Oct. 30, 2023) (collecting cases), *report and recommendation adopted sub nom. Ivy v.*

*Fresno Police Dep't Officers*, 2025 WL 1680177 (E.D. Cal. June 16, 2025).

　　　　In opposing the State defendants' motion to dismiss on *Younger* abstention grounds,

plaintiff only contests whether he has had an adequate opportunity to raise his claims in a state

forum because he is not a party to the underlying pending state forfeiture action.  (Doc. No. 96 at

5.)  "The burden on this point rests on the federal plaintiff to show that state procedural law

barred presentation of its claims."  *Herrera*, 918 F.3d at 1046 (cleaned up) (quoting *Pennzoil Co.*

*v. Texaco, Inc.*, 481 U.S. 1, 14 (1987)).  Plaintiff is correct that he has "no obligation to intervene

in state court litigation raising issues similar to those that [he] wishes to raise in federal court."

*Green v. City of Tuscon*, 255 F.3d 1086, 1102–03 (9th Cir. 2001), *overruled on other grounds by*

*Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004).  Nevertheless, *Younger* abstention still

applies where a party's "interest is so intertwined with those of the state court party that direct

interference with the state court proceeding is inevitable[.]"  *Id.* at 1100.  The Supreme Court has

identified that when a federal plaintiff seeks return of property which is the subject of a separate

1  state court action, the federal plaintiff's interests are so intertwined with those of the parties in the

2  state court action as to warrant abstention.  *Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975)

3  ("Absent a clear showing that appellees . . . could not seek the return of their property in the state

4  proceedings [prosecuting their employees] and see to it that their federal claims were presented

5  there, the requirements of *Younger v. Harris* could not be avoided on the ground that no criminal

6  prosecution was pending against appellees[.]").

7       Here, plaintiff has alleged that there is an ongoing forfeiture proceeding in state court

8  against property which he owns.  Further, he requests a permanent injunction against the state

9  statute under which that property was seized, California Welfare & Institutions Code § 8102.

10  (Doc. No. 92 at 32.)  Accordingly, applying the reasoning in *Hicks* and observing that the relief

11  he seeks, if granted, would directly interfere with the state forfeiture proceeding, this court finds

12  that plaintiff's interests are so intertwined with his wife's interests in the pending state forfeiture

13  action that *Younger* abstention applies here despite plaintiff not currently being a party to that

14  state forfeiture proceeding.  *See Herrera*, 918 F.3d at 1047 (finding that the federal plaintiffs'

15  claims risked interfering in a state court proceeding that they were not a part of because the

16  sought relief pertained to the same underlying investigation and property).  Plaintiff has provided

17  no allegations nor argument regarding whether the forum provided by those forfeiture

18  proceedings would permit his constitutional arguments to be advanced, and therefore has not met

19  his burden to demonstrate that the state forum is inadequate.[8]  The court finds that plaintiff has an

20  adequate opportunity to raise his constitutional arguments in the state forfeiture proceeding.

21       Because plaintiff has an adequate opportunity to raise his constitutional challenges in an

22  ongoing state forfeiture proceeding, the court concludes that *Younger* abstention applies to

23  plaintiff's claims regarding his six firearms which are the subject of the pending proceeding in

24  state court.  The court observes that plaintiff does not otherwise allege that he intends to acquire a

25  firearm possession of which is proscribed by the challenged California Penal Code sections.  The

26  _____

27  [8]  The court observes that, in a prior Ninth Circuit case, the plaintiff was able to raise Second
   Amendment arguments in a state forfeiture action based on a seizure of firearms carried out
   pursuant to California Welfare & Institutions Code § 8102(c), which appears to be the same kind

28  of action plaintiff alleges here.  *See Rodriguez*, 930 F.3d at 1128.

1    court therefore incorporates its prior discussion, in addressing the Sacramento defendants' motion

2    to dismiss, of plaintiff's lack of standing to challenge those statutes.  Accordingly, the court

3    concludes that plaintiff lacks standing to bring a pre-enforcement challenge to the identified

4    California Penal Code sections.  Plaintiff's claims are either based upon the retention of certain

5    firearms, as to which this court must abstain from exercising jurisdiction, or otherwise fail due to

6    plaintiff's lack of standing.  Accordingly, the court will also grant the State defendants' motion to

7    dismiss.

8    **D.      Leave to Amend**

9        Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

10   P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

11   amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

12   Reasons "such as undue delay, bad faith or dilatory motive . . .  repeated failure to cure

13   deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

14   leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Brown v. Stored Value*

15   *Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (same).  A district court "should grant leave to

16   amend even if no request to amend the pleading was made, unless it determines that the pleading

17   could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v. N.*

18   *Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990); *see also Yagman v. Garcetti*, 852 F.3d

19   859, 863 (9th Cir. 2017) (same).

20       Here, plaintiff has again requested further leave to amend.  (Doc. No. 97 at 14.)  The court

21   concludes that granting further leave to amend plaintiff's claims pursuant to the takings clause

22   and for inverse condemnation would be futile based on the court's reasoning as stated above.  *See*

23   *Sanchez*, 914 F. Supp. 2d at 1107 (denying leave to amend takings clause claim based on the

24   destruction of property by law enforcement).  Moreover, plaintiff has already been provided two

25   opportunities to amend his complaint in an attempt to cure the deficiencies the court had

26   identified in its prior dismissal orders.  (Doc. Nos. 74, 91.)  In its last such order, the court

27   cautioned plaintiff "that any third amended complaint he may elect to file should address any and

28   all potential deficiencies identified by the various defendants in their motions to dismiss,

*including* arguments the court did not address in this order." (Doc. No. 91 at 13) (emphasis added).  Because plaintiff has still failed to cure those pleading deficiencies, as found above, the court will decline to grant further leave to amend.  *See Foman v. Davis*, 371 U.S., 178, 182 (1962) (finding that failure to cure deficiencies provides reason to deny leave to amend); *see also Shetty v. SunTrust Mortg.*, No. 13-cv-00820-AG-E, 2013 WL 12244326, at *4 (C.D. Cal. Sept. 9, 2013) ("It would be an 'exercise in futility' to allow Plaintiff to amend his Complaint for a second time because Plaintiff has already been informed of deficiencies in his Complaint and failed to correct them.") (quoting *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998)), *aff'd sub nom. Shetty v. SunTrust Mortg., Inc.*, 696 F. App'x 830 (9th Cir. 2017).

## CONCLUSION

1.      The Sacramento defendants' motion to dismiss (Doc. No. 93) is GRANTED without further leave to amend;

2.      The State defendants' motion to dismiss (Doc. No. 94) is GRANTED without further leave to amend;

3.      The Elk Grove defendants' motion to dismiss (Doc. No. 95) is GRANTED IN PART as follows:

    a.      Plaintiff's third claim for violation of the Fifth Amendment is DISMISSED without further leave to amend;

    b.      Plaintiff's seventh claim for inverse condemnation is DISMISSED without further leave to amend;

    c.      Plaintiff's requests for injunctive and equitable relief in the form of enjoining the enforcement of statutes and returning the firearms at issue in this case are DISMISSED;

    d.      The Elk Grove defendants' motion to dismiss is otherwise DENIED;

/////

/////

/////

/////

4.    The remaining Elk Grove defendants shall file an answer as to the claims found to be cognizable in this order within twenty-one (21) days of the date of this order.

IT IS SO ORDERED.

Dated:    **January 13, 2026**                    Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE